**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NICOLAS TALBOTT, ERICA VANDAL, KATE COLE, GORDON HERRERO, DANY DANRIDGE, JAMIE HASH, MIRIAM PERELSON, KODA NATURE, and CAEL NEARY,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States; the UNITED STATES OF AMERICA; PETER B. HEGSETH, in his official capacity as Secretary of Defense; MARK AVERILL, in his official capacity as Acting Secretary of the Army; the UNITED STATES DEPARTMENT OF THE ARMY; TERENCE EMMERT, in his official capacity as Acting Secretary of the Navy; the UNITED STATES DEPARTMENT OF THE NAVY; GARY ASHWORTH, in his official capacity as Acting Secretary of the Air Force; the UNITED STATES DEPARTMENT OF THE AIR FORCE; TELITA CROSLAND, in her official capacity as Director of the Defense Health Agency; and the DEFENSE HEALTH AGENCY,<br><br>　　　　　Defendants. | Civil Action No. 1:25-cv-00240 |

**DECLARATION OF CARLOS DEL TORO**

I, Carlos Del Toro, declare as follows:

1. I served as the 78th Secretary of the Navy, a position I held from August 9, 2021 to January 20, 2025. As Secretary of the Navy, I was responsible for all Title 10 affairs of the Department of the Navy, including recruiting, organizing, supplying, equipping, training, mobilizing, and demobilizing. As Secretary, I was in charge of over 900,000 Sailors, Marines, reservists, and civilian personnel. I also oversaw the construction, outfitting, and repair of naval ships, aircraft, equipment, and facilities.

1

2. The Department of the Navy oversees two military services:  The United States Navy and the United States Marine Corps.

## PROFESSIONAL BACKGROUND

3. I am a graduate of the United States Naval Academy.  I hold a Masters in Space Systems Engineering from the Naval Postgraduate School, a Masters in National Security Studies from the Naval War College and a Masters in Legislative Affairs from George Washington University.

4. I served as an active duty officer in the United States Navy for 22 years that included numerous tours of duty at sea and ashore.  During my naval career, I served in various roles including First Commanding Officer of the USS BULKELEY (DDG-84), Senior Executive Assistant to the Director for Program Analysis and Evaluation in the Office of the Secretary of Defense, and Special Assistant to the Director and Deputy Director of the Office of Management and Budget in the Executive Office of the President of the United States.

5. Following retirement from my military service, I founded and served as CEO of an engineering services company supporting government programs, giving me additional perspective on military readiness and personnel requirements from both public and private sector viewpoints.

## EXPERIENCE WITH TRANSGENDER SERVICE POLICY

6. During my tenure as Secretary of the Navy, I had oversite responsibilities over all personnel matters affecting the Navy and Marine Corps, including implementation of Department of Defense personnel policies regarding service by transgender personnel. This has given me direct insight into how these policies affect military readiness, unit cohesion, and good order and discipline.

7. Based on my direct experience and observation, transgender service members who meet the standards required for their positions serve effectively and contribute positively to unit readiness.  The determining factor for military service should be, and has been, whether an individual can meet the standards for their specific role, whether serving on a ship, submarine, aircraft, or shore installation.

8. In my three and a half years as Secretary, I reviewed thousands of disciplinary cases and personnel matters at the highest levels of the Department including retirement grade determinations and I provided oversight of non-judicial punishment procedures in the Department of the Navy.  Notably, throughout this entire period, I cannot recollect a single disciplinary case or performance issue related directly to a service member's transgender status.

**MILITARY STANDARDS AND READINESS**

9.  Military standards exist and are set to meet the minimum requirements of each professional warfare specialty within our military services. These standards sometimes vary appropriately by role: the requirements for serving on a submarine are necessarily different from those required of personnel serving in naval special-forces units. These standards are constantly evaluated and updated based on military necessity.

10. In my experience, being transgender does not inherently affect a service member's ability to meet these standards or to deploy worldwide. Any suggestion to the contrary contradicts the actual documented performance of transgender service members in our forces.

11. The Department regularly accommodates various medical and personal circumstances when service members otherwise meet standards. For example, I have personal knowledge of cases where the Department of Defense has made appropriate accommodations for service members with Type 1 diabetes to serve in roles where they can perform effectively. The Department of Defense also sometimes accommodates religious practices, such as allowing Sikh service members to maintain religiously required beards throughout boot camp and follow-on service commitments with appropriate restrictions on a case-by-case basis.

12. The military often provides accommodations when doing so enhances readiness and allows qualified individuals to serve effectively. In the case of transgender service members, no such accommodations are even necessary. Because they must meet the same rigorous standards required of all service members without modification, they have consistently demonstrated their importance and value to the services.

13. Current military policy appropriately requires transgender service members to meet the same high standards as their peers. There is no evidence-based justification for excluding from service someone who meets all applicable standards merely because they are transgender. Such exclusion would harm military readiness by depriving our force of qualified personnel who have proven their ability to serve.

14. At a time when fewer Americans are volunteering to serve in uniform, excluding those that wish to serve who meet rigorous requirements is simply not prudent and runs counter to a "common sense" approach to allowing all willing Americans to serve their country in military service.

**OBSERVATIONS ON UNIT COHESION**

15. Contrary to speculative concerns, I have observed that allowing transgender individuals to serve strengthens unit cohesion by fostering honesty and mutual trust. When service members can be honest about who they are, they can focus more fully on their duties and build stronger bonds with their fellow service members that contribute directly to combat readiness.

16. The statement that transgender service members negatively influence unit cohesion is contradicted by both the absence of such problems in the actual disciplinary and command climate records I have reviewed and my observations throughout my entire time serving as an active duty naval officer and Secretary of the Navy. In my experience, unit cohesion is strengthened, not weakened, when all individuals who meet the military's rigorous standards are permitted to serve.

**IMPACT ON GOOD ORDER AND DISCIPLINE**

17. Based on my direct observation and experience, excluding transgender individuals from military service is destabilizing to good order and discipline. When the military excludes groups based on bias rather than their ability to meet standards, it undermines the fundamental military principle of merit-based service.

18. Military readiness requires that service members be honest about their circumstances and lives. This is true in all areas of a Sailor or Marine's life. We have learned this lesson repeatedly. For example, in the mental health context, we now understand that when service members feel forced to hide aspects of their experiences or struggles, it damages both individual and unit readiness. The same principle applies broadly. When we create conditions where any service member must suppress aspects of who they are, it detracts from their ability to focus on the mission and undermines unit cohesion.

19. Military values like honor, integrity, truth, and discipline, are reflected in a service member's conduct and performance. In my experience reviewing thousands of cases, what determines whether a Sailor or Marine serves honorably is their actions and adherence to our standards, not their membership in a particular social group or identity-based group. Any claims about honesty or integrity must be based on a Sailor's or Marine's actual conduct, not on biases about a particular group. Military values command that service members be judged on what they do, not on who they are.

20. I have observed transgender service members who demonstrate integrity by being truthful about who they are while maintaining their commitment to serve and to be combat ready. This conviction aligns with our core value of honesty and our focus on conduct and performance as the true measures of military fitness.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

I declare under penalty of perjury that the foregoing is true and correct.


Date: February 10, 2025

Carlos Del Toro