IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NICOLAS TALBOTT, ERICA VANDAL, KATE COLE, GORDON HERRERO, DANY DANRIDGE, JAMIE HASH, MIRIAM PERELSON, KODA NATURE, and CAEL NEARY,<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States; the UNITED STATES OF AMERICA; PETER B. HEGSETH, in his official capacity as Secretary of Defense; MARK AVERILL, in his official capacity as Acting Secretary of the Army; the UNITED STATES DEPARTMENT OF THE ARMY; TERENCE EMMERT, in his official capacity as Acting Secretary of the Navy; the UNITED STATES DEPARTMENT OF THE NAVY; GARY ASHWORTH, in his official capacity as Acting Secretary of the Air Force; the UNITED STATES DEPARTMENT OF THE AIR FORCE; TELITA CROSLAND, in her official capacity as Director of the Defense Health Agency; and the DEFENSE HEALTH AGENCY,<br><br>　　　　　　Defendants. | Civil Action No. 1:25-cv-00240-ACR |

**SUPPLEMENTAL DECLARATION OF ALEX WAGNER**

I, Alex Wagner, declare as follows:

1. I write this declaration to supplement the declaration I signed February 3, 2025, and submitted in support of the Motion for Preliminary Injunction in this matter on February 3, 2025. *See* ECF No. 13-20.

2. The military maintains different medical standards for accession (entry into service) versus retention (continued service). For accessions, the standards are deliberately and appropriately stringent because the military makes a substantial long-term commitment to each service member it accepts, including comprehensive medical care that may extend throughout their lifetime.

3. The military must ensure that newly accessed service members can fulfill their initial contract term and potentially serve for many years beyond. Given the significant financial and resource investment the military makes in training and developing each recruit, it can only accept individuals whose potential service value will equal or exceed the resources invested in them. This creates a necessarily high bar for medical qualification at accession.

4. The 18-month stability requirement for transgender individuals seeking to enter military service, as set forth in Volume 1 of DOD Instruction 6130.03, *Medical Standards for Military Service: Appointment, Enlistment, or Induction* (May 28, 2024) ("DoDI 6130.03 Vol. 1"), Ex. H to Wardenski Dec., ECF No. 13-11, *see* DoDI 6130.03 Vol. 1 at 6.13.g(1), 6.14.b, 6.14.n(1), 6.28.t(1), is based on the same considerations applied to other treatable medical conditions at accession, reflecting standard military medical policy rather than any unique restriction on transgender service.

5. In contrast, retention medical standards, as set forth in Volume 2 of DOD Instruction 6130.03, *Medical Standards for Military Service: Retention* (Jun. 6, 2022) ("DoDI 6130.03 Vol. 2"), attached hereto as **Exhibit A**, focus on a service member's ability to perform their duties, deploy when required, and contribute effectively to the military mission. *See* DoDI 6130.03 Vol. 2 at 1.2. The military recognizes that there are numerous roles and positions within its ranks, and importantly, it has made a commitment to those who have already chosen to serve.

6. This is why DoDI 6130.03 Vol. 2 explicitly requires that every medical condition be evaluated on a case-by-case basis to determine if continued service is appropriate. *See* DoDI 6130.03 Vol. 2 at 1.2.b(1), 3.2, 3.3.a(1). The instruction specifically mandates consideration of each service member's ability to safely complete common military tasks at their grade level, their specific duty requirements, and whether they can serve in deployed or garrison conditions. *See* DoDI 6130.03 Vol. 2 at 3.2.a.

7. I can't think of any medical condition that bars continued service—rather, the impact of the condition on the individual service member's ability to perform their duties must be evaluated. In my experience, it would be highly unusual, and I cannot think of another example, where a medical condition would result in a categorical bar to retention without such individualized assessment.

8. For transgender service members, service in the military means serving in a sex different from their sex assigned at birth. The process for gender transition is detailed in DOD Instruction 1300.28, *In-Service Transition for Transgender Service Members* (Dec. 20, 2022) ("DoDI 1300.28"), Ex. D to Wagner Dec, ECF No. 13-25, which establishes a protocol for transgender service members. This includes notifying their command, obtaining a medical diagnosis from a military medical provider, developing and completing an approved medical treatment plan for gender transition, and changing their sex designation in the Defense Enrollment Eligibility Reporting System (DEERS). *See* DoDI 1300.28 at 3.3.

9. Once a transgender service member has changed their sex marker in DEERS, they live and serve fully in the sex designated on the DEERS marker. This means they are referred to by the pronouns associated with their DEERS marker, use facilities consistent with their DEERS marker,

are assigned berthing consistent with their DEERS marker, and have to meet all of the military standards consistent with their DEERS marker.

10. If a transgender service member were prevented from serving in accordance with their DEERS marker, that individual could not serve in the military as a transgender person.

11. Based on my knowledge, many of the medications that transgender service members may take as part of their medical care are also prescribed to numerous non-transgender service members for various medical conditions, demonstrating that these medications are compatible with military service.

12. As is generally true, there are different criteria for accessions than for retention for transgender service members. For accession into the military, a transgender person must be stable for 18 months following completion of gender transition before they can enter service. *See* DoDI 6130.03 Vol. 1 at 6.13.g(1), 6.14.b, 6.14.n(1), 6.28.t(1).

13. However, for retention of currently serving transgender service members, there is no set time period during which a person must be stable following gender transition. Instead, consistent with the case-by-case assessment required by DoDI 6130.03 Vol. 2, the determination of stability and readiness for duty is individualized and based on each service member's specific medical circumstances and needs.

14. In fact, for most transgender service members, there is often no period of non-deployability associated with their gender transition. This reflects the military's recognition that medical needs vary among individuals and that blanket time requirements are neither necessary nor appropriate for retention determinations.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

I declare under penalty of perjury that the foregoing is true and correct.

Date: February 14, 2025

_____
Alex Wagner