# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NICOLAS TALBOTT, ERICA VANDAL, KATE COLE, GORDON HERRERO, DANY DANRIDGE, JAMIE HASH, MIRIAM PERELSON, KODA NATURE, and CAEL NEARY,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States; the UNITED STATES OF AMERICA; PETER B. HEGSETH, in his official capacity as Secretary of Defense; MARK AVERILL, in his official capacity as Acting Secretary of the Army; the UNITED STATES DEPARTMENT OF THE ARMY; TERENCE EMMERT, in his official capacity as Acting Secretary of the Navy; the UNITED STATES DEPARTMENT OF THE NAVY; GARY ASHWORTH, in his official capacity as Acting Secretary of the Air Force; the UNITED STATES DEPARTMENT OF THE AIR FORCE; TELITA CROSLAND, in her official capacity as Director of the Defense Health Agency; and the DEFENSE HEALTH AGENCY,<br><br>　　　　　　　Defendants. | Civil Action No. 1:25-cv-00240 |

## SUPPLEMENTAL DECLARATION OF GILBERT R. CISNEROS, JR.

I, Gilbert R. Cisneros, Jr., declare as follows:

1. I write this declaration to supplement my declaration submitted in support of the Motion for Preliminary Injunction in this matter on February 3, 2025. *See* ECF No. 13-30.

2. I have read the Declaration of Timothy Dill ("Dill Declaration") filed by Defendants on February 14, 2025. *See* ECF No. 52-1.

3. The Dill Declaration states that "it would be highly unusual for individualized service member complaints regarding unit cohesion, military readiness, medical readiness, deployability, and lethality to reach the level of the Under Secretary unless the Under

- 2 -

    Secretary specifically sought such information through a data call or a study." Dill Decl. at 2 ¶ 6.

4. This statement does not accurately describe my degree of awareness of these matters as Under Secretary of Defense for Personnel and Readiness. As the Under Secretary in charge of readiness, it was my responsibility to be aware of unit cohesion, military readiness, medical readiness, deployability, and lethality. If a unit or service was dealing with readiness issues due to the service by transgender service members, that would have been brought to my attention.

5. This is true even though in my role I would not necessarily be apprised of the daily goings on of individual units with respect to morale or discipline problems.

6. For example, I was made aware of—and kept well informed of—an issue related to Junior Reserve Officers' Training Corps ("JROTC") units and instructors surrounding sexual harassment. I did not know the ins and outs of every JROTC unit, but when a problem arose, I was made aware of it so that I could deal with it in my capacity as Under Secretary.

7. In addition and in further response, I am aware of no study that has identified a negative impact on unit cohesion, military readiness, medical readiness, deployability, or lethality due to service by transgender individuals or individuals diagnosed with gender dysphoria since transgender persons have been permitted to serve in the last 4 years under the Austin Policy.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

- 3 -

I declare under penalty of perjury that the foregoing is true and correct.

Date: February 16, 2025

_____
Gilbert R. Cisneros, Jr.