IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NICOLAS TALBOTT, ERICA VANDAL, KATE COLE, GORDON HERRERO, DANY DANRIDGE, JAMIE HASH, MIRIAM PERELSON, MINERVA BETTIS, AUDRIE GRAHAM, ROAN PICKETT, AMIAH SALE, QUINN TYSON, MICHELLE BLOOMROSE, SAMUEL AHEARN, CLAYTON McCALLISTER, GREYSON SHISHKINA, KODA NATURE, and CAEL NEARY,<br><br>     Plaintiffs,<br>v.<br><br>The UNITED STATES OF AMERICA; PETER B. HEGSETH, in his official capacity as Secretary of Defense; MARK AVERILL, in his official capacity as Acting Secretary of the Army; the UNITED STATES DEPARTMENT OF THE ARMY; TERENCE EMMERT, in his official capacity as Acting Secretary of the Navy; the UNITED STATES DEPARTMENT OF THE NAVY; GARY ASHWORTH, in his official capacity as Acting Secretary of the Air Force; the UNITED STATES DEPARTMENT OF THE AIR FORCE; TELITA CROSLAND, in her official capacity as Director of the Defense Health Agency; and the DEFENSE HEALTH AGENCY,<br><br>     Defendants.<br>_____ | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )<br><br>Civil Action No. 1:25-cv-00240 |

**DECLARATION OF MICHELLE BLOOMROSE**

I, Michelle Bloomrose, declare as follows:

1. I am a 45-year-old Commander in the U.S. Navy currently serving as the Director of JAG Corps Training in the Office of the Judge Advocate General. I have been serving honorably and meritoriously in the Navy for over nineteen years. I am transgender.

## HISTORY OF MILITARY SERVICE

2. I joined the Navy in May of 2004 while I was a second-year law student at Washington and Lee University School of Law. After graduating with my Juris Doctorate and taking the Virginia Bar Exam, I completed Navy Officer Indoctrination School and the Basic Lawyer Course at Naval Justice School by the end of 2005. And, after passing its bar exam, the Virginia State Bar admitted me in October of 2005. I am also a member of the Navy-Marine Corps Court of Criminal Appeals, the U.S. Court of Appeals for the Armed Forces, and the U.S Supreme Court bars.

3. I have deployed to provide legal counsel for combat operations three times. I volunteered to individually augment the Multi-National Force – Iraq during the Iraqi Surge phase of Operation Iraqi Freedom, where I advised on detainee operations from mid-2007 through mid-2008. In 2014, I deployed for nine months at sea as the Command Judge Advocate in the USS George H. W. Bush aircraft carrier in the Mediterranean Sea and Persian Gulf in support of Operations Enduring Freedom, Inherent Resolve, and Active Endeavor. Finally, I embarked the USS Mount Whitney amphibious command ship out of Gaeta, Italy as the chief operational lawyer to the Commander, U.S. Sixth Fleet/Commander, Task Force Six for all fleet/task force exercises and operations she commanded from mid-2019 through mid-2020. Based on my significant quantitative and qualitative operational law experience and my demonstrated proficiency at its practice, the Navy authorized me a subspecialty "S" code in National Security Law.

4. Ashore in the continental United States, I have served as a Trial Counsel (i.e., a U.S. Federal Government Prosecutor) at Naval Submarine Base New London, Staff Judge Advocate to the Commanding Officer of Naval Station Newport, a Special Assistant U.S. Attorney in the District of Rhode Island, the Special Counsel to the Chief Judge of the Department of the Navy and Senior Law Clerk to the Chief Judge of the Navy-Marines Corps Court of Appeals at the Washington Navy Yard, and as a legal Action Officer in the Office of the Judge Advocate General, the Deputy Legal Counsel to the Chief of Naval Personnel, and the senior Legal Counsel to the Deputy Chief of Naval Operations (DCNO) for Installations and Logistics (N4) at the Pentagon.

5. Prior to 2017, my ashore legal practice concentrated on Military Personnel Law. This practice included serving as the Navy JAG Corps subject matter expert on "Don't Ask, Don't Tell" repeal law and policy as well as accepting a "by-name request" to serve on the joint legal working group that advised the Under Secretary of Defense for Personnel and Readiness on devising and implementing the 2016 Carter policy that allowed transgender individuals to serve in the military.

6. In 2017, the Navy selected and funded me to enroll in the Environmental Law post-graduate program at The George Washington University School of Law. Based on my Master of Laws degree and five years of significant quantitative and qualitative environmental law experience and my demonstrated proficiency at its practice, the Navy authorized me a subspecialty "Q" code in Environmental Law. This practice included serving as senior legal advisor to DCNO N4 on the Navy's clean-up of, and liability for, the 20,000 gallon "Red Hill" jet fuel spill in Honolulu that contaminated the drinking water

of 93,000 Navy installation residents, the lead uniformed legal representative to the National Marine Fisheries Service in consultations seeking to revise the Navy's marine mammal take permits following two U.S. Navy whale strikes and one Royal Australian Navy strike of a mother whale and its calf during exercises off the coast of southern California in the summer of 2021, and the lead legal planner for the joint U.S. Navy/U.K. Royal Navy sinking exercise Atlantic Thunder 22, ensuring compliance with U.S. and U.K. environmental laws and regulations to tow a decommissioned U.S. frigate across the northern Atlantic so that it could be sunk in U.K. waters following a live fire exercise for both nations' surface ships, submarines, and aircraft in order to deliver live ordnance simultaneously on target to simulate a wartime scenario.

7. In 2023, my career transitioned from active practice to the provision of legal education, training and professional development to future Sea Service legal professionals and support personnel, current Sea Service legal professionals and support personnel, and Sea Service leaders at all levels. First, I served as the Executive Officer of the Naval Justice School. The Naval Justice School's mission is to train all Sea Service (i.e., U.S. Navy, U.S. Marine Corps, and U.S. Coast Guard) judge advocates, and enlisted and civilian legal professionals to deliver quality legal services, promote justice, and enhance Sea Service fleet readiness; and to train Sea Service leaders and legal support personnel to perform their command and staff duties in accordance with United States and international laws. In July of 2024, a Navy JAG Corps Command Screen Oral Board recommended me for command. In September of 2024, I assumed command of the Naval Justice School, the Navy JAG Corps' only major command with ~60 officers, enlisted members, and civilian employees on its staff; and, on any given instructional day, an average of about 250 students enrolled in its courses. I was the Commanding Officer of the Naval Justice School until I recently accepted a billet as Director of JAG Corps Training for the Assistant Judge Advocate General (Education, Training and Professional Development) in the Office of the Judge Advocate General.

8. As a Navy Commander (pay grade O5), my "promotions" (i.e., superseding executive appointments in the next higher grade) are subject to the advice and consent of the U.S. Senate. After a fiscal year 2025 statutory promotion selection board convened by the Secretary of the Navy selected me for promotion to the grade of Captain (pay grade O6), the President of the United States then nominated me for appointment to that next higher grade in May of 2024. Following the recommendation of the Senate Armed Services Committee, the full Senate confirmed my appointment to the grade of Captain by voice vote in June of 2024. In accordance with the Navy's fiscal year 2025 active-duty officer phasing plan, the tender of my appointment to me is projected to be on September 1, 2025. Pursuant to Navy policy, a Navy officer must decline an appointment to Captain if she will retire before she can complete three years time-in-grade. As a consequence of this policy, I will not be able to accept my appointment to the grade of Captain, unless I am able to serve as a Captain from September 1, 2025 to, at least, September 1, 2028.

9. My appointment to the grade of Captain comes with a significant pay increase, as well as a greater housing allowance, more substantial retirement pay, and other benefits. I desire to accept my appointment on September 1, 2025 and I desire to complete, at least, three years of active-duty service in the grade of Captain in the Navy. I have no desire to retire

early (or even to retire on October 1, 2025, which is the first date I am legally eligible for regular retirement with 20 years of active-duty service as a commissioned officer.) Being a Navy JAG was, and is, the only job I have ever wanted; it is also the only job I have had since 2004. Becoming a Navy JAG Corps Captain has been my singular career goal since I first had the idea to become a Navy JAG in my junior year of college.

10. During my naval service, I have been awarded five Meritorious Service Medals, one Joint Service Commendation Medal, two Navy and Marine Corps Commendation Medals, and one Navy and Marine Corps Achievement Medal.

## SERVICE AS A TRANSGENDER SERVICE MEMBER

11. In July of 2024, one of my military medical providers diagnosed me with gender dysphoria. In accordance with my duties as a naval officer, I immediately reported this medical diagnosis to my Commanding Officer and simultaneously sought out medical treatment for the diagnosis through the military medical system. In other words, I treated this medical diagnosis like every other medical diagnosis I have received since I commissioned as an officer in the naval service in May of 2004. Then, in November of 2024, I began gender transition medical treatment upon receipt of my Naval Medical Forces Atlantic Transgender Care Team-developed-and-approved gender transition medical treatment plan and my Commanding Officer's endorsement of that plan.

12. In accordance with the recommendations of my military primary care manager and defense contractor psychologist, I began to socially transition while off-duty in August of 2024. Following the approval of the Deputy Judge Advocate General of the Navy and the Chief of Naval Personnel (and in accordance with their guidance), I began socially transitioning on duty in November of 2024.

13. On February 12, 2025, my military primary care manager, defense contractor psychologist and defense health insurance-approved-and-funded civilian endocrinologist opined as a medical care team that I am stable in my female gender. They also determined that my request to change my gender marker in the Defense Enrollment Eligibility Report System (DEERS) was medically advisable. On February 13, 2025, my Commanding Officer determined that I met the established Department of Defense, Department of the Navy, U.S. Navy, and Navy Personnel Command criteria for a gender marker change and so, concurred with my request. On February 14, 2025, Navy Personnel Command approved my gender marker change request and updated that marker (now labeled "sex") in the Navy Standard Integrated Personnel System. My gender (now labeled "sex") marker in DEERS is female.

14. I serve in the U.S. Navy as a woman. I meet all standards applicable to women serving in the Navy. I adhere to grooming and uniform standards for women, use women's changing and restroom facilities, and meet women's physical fitness standards. Seniors, subordinates, and peers refer to me as a woman, including the use of honorifics such as "Ma'am."

15. It is not possible for me to serve in the Navy as a man, which I am not. I am a woman, look like a woman, follow women's grooming standards, wear women's uniforms, use women's facilities, and meet women's physical fitness standards, and I have done so since my transition without incident. My being a woman has not caused any incident at all involving pronouns, honorifics, facilities, grooming, uniforms, fitness standards, etc. with any service member or civilian employee or government contractor, or with my command, my corps, our client (i.e., the U.S. Navy) and its agents, or their missions, functions and tasks. It would be extraordinarily disruptive for me to adhere to men's grooming standards, wear uniforms that are designed to fit men, use men's restrooms and showers, sleep in men's berthing units, or otherwise access facilities that have been sex-segregated for men. If others were required to refer to me as a man or address me as "Sir," it would cause confusion and disruption, negatively impacting my and my co-workers' ability to effectively perform the duties of our jobs.

16. I am unable to demonstrate that I have never attempted to transition to any sex other than my birth sex because I have undergone a legal, social, and medical gender transition in the naval service. As stated above, my military medical care team's opinion is that I am stable in my female gender. Moreover, as also stated above, I am unable to adhere to any Navy standards associated with men, since I am a woman. If I cannot serve as a woman in the Navy, I cannot serve at all.

17. The Office of the Judge Advocate General (OJAG), my command, is overwhelmingly supportive of me. However, OJAG should not need to do any more for me than they do for any other service member under the Judge Advocate General's command. Because OJAG knows me and the value I bring to the Navy JAG Corps, its service members, and to our client and its agents, OJAG senior leadership has worked hard to keep me on active duty. OJAG should not have to work against the EO to do so. My being transgender has never prevented me from serving my Country, my client and its agents, or the Sailors, Marines, Coast Guardsmen, and civilian employees that the Navy entrusted to my command, from keeping my oath to support and protect our Constitution against all enemies, foreign and domestic, or from discharging any of my military duties as lawfully ordered by my superiors.

18. Since the EO was signed, a February 20, 2025, military dermatology appointment that was part of my medical treatment plan was cancelled. The military medical provider I was to see stated that, while it was not her decision, she had been informed a pause was being placed on that part of my gender transition medical treatment. On March 3, 2025, my military speech pathologist-provided vocal therapy that was part of my medical treatment plan was also cancelled. That military medical provider stated to me that her superiors ordered her to cease providing gender-affirming care. My Naval Medical Forces Atlantic Transgender Care Team-developed-and-approved and Commanding Officer-endorsed medical treatment plan is, otherwise, paused.

19. Because my September 1, 2025, acceptance of my Senate-confirmed appointment to the grade of Captain in the Navy is contingent upon my ability to serve until September 1, 2028, the EO not only prevents me from continuing my current service, but it also denies me a career-making promotion to Captain, the capstone grade in the JAG Corps, toward

which I have been striving for nearly 25 years. And, because I will only become eligible for full retirement benefits in the grade of Captain once I complete 23 years of active-duty service (to include 3 year of active-duty service in the grade of Captain), if I am forced to retire or involuntarily separated because of the EO before September 1, 2028, I will be denied retirement benefits in the grade of Captain for the rest of my life.

20. In addition, I use my salary and housing allowance to support my military spouse of 20+ years and our two children. In particular, my housing allowance permits our children to remain in the Rhode Island public school system we chose for them. If I lose these benefits, it will place enormous financial strain on my family and educational strain on my children.

21. By signing the EO, the President, who is also my Commander-in-Chief, has used his platform to say that I am a dishonorable, dishonest and undisciplined person, who lacks humility and integrity, and disrupts the readiness and cohesion of my workplace and co-workers. First, this statement inequitably damages my reputation for honor, honesty, discipline, humility, integrity, leadership, and merit, which I have painstakingly built over my nearly 20 years of naval service. Second, it inequitably stigmatizes me in a way that interferes with my duties. I cannot effectively provide legal advice to my client and its agents, if those agents do not trust me and/or believe I have low moral character. Nor can I effectively direct Navy JAGC training, if those who I am tasked to train do not trust me and/or believe that I have low moral character. Third, my Virginia law license is contingent upon me being a person of honest demeanor and good moral character—trustworthy, diligent, and reliable. Having my reputation damaged without basis or cause by my senior-most commander interferes directly and inequitably with my maintenance of a license to practice my chosen profession of law. Further, it is a condition of my employment with the Navy JAG Corps that I remain a state-licensed attorney "in good standing" with my state licensing authority; with the force of U.S. Presidential authority, the EO has publicly and inequitably called my "in good standing" status with the Virginia State Bar into question.

22. Serving in the U.S. Navy JAG Corps has been my life, career, and passion for nearly twenty years. I have proven over and over again that I can meet the standards for naval service that are applied to me. I do not want to lose, nor do I deserve to lose, the only career I have ever wanted, the achievement of the career goal that I have been pursuing for almost 25 years, or my and my three military dependents' way of life because I am transgender.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

I declare under penalty of perjury that the foregoing is true and correct.

Date: March 03, 2025

Michelle Bloomrose