IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NICOLAS TALBOTT *et al.*, ) <br> ) <br>    Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES OF AMERICA *et al.*, ) <br> ) <br>    Defendants. ) <br> ) | Civil Action No. 1:25-cv-00240 |

**SECOND SUPPLEMENTAL DECLARATION OF ALEX WAGNER**

I, Alex Wagner, declare as follows:

1. According to the February 26, 2025, policy providing additional guidance on implementing the transgender military ban announced by President Trump, transgender service members will face dismissal though administrative separation.

2. Consistent with the purpose and policy of the Order, which is to bar transgender people from military service, the "waiver" in Section 4.3( c) of the Implementing Guidance creates barriers that make it impossible for a transgender person to qualify by excluding anyone who has transitioned or who cannot demonstrate three years of serving in their birth sex without clinically significant distress.

3. The " waiver" for accession in 4.1(c) also fails to provide transgender applicants with any avenue for service because it similarly requires that an individual must serve in their birth sex—i.e., must suppress or deny their transgender identity.

4. In my experience, dismissal through administrative separation is typically used for misconduct or failing to meet standards, not for treatable medical conditions where the service member meets the requirements for service, including both job performance and fitness standards.

1

5.     I am not aware of administrative separation ever being used to separate service members with a medical condition which can be successfully managed via treatment, and moreover where, when treated, the medical condition does not interfere with a member's ability to deploy and meet standards.

6.     Normally, when a service member has a medical condition that would limit their ability to serve or deploy, they go through a medical review, not administrative separation.

7.     My understanding is that administrative separation is most often used as disciplinary procedure to effect eventual military discharge. The ordinary path for evaluating impacts from medical conditions is the Disability Evaluation Service (DES) with administrative separation largely reserved for misconduct (including drug abuse) or repeated failure to meet standards, given the significant financial investment the military has already made in the member.

8.     In addition, based on my experience, individual or aggregated costs associated with medication or medical procedures is not a justification for administrative separation. Transgender service members constitute a small fraction of military personnel, and their health care costs represent a de minimis amount of overall health care spending. In fact, non-transgender service members may be prescribed the same medications transgender service members need for gender transition. There is no reason for this group to bear the burden of cost cutting measures when other service members have similar medical needs.

9.     I am aware of congressional testimony that coverage for Viagra for service members in 2023 accounted for $41M of the Department of Defense's budget. These expenditures are important investments and just one of many examples of the full spectrum health care that represents a benefit of service necessary to maintaining an all-volunteer force. I raise this only to note that the relative costs associated with providing essential health care for transgender troops

2

represents a miniscule part of the defense budget for the years they have been permitted to serve.

10. The rushed and haphazard manner in which this policy has been issued and implemented is highly unusual. Ordinarily, the reversal of an existing policy—especially one adopted after careful study and review—would take place only in response to significant, documented problems with existing policy, after careful consideration and review including an explanation of what led to the problematic outcomes, and would be rolled out in a careful, orderly fashion that provided commanders and members clear guidance.

11. The process leading to the Order and Implementing Guidance has taken a very different and, in my experience, highly unusual course. The decision to target and purge transgender troops was not based on any documented problem. It was not based on a careful study and review. It has been rolled out on an extremely expedited timeline that puts the affected service members under enormous pressure to make life-altering decisions without adequate time to seek counsel or reflect. It comes with no guidance on how units should adapt, reconfigure, or adjust to the loss of a teammate performing an important role.

12. The issuance of a series of vague and in some cases conflicting directives undermines confidence in civilian leadership.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 3, 2025

Alex Wagner

4