# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NICOLAS TALBOTT *et al.*, | ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) Civil Action No. 1:25-cv-00240 |
| UNITED STATES OF AMERICA *et al.*, | ) ) ) |
| Defendants. | ) ) |

## SECOND SUPPLEMENTAL DECLARATION OF GILBERT CISNEROS, JR.

I, Gilbert Cisneros, Jr., declare as follows:

1. I have reviewed the February 26 memorandum providing additional guidance on implementing the transgender military ban issued by President Trump.

2. The procedures set forth in the February 26 memorandum are highly unusual. They describe a process of identifying transgender service members for separation and putting people through administrative separation proceedings even though they are meeting standards and performing their duties.

3. This is unusual and not ordinary. Transgender service members have been serving with distinction and doing their job; there is no appropriate or fair administrative reason identified for separating transgender service members who meet standards that relates to military interests.

4. Administrative separation is reserved typically for circumstances where someone is violating standards of conduct or failing to meet military performance standards. In rare circumstances it has been used for force reductions. It has never, in my experience, been used to purge the military of service members performing their duties honorably and meeting standards.

5. The ordinary path for addressing issues relating to medical issues is the Disability

1

Evaluation System (DES). The DES ensures that a service member who has committed their career to service receives an individualized evaluation of how a person's medical condition impacts their deployability and service options.

6. The February 26 memorandum is not a regulation of service members because of a medical condition. If that were the case, resorting to the DES would be the appropriate procedure.

7. The DES ensures that people's individual circumstances are assessed. It also allows individuals subject to evaluation to present medical support for their continued service and to ensure that they have an opportunity to rebut any medical evidence being used to change their military status. It is a fair and individualized process.

8. Administrative separation will not afford transgender service members the process that allows them to rebut the conditions established for their separation based on their medical needs. It is a fast-track process being used to separate transgender people as a group for being transgender.

9. The February 26 memo is clear that anyone who is transgender, who has transitioned or will transition, or even who has "symptoms" of gender dysphoria will face separation. That will be true even though people subjected to the process are meeting standards.

10. That is a violation of the trust and commitment that the military makes to service members and that service members make in committing to service.

11. I have reviewed responses provided to this Court about cost justifications for excluding transgender people from service. I reject that costs justify excluding transgender people from service.

12. In my role as undersecretary, cost was never identified as an issue of concern relating to providing medical care for transgender service members. If it was an issue, it would

have been brought to my attention.

13.   Many service members receive medical care for far more common medical conditions, at a far greater cost and with a significant impact on the military budget.

14.   To my knowledge and based on my experience, medical care for transgender service members is miniscule relative to the military budget. There is no reason transgender people should bear the burden of cost concerns for the entire military.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 3, 2025

_____
Gilbert Cisneros, Jr.