# EXHIBIT C



# DoD Instruction 1332.18

## Disability Evaluation System

---

**Originating Component:**     Office of the Under Secretary of Defense for Personnel and Readiness

**Effective:**     November 10, 2022

**Releasability:**     Cleared for public release.  Available on the Directives Division Website at https://www.esd.whs.mil/DD/.

**Reissues and Cancels:**     DoD Instruction 1332.18, "Disability Evaluation System (DES)," August 5, 2014, as amended

**Incorporates and Cancels:**     Directive-Type Memorandum, 18-004, "Revised Timeliness Goals for the Integrated Disability Evaluation System (IDES)," July 30, 2018, as amended

Directive-Type Memorandum, 20-001, "Policy Revisions for the Disability Evaluation System (DES)," February 12, 2020, as amended

**Approved by:**     Gilbert R. Cisneros, Jr., Under Secretary of Defense for Personnel and Readiness

---

**Purpose:**  In accordance with the authority in DoD Directive (DoDD) 5124.02, this issuance establishes policy, assigns responsibilities, and prescribes procedures for:

• Referral, evaluation, return to duty, separation, or retirement of Service members for disability in accordance with Title 10, United States Code (U.S.C.).

• Related determinations pursuant to Sections 6303, 8332, and 8411 of Title 5, U.S.C.; Section 104 of Title 26, U.S.C.; Sections 303a and 373 of Title 37, U.S.C.; Section 2082 of Title 50, U.S.C.; Sections 3.310(b) and 3.321(b), Part 4, and Part 14 of Title 38, Code of Federal Regulations (CFR).

# TABLE OF CONTENTS

SECTION 1: GENERAL ISSUANCE INFORMATION ......................................................... 6
    1.1.  Applicability. ............................................................................................................ 6
    1.2.  Policy. ....................................................................................................................... 6
SECTION 2: RESPONSIBILITIES .................................................................................... 9
    2.1.  Assistant Secretary of Defense for Health Affairs (ASD(HA)). ............................ 9
    2.2.  Assistant Secretary of Defense for Manpower and Reserve Affairs (ASD(M&RA)). ..... 9
    2.3.  Deputy Assistant Secretary of Defense for Health Services Policy and Oversight
        (DASD(HSP&O)). .................................................................................................... 9
    2.4.  Director, DHA. ....................................................................................................... 11
    2.5.  General Counsel of the Department of Defense. .................................................... 11
    2.6.  Secretaries of the Military Departments. ............................................................... 11
SECTION 3: OPERATIONAL STANDARDS OF THE DES .................................................. 14
    3.1.  DES Process Overview. ......................................................................................... 14
    3.2.  MEB. ...................................................................................................................... 15
        a.  Purpose. ............................................................................................................ 15
        b.  Composition. ..................................................................................................... 15
        c.  Resourcing. ....................................................................................................... 15
        d.  Referral to PEB. ................................................................................................ 16
        e.  Service Member Medical Evaluations. ............................................................. 16
        f.  Content. ............................................................................................................. 17
        g.  Competency. ..................................................................................................... 17
        h.  Medical Documentation for RC Service Members with Non-Duty-Related Conditions.
            ..................................................................................................................... 17
        i.  Non-Medical Documentation. .......................................................................... 18
    3.3.  PEB. ....................................................................................................................... 18
        a.  Purpose. ............................................................................................................ 18
        b.  Informal Physical Evaluation Board (IPEB). ................................................... 18
        c.  FPEB. ................................................................................................................ 19
        d.  Appeal of FPEB Determination of Fitness ....................................................... 20
        e.  Resourcing. ....................................................................................................... 21
        f.  Record of Proceedings. ..................................................................................... 22
        g.  Quality Assurance. ........................................................................................... 23
    3.4.  Counseling. ............................................................................................................ 23
        a.  Purpose. ............................................................................................................ 23
        b.  MDB. ................................................................................................................ 23
        c.  Non-MDB Requirements. .................................................................................. 23
        d.  Service Member Competency. ........................................................................... 23
        e.  Pre-separation Counseling. ............................................................................... 24
    3.5.  Case Management. ................................................................................................. 24
    3.6.  Final Disposition. ................................................................................................... 24
    3.7.  Administrative Decisions. ...................................................................................... 24
    3.8.  Training and Education. ......................................................................................... 25

a. Assignment of Personnel to the DES. ................................................................. 25
b. Standardized DES Training. ............................................................................... 25
3.9. Disability Case Management Continuum. .............................................................. 26
a. PEBLO ............................................................................................................... 26
b. MSC. ................................................................................................................... 27
3.10. Facility Resources. .................................................................................................. 27

Section 4:  Provision of Legal Counsel in the DES .................................................... 28
4.1. Requirements. ........................................................................................................... 28
4.2. Legal Advice and Representation. ........................................................................... 28
4.3. Access to Documentation. ........................................................................................ 29
4.4. Service Member Appeals and Hearings. ................................................................. 29
a. FPEB. .................................................................................................................. 29
b. FPEB Appeal. ..................................................................................................... 30
4.5. Legal Counsel in Advance of FPEB and FPEB Appeal. ....................................... 30
4.6. Delay for Good Cause. ............................................................................................. 30
4.7. Qualifications and Training of Legal Counsel. ...................................................... 30

Section 5:  DES Referral ................................................................................................... 32
5.1. General. ...................................................................................................................... 32
5.2. Criteria for Referral. ................................................................................................ 32
5.3. Eligibility for Referral. ............................................................................................ 32
a. Duty-Related Determinations. .......................................................................... 32
b. Non-Duty-Related Determinations. .................................................................. 33
5.4. Ineligibility for Referral. ......................................................................................... 33
5.5. Service Members with Medical Waivers. ............................................................... 34
5.6. Waiver of DES Referral or PEB Evaluation. ........................................................ 35
5.7. Prohibition from Waiving Disability Evaluation. ................................................. 35
5.8. Referral Implications. .............................................................................................. 35

Section 6:  Standards for Determining Unfitness Due to Disability or Medical
Disqualification ................................................................................................................... 36
6.1. Uniformity of Standards. ......................................................................................... 36
6.2. General Criteria for making Unfitness Determinations. ..................................... 36
6.3. Relevant Evidence. ................................................................................................... 36
a. Referral Following Illness or Injury. ............................................................... 36
b. Referral for Chronic Condition. ....................................................................... 36
c. Cause-and-effect Relationship. ......................................................................... 37
6.4. Reasonable Performance of Duties. ........................................................................ 37
a. Considerations. ................................................................................................... 37
b. General, Flag, and Medical Officers. ............................................................... 37
c. Service Members on Permanent Limited Duty. ............................................... 38
d. Combined Effect. ................................................................................................ 38
6.5. Presumption of Fitness. ........................................................................................... 38
a. Presumptive Period. ........................................................................................... 38
b. Overcoming the Presumption of Fitness. ......................................................... 39
c. When The Presumption of Fitness Does Not Apply. ....................................... 39
6.6. Evidentiary Standards for Determining Unfitness Because of Disability. .......... 40

a. Objective Evidence. ................................................................................................. 40
b. Preponderance of Evidence. ..................................................................................... 40
6.7. Unfit Determinations. .................................................................................................. 40
Section 7:  Standards for Determining Compensable Disabilities .................................... 41
7.1. Disability Compensation Criteria Overview. ............................................................. 41
7.2. Disability Retirement Criteria for Regular Component Members and Members on
Active Duty for more than 30 Days. ........................................................................... 41
7.3. Disability Retirement Criteria for Members on Active Duty for 30 Days or Fewer, on
IDT, Funeral Honors Duty, or Training Pursuant to Section 1204 of Title 10, U.S.C. ..... 42
7.4. Disability Separation Criteria for Regular Component Members and Members on Active
Duty for More Than 30 Days. ..................................................................................... 43
7.5. Disability Separation Criteria for Members on Active Duty for 30 Days or Less, on IDT,
Funeral Honors Duty, or Training Pursuant to Section 1206 of Title 10, U.S.C. ............. 44
7.6. LOD Requirements. ..................................................................................................... 45
a. Relationship of LOD Findings to DES Determinations. ............................................ 45
b. Referral Requirement. ............................................................................................... 45
c. Presumptive Determinations. .................................................................................... 45
d. Required Determinations. .......................................................................................... 45
7.7. Evidentiary Standards for Determining Compensibility of Unfitting Conditions. ......... 46
a. Misconduct and Negligence. ..................................................................................... 46
b. Presumption of Sound Condition for Members on Continuous Orders to Active Duty
Specifying a Period of More Than 30 Days. ............................................................. 46
c. Presumption of Incurrence or Aggravation in the LOD for Members on Continuous
Orders to Active Duty Specifying a Period of More Than 30 Days. ........................... 47
d. RC Service Members Serving on Orders of 30 Days or Fewer. ................................. 48
e. Prior Service Condition. ............................................................................................ 48
f. Medical Waivers. ....................................................................................................... 48
g. Treatment of Pre-existing Conditions. ...................................................................... 48
h. Elective Surgery or Treatment. ................................................................................. 49
i. Rating Disabilities. .................................................................................................... 49
Section 8:  VASRD ............................................................................................................ 50
8.1. General. ........................................................................................................................ 50
8.2. Behavioral Disorders Due to Traumatic Stress. ......................................................... 51
8.3. Disability Rating Based on Unemployability. ............................................................. 51
8.4. Extra-Schedular Ratings. ............................................................................................ 51
Section 9:  TDRL Management ......................................................................................... 52
9.1. Initial Placement on the TDRL. .................................................................................. 52
9.2. TDRL Re-Evaluation. .................................................................................................. 52
a. Initiating the TDRL Re-evaluation Process. ............................................................. 52
b. Disability Reexaminations. ........................................................................................ 53
c. PEB Re-adjudication. ................................................................................................ 53
d. PEB Disposition. ....................................................................................................... 53
e. Cases on VA Appeal. ................................................................................................. 54
f. Administrative Finality. ............................................................................................. 54
g. Required Determinations. .......................................................................................... 54

h.  Service Member Medical Records. ....................................................................... 55
i.  Compensability of New Diagnoses. .................................................................... 55
j.  Current Physical Examination. ............................................................................ 55
k.  Refusal or Failure to Report. .............................................................................. 55
l.  Priority. ............................................................................................................... 55
m.  Reports from Civilian Providers. ....................................................................... 55
SECTION 10:  ADMINISTRATIVE DETERMINATIONS ..................................................... 56
10.1.  Administrative Determinations for Purposes of Employment Under Federal Civil
Service. .................................................................................................................... 56
10.2.  Determination for Federal Tax Benefits. ............................................................ 57
a.  Status. .................................................................................................................. 57
b.  Combat Related. .................................................................................................. 57
c.  Non-Taxable Compensation. ............................................................................... 58
10.3.  Recoupment of Benefits. ..................................................................................... 58
10.4.  Determination for RC Service Members who are DUAL STATUS Technicians and
Determined Unfit by the DES. ................................................................................ 58
SECTION 11:  FINAL DISPOSITION ................................................................................ 59
11.1.  Final Decision Authority ...................................................................................... 59
a.  Secretary of Defense. .......................................................................................... 59
b.  USD(P&R). .......................................................................................................... 59
c.  Secretaries of the Military Departments. ............................................................ 59
11.2.  General rules regarding Disposition. ................................................................... 59
a.  Retirement. .......................................................................................................... 59
b.  Removal from the TDRL. .................................................................................... 59
11.3.  Continuance of Unfit Service Members on Active Duty or in the Reserves. ............... 61
11.4.  Transition Assistance Program Eligibility. .......................................................... 61
11.5.  Dispositions for Unfit Service Members. ............................................................. 61
a.  Permanent Disability Retirement. ....................................................................... 61
b.  Placement on the TDRL. ..................................................................................... 61
c.  Separation with Disability Severance Pay. ......................................................... 62
d.  Separation without Entitlement to Benefits. ....................................................... 63
e.  Discharge Pursuant to Other Than Chapter 61 of Title 10, U.S.C. .................... 63
f.  Revert with Disability Benefits. .......................................................................... 63
GLOSSARY ...................................................................................................................... 64
G.1.  Acronyms. ............................................................................................................ 64
G.2.  Definitions. ........................................................................................................... 65
REFERENCES ................................................................................................................... 70

# SECTION 1:  GENERAL ISSUANCE INFORMATION

## 1.1.  APPLICABILITY.

This issuance applies to OSD, Secretaries of the Military Departments, the Office of the Chairman of the Joint Chiefs of Staff and the Joint Staff, the Combatant Commands, the Office of Inspector General of the Department of Defense, the Defense Agencies, the DoD Field Activities, and all other organizational entities within the DoD.

## 1.2.  POLICY.

a.  The Disability Evaluation System (DES) is the mechanism for determining fitness for duty because of disability, and whether a Service member (including initial entry trainees, Military Academy cadets, and midshipmen) found unfit for duty due to disability will be separated or retired.

b.  Service members will proceed through one of the DES processes, the Legacy Disability Evaluation System (LDES) or Integrated Disability Evaluation System (IDES).

c.  Service members will process through the IDES unless the Secretary of the Military Department concerned:

(1)  Approves a Service member's request to be enrolled in LDES;

(2)  Directs the Service member into LDES for a compelling and individualized reason; or

(3)  Directs the Service member into LDES after the Service member refuses to claim or submit a Department of Veterans Affairs (VA) disability claim for a potentially unfitting condition.

d.  In accordance with Title 10, U.S.C. and Part 4 of Title 38, CFR, the standards for all determinations related to disability evaluation will be consistently applied to all Service members, both Active Component (AC) and Reserve Component (RC).  This includes Service members in active duty and non-active duty (NAD) status.

e.  Pursuant to Chapter 61 of Title 10, U.S.C., RC Service members who are in an NAD status, not on a call to active duty for more than 30 days, and are pending separation for non-duty-related medical conditions, may, with the consent of the Service member, receive a determination of fitness and whether the unfitting condition is duty related.

f.  Pursuant to Section 12301(h) of Title 10, U.S.C., RC Service members may, with the consent of the Service member, be ordered to active duty to receive authorized medical care or to be medically evaluated for disability or other purposes.

g.  The DoD and the VA should complete 80 percent of all active duty and NAD Service member cases in no more than 180 days from referral to the DES ending on the date of return to duty, retirement, or separation.  The calculation of processing time excludes any amount of administrative absences or accrued leave the Service member is authorized to take during transition, or any amount of time in deferment status.  When measuring time in this issuance, "days" are defined as "calendar days."

h.  In determining a Service member's disability rating, the Secretary of the Military Department concerned will consider all medical conditions, whether singularly, collectively, or through combined effect, that render the Service member unfit to perform the duties of their office, grade, rank, or rating.

i.  Service members who are pending permanent or temporary disability retirement and who are eligible for a length of service retirement at the time of their disability evaluation may elect to be retired for disability or for length of service.  However, when retirement for length of service is elected, the Service member's retirement date must occur within the time frame that their disability retirement is expected to occur.

j.  Before a Service member may be discharged or released from active duty because of a disability, they must elect whether to file a claim for compensation, pension, or hospitalization with the VA.  Such Service members may elect to file a claim or refuse to make such a claim.

(1)  If refusing to file a claim, the Service member will be requested to sign a statement that their right to make such a claim has been explained.

(2)  The Service member may refuse to sign such a statement and that decision will be documented in the VA electronic claims folder.

(3)  The Secretaries of the Military Departments may not deny a Service member who refuses to sign such a claim any rights within DES policy as noted in this issuance.

k.  RC Service members on active duty orders specifying a period of more than 30 days, who incur a potentially unfitting condition during that time will, with their consent, be kept on active duty for disability evaluation processing until final disposition by the Secretary of the Military Department concerned.  In accordance with DoD Instruction (DoDI) 1241.01, RC Service members may elect to be released from active duty before completing DES processing.  If the RC Service member elects to be released from active duty before completing DES processing:

(1)  The Secretary of the Military Department concerned will assign responsibility for completing the resolution of the condition(s) or completion of the DES to the Service member's appropriate command.

(2)  The Secretary concerned will provide a line of duty (LOD) determination to document the Service member's entitlement to medical and dental treatment comparable to that in Section 1074a of Title 10, U.S.C.

(3)  The Service member may receive legal counseling in accordance with the regulations of the Military Department concerned.

l.  The Secretaries of the Military Departments may authorize separation due to mere congenital or developmental defects not being compensable under the Department of Veterans Affairs Schedule for Rating Disabilities (VASRD) if defects, circumstances, or conditions interfere with assignment to, or performance of, duty.  The basis for separation will be appropriately documented following guidelines and criteria in accordance with DoDI 6040.42. These Service members will not be referred to the DES unless the defect was subject to super imposed disease or injury during military service, or other potentially unfitting conditions exist that may have been incurred or aggravated by military service.

m.  Each Military Department and the Defense Health Agency (DHA) will conduct quality assurance reviews to monitor and assess the accuracy and consistency of medical evaluation boards (MEBs) and physical evaluation boards (PEBs), as well as the proper performance of MEB, PEB, and PEB liaison officer (PEBLO) duties, conducted under their respective jurisdictions pursuant to Volume 2 of DoD Manual (DoDM) 1332.18.

n.  In accordance with Section 552a of Title 5, U.S.C.; Part 164 of Title 45, CFR; DoDIs 5400.11 and 5400.16; and Volume 2 of DoDM 5400.11, personally identifiable information collected, used, maintained, or disseminated in executing this issuance will be appropriately maintained and safeguarded to prevent its unauthorized access, use, disclosure, or loss.

# SECTION 2: RESPONSIBILITIES

## 2.1. ASSISTANT SECRETARY OF DEFENSE FOR HEALTH AFFAIRS (ASD(HA)).

Under the authority, direction, and control of the Under Secretary of Defense for Personnel and Readiness (USD(P&R)), the ASD(HA):

a. Oversees the Director, DHA, in executing programmatic and operational responsibilities, which includes supporting the DES through the Military Health System, within both military medical treatment facilities (MTF) and private sector facilities in accordance with Title 10, U.S.C., and applicable implementing policy and guidance.

b. Establishes the Disability Advisory Council (DAC) to advise and recommend improvements to the DES and designates its chair.

c. Monitors DES performance and recommends improvements in DES policy to the USD(P&R).

d. Determines DES funding requirements in coordination with the Secretaries of the Military Departments, and tracks DoD DES examination funding expenditures.

e. Directs the Secretaries of the Military Departments in operating DoD IDES stages concurrently with the VA's disability processes, as applicable.

## 2.2. ASSISTANT SECRETARY OF DEFENSE FOR MANPOWER AND RESERVE AFFAIRS (ASD(M&RA)).

Under the authority, direction, and control of the USD(P&R), the ASD(M&RA):

a. In coordination with the ASD(HA) and the Secretaries of the Military Departments, ensures that DES policies are applied for RC personnel consistent with those established for AC personnel and reflect the needs of RC Service members pursuant to Title 10, U.S.C.

b. Provides O-6 level or civilian-equivalent representation to the DAC with sufficient understanding of all DES components.

c. Reviews annual DES performance and recommends DES improvements to the ASD(HA) to ensure process efficiency and equity for RC Service members.

## 2.3. DEPUTY ASSISTANT SECRETARY OF DEFENSE FOR HEALTH SERVICES POLICY AND OVERSIGHT (DASD(HSP&O)).

Under the authority, direction, and control of the USD(P&R), through the ASD(HA), the DASD(HSP&O):

a.  In coordination with the ASD(M&RA) and the Secretaries of the Military Departments, oversees, assesses, and reports on DES performance and recommends changes in policy, procedure, or resources to improve DES performance to the ASD(HA).

b.  Monitors changes to military personnel, compensation statutes and DoD policy, and other pertinent authorities, to assess their impact on disability evaluation, RC medical disqualification, and related benefits.

c.  Reviews Military Departments' policies and procedures for disability evaluation that affect the uniformity of standards for separation or retirement for unfitness because of disability, or separation of RC Service members for medical disqualification, and suggests recommended changes to the ASD(HA).

d.  Develops quality assurance procedures to ensure that policies are fairly and consistently applied and reports the results of the Military Departments' DES quality control programs to the ASD(HA).

e.  Establishes reporting requirements for the Military Departments and advises DES stakeholders on the accurateness and completeness of DES performance and the Military Departments' compliance with this issuance.

(1)  No later than October 31 every 3 fiscal years, for the preceding 3-fiscal-year period, provides the Secretaries of the Military Departments with guidance for their respective inspector general for conducting the DES triennial review of their respective programs pursuant to Paragraph 2.6.(l).

(2)  Not later than July 1 each year, publishes the data requirements the Military Departments must include in the DES annual report.

(3)  Analyzes quarterly data submitted by the Military Departments and provides the DES annual report to the ASD(HA).

(4)  Analyzes monthly DES data to assess trends that might inform policy adjustments.

f.  Monitors changes to VA laws and regulations to assess their impact on DoD's application of the VASRD, in accordance with Section 8, to Service members determined unfit because of disability, and recommends timely guidance to the ASD(HA).

g.  Recommends guidance and performance monitoring necessary to implement this issuance, including performance metrics and areas of emphasis.

h.  In conjunction with the Secretaries of the Military Departments and the Director, DHA, develops program planning, allocation, and use of healthcare resources for activities within the DoD related to the DES.

i.  In coordination with the Military Departments and DHA information technology offices, ensures information technology support and access to programs used at the MTFs and other

related systems for medical record input and retrieval are available to each Military Department PEB.

j.  Provides grade O-6 or civilian equivalent representation with a sufficient understanding of the DES to the DAC.


## 2.4.  DIRECTOR, DHA.

Under the authority, direction, and control of the USD(P&R), through the ASD(HA), and in accordance with DoDD 5136.13, the Director, DHA:

a.  In coordination with the Secretaries of the Military Departments, establishes procedures to support the DES through the provision of MEBs and any other necessary clinical or health care services delivered in an MTF or through the TRICARE program.

b.  In coordination with the ASD(HA) and the Secretaries of the Military Departments, ensure an adequate supply of resources, including personnel, supplies, and available appointments, are maintained in all locations where DES examinations and MEBs are required.


## 2.5.  GENERAL COUNSEL OF THE DEPARTMENT OF DEFENSE.

In consultation with the general counsels and the judge advocates general of the Military Departments, the General Counsel of the Department of Defense provides policy guidance on legal matters relating to DES policy, issuances, proposed exceptions to policy, legislative proposals, and provides legal representation for the DAC, upon request.


## 2.6.  SECRETARIES OF THE MILITARY DEPARTMENTS.

The Secretaries of the Military Departments:

a.  Comply with Title 10, U.S.C.; Part 4 of Title 38, CFR; Volume 2 of DoDI 6130.03; and any implementing guidance in this issuance.

b.  Comply with the January 16, 2009 and June 16, 2010, memorandums of agreement between the DoD and the VA pertaining to the IDES.

c.  Manage the temporary disability retired list (TDRL) in accordance with Section 9.

d.  Staff and provide resources to meet DES timeliness goals, without reducing Service members' access to due process, in accordance with DES procedures in Volume 1 of DoDM 1332.18.

e.  Establish procedures to develop and implement standardized training programs, guidelines, and curricula for Military Department personnel who administer DES processes, including PEBLOs, non-medical case managers, and personnel assigned to the MEB, PEB, and appellate review authorities.

f.  In accordance with this issuance, establish procedures for Service members to appeal determinations for fitness in accordance with Section 1214 of Title 10, U.S.C., and Section 524 of Public Law 117-81 (also known as the "National Defense Authorization Act for Fiscal Year 2022").

g.  In coordination with the Director, DHA, establish and execute agreements to support the disability processing of Service members who receive medical care from an MTF staffed or supported by another Military Department.

h.  Establish procedures to ensure Service members who are hospitalized or receiving treatment at a VA or a non-U.S. Government facility are referred, processed, and counseled in a manner similar to their peers.

i.  Establish procedures to provide Service members a standardized multi-disciplinary briefing (MDB) that will at least explain each stage of the DES process and inform the Service member on their responsibilities during the DES process.

j.  In coordination with their respective judge advocates general, establish policy, training, and procedures for the provision of legal counsel to Service members in the DES.

k.  Establish a quality assurance program to:

(1)  Ensure policies and procedures established by this issuance are fairly and consistently implemented.

(2)  Establish procedures to ensure the accuracy and consistency of MEB and PEB decisions.

(3)  Establish procedures to monitor and sustain proper duty performance of MEBs, PEBs, and PEBLOs.

l.  Prepare and forward data submissions for the DES Annual Report to the DASD(HSP&O).

m.  Through their respective inspectors general, review compliance with the requirements in Section 3 every 3 fiscal years for the preceding 3-fiscal-year period.  Forward a copy of their final inspector general's compliance reports to the USD(P&R).

n.  Investigate matters of potential fraud pertaining to the DES and resolve as appropriate.

o.  Provide grade O-6 or civilian-equivalent representation with a sufficient understanding of the DES to the DAC.

p.  Comply with the privacy procedures outlined in Part 164 of Title 45, CFR; DoDIs 5400.11, 1000.30, and 6025.18; DoD 5400.11-R; and Volume 2 of DoDM 5400.11.

q.  Establish procedures to ensure that, with the Service member's consent, the Service member's address and contact information are securely transmitted to the department, agency, or

other appropriate veterans' affairs authority of the State in which the Service member intends to reside after retirement or separation.

r.  Establish procedures to provide, with the Service member's consent, notification of a Service member's hospitalization under their jurisdiction evacuated from a theater of combat and admitted to an MTF within the United States to the senators representing the State, and the Member, Delegate, or Resident Commissioner of the House of Representatives representing the district, that includes the Service member's home of record or a different location as provided by the Service member.

s.  Before demobilizing or separating an RC Service member who incurred or aggravated an injury or illness while in an active or inactive duty status pursuant to Chapter 61 of Title 10, United States Code, provide information to the Service member on:

(1)  The availability of care and assistance through military-affiliated or community support services.

(2)  The location of the support services, whether military-affiliated or community, closest to the Service member's permanent place of residence.

(3)  The method and necessity for obtaining an LOD determination regarding the injury or illness, including time limits for obtaining medical or incapacitation benefits.

t.  Develop defense health program resource requirements pertaining to the DES for submission to the ASD(HA) through the appropriate Military Health System governance process.

u.  In coordination with the Director, DHA, identify the appropriate military medical personnel to assign to each MTF to achieve the DES timeliness goals.

*DoDI 1332.18, November 10, 2022*

# SECTION 3: OPERATIONAL STANDARDS OF THE DES

## 3.1. DES PROCESS OVERVIEW.

a. The DES will consist of:

(1) Referral and MDB.

(2) Medical evaluation, including the MEB, impartial medical reviews, and rebuttal.

(3) Disability evaluation, including the PEB, counseling, case management, adjudication, and final disposition.

b. The Secretaries of the Military Departments will use the IDES process for all newly initiated cases referred under the duty-related process.

c. The Secretaries of the Military Departments may enroll a Service member into the LDES if:

(1) Requested by a Service member;

(2) There is a compelling and individualized reason; or

(3) A Service member refuses to claim or submit a VA disability claim for a potentially unfitting condition.

d. Before the Secretary concerned enrolls a Service member into the LDES, the Service member or their personal representative must acknowledge, in writing, that they received briefings on:

(1) The procedural differences between the LDES and the IDES from a representative of their respective Military Department's legal counsel.

(2) The VA Benefits Delivery at Discharge Program.

e. LDES and IDES disability examinations will include a general medical examination and any other applicable medical examinations that meet VA compensation and pension examination standards.

(1) The LDES and IDES examinations will be sufficient to:

(a) Assess the Service member's referred condition(s).

(b) Assist the VA in ratings determinations.

(c) Assist Military Departments to determine if the medical conditions, singularly, collectively, or through combined effect, prevent the Service member from performing the duties of their office, grade, rank, or rating.

(2)  IDES examinations must also be sufficient to assess the Service member's claimed condition(s).

## 3.2. MEB.

### a. Purpose.

The Director, DHA, is responsible for provision of MEBs in support of the DES process.  An MEB will:

(1)  Review all available medical evidence, including examinations completed as part of DES processing, and document whether the Service member has medical conditions that either singularly, collectively, or through combined effect, may prevent them from reasonably performing the duties of their office, grade, rank, or rating.

(2)  Document the medical status and duty limitations of Service members who meet the referral eligibility criteria in Paragraph 5.3.

### b. Composition.

(1)  The MEB will be comprised of at least two members.  At least one member will be a physician (DoD civilian employee or military).  No board member will be influenced by another member on their determination.  At least one medical professional must have knowledge of application of the standards pertaining to medical retention standards, the disposition of patients, and disability separation processing.

(2)  In exceptional circumstances, when it is impracticable to have two or more physicians, the other members may be either physician assistants or nurse practitioners (DoD civilian employee or military member).

(3)  Any MEB listing a behavioral health diagnosis must contain a thorough behavioral health evaluation and include the signature of a psychologist with a doctorate in psychology or a board-certified or board-eligible psychiatrist.

### c. Resourcing.

When an MTF fails to meet the MEB stage goal for 3 consecutive months, the Director, DHA, in coordination with the Secretaries of the Military Departments, will:

(1)  Allocate additional personnel to the MEB stage process at the underperforming MTF.

(2)  Inform the ASD(HA) by memorandum when an MTF receives additional MEB personnel.  The memorandum will contain information regarding:

(a)  The MTF's performance metrics, including the number of days the MTF exceeded the MEB stage goal for the previous 3 months.

(b)  The number of additional personnel allocated to the MTF.

(c)  Additional steps the MTF will take to meet the MEB stage goal.

(d)  The timeline within which the MTF will meet the MEB stage goal.

### d.  Referral to PEB.

If the MEB determines that the Service member has medical conditions that, either singularly, collectively or through combined effect, may prevent them from reasonably performing the duties of their office, grade, rank, or rating, the MEB will refer the case to the PEB.

### e.  Service Member Medical Evaluations.

#### (1)  Medical Evaluations.

An MEB will evaluate the medical status and duty limitations of:

(a)  Service members referred into the DES who incurred or aggravated an illness or injury while under orders to active duty specifying a period of more than 30 days.

(b)  RC Service members, not on active duty and referred for a duty-related condition.

#### (2)  MEB Requirements.

An MEB will not be required:

(a)  For Service members temporarily retired for disabilities who are due for a periodic physical medical examination.

(b)  When an RC Service member, who is not on active duty, is referred for conditions unrelated to military status and performance of duty.

#### (3)  MEB Prerequisites.

A Service member will not be required to sign a statement relating to the origin, incurrence, or aggravation of a disease or injury.  Any statement resulting from a requirement to sign such a statement, which is against the Service member's interests and is signed by the Service member, will be invalid.

#### (4)  Impartial Medical Reviews.

In accordance with Section 1612 of Public Law 110-181, the Director, DHA, upon the Service member's request, will assign an impartial physician or other appropriate health care professional who is independent of the MEB to:

(a)  Serve as an independent source of review of the MEB findings and recommendations.

(b)  Advise and counsel the Service member regarding the findings and recommendations of the MEB.

(c)  Advise the Service member on whether the MEB findings adequately reflect the complete spectrum of their injuries and illnesses.

(5)  Review Report.

After the physician or health care professional has counseled the Service member and the member has received the impartial medical review report, they will have an opportunity to consult with legal counsel during the election period to either concur or submit a written rebuttal to the MEB's findings.

(6)  MEB Rebuttal.

Service members referred into the DES will, upon request, be permitted at least one rebuttal of the MEB findings.

**f.  Content.**

(1)  Medical information used in the DES must be sufficiently recent to substantiate the existence or severity of potentially unfitting conditions.  The Secretaries of the Military Departments may not request additional medical exams or diagnostic tests if more current information would not substantially affect identification of the existence or severity of potentially unfitting conditions.

(2)  MEBs will confirm the medical diagnosis for and document the full clinical information, including history, treatment status, and potential for recovery of the Service member's medical conditions that, singularly, collectively, or through combined effect, may prevent the Service member from performing the duties of their office, grade, rank, or rating; and state whether each condition is cause for referral to a PEB.

**g.  Competency.**

When the Service member's capability of managing their affairs is unclear, the MEB or TDRL packet will include the results of a competency board conducted in accordance with Section 602 of Title 37, U.S.C., and Volume 7B, Chapter 16 of the DoD 7000.14-R.  This issuance does not prescribe processes or requirements related to competency boards; refer to applicable laws and policies regarding competency boards.

**h.  Medical Documentation for RC Service Members with Non-Duty-Related Conditions.**

The medical documentation for RC Service members with non-duty-related conditions referred for disability evaluation must provide a clear and adequate written description of the medical condition(s) that, singularly, collectively, or through combined effect, may prevent the RC Service member from performing the duties of their office, grade, rank, or rating.

### i. Non-Medical Documentation.

If the MEB refers a case to the PEB, the MTF will forward the case's non-medical documentation to the PEB, including:

(1) The LOD determinations, when required by Paragraph 7.6.

(2) Except in cases in which the illness or injury is so severe that return to duty is not likely, a statement from the Service member's immediate commanding officer describing the impact of the member's medical condition on their ability to perform the duties of their office, grade, rank, or rating.

(3) An official document identifying the next of kin, court-appointed guardian, or trustee when a Service member is determined incompetent to manage their affairs, if applicable, in accordance with Section 602 of Title 37, U.S.C.

### 3.3. PEB.

### a. Purpose.

Pursuant to Chapter 61 of Title 10, U.S.C., PEBs determine the fitness of Service members with medical conditions that are, either singularly, collectively, or through combined effect, potentially unfitting and, for members determined unfit, determine their eligibility for compensation.

### b. Informal Physical Evaluation Board (IPEB).

### (1) Background.

The IPEB will review the case file to make initial findings and recommendations without the Service member present. The Service member may accept the findings, rebut the findings, request a formal physical evaluation board (FPEB) if found fit, or, if found unfit, demand a FPEB in accordance with Section 1214 of Title 10, U.S.C. If the Service member declines a FPEB, the PEBLO will document the Service member's declination.

### (2) Composition.

The IPEB will be comprised of at least two members, at field grade or civilian equivalent or higher; additionally, one military person at the grade of E-9 may be a board member for enlisted cases. In cases of a split opinion, a third voting member that meets the same qualification requirements will be assigned to provide the majority vote. No board member will be unduly influenced by another member on their determination. Contract personnel may not serve as IPEB adjudicators.

c. **FPEB.**

(1) Background.

(a)  In accordance with Section 1214 of Title 10, U.S.C., Service members are entitled to a full and fair hearing, upon request, before the Service member may be separated or retired for physical disability.

(b)  If the Secretary of the Military Department concerned unilaterally changes the IPEB findings or determinations of "fit" or "unfit" following a Service member's concurrence, the Service member may demand a FPEB to contest the changes.

(2) Composition.

(a)  The FPEB must be comprised of at least three members, at least one of whom will be military officers in accordance with Paragraph 3.3.c.(2)(b)(1).  DoD civilian employees may also be included as additional members.

(b)  Should a Service member demand, FPEB members cannot have participated in the adjudication process of the same case at the IPEB.

<u>1</u>.  The FPEB will consist of at least a board president who will be a military officer in the grade of O-5 or higher (or civilian equivalent); a physician (military or DoD civilian); and a line officer (or non-commissioned officer at the E-9 level for enlisted cases) familiar with duty assignments.  No board member will be unduly influenced by another member on their determination.

<u>2</u>.  The physician cannot:

<u>a</u>.  Be the Service member's physician.

<u>b</u>.  Have served on the Service member's MEB or Impartial Medical Reviewer.

<u>c</u>.  Have participated in a TDRL reexamination of the Service member.

<u>3</u>.  For RC Service members, the Secretaries of the Military Departments will ensure RC representation on the PEBs is consistent with Section 12643 of Title 10, U.S.C., and related policies.

<u>4</u>.  Contract personnel may not serve as FPEB adjudicators.

(3) Eligibility.

Service members who receive an unfit determination from the IPEB will be entitled to a FPEB hearing.

(4)  Issues.

At the FPEB, the Service member will be entitled to address issues pertaining to their fitness, the percentage of disability, degree or stability of disability, administrative determinations, a determination that their injury or disease was non-duty related, or that their injury or disease was combat-related or took place in a combat-zone.

(5)  Hearing Rights.

Service members will, at a minimum, have the right to:

(a)  Have their case considered by FPEB members, who were not voting members of their IPEB, if requested.

(b)  Appear themselves, through a personal representative, or by videoconference. Unless otherwise directed by the Secretary of the Military Department concerned, RC Service members referred only for non-duty-related conditions, are responsible for their personal travel and other expenses.

(c)  Be represented by government-appointed counsel provided by the Military Department concerned.  Service members may choose their own civilian counsel at no expense to the U.S. Government.  The PEB President will notify the Secretary of the Military Department concerned if the lack of government-appointed counsel affects timely PEB caseload adjudication.

(d)  Make a sworn or an unsworn statement.  A Service member will not be required to sign a statement relating to the origin, incurrence, or aggravation of a disease or injury.

(e)  Remain silent.  When the Service member exercises the right to remain silent, the member may not selectively respond, but must remain silent throughout the hearing.

(f)  Request witnesses and introduce depositions, documents, or other evidence, and to question all witnesses who testify at the hearing.  The FPEB president will determine whether witnesses are essential.  If the FPEB president determines witnesses are essential to the hearing, travel expenses and per diem may be reimbursed or paid in accordance with the Joint Travel Regulation.  Other people may attend formal hearings at no expense to the U.S. Government.

(g)  Access all records and evidence the PEB receives before, during, and after the formal hearing, unless such records are exempt from disclosure by law, which were relied upon by the FPEB in making their recommendation.

**d.  Appeal of FPEB Determination of Fitness**

Upon the Service member's decision to appeal the FPEB fitness determination, the Secretary of the Military Department concerned will ensure their respective Military Department has procedures to:

(1)  Inform Service members that they are entitled to appeal their FPEB fitness for duty determinations to the official designated by the Secretary of the Military Department concerned

as the FPEB appellate authority. A Service member may submit the appeal in writing or, if requested by the Service member, a hearing will be conducted and the Service member will have the option to be represented at the hearing by legal counsel. The Service member will make election whether to present a FPEB appeal in a reasonable timeframe specified by Military Department regulations and consistent with other similar processes.

(2) Inform the Service member that, in lieu of a hearing, they may submit a written appeal explaining why they do not agree with the FPEB fitness determinations.

(3) Require the FPEB appellate authority to consider all records comprising the Service member's DES case file, including the Impartial Medical Review, if one was prepared; the IPEB and FPEB decisions; and any additional relevant documentation submitted by the Service member for consideration.

(a) Provide access to relevant records to the Service member and the appellate authority. However, if the Service member desires to have documentation considered by the appellate authority, not previously considered or available to the Military Department concerned, the Service member must provide such documentation in the time and manner prescribed by the Military Department concerned.

(b) Identify for the Service member what documents within the Military Department's custody were provided to the appellate authority for consideration in rendering a decision.

(4) Inform the Service member that they are entitled, upon their request, to appeal a unilateral change to FPEB findings or determinations by the Military Department concerned following a Service member's concurrence to the FPEB findings or determinations.

(5) Provide Service members with additional levels of review within the Military Department concerned subsequent to the FPEB appeal process outlined in this section, if appropriate.

### e. Resourcing.

When a PEB fails to meet a PEB stage goal for 3 consecutive months, the Secretary of the Military Department concerned will:

(1) Allocate additional personnel to the applicable PEB stage process at the underperforming PEB. When increasing the staffing of an existing PEB or organizing an additional PEB, the Military Departments should coordinate with the judge advocate general concerned to ensure appropriate staffing levels for government legal counsel.

(2) Inform the ASD(HA), by memorandum, when a PEB receives additional personnel. The memorandum will contain information regarding:

(a) The PEB's performance metrics, including the number of days the PEB exceeded a PEB stage goal for the last 3 months.

(b)  The number of additional personnel allocated to the PEB.

(c)  Additional steps the PEB will take to meet the PEB stage goal.

(d)  The timeline within which the PEB will meet the PEB stage goal.

## f.  Record of Proceedings.

The Military Department concerned will provide the Service member with a record of the PEB's proceedings, including IPEB, and, if applicable, the FPEB and subsequent appeals of the FPEB fitness determination, in accordance with Section 1222 of Title 10, U.S.C.  The PEB record of proceedings must convey the PEB findings and rationale in an orderly and itemized fashion, with specific attention to each issue presented by the Service member regarding their case, and the basis for applying total or extra-schedular ratings or unemployability determinations, as applicable.

### (1)  Duty-related Determinations.

The PEB record of proceedings will at least document:

(a)  The PEB's determination whether the Service member is fit or unfit.

(b)  The code and percentage rating assigned an unfitting and compensable disability based on the VASRD.  The standards for determining compensable disabilities are specified in Section 7.

(c)  The reason(s) an unfitting condition is not compensable, including:

1.  The specific accepted medical principle, as stated in Section 7, for overcoming the presumption of sound condition and the presumption of service aggravation for all cases with a finding of preexisting condition without service aggravation.

2.  The accepted medical principle that an RC Service member performing inactive duty training (IDT), active duty training, or on active duty of 30 days or less, has a preexisting disability that was not permanently aggravated by service.

3.  The basis upon which a determination that a disability that was incurred in the LOD before September 24, 1996, and that was not permanently aggravated by service since September 23, 1996, was not the proximate result of military service.

(d)  The nature of the disability and the stability and permanency of the disability for Service members being placed on the TDRL or permanently retired.

(e)  Administrative determinations made in accordance with Section 8.

(f)  The record of all proceedings of the PEB evaluation, including the evidence used to overcome any applicable presumption listed in this issuance and any changes made by a subsequent reviewing authority, including a written explanation supporting each finding and

recommendation.  If applicable, the basis for applying or not applying total or extra-schedular ratings or unemployability determinations.

(2)  Non-Duty-Related Determinations.

The record of proceedings will document only:

(a)  The PEB's determination whether the Service member is fit or unfit.

(b)  For RC Service members determined fit, a determination of whether the member is deployable, if Service regulations require such a determination.

### g.  Quality Assurance.

Each Military Department will establish and publish quality review procedures specific to the MEB and PEB and conduct quality assurance reviews in accordance with Volume 2 of DoDM 1332.18 and the applicable laws, directives, and regulations governing disability evaluation.

## 3.4.  COUNSELING.

### a.  Purpose.

Service members processing through the DES must receive counsel regarding the significance and consequences of the determinations being made and their associated rights, benefits, and entitlements.

### b.  MDB.

Each Military Department will develop and provide a standardized MDB to all Service members referred into the DES, or, if incapacitated, their personal representatives.  PEBLOs, Military Services coordinators (MSCs), and government legal counsel, or their designees, will participate in the MDB.  For IDES cases, the MDB should be completed before the Service member meets individually with the MSC.  For LDES cases, the MDB should be completed within 10 days of Service member's referral into the LDES.

### c.  Non-MDB Requirements.

Each Military Department will publish and provide standard information booklets that contain specific information on DES processes, including the Service member's rights and responsibilities while navigating through the DES.  The information will be made available at the servicing MTFs and PEBs.

### d.  Service Member Competency.

When a competency board determines a Service member is incompetent, the Service member's personal representative will be counseled and afforded the opportunity to assert the rights granted to the Service member, to the extent authorized by applicable law.

*DoDI 1332.18, November 10, 2022*

### e. Pre-separation Counseling.

Service members on orders to active duty for more than 30 days will not be separated or retired because of disability before completing pre-separation counseling pursuant to DoDI 1332.35.

## 3.5. CASE MANAGEMENT.

a. Service members undergoing a DES evaluation must be advised on the status of their case, issues that must be resolved for their case to progress, and the expected time frame for completing the DES at their installation.

b. PEBLOs will contact Service members undergoing disability evaluation at least monthly and provide any necessary DES assistance.

## 3.6. FINAL DISPOSITION.

After adjudicating all appeals, the personnel authorities specified in Section 11 will:

a. Issue orders and instructions to implement the determination of the respective Service's final reviewing authority.

b. Consider Service member requests to continue on active duty or in the RC in a permanent limited duty status if the member is determined unfit.

## 3.7. ADMINISTRATIVE DECISIONS.

a. The Secretary of the Military Department concerned may:

(1) Direct the PEB to reevaluate any Service member determined to be unsuitable for continued military service.

(2) Retire or separate for disability any Service member determined, upon re-evaluation, to be unfit to perform the duties of their office, grade, rank, or rating.

b. The Secretary of the Military Department concerned may not:

(1) Authorize a Service member's involuntary administrative separation based on a determination that the member is unsuitable for deployment or worldwide assignment due to a medical condition after a PEB has found the member fit for the same medical condition; or

(2) Deny the Service member's request to reenlist based on a determination that the member is unsuitable for deployment or worldwide assignment due to a medical condition after a PEB has found the member fit for the same medical condition.

c.  Pursuant to Section 1214a of Title 10, U.S.C., the Secretary of Defense will be the final approval authority for any case determined by the Secretary of the Military Department concerned to warrant a Service member's administrative separation or reenlistment denial based on a determination that the member is unsuitable for continued service due to the same medical condition(s) considered by a PEB that found the member fit for duty.

## 3.8. TRAINING AND EDUCATION.

### a. Assignment of Personnel to the DES.

In coordination with the Director, DHA, the Secretaries of the Military Departments will annually certify that the personnel assigned to or impacting the DES outlined in Paragraphs 3.8.a.(1)-(6) were formally trained before being assigned to performing DES duties:

   (1)  Physicians (military and DoD civilian).

   (2)  PEBLOs.

   (3)  Patient administration officers, administrative MEB staff, and DES program managers.

   (4)  PEB adjudicators.

   (5)  Judge advocates.

   (6)  Military Department civilian attorneys.

### b. Standardized DES Training.

Training curriculums must at least provide instruction on:

   (1)  An overview of the statutory and policy requirements of the DES.

   (2)  Electronic and paper recordkeeping policies of the Military Department concerned.

   (3)  Customer service philosophies.

   (4)  Medical administration processes.

   (5)  Roles and responsibilities of a Service member's assigned government legal counsel.

   (6)  Applicable VA services and benefits.

   (7)  Online and other resources about the DES, DoD, and VA.

   (8)  The chain of supervision and command.

   (9)  The inspector general hotlines for resolving issues.

## 3.9. DISABILITY CASE MANAGEMENT CONTINUUM.

All DES stakeholders, including medical care and case managers, non-medical case managers, patient administration personnel, wounded warrior program liaisons or advocates, MSCs, legal counsel (military or civilian), and recovery care coordinators, share in the responsibility to maintain continuity in all aspects of managing Service member cases and should communicate with each other on an ongoing, frequent basis to prevent delays in care or in the DES process.

### a. PEBLO

#### (1) Responsibilities.

The PEBLO will:

(a) Inform and assist the Service member or their personal representative, as applicable, during the DES.

(b) Help manage expectations, coordinate medical appointments related to the disability process, and oversee the Service member's case file.

#### (2) Assignment.

PEBLOs will, at a minimum, be a noncommissioned officer in the grade of E-5 or above, or civilian equivalent, whenever practical. The unique duties of the PEBLO require the individual to possess the requisite experience, knowledge, and maturity to provide appropriate support and information to the Service member or their personal representative.

(a) The PEBLO must be able to carefully handle administrative tasks, including:

1. Scheduling and managing all appointments and consultations.

2. Communicating with senior members of the medical and non-medical communities.

(b) PEBLOs should be assigned the role for at least 2 years. Because of the frequency of military reassignments, a civilian employee may fill this position. PEBLOs should not be assigned additional duties that would conflict with their PEBLO duties.

(c) PEBLOs must be trained and certified in accordance with Paragraph 3.8.b. and Paragraphs 3.9.a.(2)(c)1.-3., before assignment of their duties.

1. PEBLOs will be trained through formal classroom or web-based training and will not be considered qualified to perform their duties until demonstrating proficiency in the minimum DoD core competencies. The Secretaries of the Military Departments may supplement these minimum core competencies to qualify a PEBLO to perform duties in the DES. Qualification will be documented and filed with the PEBLO's training records.

2.  Before assuming their full duties, PEBLOs will receive at least 1 week of on-the-job training with the incumbent or another PEBLO who is fully trained and has at least 1 year of experience.  During this transition and before case transfer, the incoming PEBLO will make personal contact with each Service member in their portfolio.  The PEBLO's supervisor must verify transfer and accountability of existing cases before the PEBLO assumes full duties. 3.  After completing initial training, an annual refresher or continuing education and training will be required to ensure PEBLOs remain current in their understanding and application of DES procedures.  When DES procedures or processes significantly change, appropriate specialized education and training will be conducted to ensure a fundamental understanding and the ability to follow new procedures.  Changes to standardized processes will be documented in updates to applicable DoD policy. (3)  Caseload.

The number of Service members assisted by a PEBLO will not exceed 34 at any given time.

**b.  MSC.**

The MSC will:

(1)  Assist Service members in the IDES with the VA claims process, case development, and notification of VA findings and proposed ratings, and provide additional information and clarification of VA findings and proposed ratings after the PEBLO provides the initial information.  This assistance includes completing VA Form 21-526EZ, "Application for Disability Compensation and Related Compensation Benefits," available at https://www.vba.va.gov/pubs/forms/VBA-21-526EZ-ARE.pdf.

(2)  Educate Service members and their assigned recovery care coordinator about the IDES process, disability examinations, and veteran benefits.

## 3.10.  FACILITY RESOURCES.

The Secretaries of the Military Departments and the Director, DHA, will provide PEBLOs and MSCs with adequate space for counseling and access to online resources.  This includes a private counseling space, computer, printer, telephone line, and internet and e-mail connectivity.

*DoDI 1332.18, November 10, 2022*

# SECTION 4:  PROVISION OF LEGAL COUNSEL IN THE DES

## 4.1.  REQUIREMENTS.

In conjunction with the judge advocate general of the Military Department concerned, the Secretaries of the Military Departments will:

a.  Advise all Service members referred into the DES on the availability of government legal counsel, who will advise them on their rights and elections.

b.  Provide government legal counsel to advise and represent Service members during the DES process, including after an adverse LOD determination and any subsequent appeals to the Secretary of the Military Department concerned or their designee, relating to the final disposition of Service member disability cases.  Legal counsel, whether military judge advocates or civilian attorneys employed by the Military Departments, will be provided at no expense to the Service member.

c.  Provide training for government legal counsel advising or representing Service members in the DES process.

d.  Through their respective judge advocate general, ensure appropriate staffing levels for government legal counsel advising or representing Service members in the DES process by:

(1)  Assigning sufficient numbers of trained legal counsel to advise and represent Service members in DES proceedings and LOD determinations.

(2)  Reviewing counsel workloads periodically to ensure both quality and timeliness of legal services rendered to Service members.

(3)  Adjusting staffing as circumstances dictate.  Normally, government legal counsel will not be assigned an overall caseload that requires them to represent more than 10 Service members per week at FPEB hearings.

## 4.2.  LEGAL ADVICE AND REPRESENTATION.

Government legal counsel will:

a.  Be available to consult (by telephone or otherwise) with a Service member regarding rights and elections at the time of referral into the DES.  Government legal counsel or their designees will participate in the MDB.

b.  Be assigned to represent each Service member who elects to proceed to a hearing before a FPEB or FPEB appeal.  Representation will continue through the respective Military Department's individual DES appellate process until the Service member's discharge from active duty or RC from active status for unfitness.

(1)  A Service member may waive their right to representation by government legal counsel.  Such a waiver must be in writing.

(2)  In lieu of government legal counsel, a Service member may elect to be represented by a non-government representative, including, but not limited to, private legal counsel or a representative from a veterans' organization.  Any non-government representation will be at no expense to the U.S. Government.

(a)  If a Service member elects a non-government representative, government legal counsel will remain available to the Service member and their representative for advice and consultation but will not participate in a representative capacity during the DES.

(b)  If a Service member's non-government representation is released, in writing by the Service member, or terminated, government legal counsel will be available to represent the Service member for further proceedings and appeals.

## 4.3.  ACCESS TO DOCUMENTATION.

A Service member may provide appropriate authorization for assigned government legal counsel, private legal counsel, or their designated representative to have access to all documentation pertaining to their disability case, including medical records, MEB narrative summary, ratings, diagnostic codes, LOD determinations, and any additional documentation that the MEB or PEB may request.  Government legal counsel may also have full access to documentation from computerized databases and electronic medical records that relate to the Service member's disabilities.

## 4.4.  SERVICE MEMBER APPEALS AND HEARINGS.

Government legal counsel will explain the general legal counsel duties during the disability evaluation system process to the Service member and inform them about the DES, including requesting a hearing before the FPEB and FPEB appeal.  Service members will also be advised that:

### a.  FPEB.

(1)  If found unfit by the IPEB, the Service member may demand a FPEB.  If a FPEB hearing is demanded, they may appear themselves, through a personal representative, or by videoconference.  Service members may also elect to appear telephonically.

(2)  The FPEB will provide the Service member at least 10 calendar days advance written notice of their hearing before the FPEB.  The Service member may waive this 10-day requirement in writing.

**b. FPEB Appeal.**

If found fit or unfit by a FPEB, Service members will be entitled, upon their request, to a FPEB appeal consistent with this instruction. Any additional review will be in accordance with the remedies offered by their respective Military Department.

## 4.5. LEGAL COUNSEL IN ADVANCE OF FPEB AND FPEB APPEAL.

Assigned government legal counsel will consult with the Service member at least 24 hours before the scheduled FPEB or FPEB appeal. Service members traveling to a FPEB or FPEB appeal must be afforded more than 1 calendar day to arrive before their scheduled hearing to confer with government legal counsel. Before the hearing starts, the Service member may waive, in writing, the right to confer with government legal counsel before the hearing.

## 4.6. DELAY FOR GOOD CAUSE.

A Service member or representative may request a delay of a hearing for good cause in accordance with applicable Military Department guidance. Any requests for delay must be submitted to the FPEB president or, if in the case of a FPEB appeal, the Secretary of the Military Department concerned or their FPEB appellate authority, in writing and before the scheduled hearing as prescribed by the Military Departments. The FPEB president or the FPEB appellate authority will respond to requests for delay in writing and, if applicable, will include the grounds for a denial of a request for delay.

## 4.7. QUALIFICATIONS AND TRAINING OF LEGAL COUNSEL.

a. The Secretary of the Military Department concerned, in conjunction with their judge advocate general, will provide legal training programs to ensure government legal counsel participating in the DES have adequate training in the process and associated procedures.

b. The Judge Advocate General concerned will ensure that government legal counsel is assigned to represent Service members in the DES in accordance with the regulations and procedures of the Military Department concerned.

c. For IDES cases, uniformed or civilian legal counsel of the Military Department concerned, claims agents, and private attorneys may represent a member before the VA if the representative complies with VA regulations in Part 14 of Title 38, CFR.

d. Training programs should provide an overview of:

(1) The statutory and policy requirements of the DES, including DoD issuances pertaining to the physical disability evaluation system, the VASRD, and laws and regulations pertaining to combat-related special compensation.

*DoDI 1332.18, November 10, 2022*

(2)  VA services and Federal benefits, including compensation tables based on ratings determinations in effect at the time a rating is adjudicated.

(3)  The resources available to Service members in the DES.

(4)  Online and other resources pertaining to the DES and DoD and VA services.

(5)  The VASRD, the U.S. Court of Federal Claims, the Court of Appeals for Veterans Claims, the U.S. Court of Appeals for the Federal Circuit, and the U.S. Supreme Court. Additionally, although not binding, published decisions by the VA General Counsel may be informative.

(6)  The Inspector General of the Department of Defense hotline, the inspectors general of the Military Departments' respective hotlines, ombudsman programs, and Service programs for resolution of issues of concern to recovering Service members.

*DoDI 1332.18, November 10, 2022*

# SECTION 5:  DES REFERRAL

## 5.1.  GENERAL.

The Secretary of the Military Department concerned may refer Service members who meet the criteria for disability evaluation regardless of eligibility for disability compensation.

## 5.2.  CRITERIA FOR REFERRAL.

a.  When the course of further recovery is relatively predictable or within 1 year of diagnosis, whichever is sooner, medical authorities will refer eligible Service members into the DES who have:

(1)  One or more medical conditions that may, singularly, collectively, or through combined effect, prevent the Service member from reasonably performing the duties of their office, grade, rank, or rating, including those duties remaining on a Reserve obligation for more than 1 year after diagnosis;

(2)  A medical condition that represents an obvious medical risk to the health of the member or to the health or safety of other members; or

(3)  A medical condition that imposes unreasonable requirements on the military to maintain or protect the Service member.

b.  In all cases, competent medical authorities will refer Service members who meet the criteria in this section into the DES within 1 year of diagnosis.

## 5.3.  ELIGIBILITY FOR REFERRAL.

### a.  Duty-Related Determinations.

Except as provided in Paragraph 5.4., the categories of Service members in Paragraphs 5.3.a.(1)-(6), who also meet the criteria in Paragraph 5.2., are eligible for referral to the DES for duty-related determinations.

(1)  Service members on active duty or in the RC who are on orders to active duty specifying a period of more than 30 days.

(2)  RC Service members who are not on orders to active duty specifying a period of more than 30 days but who incurred or permanently aggravated a medical condition while ordered to active duty for more than 30 days.

(3)  Cadets at the United States Military Academy or United States Air Force Academy, or midshipmen of the United States Naval Academy.  These cadets or midshipmen will not be

placed in a leave of absence status or excess leave status during DES processing, including the transition period.

(4)  Service members previously determined unfit, serving in a permanent limited duty status, and for whom the period of continuation has expired.

(5)  Other Service members who are on orders to active duty specifying a period of 30 days or fewer if they have a medical condition that was incurred or permanently aggravated in the LOD while the Service member was:

(a)  Performing active duty or IDT;

(b)  Traveling directly to or from the place at which such duty is performed;

(c)  Remaining overnight immediately before starting IDT or while remaining overnight between successive periods of IDT at or near the site of the IDT; or

(d)  Serving on funeral honors duty pursuant to Section 12503 of Title 10, U.S.C. or Section 115 of Title 32, U.S.C. while the Service member was traveling directly to or from the place at which the member was to serve; or while the member remained overnight at or near that place immediately before serving.

(6)  Pursuant to Section 1206a of Title 10, U.S.C., RC Service members ordered to active duty for a period of more than 30 days and released from active duty within 30 days of commencing such period of active duty for failure to meet physical standards for retention due to a pre-existing condition not aggravated during the period of active duty or medical or dental standards for deployment due to a pre-existing condition not aggravated during the period of active duty will be considered to have been serving under an order to active duty for a period of 30 days or less.

**b.  Non-Duty-Related Determinations.**

RC Service members with only non-duty-related conditions, who are otherwise eligible as described in Paragraph 5.2., will be referred solely for a fitness for duty determination when either:

(1)  The RC Service member does not qualify in accordance with Paragraph 5.3.a.;

(2)  The RC Service member requests referral for a fitness determination upon being notified that they do not meet medical retention standards; or

(3)  Service regulations direct the RC Service member be referred to the DES for a fitness determination before being separated by the RC for not meeting medical retention standards.

## 5.4.  INELIGIBILITY FOR REFERRAL.

a.  Service members will be ineligible for referral to the DES when either:

(1)  The Service member has a condition, circumstance, or defect of a developmental nature, not constituting a physical disability as described in Paragraph 1.2.l., that interferes with assignment to, or performance of, duty and that was not service aggravated;

(2)  The Service member is pending an approved, unsuspended punitive, or administrative discharge or dismissal, except as provided by applicable Military Service regulations;

(3)  The Service member is pending separation in accordance with provisions that authorize a characterization of service of under other than honorable conditions, except as provided by applicable Military Service regulations.  This restriction is based on the provisions upon which the member is being separated and not on the actual characterization the member receives;

(4)  The Service member is not physically present or accounted for; or

(5)  The disability results from intentional misconduct or willful neglect or was incurred during a period of unauthorized absence or excess leave unless the Service member is eligible pursuant to Section 1201(c)(3) of Title 10, U.S.C.

b.  However, the Secretaries of the Military Departments should evaluate for disability those Service members who would be ineligible for referral to the DES due to Paragraphs 5.4.a.(2) and 5.4.a.(3) when the medical impairment condition or disability evaluation is warranted as a matter of equity or good conscience.


## 5.5.  SERVICE MEMBERS WITH MEDICAL WAIVERS.

a.  Service members who enter the military with a medical waiver may be separated without a disability evaluation when:

(1)  The responsible medical authority, designated by Service regulations, determines within 6 months of the member's entry into active service that the waived condition represents a risk to the member or prejudices the U.S. Government's best interests.

(2)  No permanent service aggravation has occurred to a medical condition for which a medical waiver was given.

b.  After 6 months of the member's entry into active service, the Secretary of the Military Department concerned may refer the Service member for a disability evaluation if the Service member meets the criteria in Paragraph 5.2. and is eligible for referral in accordance with Paragraph 5.3.

c.  Members who entered the Service with a medical waiver for a pre-existing condition and who are subsequently determined unfit for the preexisting condition will not be entitled to disability separation or retired pay for that condition unless military service permanently aggravated the condition.  Members granted medical waivers will be advised of this provision at the time of waiver application and when it is granted.

*DoDI 1332.18, November 10, 2022*

## 5.6.  WAIVER OF DES REFERRAL OR PEB EVALUATION.

Except as prohibited by Paragraph 5.7., Service members may waive referral into the DES or referral to the PEB with the approval of the Secretary of the Military Department concerned.

a.  The Service member must be counseled on the DES process, the right to a PEB, and the potential benefits of remaining in an active duty or active reserve status to complete processing through the DES.

b.  The Service member must request a waiver in writing.  Such request, or an affidavit, must attest that the member has received the counseling described in Paragraph 5.6.a. and declines referral into the DES or referral to the PEB.

## 5.7.  PROHIBITION FROM WAIVING DISABILITY EVALUATION.

A Service member cannot waive disability evaluation if they:

a.  Are approved for voluntary early separation from active duty.

b.  Incur a Reserve obligation.

c.  Have conditions that are cause for referral into the DES.

## 5.8.  REFERRAL IMPLICATIONS.

Neither referral into the DES nor a finding of unfitness constitutes entitlement to disability benefits.

# SECTION 6:  STANDARDS FOR DETERMINING UNFITNESS DUE TO DISABILITY OR MEDICAL DISQUALIFICATION

## 6.1.  UNIFORMITY OF STANDARDS.

The standards listed in this issuance for determining unfitness due to disability will be followed unless the USD(P&R) approves exceptions based on the unique needs of the respective Military Department.

## 6.2.  GENERAL CRITERIA FOR MAKING UNFITNESS DETERMINATIONS.

A Service member may be considered unfit when:

a.  The evidence establishes that the member, due to disability, is unable to reasonably perform the duties of their office, grade, rank, or rating, including those during a remaining period of Reserve obligation; or

b.  The evidence establishes that their disability:

(1)  Represents a decided medical risk to their health or to the welfare or safety of other members; or

(2)  Imposes unreasonable requirements on the military to maintain or protect the Service member.

## 6.3.  RELEVANT EVIDENCE.

The Secretaries of the Military Departments will consider all relevant evidence in assessing Service member fitness, including the circumstances of referral.  To reach a finding of unfit, the PEB must be satisfied that the evidence supports that finding.

### a.  Referral Following Illness or Injury.

When referral for disability evaluation immediately follows acute, grave illness or injury, the medical evaluation may stand alone, particularly if medical evidence establishes that continued service would be harmful to the member's health or is not in the Military Department's best interest.

### b.  Referral for Chronic Condition.

When a Service member is referred for disability evaluation under circumstances other than as described in Paragraph 6.3.a., a supervisor's evaluation or personal testimony of the Service member's duty performance may more accurately reflect the capacity to perform.  Supervisors may include letters, efficiency reports, and, in the case of medical officers, credential reports and

status of medical privileges, to provide evidence of the Service member's ability to perform their duties.

### c. Cause-and-effect Relationship.

Regardless of the presence of illness or injury, inadequate duty performance alone will not be considered evidence of unfitness due to disability, unless a cause-and-effect relationship is established between the two factors.

## 6.4. REASONABLE PERFORMANCE OF DUTIES.

### a. Considerations.

Determining whether a Service member can reasonably perform their duties includes considering:

#### (1) Common Military Tasks.

Whether the Service member can perform the common military tasks required for their office, grade, rank, or rating, including those during a remaining period of Reserve obligation. Examples include routinely firing a weapon, performing field duty, or wearing load-bearing equipment or protective gear.

#### (2) Physical Fitness Test.

Whether the Service member is medically prohibited from taking the respective Service's required physical fitness test. When a Service member has been found fit by a PEB for a condition that prevents the member from taking the Service physical fitness test, the inability to take the physical fitness test will not form the basis for an adverse personnel action against the member.

#### (3) Deployability.

Whether the Service member is deployable individually or as part of a unit, with or without prior notification, to any vessel or location specified by the Military Department. When deployability is used by a Service as a consideration in determining fitness, the standard must be applied uniformly to both the AC and RC of that Service.

#### (4) Special Qualifications.

Service members whose medical condition disqualifies them for specialized duties, whether the specialized duties constitute their current duty assignment; they have an alternate branch or specialty; or reclassification or reassignment is feasible.

### b. General, Flag, and Medical Officers.

An officer in pay grade O-7 or higher, or a medical officer in any grade, being processed for retirement by reason of age or length of service, or being re-evaluated on the TDRL, will not be

determined unfit unless the determination of the Secretary of the Military Department concerned, with respect to unfitness, is approved by the USD(P&R) on the recommendation of the ASD(HA).

### c.  Service Members on Permanent Limited Duty.

(1)  A Service member previously determined unfit and continued in a permanent limited duty status or otherwise continued on active duty will normally be found unfit at the expiration of their period of continuation.  However, the Service member may be determined fit when the condition has healed or improved such that the Service member would be capable of performing their duties in other than a limited-duty status.

(2)  Likewise, Service members placed on permanent limited duty following a PEB evaluation and later found unfit at the expiration of their period of continuation, are eligible to retire or separate from the military for the unfitting condition(s) as determined by the PEB, in accordance with Chapter 61 of Title 10, U.S.C.

### d.  Combined Effect.

(1)  A Service member may be determined unfit as a result of the combined effect of two or more conditions even though each of them, standing alone, would not cause the Service member to be referred into the DES or be found unfit because of disability.

(2)  The PEB will include in its official findings, in cases where two or more medical conditions (referred or claimed) are present in the service treatment record, that the combined effect was considered in the fitness determination rendered by the PEB, as referred by the MEB.

(3)  Combined effect includes the pairing of a singularly unfitting condition with a condition that standing alone would not be unfitting.

## 6.5.  PRESUMPTION OF FITNESS.

Service members who are pending retirement at the time they are referred for disability evaluation will be presumed fit for military service.

### a.  Presumptive Period.

The Secretaries of the Military Departments will presume Service members are pending retirement when the Service member's referral into the DES occurs after any of these circumstances:

(1)  A Service member's request for voluntary retirement has been approved.  Revoking voluntary retirement orders for purposes of referral into the DES does not negate application of the presumption.

(2)  An officer has been approved for selective early retirement or is within 12 months of mandatory retirement due to age or length of service.

(3)  An enlisted member is within 12 months of their retention control point, high year of tenure, or expiration of active obligated service, but will be eligible for retirement at that point.

(4)  An RC Service member is within 12 months of mandatory retirement or removal date and qualifies for a 20-year letter at the time of referral for disability evaluation.

(5)  A retiree is recalled, including those who transferred to the Retired Reserve, with eligibility to draw retired pay upon reaching the age prescribed by Title 10, U.S.C. unless the recalled retiree incurred or aggravated the medical condition while on their current active duty orders and overcomes the presumption of fitness.

### b.  Overcoming the Presumption of Fitness.

Service members may overcome the presumption of fitness by presenting a preponderance of evidence that they are unfit for military service.  The presumption of fitness may be overcome when:

(1)  An illness or injury occurs within the presumptive period that would prevent the Service member from performing further duty if they were not retiring;

(2)  A serious deterioration of a previously diagnosed condition, including a chronic one, occurs within the presumptive period, and the deterioration would preclude further duty if the Service member were not retiring; or

(3)  The condition for which the Service member is referred is a chronic condition and a preponderance of evidence establishes that they were not performing duties befitting either their experience in the office, grade, rank, or rating before entering the presumptive period because of the condition.

### c.  When The Presumption of Fitness Does Not Apply.

Service members will not be presumed fit for military service if either:

(1)  The disability is one for which a Service member was previously determined unfit and continued in a permanent limited duty status.  The presumption of fitness will be applied to other medical impairments or conditions unless the medical evidence establishes they were impacted by the previously unfitting disability;

(2)  The Service member is a Selected Reserve member who is eligible to qualify for non-regular retirement pursuant to Section 12731b of Title 10, U.S.C.; or

(3)  The Service member is an RC Service member referred for a non-duty-related determination.

## 6.6.  EVIDENTIARY STANDARDS FOR DETERMINING UNFITNESS BECAUSE OF DISABILITY.

### a.  Objective Evidence.

(1)  The Secretary of the Military Department concerned must cite objective evidence in the record, as distinguished from opinion, speculation, or conjecture, to determine a Service member is unfit because of disability.

(2)  Doubt that cannot be resolved with evidence will be resolved in favor of the Service member's fitness through the presumption that the Service member desires to be found fit for duty.

### b.  Preponderance of Evidence.

Except for presumption of fitness cases, the Secretary of the Military Department concerned will determine fitness or unfitness for military service based on the preponderance of the objective evidence in the record.

## 6.7.  UNFIT DETERMINATIONS.

If the Service member is found unfit, a determination will be made as to the Service member's entitlement to separation or retirement for disability with benefits pursuant to Chapter 61 of Title 10, U.S.C. and administrative determinations in accordance with Section 10 of this issuance.

# SECTION 7:  STANDARDS FOR DETERMINING COMPENSABLE DISABILITIES

## 7.1.  DISABILITY COMPENSATION CRITERIA OVERVIEW.

Service members who are determined unfit to perform the duties of their office, grade, rank, or rating because of disability in accordance with Section 5 may be eligible for disability benefits when:

a.  The disability is not the result of the Service member's intentional misconduct or willful neglect and was not incurred during unauthorized absence or excess leave.

b.  The Service member incurred or permanently aggravated the disability while they were:

(1)  A member of a regular component of the Military Services entitled to basic pay;

(2)  A Service member entitled to basic pay, called or ordered to active duty (other than for training pursuant to Section 10148 of Title 10, U.S.C.) for a period of more than 30 days;

(3)  A Service member on active duty for a period more than 30 days but not entitled to basic pay, pursuant to Section 502(b) of Title 37, U.S.C., due to authorized absence to participate in an educational program or for emergency purpose, as determined by the Secretary of the Military Department concerned;

(4)  A cadet at the United States Military Academy or United States Air Force Academy, or a midshipman of the United States Naval Academy; or

(5)  A Service member called or ordered to active duty for a period of 30 days or fewer, performing IDT or traveling directly to or from the place of IDT, to funeral honors duty, or for training pursuant to Section 10148 of Title 10, U.S.C.

## 7.2.  DISABILITY RETIREMENT CRITERIA FOR REGULAR COMPONENT MEMBERS AND MEMBERS ON ACTIVE DUTY FOR MORE THAN 30 DAYS.

Service members described in Paragraphs 7.1.a. and 7.1.b.(1) through 7.1.b.(4) will be retired with disability benefits when:

a.  The disability is permanent and stable.

b.  The member has:

(1)  At least 20 years of service computed in accordance with Section 1208 of Title 10, U.S.C.; or

(2)  A disability of at least 30 percent, pursuant to Part 4, Title 38, CFR, and that disability either:

(a)  Was not noted at the time of the member's entrance on active duty unless the Secretary of the Military Department concerned demonstrates with clear and unmistakable evidence that both the disability existed before the member's entrance on active duty and the disability was not permanently aggravated by active military service;

(b)  Is the proximate result of performing active duty;

(c)  Was incurred in the LOD in time of war or national emergency; or

(d)  Was incurred in the LOD after September 14, 1978.

## 7.3.  DISABILITY RETIREMENT CRITERIA FOR MEMBERS ON ACTIVE DUTY FOR 30 DAYS OR FEWER, ON IDT, FUNERAL HONORS DUTY, OR TRAINING PURSUANT TO SECTION 1204 OF TITLE 10, U.S.C.

Service members described in Paragraphs 7.1.a. and 7.1.b.(5) will be retired with disability benefits when:

a.  The disability is permanent and stable.

b.  The Service member has:

(1)  At least 20 years of service computed in accordance with Section 1208 of Title 10, U.S.C.; or

(2)  A disability of at least 30 percent, pursuant to Part 4 of Title 38, CFR, that was either:

(a)  Incurred or aggravated before September 24, 1996, as the proximate result of:

1.  Performing active duty or IDT;

2.  Traveling directly to or from the place of active duty or IDT; or

3.  An injury, illness, or disease incurred or aggravated immediately before the commencement of IDT or while remaining overnight, between successive periods of IDT, at or near the site of the IDT, if the site of the IDT is outside reasonable commuting distance of the Service member's residence.

(b)  The result of injury, illness, or disease that was incurred or aggravated in the LOD after September 23, 1996:

1.  While performing active duty or IDT;

2.  While traveling directly to or from the place of active duty or IDT;

3.  While remaining overnight immediately before the commencement of IDT; or

4.  While remaining overnight between successive periods of IDT at or in the vicinity of the site of the IDT.

(c)  The result of an injury, illness, or disease incurred or aggravated in the LOD:

1.  While serving on funeral honors duty pursuant to Section 12503 of Title 10, U.S.C. or Section 115 of Title 32, U.S.C.;

2.  While traveling to or from the place at which the member was to serve; or

3.  While remaining overnight at or in the vicinity of that place immediately before serving, if it is outside reasonable commuting distance from the member's residence.

## 7.4.  DISABILITY SEPARATION CRITERIA FOR REGULAR COMPONENT MEMBERS AND MEMBERS ON ACTIVE DUTY FOR MORE THAN 30 DAYS.

Service members described in Paragraphs 7.1.a. and 7.1.b.(1) through 7.1.b.(4) will be separated with disability benefits when:

a.  The Service member has fewer than 20 years of service as computed in accordance with Section 1208 of Title 10, U.S.C.;

b.  Based on accepted medical principles, the disability is or may be of a permanent nature and is either:

(1)  Less than 30 percent, pursuant to Part 4 of Title 38, CFR, at the time of the determination, and the disability was:

(a)  The proximate result of performing active duty;

(b)  Incurred in the LOD in time of war or national emergency; or

(c)  Incurred in the LOD after September 14, 1978.

(2)  Less than 30 percent, pursuant to Part 4 of Title 38, CFR, at the time of the determination and was not noted at the time of the Service member's entrance on active duty (unless the Secretary of the Military Department concerned overcomes both the presumption of sound condition and the presumption of service aggravation, if applicable, by demonstrating with clear and unmistakable evidence that both the disability existed before the Service member's entrance on active duty and the disability was not aggravated by active military service).

(3)  At least 30 percent, pursuant to Part 4 of Title 38, CFR, and at the time of the determination, the disability was neither:

(a)  The proximate result of performing active duty;

(b)  Incurred in the LOD in time of war or national emergency; nor

(c)  Incurred in the LOD after September 14, 1978, and the Service member had fewer than 8 years of service computed pursuant to Section 1208 of Title 10, U.S.C. on the date when they:

<u>1</u>.  Would otherwise be retired pursuant to Section 1201 of Title 10, U.S.C.; or

<u>2</u>.  Were placed on the TDRL pursuant to Section 1202 of Title 10, U.S.C.

## 7.5.  DISABILITY SEPARATION CRITERIA FOR MEMBERS ON ACTIVE DUTY FOR 30 DAYS OR LESS, ON IDT, FUNERAL HONORS DUTY, OR TRAINING PURSUANT TO SECTION 1206 OF TITLE 10, U.S.C.

a.  Service members described in Paragraphs 7.1.a. and 7.1.b.(5) will be separated with disability benefits when:

(1)  The Service member has fewer than 20 years of service.

(2)  The disability:

(a)  Is or may be permanent.

(b)  Is the result of an injury, illness, or disease incurred or aggravated in the LOD while:

<u>1</u>.  Performing active duty or IDT;

<u>2</u>.  Traveling directly to or from the place of such duty;

<u>3</u>.  Remaining overnight immediately before the commencement of IDT, between successive periods of IDT, at or in the vicinity of the site of the IDT if the site is outside reasonable commuting distance of the Service member's residence; or

<u>4</u>.  Serving on funeral honors duty pursuant to Section 12503 of Title 10, U.S.C. or Section 115 of Title 32, U.S.C. while traveling to or from the place at which they were to serve; or while remaining overnight at or in the vicinity of that place immediately before serving.

(c)  Is less than 30 percent under the VASRD at the time of the determination and, in the case of a disability incurred before October 5, 1999, was the proximate result of performing active duty or IDT or of traveling directly to or from the place at which such duty is performed.

b.  If the Service member is eligible for transfer to the inactive status list pursuant to Section 1209 of Title 10, U.S.C. and chooses to, they may be transferred to that list instead of being separated.

## 7.6. LOD REQUIREMENTS.

In the DES, LOD determinations will assist the PEB in meeting the statutory requirements in accordance with Chapter 61 of Title 10, U.S.C. for separation or retirement for disability.

### a. Relationship of LOD Findings to DES Determinations.

(1) LOD determinations will be made in accordance with the regulations of the respective Military Department. When an LOD determination is required, the PEB may consider the finding made for those issues mutually applicable to LOD and DES determinations. These issues include whether a condition is pre-existing, is aggravated, is aggravated by military service, and whether there are any issues of misconduct or negligence.

(2) When the PEB has reasonable cause to believe an LOD finding appears to be contrary to the evidence, disability evaluation will be suspended for a review of the LOD determination in accordance with the regulations of the respective Military Department. The PEB will forward the case to the final LOD reviewing authority designated by the Secretary of the Military Department concerned with a memorandum documenting the reasons for questioning the LOD finding.

### b. Referral Requirement.

When an LOD determination is required, it will be done before sending a Service member's case to the PEB.

### c. Presumptive Determinations.

The determination will be presumed to be in the LOD without an investigation in the case of:

(1) Disease, except as described in Paragraphs 7.6.d.(1) to 7.6.d.(6).

(2) Injuries clearly incurred as a result of enemy action or attack by terrorists.

(3) Injuries while a passenger in a common commercial or military carrier.

### d. Required Determinations.

LOD determinations will at least be required when:

(1) The injury, disease, or medical condition may be due to the Service member's intentional misconduct or willful negligence, such as a motor vehicle accident;

(2) The injury involved alcohol or drug abuse;

(3) The injury was self-inflicted;

(4) The injury or disease was possibly incurred during a period of unauthorized absence;

(5)  The injury or disease was apparently incurred during a course of conduct for which charges have been preferred; or

(6)  The injury, illness, or disease is of an RC Service member on orders specifying a period of active duty of 30 days or fewer while:

(a)  Performing active duty or IDT;

(b)  Traveling directly to or from the place of active duty or IDT;

(c)  Remaining overnight immediately before the commencement of IDT, between successive periods of IDT, at or in the vicinity of the site of the IDT if the site is outside reasonable commuting distance of the Service member's residence; or

(d)  Serving on funeral honors duty pursuant to Section 12503 of Title 10, U.S.C. or Section 115 of Title 32, U.S.C. while traveling to or from the place at which they were to serve; or while remaining overnight at or in the vicinity of that place immediately before serving if the place is outside reasonable commuting distance from their residence.

## 7.7.  EVIDENTIARY STANDARDS FOR DETERMINING COMPENSIBILITY OF UNFITTING CONDITIONS.

### a.  Misconduct and Negligence.

LOD determinations concerning intentional misconduct and willful negligence will be judged by the evidentiary standards established by the Secretary of the Military Department concerned.

### b.  Presumption of Sound Condition for Members on Continuous Orders to Active Duty Specifying a Period of More Than 30 Days.

(1)  The Secretaries of the Military Departments will presume Service members, including RC Service members and recalled retirees, on continuous orders to active duty specifying a period of more than 30 days, entered their current period of military service in sound condition when the disability was not noted at the time of the Service member's entrance to the current period of active duty.

(2)  The Secretaries of the Military Departments may overcome this presumption if clear and unmistakable evidence demonstrates that both the disability existed before the Service member's entrance on their current period of active duty and the disability was not aggravated by their current period of military service.  Absent such clear and unmistakable evidence, the Secretary of the Military Department concerned will conclude that the disability was incurred or aggravated during their current period of military service.

(3)  The Secretary of the Military Department concerned must base a finding that the Service member's condition was not incurred in, or aggravated by, their current period of military service on objective evidence in the record, as distinguished from personal opinion, speculation, or conjecture.  When the evidence is unclear concerning whether the condition

existed before their current period of military service, or if the evidence is equivocal, and the presumption of sound condition at the Service member's entry to the current period of military service has not been rebutted, the Secretary of the Military Department concerned will find the Service member's condition was incurred in or aggravated by military service.

(4)  Hereditary or genetic disease will be evaluated to determine whether clear and unmistakable evidence demonstrates that both the disability existed before the Service member's entrance on active duty and the disability was not aggravated by their current period of military service.  However, even if the disability is determined to have been incurred before entry on their current period of active duty, any aggravation of that disease incurred during the Service member's current period of active duty beyond that determined to be due to natural progression, will be determined to be service-aggravated.

(5)  There is no presumption of sound condition for RC Service members serving on orders of 30 days or fewer.

**c.  Presumption of Incurrence or Aggravation in the LOD for Members on Continuous Orders to Active Duty Specifying a Period of More Than 30 Days.**

(1)  The Secretaries of the Military Departments will presume that diseases or injuries incurred by Service members on continuous orders to active duty, specifying a period of more than 30 days, were incurred or aggravated in the LOD unless the disease or injury was noted at time of entry into service.  The Secretaries of the Military Departments may overcome the presumption that a disease or injury was incurred or aggravated in the LOD only when clear and unmistakable evidence indicates both that the disease or injury existed before their current period of military service and that the disease or injury was not aggravated by their current period of military service.

(2)  Pursuant to Sections 1206a and 1207a of Title 10, U.S.C, a preexisting condition will be deemed to have been incurred while entitled to basic pay and will be considered for purposes of determining whether the disability was incurred in the LOD when:

(a)  The Service member was ordered to active duty for more than 30 days (other than for training pursuant to Section 10148(a) of Title 10, U.S.C.) when the disease or injury was determined to be unfitting by the PEB;

(b)  The Service member was not an RC Service member released within 30 days of their orders to active duty, in accordance with Section 1206a of Title 10, U.S.C., due to the identification of a preexisting condition not aggravated by the current call to duty;

(c)  The Service member will have a career total of at least 8 years of active service and be in an active duty status at the time of separation; or

(d)  The disability was not the result of intentional misconduct or willful neglect or was incurred during a period of unauthorized absence.

### d. RC Service Members Serving on Orders of 30 Days or Fewer.

(1)  The Secretary of the Military Department concerned will determine if injuries and diseases to RC Service members serving on orders of 30 days or fewer were incurred or aggravated in the LOD as described in Paragraph 7.4.

(2)  For RC Service members being examined in accordance with Paragraph 7.3., aggravation must constitute the worsening of a preexisting medical condition beyond the natural progression of the condition.

(3)  There is no presumption of incurrence or aggravation in the LOD for RC Service members serving on orders of 30 days or fewer.

### e. Prior Service Condition.

Any medical condition incurred or aggravated during one period of active service or authorized training in any of the Military Services that recurs, is aggravated, or otherwise causes the Service member to be unfit, should be considered incurred in the LOD, provided the origin of such condition or its current state is not due to the Service member's misconduct or willful negligence, or progressed to unfitness as the result of intervening events when the Service member was not in a duty status.

### f. Medical Waivers.

(1)  Service members who entered the Military Service with a medical waiver for a preexisting condition and are subsequently determined unfit for the condition will not be entitled to disability separation or retired pay unless:

(a)  Military service permanently aggravated the condition or hastened the condition's rate of natural progression; or

(b)  The Service member will have a career total of at least 8 years of active service and be in an active duty status at the time of separation.

(2)  Service members granted medical waivers will be advised of the waiver application process when applying for a waiver and when it is granted.

### g. Treatment of Pre-existing Conditions.

(1)  Generally recognized risks associated with treating preexisting conditions will not be considered service aggravation.

(2)  Unexpected adverse events, over and above known hazards, directly attributable to treatment, anesthetic, or operation performed or administered for a medical condition existing before entry on active duty, may be considered service aggravation.

**h.  Elective Surgery or Treatment.**

A Service member choosing to have elective surgery or treatment done at their own expense will not be eligible for compensation in accordance with the provisions of this issuance for any adverse residual effect resulting from the elected treatment, unless it can be shown that such election was reasonable or resulted from a significant impairment of judgment that is the product of a ratable medical condition.

**i.  Rating Disabilities.**

(1)  When a disability is established as compensable, it will be rated in accordance with Part 4 of Title 38, CFR.

(2)  If a service-connected condition aggravated a non-service-connected condition, the Service member may be compensated for that degree of disability that is over and above the degree of disability existing before the aggravation or natural progression in accordance with Section 3.310(b) of Title 38, CFR.

(a)  The rating will reflect only the degree of disability over and above the degree existing at the time of entrance into the active service whether the particular condition was noted at the time of entrance into the active service or it is determined upon the evidence of record to have existed at that time.

(b)  When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability, such doubt will be resolved in favor of the Service member.

# SECTION 8:  VASRD

## 8.1.  GENERAL.

a.  The Secretaries of the Military Departments will assign disability ratings based on Part 4 of Title 38, CFR.

(1)  The Secretaries of the Military Departments may not deviate from the VASRD, including any applicable interpretation of the VASRD by the U.S. Court of Appeals for Veterans Claims, U.S. Court of Appeals for the Federal Circuit, or U.S. Supreme Court.

(2)  In lieu of the VASRD, the Secretaries of the Military Departments may use criteria prescribed jointly by the Secretary of Defense and the Secretary of Veterans Affairs if using such criteria will result in a greater percentage of disability than would be determined using the VASRD.

b.  Using the VASRD is required in accordance with Section 1216a of Title 10, U.S.C., and will be utilized in accordance with Part 4 of Title 38, CFR, to the greatest extent feasible.  In applying the VASRD, any determination of infeasibility must be based on statutory differences between the DoD and VA disability systems, compelling differences in mission grounded in statute, or some other major difference between the two systems.  A policy disagreement or differing medical opinion does not constitute infeasibility.

c.  To be rated as unfitting for a condition, the Service member must be impaired to such extent that their condition is unfitting whether singularly, collectively, or through combined effect.  Physical examination findings, laboratory tests, radiographs, and other findings do not, in and of themselves, constitute a basis for determining that a Service member will be rated for a condition.

d.  The VASRD is used to make rating determinations for each of the medical conditions determined to be unfitting, whether singularly, collectively, or through combined effect.  When a Service member has more than one compensable disability, the percentages are combined in accordance with Section 4.25 of Title 38, CFR, rather than added.

(1)  The PEB will include in its official findings that combined effect was considered in the fitness determination (and whether it was applied in the final adjudication) of cases where two or more medical conditions (referred or claimed) are present in the service treatment record.

(2)  The PEB will use the VASRD to establish the Service member's proposed disability rating under the LDES process.

(3)  In addition to the requirements in Paragraph 7.7.i., the PEB will apply ratings provided by the VA for unfitting conditions to establish the Service member's DoD disability rating under the IDES process.

(4)  In the IDES process, the PEB will use the VASRD to rate an unfitting condition the VA refuses to rate.

*DoDI 1332.18, November 10, 2022*

e.  While not legally binding, DoD rating personnel may use the VA's various applicable internal publications, including VA M21-1, to assist in making disability rating determinations when rating cases under the LDES.

## 8.2.  BEHAVIORAL DISORDERS DUE TO TRAUMATIC STRESS.

The Secretary of the Military Department concerned will comply with Section 1216a of Title 10, U.S.C. and Sections 4.129 and 4.130 of Title 38, CFR for disposition of Service members found unfit because of a behavioral disorder due to traumatic stress.  When a behavioral disorder develops on active duty because of a highly stressful event severe enough to bring about a Service member's release from active military service, the Secretary of the Military Department concerned will:

a.  Permanently retire Service members assigned a rating of 80 percent or greater for any unfitting permanent and stable condition(s) not related to the behavioral disorder due to traumatic stress.

b.  For all other Service members, assign a rating of at least 50 percent to the behavioral disorder due to traumatic stress, combine ratings in accordance with the VASRD, temporarily retire the Service member for disability, and schedule an examination to determine whether a change in rating and disposition is warranted.  The reexamination will be scheduled within 6 months from the date of placement on the TDRL, but completed no earlier than 90 days after placement on the TDRL.

## 8.3.  DISABILITY RATING BASED ON UNEMPLOYABILITY.

The Secretary of the Military Department concerned may assign a total disability rating for compensation, even if the VASRD rating is less than the total disability rating, when, in the Secretary's judgment, the Service member is unable to secure or follow a substantially gainful occupation because of service-connected disabilities.  Sections 4.15, 4.16, and 4.18 of Title 38, CFR contain additional guidance for determining total disability ratings.

## 8.4.  EXTRA-SCHEDULAR RATINGS.

Section 3.321(b) of Title 38, CFR addresses extra-schedular evaluations for Service members and veterans.

a.  The Secretary of the Military Department concerned may assign ratings in unusual cases not covered by the VASRD.  In such cases, the Secretary of the Military Department concerned may assign extra-schedular ratings commensurate with the average earning capacity impairment due exclusively to the unfit conditions.

b.  The PEB will document the basis of the conclusion that the case is not covered by the VASRD standards.

*DoDI 1332.18, November 10, 2022*

# SECTION 9:  TDRL MANAGEMENT

## 9.1.  INITIAL PLACEMENT ON THE TDRL.

a.  A Service member will be placed on the TDRL when they meet the requirements for permanent disability retirement, except when the disability is not determined to be stable but may be permanent.  A disability will be determined stable when the preponderance of medical evidence indicates the severity of the condition will probably not change enough within the next 3 years to increase or decrease the disability rating percentage, pursuant to Section 1210 of Title 10, U.S.C.

b.  Service members with unstable conditions rated at least 80 percent, and are not expected to improve to less than an 80 percent rating, will be permanently retired.

## 9.2.  TDRL RE-EVALUATION.

The TDRL will be managed to meet the requirements for periodic disability examination, suspension of retired pay, and prompt removal from the TDRL pursuant to Chapter 61 of Title 10, U.S.C., including reexamining temporary retirees at least once every 18 months to determine whether there has been a change in the disability for which the member was temporarily retired.  For Service members diagnosed with behavior disorders because of traumatic stress, the reexamination will be scheduled within 6 months from the date of placement on the TDRL, but completed no earlier than 90 days after placement on the TDRL.

### a.  Initiating the TDRL Re-evaluation Process.

(1)  No later than 16 months after temporarily retiring a Service member for disability or after their previous re-evaluation, the Military Department will obtain and consider available DoD medical treatment documentation, VA or veteran-provided medical treatment documentation or the disability examination that occurred within 16 months of the member being placed on the TDRL, and rating documentation.

(2)  If the documents reviewed are deemed sufficient and consistent with the requirements of Chapter 61, of Title 10, U.S.C., the Military Department may rely on that documentation to determine whether there has been a change in disability for which the Service member was temporarily retired.

(3)  The PEB will review the available evidence to determine if the documentation is sufficient to fully describe:

(a)  Each disability that the Secretary of the Military Department concerned determined was unfitting and may be permanent, but was unstable at the time the Service member was placed on the TDRL.

(b)  The status of the Service member's disabilities.

(c)  The progress of the Service member's disabilities and a suggested time frame (not to exceed 18 months) for the next examination.

(d)  Treatment and etiology, any new disability that was caused by, or directly related to, treating a disability for which the Service member was previously placed on the TDRL.

**b.  Disability Reexaminations.**

If the Military Department determines the available medical records and examination reports, including those available from VA, do not meet the requirements in Paragraph 9.2.a.(3), the Secretary of the Military Department concerned, in coordination with the Director, DHA, will comply with their responsibilities in Chapter 61 of Title 10, U.S.C. regarding the TDRL, including performing TDRL examinations that meet the requirements of Paragraphs 9.2.a.(3).

**c.  PEB Re-adjudication.**

(1)  The Military Department will request that the VA provide their most current rating and medical evidence upon which the most current rating was based for the condition for which the veteran was placed on the TDRL.  If, at the time of the request, the most current rating is not based on the most current version of the respective section of the VASRD, the Military Department will request the VA update the Service member's rating to reflect the current version of the VASRD.

(2)  The PEB will consider the future examination requirements set by the disability rating activity site as an indicator of stability when recommending stability determinations and case disposition to the Secretary of the Military Department concerned.

(3)  If the PEB decides to continue a veteran on temporary retirement for disability for which the disability rating activity site has not scheduled a future examination, the Military Department concerned will execute required TDRL examinations and ratings in accordance with Chapter 61 of Title 10, U.S.C.  Service members placed on the TDRL will be rated at the applicable VASRD rating in effect at the time of their periodic examination.

**d.  PEB Disposition.**

(1)  If the PEB finds the veteran fit for duty for the condition(s) for which they were placed on the TDRL, finds that the condition(s) is now stable, and the veteran wishes to return to active duty, the Military Department concerned will administer any additional examinations required to evaluate whether the veteran is otherwise fit for duty in accordance with the Military Department's regulations and this issuance.  The Military Department will administer other dispositions in accordance with this issuance.

(2)  If, upon re-evaluation while on the TDRL, the veteran is still found unfit due to the unstable condition for which they were placed on the TDRL, evaluation of other conditions will not be required.

### e.  Cases on VA Appeal.

When a Service member who was temporarily retired for disability has appealed a VA decision and the appeal resides with the Board of Veterans Appeals or Court of Appeals for Veterans' Claims, the Military Department concerned will obtain a copy of the most current rating and medical evidence available from the VA.

(1)  The Military Department will obtain and review the available DoD and VA medical treatment and disability examination documentation for the condition for which the Service member was placed on the TDRL.

(2)  If the PEB determines that the Service member requires an additional disability examination, the PEB will coordinate the actions needed to meet the statutory, 18-month examination requirement in accordance with Chapter 61 of Title 10, U.S.C.  Upon receipt of all necessary medical evidence, the PEB will adjudicate the case.

### f.  Administrative Finality.

During TDRL re-evaluation, as described in Paragraph 9.2.a., previous determinations concerning application of any presumption established by this issuance, LOD, misconduct, and whether a medical condition was permanent, service-incurred, or preexisting and aggravated will be considered administratively final for conditions for which the Service member was placed on the TDRL unless there is:

(1)  Evidence of fraud;

(2)  A change of diagnosis that warrants the application of accepted medical principles for a preexisting condition; or

(3)  A correction of error in favor of the Service member.

### g.  Required Determinations.

(1)  The Secretary of the Military Department concerned will determine whether the conditions for which the Service member was placed on the TDRL are unfitting and compensable.

(2)  When, upon re-evaluation, a temporarily retired veteran is determined fit for the conditions for which they were placed on the TDRL and has no other DoD compensable disabilities, they will be removed from the TDRL and may be separated in accordance with Section 1203 or 1206 of Title 10, U.S.C., whichever applies.

(3)  If found fit, the veteran may be returned to duty in accordance with Section 1211, Title 10, U.S.C.

### h.  Service Member Medical Records.

The Service member will provide copies of all their medical records (e.g., civilian, VA, and military) documenting treatment since the last TDRL re-evaluation to the examining physician for submission to the PEB.

### i.  Compensability of New Diagnoses.

Conditions newly diagnosed during temporary retirement will be compensable when both:

(1)  The condition is unfitting.

(2)  The condition was caused by, or directly related to, the treatment of a condition for which the Service member was previously placed on the TDRL.

### j.  Current Physical Examination.

Service members on the TDRL will not be entitled to permanent retirement or separation with disability severance pay without a current periodic physical examination acceptable to the Secretary of the Military Department concerned pursuant to Chapter 61 of Title 10, U.S.C.

### k.  Refusal or Failure to Report.

In accordance with Chapter 61 of Title 10, U.S.C., when a Service member on the TDRL refuses or fails to report for a required periodic physical examination or provide their medical records in accordance with Paragraph 9.2.h., disability retired pay will be suspended.

(1)  If the Service member later reports for the physical examination, retired pay will be resumed effective on the date the examination was performed.

(2)  If the Service member shows just cause for failure to report, disability retired pay may be paid retroactively for a period not to exceed 1 year before the date the physical examination was performed.

(3)  If the Service member does not undergo a periodic physical examination after disability retired pay has been suspended, they will be administratively removed from the TDRL on the third anniversary of the original placement on the list and separated without benefits.

### l.  Priority.

TDRL examinations, including hospitalization in connection with the conduct of the examination, will be furnished with the same priority given to active duty members.

### m.  Reports from Civilian Providers.

MTFs designated to conduct TDRL periodic physical examinations may use disability examination reports from any medical facility or physician.  The designated MTF will remain responsible for the adequacy of the examination and the completeness of the report.  The report must include the competency information specified in Paragraph 3.2.g.

# SECTION 10:  ADMINISTRATIVE DETERMINATIONS

## 10.1.  ADMINISTRATIVE DETERMINATIONS FOR PURPOSES OF EMPLOYMENT UNDER FEDERAL CIVIL SERVICE.

a.  The PEB will render a final decision on whether an injury or disease that makes the Service member unfit, or contributes to unfitness, was:

(1)  Incurred in combat with an enemy of the United States;

(2)  The result of armed conflict; or

(3)  Caused by an instrumentality of war during war.

b.  The determinations in Paragraphs 10.1.b.(1)-(3) pertain to whether a former Service member, later employed in Federal civil service, will be entitled to credit of military service toward a Federal civil service retirement in accordance with Sections 8332 and 8411 of Title 5, U.S.C., and Section 2082 of Title 50, U.S.C.; retention preference in accordance with Section 3502 of Title 5, U.S.C.; and credit of military service for civil service annual leave accrual in accordance with Section 6303 of Title 5, U.S.C.

### (1)  Armed Conflict.

The disease or injury was incurred in the LOD as a direct result of armed conflict in accordance with Sections 3502 and 6303 of Title 5, U.S.C.  The fact that a Service member may have incurred a disability during a period of war, in an area of armed conflict, or while participating in combat operations will not be sufficient to support this finding.  For purposes of creditable service, there must be a definite causal relationship between the armed conflict and the resulting unfitting disability.

### (2)  Instrumentality of War During a Period of War.

Pursuant to Sections 3502 and 6303 of Title 5, U.S.C., the injury or disease was caused by an instrumentality of war and incurred in the LOD during a period of war, as defined in Sections 101 and 1101 of Title 38, U.S.C.

### (3)  Creditable service.

For civil service annual leave accrual and retention preference, in accordance with Section 3502 and 6303 of Title 5, U.S.C., the applicable periods of war will be:

#### (a)  Vietnam Era.

<u>1</u>.  The period beginning August 5, 1964 and ending May 7, 1975.

<u>2</u>.  The period beginning February 28, 1961, and ending May 7, 1975, in the case of a veteran who served in the Republic of Vietnam during that period.

(b)  Persian Gulf War.

The period beginning August 2, 1990, through date to be prescribed by Presidential proclamation or law.

## 10.2.  DETERMINATION FOR FEDERAL TAX BENEFITS.

The disability evaluation will include a determination and supporting documentation on whether the Service member's disability compensation will be excluded from Federal gross income in accordance with Section 104 of Title 26, U.S.C.  For compensation to be excluded, the Service member must meet the criteria in Paragraphs 10.2.a. or 10.2.b.

### a.  Status.

On September 24, 1975, the individual was a Service member, including the RC, or was under binding written agreement to become a Service member.

(1)  A Service member who was a member of an armed force of another country on that date is entitled to the exclusion.

(2)  A Service member who was a contracted cadet of the Reserve Officers Training Corps on that date is entitled to the exclusion.

(3)  A Service member who separates from the Military Service after that date and incurs a disability during a subsequent enlistment is entitled to the exclusion.

### b.  Combat Related.

This standard covers injuries and diseases attributable to the special dangers associated with armed conflict or the preparation or training for armed conflict.  A disability is considered combat-related if it makes the Service member unfit or contributes to unfitness and the preponderance of evidence shows it was incurred either:

(1)  As a Direct Result of Armed Conflict.

The criteria are the same as those in Paragraph 10.1.b.

(2)  While Engaged in Hazardous Service.

Such service will include, but will not be limited to, aerial flight duty, parachute duty, demolition duty, experimental stress duty, and diving duty.

(3)  Under Conditions Simulating War.

In general, this will cover disabilities resulting from military training, such as war games, practice alerts, tactical exercises, airborne operations, and leadership reaction courses; grenade and live fire weapons practice; bayonet training; hand-to-hand combat training; rappelling; and

negotiation of combat confidence and obstacle courses.  It will not include physical training activities, such as calisthenics and jogging or formation running and supervised sports.

(4)  Caused by an Instrumentality of War.

(a)  Occurrence during a period of war will not be a requirement to qualify.  If the disability was incurred during any period of service as a result of wounds caused by a military weapon, accidents involving a military combat vehicle, injury or sickness caused by fumes, gases, or explosion of military ordnance, vehicles, or material, the criteria will be met.

(b)  There must be a direct causal relationship between the instrumentality of war and the disability.  For example, an injury resulting from a Service member falling on the deck of a ship while participating in a sports activity would not normally be considered an injury caused by an instrumentality of war (the ship) since the sports activity and not the ship caused the fall. The exception occurs if the operation of the ship caused the fall.

**c.  Non-Taxable Compensation.**

Compensation granted to Service members for service-connected combat-zone disability must be in accordance with DoDI 1340.25 and DoD 7000.14-R.

## 10.3.  RECOUPMENT OF BENEFITS.

In accordance with Sections 303a and 373 of Title 37, U.S.C., when a Service member is retired, separated, or dies as a result of a combat-related disability and has received a bonus, incentive pay, or similar benefit, the Secretary of the Military Department concerned will:

a.  Not require the Service member or their family to repay the unearned portion of any bonus, incentive pay, or similar benefit previously paid to the Service member.

b.  Require the payment to the Service member or their family the remainder of any bonus, incentive pay, or similar benefit that was not yet paid to the member, but to which they were entitled immediately before the death, retirement, or separation.

c.  Not apply Paragraphs 10.3.a. and 10.3.b. if the death or disability was the result of the Service member's misconduct.

## 10.4.  DETERMINATION FOR RC SERVICE MEMBERS WHO ARE DUAL STATUS TECHNICIANS AND DETERMINED UNFIT BY THE DES.

In accordance with Section 10216(g) of Title 10, U.S.C., the record of proceedings for RC Service members who are dual status technicians and determined unfit by the DES must include whether the member was determined unfit due to a combat-related disability.

# SECTION 11: FINAL DISPOSITION

## 11.1. FINAL DECISION AUTHORITY.

### a. Secretary of Defense.

Pursuant to Section 1214a of Title 10, U.S.C., the Secretary of Defense will be the final approval authority for any case determined by the Secretary of the Military Department concerned to warrant a Service member's administrative separation or denial of reenlistment based on a determination that the member is unsuitable for continued service due to the same medical condition(s) considered by a PEB that found the member fit for duty.

### b. USD(P&R).

After considering the ASD(HA)'s recommendation, the USD(P&R) will approve or disapprove the disability retirement of any general officer, flag officer, or medical officer being processed for, scheduled for, or receiving non-disability retirement for age or length of service.

### c. Secretaries of the Military Departments.

Except as stated in Paragraphs 11.1.a. and 11.1.b., the Secretary of the Military Department concerned may make all determinations in accordance with this issuance regarding unfitness, disability percentage, and entitlement to disability severance or retired pay.

## 11.2. GENERAL RULES REGARDING DISPOSITION.

### a. Retirement. (1) Except for Service members approved for permanent limited duty in accordance with Paragraph 11.3., any Service member on active duty or in the RC who is found to be unfit will be retired, if eligible, or separated. This general rule will not prevent disciplinary or other administrative separations from the Military Services.

(2) Selected Reserve members with at least 15 years, but no more than 20 years, of qualifying service pursuant to Section 12732 of Title 10, U.S.C. who are to be separated, may elect either separation for disability or early qualification for retired pay at age 60 pursuant to Sections 12731 and 12731b of Title 10, U.S.C. However, the separation or retirement for disability cannot be due to the member's intentional misconduct, willful failure to comply with standards and qualifications for retention, or willful neglect, and cannot have been incurred during a period of unauthorized absence or excess leave.

### b. Removal from the TDRL.

Service members determined fit as a result of TDRL re-evaluation will be processed in accordance with Paragraphs 11.b.(1)-(5).

#### (1) Appointment and/or Enlistment.

Upon the Service member's request, and provided they are otherwise eligible, the Secretary of the Military Department concerned will appoint or enlist them in the applicable grade and component in accordance with Section 1211 of Title 10, U.S.C.

(2)  Recall to Active Duty.

(a)  Regular Officers and Enlisted Members.

<u>1</u>.  Subject to their consent, regular officers and enlisted Service members will be recalled to duty, if they are otherwise eligible and were not required to be separated in accordance with applicable law or regulation at the time they were placed on the TDRL.

<u>2</u>.  Regular officers and enlisted Service members will be deemed medically qualified for those conditions on which a finding of fit was determined.

<u>3</u>.  New condition arising between the DES evaluation and recall must meet the respective Military Service's medical standards for retention.

(b)  RC.

Subject to their consent, RC officers, warrant officers, and enlisted Service members will be reappointed or reenlisted as an RC Service member for service in their respective RC in accordance with Section 1211 of Title 10, U.S.C.  RC Service members determined fit by TDRL re-evaluation will not be involuntarily assigned to the Individual Ready Reserve.

(3)  Separation.

In accordance with Section 1210(f) of Title 10, U.S.C., Service members required to be separated or retired for non-disability reasons at the time they were referred for disability evaluation and placed on the TDRL, if determined fit, will be separated or retired, as applicable.

(4)  Termination of TDRL Status.

TDRL status and retired pay will be terminated upon discharge, recall, reappointment, or reenlistment in accordance with Section 1211 of Title 10, U.S.C.

(5)  Right to Apply for VA Benefits.

A Service member may not be discharged or released from active duty due to a disability until they are counseled on their right to make a claim for compensation, pension, or hospitalization with the VA.

## 11.3. CONTINUANCE OF UNFIT SERVICE MEMBERS ON ACTIVE DUTY OR IN THE RESERVES.

a. Upon the Service member's request or the exercise of discretion based on the Military Department's needs, the Secretary of the Military Department concerned may:

(1) Consider transfer to another Military Service; or

(2) Allow unfit Service members to continue in a permanent limited-duty status, either active or reserve duty in the same or different rating or occupational specialty.

b. Such continuation may be justified by the Service member's service obligation or special skill and experience.

c. In cases where the Service member's retention on limited duty status is more than 1 year from the previous PEB results, or the unfitting condition has significantly changed during the period of limited duty status, subsequent DES processing of the Service member before separation from service may be required.

## 11.4. TRANSITION ASSISTANCE PROGRAM ELIGIBILITY.

AC and RC Service members who meet the Transition Assistance Program eligibility criteria in DoDI 1332.35 are eligible for Transition Assistance Program benefits.

## 11.5. DISPOSITIONS FOR UNFIT SERVICE MEMBERS.

### a. Permanent Disability Retirement.

If the Service member is unfit, retirement for a permanent and stable disability may be directed pursuant to Section 1201 or 1204 of Title 10, U.S.C. either:

(1) When the total disability rating is at least 30 percent in accordance with the VASRD and the Service member has fewer than 20 years of service, computed pursuant to Section 1208 of Title 10, U.S.C.; or

(2) When the Service member has at least 20 years of service, computed pursuant to Section 1208 of Title 10, U.S.C., and the disability is rated at less than 30 percent.

### b. Placement on the TDRL.

Retirement will be directed pursuant to Section 1202 or 1205 of Title 10, U.S.C., when the requirements for permanent disability retirement are met, except that one or more of the disabilities is not permanent and stable, except as outlined in Paragraph 9.1.b.

**c. Separation with Disability Severance Pay.**

(1) Criteria.

(a) Except as outlined in Paragraph 11.5.c.(3), separation may be directed pursuant to Section 1203 or 1206 of Title 10, U.S.C. when the Service member is unfit for a disability determined in accordance with this issuance and and:

<u>1</u>. The Service member has fewer than 20 years of service computed pursuant to Section 1208 of Title 10, U.S.C.

<u>2</u>. The disability is rated at less than 30 percent.

(b) Stability is not a factor for this disposition.

(2) Service Credit.

(a) Pursuant to Section 1212 of Title 10, U.S.C., a part of a year of active service that is 6 months or more will be counted as a whole year, and a part of a year that is fewer than 6 months will be disregarded.

(b) The Secretary of the Military Department concerned will credit members separated from the Military Services for a disability with at least 3 years of service.

(c) The Secretary of the Military Department concerned will credit at least 6 years of service to members separated from the Military Services for a disability incurred:

<u>1</u>. In the LOD in a designated combat zone tax exclusion area; or

<u>2</u>. During the performance of duty in combat-related operations consistent with the criteria in Paragraph 10.2.b.

(d) For the purposes of calculating active service for disability severance pay, the Secretary of the Military Department concerned will consider disabilities to be incurred in combat-related operations when they are in accordance with Paragraph 10.2.b.

(3) Transfer to Retired Reserve.

(a) Pursuant to Section 1209 of Title 10, U.S.C., RC Service members who have completed at least 20 qualifying years of Reserve service and who would otherwise be qualified for retirement may forfeit disability severance pay and elect to transfer to an inactive status list to receive non-disability retired pay at age 60. The Secretary of the Military Department concerned may offer the member the option to transfer to the Retired Reserve.

(b) When disability severance pay is accepted, the Service member forfeits all rights to receive retired pay at age 60 pursuant to Chapter 1223 of Title 10, U.S.C.

(4)  Selected Reserve Early Qualification for Retired Pay.

RC Service members with at least 15 years and less than 20 years of qualifying service, who would otherwise be qualified for non-regular retirement, may waive disability disposition and request early qualification for retired pay in accordance with Section 12731b of Title 10, U.S.C.

### d.  Separation without Entitlement to Benefits.

Discharge will be directed in accordance with Section 1207 of Title 10, U.S.C. when the Service member:

(1)  Is unfit for a disability incurred as a result of intentional misconduct or willful neglect or during a period of unauthorized absence;

(2)  Has an unfitting condition that existed before service and was not aggravated by service; or

(3)  Is administratively removed from the TDRL in accordance with Paragraph 9.2.k.(3).

### e.  Discharge Pursuant to Other Than Chapter 61 of Title 10, U.S.C.

An unfit Service member will be directed for discharge in accordance with Title 10, U.S.C. and DoDIs 1332.14 and 1332.30 when they are not entitled to disability compensation due to the circumstances when either:

(1)  The Service member will not be entitled to disability compensation but may be entitled to benefits in accordance with Section 1174 of Title 10, U.S.C.; or

(2)  The medical condition of an RC Service member is non-duty related and it disqualifies the member for retention in the RC.

### f.  Revert with Disability Benefits.

Revert with disability benefits will be used to return a retiree recalled to active duty who was previously retired for disability and determined unfit during the period of recall.  For Service members previously retired for age or years of service, the compensable percentage of disability must be at least 30 percent to receive disability benefits.

*DoDI 1332.18, November 10, 2022*

# GLOSSARY

## G.1. ACRONYMS.

| ACRONYM | MEANING |
|---|---|
| AC | Active Component |
| ASD(HA) | Assistant Secretary of Defense for Health Affairs |
| ASD(M&RA) | Assistant Secretary of Defense for Manpower and Reserve Affairs |
| CFR | Code of Federal Regulations |
| DAC | Disability Advisory Council |
| DASD(HSP&O) | Deputy Assistant Secretary of Defense for Health Services Policy and Oversight |
| DHA | Defense Health Agency |
| DES | Disability Evaluation System |
| DoDD | DoD directive |
| DoDI | DoD instruction |
| DoDM | DoD manual |
| FPEB | formal physical evaluation board |
| IDES | Integrated Disability Evaluation System |
| IDT | inactive duty training |
| IPEB | informal physical evaluation board |
| LDES | Legacy Disability Evaluation System |
| LOD | line of duty |
| MEB | medical evaluation board |
| MDB | multi-disciplinary briefing |
| MSC | Military Services coordinator |
| MTF | medical treatment facility |
| NAD | non-active duty |
| PEB | physical evaluation board |
| PEBLO | physical evaluation board liaison officer |
| RC | Reserve Component |
| TDRL | temporary disability retired list |
| U.S.C. | United States Code |
| USD(P&R) | Under Secretary of Defense for Personnel and Readiness |

*DoDI 1332.18, November 10, 2022*

| ACRONYM | MEANING |
|---------|---------|
| VA | Department of Veterans Affairs |
| VASRD | Department of Veterans Affairs Schedule for Rating Disabilities |

## G.2.  DEFINITIONS.

These terms and their definitions are for the purpose of this issuance.

| TERM | DEFINITION |
|------|------------|
| **accepted medical principles** | Fundamental deductions, consistent with medical facts, that are so reasonable and logical as to create a virtual certainty that they are correct.  The Service PEB will state with specificity the basis(es) for the conclusion. |
| **active duty** | Defined in the DoD Dictionary of Military and Associated Terms. |
| **acute** | Characterized by sharpness or severity. |
| **armed conflict** | A war, expedition, occupation of an area or territory, battle, skirmish, raid, invasion, rebellion, insurrection, guerilla action, riot, or any other action in which Service members are engaged with a hostile or belligerent nation, faction, force, or terrorist.  Armed conflict may also include such situations as incidents involving a member while interned as a prisoner of war or while detained against their will in the custody of a hostile or belligerent force or while escaping or attempting to escape from such confinement, prisoner-of-war, or detained status. |
| **claims agents** | An individual recognized by the Secretary of the VA as an agent for the preparation, presentation, and prosecution of claims under applicable laws administered by the Secretary of the VA. |
| **clear and unmistakable evidence** | Undebatable information that the condition existed before military service and was not aggravated by military service (i.e., evidence that cannot be misinterpreted and misunderstood).  In other words, reasonable minds could only conclude that the condition existed prior to military service from a review of all of the evidence in the record. |
| **compensable disability** | A medical condition that is determined to be unfitting due to disability and that meets the statutory criteria of Chapter 61 of Title 10, U.S.C. for entitlement to disability retired or severance pay. |

| TERM | DEFINITION |
|---|---|
| **competency board** | A board consisting of at least three medical officers or physicians (including one psychiatrist) convened to determine whether a member is competent (capable of making a rational decision regarding his or her affairs). |
| **DAC** | A DoD-only group that evaluates DES functions, identifies best practices, addresses inconsistencies in policy, discusses inconsistencies in law, addresses problems and issues in the administration of the DES, and provides a forum to develop and plan improvements. |
| **day** | Calendar day. |
| **DES** | The DoD mechanism for determining fitness for duty, separation, or retirement of Service members because of disability in accordance with Chapter 61 of Title 10, U.S.C. |
| **disability** | A medical impairment, mental disease, or physical defect which is severe enough to interfere with the Service member's ability to adequately perform his or her duties, regardless of assignment or geographic location. A medical impairment, mental disease, or physical defect standing alone does not constitute a disability. The term includes mental disease, but not such inherent defects as developmental or behavioral disorders. |
| **election** | The Service member's decision to accept or appeal the MEB or PEB findings. |
| **elective surgery** | Surgery that is not essential, especially surgery to correct a condition that is not life-threatening; surgery that is not required for survival. |
| **final reviewing authority** | The final approving authority for the findings and recommendations of the PEB. |
| **grave** | Very serious:  dangerous to life-used of an illness or its prospects. |
| **IDES** | The joint DoD/VA process by which DoD determines whether ill or injured Service members are fit for continued military service, and the DoD and VA determine appropriate benefits for Service members who are separated or retired for disability. |
| **instrumentality of war** | A vehicle, vessel, or device designed primarily for military service and in use by a military service at the time of the occurrence or injury. |

| TERM | DEFINITION |
|------|------------|
| **LDES** | A DES process by which DoD determines whether eligible wounded, ill, or injured Service members are fit for continued military service and determines appropriate benefits for Service members who are separated or retired for disability.  Service members processed through the LDES may also apply for veterans' disability benefits through the VA Benefits Delivery at Discharge Program or upon attaining veteran status. |
| **LOD determination** | An inquiry used to determine whether a Service member incurred an injury or disease while in a duty status; whether it was aggravated by military duty; and whether incurrence or aggravation was due to the Service member's intentional misconduct or willful negligence. |
| **MDB** | A briefing that consists of information from, at a minimum, PEBLOs, MSCs, and government legal counsel, and establishes Service member expectations; prepares Service members for each stage of the DES process; and informs Service members of what is expected of them during the DES process. |
| **MEB** | For Service members entering the DES, the MEB conducts the medical evaluation on conditions that potentially affect the Service member's fitness for duty.  The MEB documents the Service member's medical condition(s) and history with an MEB narrative summary as part of an MEB packet. |
| **medical impairment condition** | Any disease or residual of an injury that results in a lessening or weakening of the capacity of the body or its parts to perform normally, according to accepted medical principles. |
| **NAD** | Service members not on active duty orders, to include Service members on active duty for 30 days or less or on inactive-duty training. |
| **non-duty-related medical conditions** | Conditions that were neither incurred nor aggravated while the AC or RC Service member was in a qualified military duty status. |
| **office, grade, rank, or rating** | **office.**  A position of duty, trust, and authority to which an individual is appointed.<br>**grade.**  A step or degree in a graduated scale of office or military rank that is established and designated as a grade by law or regulation.<br>**rank.**  The order of precedence among members of the Military Services. |

*DoDI 1332.18, November 10, 2022*

| TERM | DEFINITION |
|------|-----------|
| | **rating.** The name (e.g., "Boatswain's Mate") prescribed for Service members of a Military Service in an occupational field. |
| **PEB findings** | The PEB's record of proceedings, which includes the fitness decision, code and percentage rating for each unfitting and compensable condition, stability and permanency of the disability, and administrative determinations. |
| **PEBLO** | The non-medical case manager who provides information, assistance, and case status updates to the affected Service member throughout the DES process. |
| **period of active service** | A period of time in which a Service member serves on active duty. |
| **permanent limited duty** | The continuation on active duty or in the Ready Reserve in a limited-duty capacity of a Service member determined unfit because of disability evaluation or medical disqualification; however, the Service member is entitled to reconsideration for separation or retirement based on their previous PEB results. |
| **personal representative** | A person designated to make DES decisions for the Service member. This could be a court-appointed guardian or a representative in accordance with DoDI 6025.18. |
| **presumption** | An inference of the truth of a proposition or fact reached through a process of reasoning and based on the existence of other facts. Matters that are presumed need no proof to support them, but may be rebutted by evidence to the contrary. |
| **prior service** | When a Service member has previous military service and reenlists in a Regular or Reserve Component of a Military Service after a break in active duty or reserve duty. |
| **proximate result** | A permanent disability the result of, arising from, or connected with active duty, annual training, active duty for training, or IDT, to include travel to and from such duty or remaining overnight between successive periods of IDT. The proximate result statutory criterion for entitlement to disability compensation under Chapter 61 of Title 10, U.S.C. does not apply to applicable RC Service members being retired for disability as of September 24, 1996, or being separated with disability severance pay as of October 5, 1999. |
| **qualified duty status** | Defined in DoDI 1241.01. |

| TERM | DEFINITION |
|---|---|
| **retention control point** | The number of years a Service member may serve at a particular rank. |
| **retention standards** | Guidelines that establish medical conditions or physical defects that could render a Service member unfit for further military service and may be cause for referral of the Service member into the DES. |
| **service aggravation** | The permanent worsening of a pre-Service medical condition over and above the natural progression of the condition. |
| **service treatment record** | A chronological record documenting the medical care, dental care and treatment received primarily outside of a hospital (outpatient) but may contain a synopsis of any inpatient hospital care and behavioral health treatment.  The chronologic record of medical, dental, and mental health care received by Service members during the course of their military career.  It includes documentation of all outpatient appointments (i.e., without overnight admittance to a hospital, clinic, or treatment facility), as well as summaries of any inpatient care (discharge summaries) and care received while in a military theater of operations.  The service treatment record is the official record used to support continuity of clinical care and the administrative, business-related, and evidentiary needs of the DoD, the VA, and the individual. |

# REFERENCES

Code of Federal Regulations, Title 38

Code of Federal Regulations, Title 45, Part 164

DoD 5400.11-R, "Department of Defense Privacy Program," May 14, 2007

DoD 7000.14-R "Department of Defense Financial Management Regulations (FMRs)," current edition

DoD Directive 5124.02, "Under Secretary of Defense for Personnel and Readiness (USD(P&R))," June 23, 2008

DoD Directive 5136.13, "Defense Health Agency, (DHA)," September 30, 2013

DoD Instruction 1000.30, "Reduction of Social Security Number (SSN) Use Within DoD," August 1, 2012, as amended

DoD Instruction 1241.01, "Reserve Component (RC) Line of Duty Determination for Medical and Dental Treatments and Incapacitation Pay Entitlements," April 19, 2016

DoD Instruction 1332.14, "Enlisted Administrative Separations," January 27, 2014, as amended

DoD Instruction 1332.30, "Commissioned Officer Administrative Separations," May 11, 2018, as amended

DoD Instruction 1332.35, "Transition Assistance Program (TAP) for Military Personnel," September 26, 2019

DoD Instruction 1340.25, "Combat Zone Tax Exclusion (CZTE)," September 28, 2010

DoD Instruction 5400.11, "DoD Privacy and Civil Liberties Programs," January 29, 2019, as amended

DoD Instruction 5400.16, "DoD Privacy Impact Assessment (PIA) Guidance," July 14, 2015, as amended

DoD Instruction 6025.18, "Health Insurance Portability and Accountability Act (HIPAA) Privacy Rule Compliance in DoD Health Care Programs," March 13, 2019

DoD Instruction 6040.42, "Management Standards for Medical Coding of DoD Health Records," June 8, 2016

DoD Instruction 6130.03, Volume 2, "Medical Standards for Military Service:  Retention," September 4, 2020

DoD Manual 1332.18, Volume 1, "Disability Evaluation System (DES) Manual: General Information and Legacy Disability Evaluation System (LDES) Time Standards," August 5, 2014, as amended

DoD Manual 1332.18, Volume 2, "Disability Evaluation System (DES) Manual: Integrated Disability Evaluation System (IDES)," August 5, 2014, as amended

DoD Manual 5400.11, Volume 2, "DoD Privacy and Civil Liberties Programs:  Breach Preparedness and Response Plan," May 6, 2021

Joint Travel Regulations, "Uniformed Service Members and DoD Civilian Employees," current edition

Memorandum of Agreement Between the Department of Defense and Department of Veterans Affairs, January 16, 2009

*DoDI 1332.18, November 10, 2022*

Memorandum of Agreement Between the Department of Defense and Department of Veterans Affairs, June 16, 2010

U.S. Department of Veterans Affairs M21-1, "Adjudication Procedures Manual," September 3, 2021

Office of the Chairman of the Joint Chiefs of Staff, "DoD Dictionary of Military and Associated Terms," current edition

Public Law 110-181, Section 1612, "National Defense Authorization Act for Fiscal Year 2008," January 28, 2008

Public Law 117-81, Section 524, "National Defense Authorization Act for Fiscal Year 2022," December 27, 2021

United States Code, Title 5

United States Code, Title 10

United States Code, Title 26, Section 104

United States Code, Title 32, Section 115

United States Code, Title 37

United States Code, Title 38

United States Code, Title 50, Section 2082