# EXHIBIT Z

# PUBLIC AFFAIRS GUIDANCE:
## DEPARTMENT OF DEFENSE IMPLEMENTATION OF EXECUTIVE ORDER PRIORITIZING MILITARY EXCELLENCE AND READINESS

**Background**:
On January 27, 2025, the President signed Executive Order 14183, *Prioritizing Military Excellence and Readiness*. The executive order states that "expressing a false 'gender identity' divergent from an individual's sex cannot satisfy the rigorous standards necessary for Military Service." On February 7, 2025, the Secretary of Defense signed a memorandum that paused all new accessions and medical procedures for individuals with a current diagnosis or history of gender dysphoria and directed the Under Secretary of Defense for Personnel and Readiness (USD(P&R)) to provide additional policy guidance to senior Department of Defense (DoD) leadership on implementation. That guidance was signed on February 26, 2025.

On February 26, 2025, USD(P&R) signed a memorandum that provides supplemental policy guidance and establishes a reporting mechanism to ensure Department compliance. The policy guidance in this memorandum is effective immediately upon signature and supersedes any conflicting policy guidance in Department issuances or other policy guidance and memoranda.
- Accessions: Applicants for military service are disqualified if they have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria or have a history of cross-sex hormone therapy or sex reassignment or genital reconstruction surgery as a treatment for gender dysphoria or in pursuit of a sex transition.
    - Applicants for military service may be considered for a waiver on a case-by-case basis, provided there is a compelling government interest in accessing the applicant that directly supports warfighting capabilities.
    - The applicant must be willing and able to adhere to all applicable standards, including the standards associated with the applicant's sex.
- Retention: Service members are disqualified from military service if they have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria or have a history of cross-sex hormone therapy or sex reassignment or genital reconstruction surgery as a treatment for gender dysphoria or in pursuit of a sex transition.
    - Service members may be retained and considered for a waiver on a case-by-case basis, provided there is a compelling government interest in retaining the Service member that directly supports warfighting capabilities and the Service member concerned meets the following criteria:

CUI//NOT FOR RELEASE

1

- - The Service member demonstrates 36 consecutive months of stability in the Service member's sex without clinically significant distress or impairment in social, occupational, or other important areas of functioning; and
  - The Service member demonstrates that he or she has never attempted to transition to any sex other than their sex; and
  - The Service member is willing and able to adhere to all applicable standards, including the standards associated with the Service member's sex.
- Service members being processed for separation in accordance with this policy will be afforded all statutorily required rights and benefits.
- Service members who elect to separate voluntarily in the 30 days following signature of this guidance may be eligible for voluntary separation pay in accordance with applicable law and Department policy. Those eligible for voluntary separation pay will be paid at a rate that is twice the amount the Service member would have been eligible for in involuntary separation pay.
- Service members separated involuntarily may be provided full involuntary separation pay in accordance with applicable law and Department policy.
- All unscheduled, scheduled, or planned surgical procedures associated with facilitating sex reassignment for Service members diagnosed with gender dysphoria are cancelled.
- Cross-sex hormone therapy for Service members who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria that began prior to the date of this memorandum may, if recommended by a DoD health care provider in order to prevent further complications, be continued until separation is complete.

**Public Affairs Posture**: Active.

**Key Audiences**:
- Service members and their families
- Potential recruits and their families
- DoD health care providers
- Congress
- Military and Veteran Support Organizations
- Advocacy Groups

**Topline Messages**:
- Joining the military is open to all persons who can meet the high standards for military service and readiness without special accommodation.

- Individuals wanting to join the military service, who express a false "gender identity" divergent from an individual's sex distracts from the mission and is inconsistent with the humility and selflessness required of a Service member.
- Service members and applicants for military service who have a current diagnosis or history of, or exhibit symptom consistent with, gender dysphoria is incompatible with military service and are no longer eligible for military service.
- Service members who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria will be processed for separation from military service.
- Separated Service members will receive an honorable characterization of service except where the Service member's record otherwise warrants a lower characterization.

**Talking Points**:
- No funds from the Department of Defense will be used to pay for Service members' unscheduled, scheduled, or planned medical procedures associated with facilitating sex reassignment surgery, genital reconstruction surgery as treatment for gender dysphoria, or newly initiated cross-sex hormone therapy.
- All unscheduled, scheduled, or planned surgical procedures associated with facilitating sex reassignment for Service members diagnosed with gender dysphoria are cancelled.
- Where a standard, requirement, or policy depends on whether the individual is a male or female, such as medical fitness for duty, physical fitness and body fat standards; berthing, bathroom, and shower facilities; and uniform and grooming standards, all persons will be subject to the standard, requirement, or policy associated with their sex.
- Pronoun usage when referring to Service members must reflect a Service member's sex. In keeping with good order and discipline, salutations, such as addressing a senior officer as "Sir" or "Ma'am", must also reflect an individual's sex.
- Service members being processed for separation in accordance with this policy will be afforded all statutorily required rights and benefits.

**Approved Questions and Answers for Media and Congressional Requests**:

**SECDEF and USD(P&R) Memoranda**
**Q: What did the Secretary of Defense's February 7, 2025 memorandum do?**
**A:** The Secretary of Defense memorandum paused all new accessions and most medical procedures for individuals with a current diagnosis or history of gender dysphoria and directed the USD(P&R) to provide additional policy guidance to the Military Departments on implementation.

**Q: What did the USD(P&R) February 26, 2025 memorandum do?**
**A:** The USD(P&R) memorandum provides policy guidance addressing issues such as accession, retention, and separation of Service members and applicants for military service who have been diagnosed with gender dysphoria, as well as provides guidance on the implementation of adhering to the standards associated with one's sex.

The policy guidance directs that Service members who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria and any Service member or applicant for military service who has a history of cross-sex hormone therapy or sex reassignment or genital reconstruction surgery as treatment for gender dysphoria, in pursuit of a sex transition, will be processed for administrative separation. It also directs that similarly situated applicants are ineligible for military service.

The memorandum also directs the update of applicable policies addressing accession and retention standards as well as the cancellation of policies and memoranda that addressed Service members serving with a diagnosis of gender dysphoria.

**Definitions**
**Q: How does the Department define gender dysphoria?**
**A:** Gender dysphoria refers to a marked incongruence between one's experienced or expressed gender and assigned gender of at least six months' duration, as manifested by conditions associated with clinically significant distress or impairment in social, occupational, or other important areas of functioning.

**Q: How does the Department define "gender identity?"**
**A:** Consistent with Executive Order 14168, *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, the Department defines 'gender identity' as "a fully internal and subjective sense of self, disconnected from biological reality and sex and existing on an infinite continuum, that does not provide a meaningful basis for identification and cannot be recognized as a replacement for sex."

**Q: How does the Department define sex?**
**A:** Consistent with Executive Order 14168, *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, the Department defines 'sex' as "an individual's immutable biological classification as either male or female."

**Applicability**
**Q: Who exactly is impacted by this policy?**
**A:** Any Service member or applicant for military service who has a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria and any Service

member or applicant for military service who has a history of cross-sex hormone therapy or sex reassignment or genital reconstruction surgery as treatment for gender dysphoria, in pursuit of a sex transition.

**Q: How many Service members are impacted by this policy?**
**A:** We do not have an exact number of active-duty Service members diagnosed with gender dysphoria.

**Q: Is there a breakdown of individuals by service, gender, race, and occupation (MOS)?**
**A:** We do not have that data readily available.

**Q: How will the Department identify Service members who are impacted by this policy?**
**A:** The Department will provide supplemental guidance which will address the identification of Service members diagnosed with gender dysphoria.

## Accessions

**Q: If an individual was diagnosed with gender dysphoria as a child, are they disqualified from military service?**
**A:** Yes. However, applicants may be considered for a waiver on a case-by-case basis, provided there is a compelling government interest in accessing the applicant that directly supports warfighting capabilities. The applicant must be willing and able to adhere to all applicable standards, including the standards associated with the applicant's sex.

**Q: Will offers of admission to Military Service Academies or ROTC programs be rescinded?**
**A:** Yes, offers of admission to a Military Service Academy or the Reserve Officers' Training Corps to individuals disqualified under these policies will be rescinded. Waivers will be considered on a case-by-case basis, provided there is a compelling government interest in accessing the applicant that directly supports warfighting capabilities. The applicant must be willing and able to adhere to all applicable standards, including the standards associated with the applicant's sex.

**Q: Will cadets or midshipmen be required to reimburse the government for their education?**
**A:** No. Absent any other basis for separation or disenrollment, such individuals will not be subject to monetary repayment of educational benefits (i.e., recoupment) nor subject to completion of a military service obligation.

### Retention

**Q: Will Service members currently serving with a diagnosis of gender dysphoria be allowed to continue to serve?**
A: No. Service members who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria and any Service members who have a history of cross-sex hormone therapy or sex reassignment or genital reconstruction surgery as treatment for gender dysphoria, in pursuit of a sex transition, will be processed for administrative separation.

**Q: Will any waivers be permitted?**
A: Service members may be considered for a waiver on a case-by-case basis, provided there is a compelling government interest in retaining the Service member that directly supports warfighting capabilities and the Service member concerned meets the following criteria: (1) the Service member demonstrates 36 consecutive months of stability in the Service member's sex without clinically significant distress or impairment in social, occupational, or other important areas of functioning; (2) the Service member demonstrates that he or she has never attempted to transition to any sex other than their sex; and (3) the Service member is willing and able to adhere to all applicable standards, including the standards associated with the Service member's sex.

### Separations

**Q: Will Service members diagnosed with gender dysphoria be honorably discharged?**
A: Yes. Characterization of service will be honorable except where the Service member's record otherwise warrants a lower characterization.

**Q: Are Service members separated under this policy eligible for separation pay?**
A: Yes. Service members who elect to voluntarily separate within 30 days following the signature of this guidance may be eligible for voluntary separation pay in accordance with applicable law and Department policy. Service members eligible for voluntary separation pay will be paid at a rate that is twice the amount the Service member would have been eligible for in involuntary separation pay.

Service members who choose to be involuntarily separated may be provided full involuntary separation pay in accordance with applicable law and Department policy.

| Common Example | Involuntary Sep. Pay | Voluntary Sep. Pay |
|---|---|---|
| E-5 w/10 YOS | $50,814 | $101,628 |
| O-3 w/7 YOS | $62,612 | $125,224 |

**Q: Will Service members being separated under this policy be afforded a separation board?**

**A:** All enlisted Service members who are involuntarily separated pursuant to this policy will, if desired by the Service member, be afforded an administrative separation board. All officers who are involuntarily separated pursuant to this policy will be afforded a Board of Inquiry, if desired by the officer, in accordance with applicable law.

**Q: Will Service members being separated under this policy be eligible for the Temporary Early Retirement Authority?**
**A:** Yes. Service members with over 18 but less than 20 years of total active-duty service are eligible for early retirement under the Temporary Early Retirement Authority in accordance with Department policy.

**Q: Will Service member being separated under this policy remain eligible for TRICARE benefits?**
**A:** Yes. Eligible Service members (including active-duty Service members and Reserve or National Guard members when on active duty orders for 30 or more consecutive days) who are processed for separation pursuant to this policy, and their covered dependents, remain eligible for TRICARE for 180 days in accordance with applicable law.

**Q: Are Service members separated under this policy eligible to participate in the Transition Assistance Program?**
**A:** Yes. Service members, whether separated voluntarily or involuntarily are eligible for the Transition Assistance Program.

**Q: Will Service members separated under this policy have to repay any bonuses received prior to their separation?**
**A:** Service members choosing to voluntarily separate will not have to repay any bonuses received prior to the date of this memorandum, even if they have a remaining service obligation, pursuant to applicable law.

The Military Departments may recoup any bonuses received prior to the date of this memorandum for Service members choosing to be involuntarily separated.

**Q: Will the Secretaries of the Military Departments waive any remaining military service obligations?**
**A:** Yes. The Secretaries of the Military Departments will waive any remaining military service obligation for Service members who are separated pursuant to this policy.

**Q: If Service members are required to serve in their sex, will Service members diagnosed with gender dysphoria who have already had sex reassignment surgery be required to serve in their sex?**

**A:** The Secretaries of the Military Departments may place a Service member being separated under this policy in an administrative absence status until their separation is complete. Service members in this status will be designated as non-deployable.

**Q: Will the records for Service members being separated under this policy be updated to reflect their sex?**
**A:** Yes. All military records, regardless of whether a Service member is being separated under this policy, will reflect the Service member's sex.

**Q: Will the records for Service members being separated under this policy be updated to reflect their name at birth?**
**A:** All military records will reflect the Service member's legal name.

<u>Medical Providers</u>
**Q: Will Service members being separated under this policy be allowed to continue hormone therapy?**
**A:** Cross-sex hormone therapy for Service members who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria that began prior to the date of this guidance may, if recommended by a DoD health care provider to prevent further complications, be continued until separation is complete.

<u>Decision-Making</u>
**Q: The Secretary of Defense has said that the focus needs to be on "lethality, meritocracy, accountability, standards, and readiness." Specifically focusing on 'meritocracy,' will consideration be given to high performing transgender Service members?**
**A:** While these individuals have volunteered to serve our country and will be treated with dignity and respect, expressing a false "gender identity" divergent from an individual's sex cannot satisfy the rigorous standards necessary for military service.

**Q: Transgender Service members have been serving without exception since 2021 and were previously 'grandfathered' under the previous Trump administration policies. Why are all transgender Service members being targeted for separation now?**
**A:** While these individuals have volunteered to serve our country and will be treated with dignity and respect, express a false "gender identity" divergent from an individual's sex cannot satisfy the rigorous standards necessary for military service. Further, the costs associated with their health care, coupled with the medical and readiness risks associated with their diagnosis and associated treatment that can limit their deployability, make continued service by such individuals incompatible with the Department's rigorous standards and national security imperative to deliver a ready, deployable force.

CUI//NOT FOR RELEASE

**Q: Did the Department consider reinstating the Mattis policy regarding a Service member diagnosed with gender dysphoria and allow them to be grandfathered?**
**A:** While these individuals have volunteered to serve our country and will be treated with dignity and respect, expressing a false "gender identity" divergent from an individual's sex cannot satisfy the rigorous standards necessary for military service.

**Q: Does this policy establish a de facto "Don't Ask, Don't Tell" for Service members diagnosed with gender dysphoria?**
**A:** No. This policy applies to Service members with a current diagnosis or history of or exhibit symptoms consistent with gender dysphoria. A history of cross-sex hormone therapy, sex reassignment, or genital reconstruction surgery as treatment for gender dysphoria in pursuit of a sex transition is disqualifying.

**Q: Will this policy have a negative impact on readiness, recruiting, and retention?**
**A:**
*Readiness:* This policy will remove Service members who are unable to satisfy the rigorous standards required for military service.

*Recruiting:* There is no direct evidence to suggest that recruiting will be impacted by this policy.

*Retention:* There is no direct evidence to suggest that this policy will have an impact on retention beyond the impacted individuals.

**Q: How is this legal? Do these actions violate Service members human rights?**
**A:** These actions are fully consistent with federal law.

**Q: Can you comment on the ongoing litigation?**
**A:** The Department does not comment on ongoing litigation. We respectfully refer you to the Department of Justice.

**References**:
For more information on the Departments actions:
https://www.dcpas.osd.mil/hottopics/executive-orders-and-presidential-memorandums

https://www.defense.gov/Spotlights/Guidance-for-Federal-Personnel-and-Readiness-Policies/

**Resources**:
https://www.whitehouse.gov/presidential-actions/

https://www.whitehouse.gov/fact-sheets/

CUI//NOT FOR RELEASE

9

FINAL OSDPA 20250228