**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NICOLAS TALBOTT *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:25-cv-00240-ACR |
| | ) | |
| UNITED STATES OF AMERICA *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER AND
INCORPORATED MEMORANDUM OF LAW**

Pursuant to Federal Rule of Civil Procedure 65 and Local Civil Rule 65.1, Plaintiffs Jamie Hash, Vera Wolf, Hunter Marquez, Ashley Davis, and Samuel Ahearn (the "Moving Plaintiffs") hereby move the Court to issue a temporary restraining order enjoining the enforcement of President Trump's executive order, titled *Prioritizing Military Excellence and Readiness*, Exec. Order No. 14,183, 90 Fed. Reg. 8757 (the "Order"); the Department of Defense memorandum issued on February 26, 2025, titled "Additional Guidance on Prioritizing Military Excellence and Readiness, ECF No. 63-1 (the "Implementing Guidance"); and any other memoranda, guidance, policies, or actions issued pursuant to the Order or the Implementing Guidance (collectively, the "Military Ban"), to preserve the status quo pending resolution of Defendants' Motions to Dissolve the Preliminary Injunction, Extend the Stay, or Alternatively,for a Stay Pending Appeal, ECF No. 91 ("Defendants' Motions").

For the reasons set forth herein, the Moving Plaintiffs request that the Court issue a temporary restraining order prohibiting Defendants from enforcing the Military Ban against them with respect to the specific adverse actions described below until this Court rules on the merits of

Defendants' Motions. Specifically, the Moving Plaintiffs request that the Court order that (1) Plaintiffs Jamie Hash, Vera Wolf, Hunter Marquez, and Ashley Davis be returned to active duty from administrative absence; (2) Plaintiff Jamie Hash be permitted to attend the seminar class she was attending prior to her removal from it at the Georgetown Government Affairs Institute; (3) Plaintiff Vera Wolf's status be added back onto the schedule; (4) Plaintiff Hunter Marquez be permitted to join other cadets at the United States Air Force Academy to complete his studies in the ordinary course and may not be excluded from training exercises; (5) Plaintiff Samuel Ahearn be removed from the Talent Management Group and, upon demonstration of his completion of requirements for graduation from Officer Candidate School, be permitted to graduate; and (6) none of the Plaintiffs named herein be required to serve in their birth sex while the order is in effect.

The Moving Plaintiffs are suffering immediate and irreparable harm as a result of specific applications of the Military Ban, which necessitates this application. Pursuant to Local Civil Rule 65.1(a), Plaintiffs' counsel hereby certify that they have notified Defendants' counsel regarding this motion.  Defendants oppose the relief sought herein. A proposed order accompanies this motion.

## BACKGROUND

### A.    The Executive Order

On January 27, 2025, President Trump issued the Order revoking "all policies, directives, and guidance issued pursuant to" the Biden Administration's order that established the non-discriminatory policy and directing the Department of Defense ("DOD") "to take all necessary steps to implement the revocations" to exclude transgender people from military service.  Order § 5.  The Order also directs the Secretary of Defense to adopt instead a policy that transgender status is incompatible with "high standards for troop readiness, lethality, cohesion, honesty, humility, uniformity, and integrity."  Order § 1.  Under the Order, no transgender individuals may

enlist or continue serving in the military. On February 26, 2025, DOD issued the Implementing Guidance carrying out the direction of the President in the Order. ECF No. 63-1 at 1. This Implementing Guidance set a 30-day period for the military to identify transgender people in service and a subsequent 30-day period for the initiation of separation proceedings. *Id*. at 5. The Implementing Guidance and a host of related guidance issued by various military departments requires transgender service members to serve in their birth sex and empowers command to place transgender service members in an administrative absence status until their separation is complete. *Id*. at 10.

### B.    Impact on the Moving Plaintiffs

Plaintiffs Jamie Hash, Vera Wolf, Hunter Marquez, Ashley Davis, and Samuel Ahearn are transgender service members who are currently being subjected to specific adverse treatment as a result of the Military Ban, which are subjecting them to immediate, serious, and irreparable harms. Absent emergency injunctive relief, these Plaintiffs will be irreparably harmed. Plaintiffs Jamie Hash, Vera Wolf, and Ashley Davis have been placed on administrative absence, depriving them of critical, time-sensitive development opportunities that will materially impact their careers. Third Supp. Decl.of Jamie Hash ("Hash Decl.") ¶¶ 6–10; Supp. Decl. of Vera Wolf ("Wolf Decl.") ¶¶ 2–12; Decl. of Ashley Davis ("Davis Decl.") ¶¶ 9-17.

In particular, Master Sergeant Hash has been placed on administrative absence and barred from enrolling in her current Georgetown Government Affairs Institute ("GAI") course, which represents the final academic requirement needed for her to obtain a graduate certificate. Hash Decl. ¶¶ 4–7. Staff Sergeant Vera Wolf has been removed from the schedule entirely, her troops have been reassigned, and her application for career progression to a position as a linguist—a position for which she is fully qualified and will likely be unable to apply for in the future—has been denied, all of which jeopardize her standing and her future career. Wolf Decl. ¶¶ 3–12.

Plaintiff Hunter Marquez, a cadet at the Air Force Academy scheduled to graduate in May 2025, is being required to comply with standards based on his birth sex, forced to complete his coursework independently, and excluded from all military preparatory programming alongside other cadets in his academic cohort. This will cause him to miss critical military training exercises, top-secret briefings, and squadron events that are integral parts of preparation for military service. Decl. of Hunter Marquez ("Marquez Decl.") ¶¶ 7–13. Plaintiff Samuel Ahearn has completed all the requirements of Officer Candidate School, but he has not been permitted to graduate. Decl. of Samuel Ahearn ("Ahearn Decl.") ¶ 3. Instead, he is being held in the Talent Management Group ("TMG"), a designation for Officer Candidates who do not meet standards, based solely on his transgender status. *Id*. ¶¶ 3–10.

## ARGUMENT

In light of this Court's March 18, 2025, order granting a nationwide preliminary injunction of the Military Ban, ECF No. 88, which the Court administratively stayed pending Defendants' Motions, *see* Minute Order (Mar. 21, 2025), this Court should temporarily restrain enforcement of the Military Ban with respect to these specific adverse actions toward Moving Plaintiffs until it resolves Defendants' Motions on the merits. This Court has already determined that the Military Ban violates Plaintiffs' rights to equal protection as guaranteed by the Fifth Amendment, and this violation causes Plaintiffs to suffer serious and irreparable harms to all transgender service members that will continue absent this Court's intervention. ECF No. 89, at 74-75. Since the Moving Plaintiffs face irreparable harm if Defendants enforce the Military Ban in the specific ways described herein during the pendency of the current stay, this Court can and should enter the more limited relief here" to preserve the status quo for a limited period of time" for the Moving Plaintiffs until this Court renders a decision on the merits of Defendants' Motions. *Barrow v.*

*Graham*, 124 F. Supp. 2d 714, 715–16 (D.D.C. 2000); *see also M.G.U. v. Nielsen*, 316 F. Supp. 3d 518, 520 (D.D.C. 2018); *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 733 (D.C. Cir. 2022) ("The status quo is the last *uncontested* status which preceded the pending controversy." (quotation omitted)).

Plaintiffs satisfy the standard for granting a temporary restraining order here, as they have established: (1) that they are likely to succeed on the merits, (2) that they are likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in their favor, and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Although the tests for a temporary restraining order and preliminary injunction are the same, *see Chef Time 1520 LLC v. Small Bus. Admin.*, 646 F. Supp. 3d 101, 109 (D.D.C. 2022), this Court may grant a temporary restraining order more readily here. Under the applicable standard, the shorter duration of the pause, and fact that it does no more than preserve the status quo, means that the balance of harms and public interest factors tilt even more decisively in Plaintiffs' favor. *See Shelley v. Am. Postal Workers Union*, 775 F. Supp. 2d 197, 202 (D.D.C. 2011) ("The purpose of a TRO is to maintain the status quo of a case *until the court has an opportunity to hear a request for fuller relief*." (emphasis added)); *M.G.U. v. Nielsen*, 316 F. Supp. 3d at 520 ("[T]he short duration of [a temporary restraining] order and the imminence of the harm may justify the grant of a temporary restraining order to preserve the status quo.").

## I. AS THIS COURT HAS RECOGNIZED, PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR EQUAL PROTECTION CLAIM.

Plaintiffs raise far more than the "serious legal question on the merits" necessary to establish a likelihood of success on the merits of their equal protection claim. *See Padgett v. Vilsack*, No. 24-2425, 2024 WL 4006050, at *2 (D.D.C. Aug. 30, 2024) (quoting *Changji Esquel Textile Co. Ltd. v. Raimondo*, 40 F.4th 716, 726 (D.C. Cir. 2022)). As this Court recognized in

granting Plaintiffs' Renewed Application for Preliminary Injunction, *see* ECF No. 89, the Military Ban's categorical exclusion of transgender people lacks any rational basis whatsoever and thus fails even the lowest level of constitutional scrutiny.

By singling out transgender people for differential treatment, the Military Ban creates a sex-based classification that is subject to, and fails, intermediate equal protection scrutiny.[1]  *See* ECF No. 89 at 46–51.  By their plain terms, the Order and Implementing Guidance facially classify based on sex and transgender status, including by declaring that "adoption of a gender identity inconsistent with an individual's [birth] sex" renders a person unfit to serve,  Order § 1, imposing conditions on military service that facially discriminate against transgender individuals by excluding anyone who has gone through gender transition or even "attempted to transition," Guidance § 4.3(c)(2), and by incorporating a sweeping federal definition of "sex" as based on an "immutable biological classification" at "conception"—a definition adopted for the first time across all federal law and with the avowed purpose and intended effect of eradicating all federal legal recognition of transgender people.  This explicit classification on the basis of transgender status is inherently a sex-based classification because, as the Supreme Court has recognized, "it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex."  *Bostock v. Clayton Cnty.*, 590 U.S. 644, 660 (2020).

As this Court has recognized, the Military Ban cannot withstand intermediate scrutiny—or, indeed, any level of review.  In order to withstand intermediate scrutiny, the government must show "that the [challenged] classification serves important governmental objectives and that the

---

[1]  The Order also warrants—and fails—intermediate scrutiny for yet another reason: it discriminates based on transgender status, which is itself a quasi-suspect class.  *See* ECF No. 89 at 51–57.

discriminatory means employed are substantially related to the achievement of those objectives." *United States v. Virginia (VMI)*, 518 U.S. 515, 533 (1996). However, Defendants' evidence lacked any rational connection to the Military Ban's means of achieving the government's purported objectives. *See* ECF No. 89 at 57–64. Indeed, the irrationality of the Military Ban makes plain that it is motivated by animus and therefore cannot withstand even the most deferential equal protection review. *Id*. at 64–70; *see also Romer v. Evans*, 517 U.S. 620, 632 (1996) (a law that "seems inexplicable by anything but animus toward the class it affects [] lacks a rational relationship to legitimate state interests"); *United States v. Windsor*, 570 U.S. 744, 770 (2013) (laws which reflect "a bare . . . desire to harm a politically unpopular group" cannot survive any level of scrutiny).

## II.    PLAINTIFFS ARE LIKELY TO FACE IRREPARABLE HARM ABSENT A TEMPORARY RESTRAINING ORDER.

Without a temporary restraining order, Plaintiffs will suffer irreparable harm that is "of such imminence that there is a clear and present need for equitable relief," and is "beyond remediation." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).

Implementation of the Military Ban has already caused serious harm to the Moving Plaintiffs. By singling them out through placement on administrative absence and/or denial of education opportunities based on their transgender status, Defendants have inflicted immediate and irreparable constitutional harms on them. Plaintiffs have been branded as less capable and worthy of enlisting or serving in the Armed Forces solely because of their transgender status. Such a "status-based enactment divorced from any factual context" violates the equal protection guarantee of the Constitution, which prohibits the government from labelling a group as "unequal to everyone else" based simply upon their status. *Romer*, 517 U.S. at 635.

Placement on administrative absence prevents Plaintiffs Hash, Wolf, and Davis from performing their duties, makes it impossible to meet goals required for advancement and promotion, and irreparably harms the trust placed in them by others.  Hash Decl. ¶¶ 2–10; Wolf Decl. ¶¶ 3–12; Davis Decl. ¶¶ 9-17.  Master Sergeant Hash is just one course shy of completing her Georgetown Government Affairs Institute  certificate, and placement on administrative absence has forced her to forego enrollment in this final seminar and jeopardized her ability to complete the certificate.  If she is not permitted to continue the course with her peers serving alongside her in her fellowship, she will irreparably lose the professional and academic investment she has already made in the course. This will have profound impacts on her career and reputation. Hash Decl. ¶¶ 2–10.  Staff Sergeant Wolf's troops have been reassigned as a result of her complete removal from the schedule, and she has been denied retraining as a linguist—an opportunity for which she was fully qualified and for which there is ample availability and which she ie likely to be denied in the future because she will be beyond the maximum years of service to be authorized to apply for the position.  Wolf Decl. ¶¶ 3–11.  Plaintiff Marquez has been removed from being able to join any non-class-based military preparatory programming alongside other cadets. He is also being made to compress his academic program by nearly two months, which has caused him to miss critical military training exercises, top-secret briefings, and squadron events, thereby irreparably harming his military preparedness.  Being forced to study independently has also caused him to miss critical socialization process through which military values are inculcated and prevents him from developing communication skills essential for battlefield coordination. This also interferes with his ability to develop the professional network, mutual support systems and shared tactical language essential for him to succeed in the military. Marquez Decl. ¶¶ 12–18. Cadet Marquez has also been directed to comply with military standards corresponding to his birth

sex—which he cannot do—and forced to use single-occupancy restroom and shower facilities, even where those facilities are in an entirely separate building from his dormitory. Marquez Decl. ¶¶ 7–11. Such treatment is demeaning and presents significant challenges that affect the completion of his education. Plaintiff Samuel Ahearn is being held in "Talent Management Group," a status for officer candidates who do not meet standards and that requires him to remain on base and excludes him from all activities related to officer candidate school. This brands him as unfit for duty and less capable solely because he is transgender, despite having met all the requirements of officer candidate school, and will bar from graduating from Officer Candidate School. Ahearn Decl. ¶¶ 3–10. This will irreparably harm his reputation and prevent him from progressing within the military. *Id*. ¶¶ 5–6.

Immediate relief is the only way to stop these irreparable harms.

## III.    THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR PLAINTIFFS.

The balance of the equities and public interest both tip decisively in favor of a temporary restraining order. "The balance of the equities weighs the harm to Plaintiffs absent a TRO against the harm to the agenc[ies] if the Court grants the motion." *Chef Time*, 646 F. Supp. 3d at 116; *see Pursuing America's Greatness v. Fed. Election Comm'n*, 831 F.3d 500, 511 (D.C. Cir. 2016). The irreparable harm Plaintiffs face far outweighs the nonexistent harm to Defendants in maintaining the status quo, and the public interest is best served by allowing Plaintiffs to continue with their service and professional development, as they had been doing successfully prior to the issuance of the Military Ban.

Defendants will not suffer any harm if this Court issues a temporary restraining order. A temporary restraining order would simply maintain the status quo in place prior to the issuance of the Military Ban. By contrast, allowing the continued enforcement of the Military Ban brands Plaintiffs as less capable and worthy of enlisting or serving in the Armed Forces solely because of

their transgender status and jeopardizes Plaintiffs' prospects for career advancement by preventing them from performing their duties and making it impossible to meet goals required for advancement.  The balance of equities thus tips sharply in Plaintiffs' favor.  *See McVeigh v. Cohen*, 983 F. Supp. 215, 221 (D.D.C. 1998) (finding that, while the Senior Chief McVeigh would face a serious injury from discharge from the Marines, "there is no appreciable harm to the Navy if Senior Chief McVeigh is permitted to remain in active service").

The public interest also weighs strongly in favor of temporary injunctive relief.  First, "[e]nforcement of an unconstitutional law is always contrary to the public interest." *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013).  Furthermore, allowing the continued enforcement of the Military Ban with respect to Plaintiffs would deprive our military and country of Plaintiffs' valuable skills, experience, and expertise and of the benefit of Plaintiffs' completion of critical training.  Accordingly, all factors weigh distinctly in favor of issuing a temporary restraining order.

## CONCLUSION

For the foregoing reasons, this Court should issue a temporary restraining order preventing further enforcement of the Military Ban with respect to the specific adverse actions described herein against Plaintiffs Jamie Hash, Vera Wolf, Hunter Marquez, Ashley Davis, and Samuel Ahearn.

DATED: March 24, 2025

Respectfully submitted,

*/s/ Joseph J. Wardenski*
Joseph J. Wardenski (D.C. Bar No. 995549)
joe@wardenskilaw.com
WARDENSKI P.C.
134 West 29th Street, Suite 709
New York, NY 10001
Telephone: (347) 913-3311

Sara E. Kropf (D.C. Bar No. 48501)
sara@kmlawfirm.com
KROPF MOSELEY PLLC
1100 H Street, NW Ste 1220
Washington, DC 20003
Telephone: (202) 627-6900

Jennifer Levi (*pro hac vice*)
jlevi@glad.org
Mary L. Bonauto (*pro hac vice*)
mbonauto@glad.org
Michael Haley (*pro hac vice*)
mhaley@glad.org
Sarah Austin (*pro hac vice*)
saustin@glad.org
GLBTQ LEGAL ADVOCATES & DEFENDERS
18 Tremont Street, Suite 950
Boston, MA 02108
Telephone: (617) 426-1350

Shannon P. Minter (*pro hac vice*)
sminter@nclrights.org
Amy Whelan (*pro hac vice*)
awhelan@nclrights.org
Christopher F. Stoll (*pro hac vice*)
cstoll@nclrights.org
NATIONAL CENTER FOR LESBIAN RIGHTS
870 Market Street, Suite 370
San Francisco, CA 94102
Telephone: (415) 392-6257

*Attorneys for Plaintiffs*