### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NICOLAS TALBOTT *et al.*, *individually and on behalf of all similarly situated individuals*, <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES OF AMERICA*, et al.*, <br><br> Defendants. | Civil Action No. 25-cv-240-ACR |

### MEMORANDUM OF LAW IN SUPPORT OF
### PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................................. ii

INTRODUCTION ................................................................................................................................1

RELEVANT FACTUAL BACKGROUND ........................................................................................3

RELEVANT PROCEDURAL HISTORY ..........................................................................................4

LEGAL STANDARD .........................................................................................................................5

ARGUMENT.......................................................................................................................................6

    I.   The Proposed Class and Subclasses Satisfy the Requirements of Rule 23(a)....................6

        A.  The Class and Subclasses Are So Numerous that Joinder of All Parties is Impracticable. ...................................................................................................6

        B.  Plaintiffs Satisfy Rule 23(a)(2)'s Commonality Requirement. ....................................8

        C.  Plaintiffs' Claims Are Typical of the Claims of the Proposed Class and Subclasses....................................................................................................12

        D.  Plaintiffs and Their Attorneys Will Adequately Represent the Interests of the Class and Subclasses. ..........................................................................13

            1.  Plaintiffs are adequate class representatives...........................................................13

            2.  Plaintiffs' counsel will capably represent the interests of the class. .....................14

    II.  The Proposed Class and Subclasses Satisfy the Requirements of Rule 23(b)(2)..............14

CONCLUSION .................................................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Amchem Products, Inc. v. Windsor,*
    521 U.S. 591 (1997) ...........................................................................................................13, 15

*Amgen Inc. v. Connecticut Retirement Plans & Trust Funds,*
    568 U.S. 455 (2013) .....................................................................................................................6

*Borum v. Brentwood Village, LLC,*
    324 F.R.D. 1 (D.D.C. 2018) ..................................................................................................6, 7, 9

*Brown v. District of Columbia,*
    928 F.3d 1070 (D.C. Cir. 2019) ...................................................................................................9

*DL v. District of Columbia,*
    302 F.R.D. 1, 14 (D.D.C. 2013) .................................................................................................12

*DL v. District of Columbia,*
    860 F.3d 713 (D.C. Cir. 2017)..................................................................................5, 13, 14, 15

*Harris v. Medical Transportation Management, Inc.,*
    77 F.4th 746 (D.C. Cir. 2023).......................................................................................................5

*In re Catfish Antitrust Litigation,*
    826 F. Supp. 1019 (N.D. Miss. 1993)........................................................................................12

*In re District of Columbia,*
    792 F.3d 96 (D.C. Cir. 2015)...................................................................................................9, 15

*In re Lorazepam & Clorazepate Antitrust Litigation,*
    202 F.R.D. 12 (D.D.C. 2001) ....................................................................................................12

*J.D. v. Azar,*
    925 F.3d 1291 (D.C. Cir. 2019)......................................................................................7, 8, 9, 12

*Lightfoot v. District of Columbia,*
    246 F.R.D. 326 (D.D.C. 2007) ....................................................................................................6

*National ATM Council, Inc. v. Visa Inc.,*
    Nos. 21-7109, 21-7110, 21-7111, 2023 U.S. App. LEXIS 19028 (D.C. Cir. 2023) .................6

*O.A. v. Trump,*
    404 F. Supp. 3d 109 (D.D.C. 2019)...........................................................................................15

*Pappas v. District of Columbia*,
    No. 19-2800, 2024 U.S. Dist. LEXIS 44770 (D.D.C. 2024).......................................................7

*Parker v. Bank of America, N.A.*,
    99 F. Supp. 3d 69 (D.D.C. 2015)..............................................................................................6

*Robertson v. District of Columbia*,
    No. 24-0656, 2026 U.S. Dist. LEXIS 9406 (D.D.C. Jan. 16, 2026) .........................8, 9, 10, 15

*Rosario v. Austin*,
    No. 21-1928, 2024 U.S. Dist. LEXIS 90352 (D.D.C. Mar. 25, 2024) ......................6, 7, 12, 13

*Stewart v. Rubin*,
    948 F. Supp. 1077 (D.D.C. 1996), *aff'd*, 124 F.3d 1309 (D.C. Cir. 1997)..............................12

*Talbott v. United States*,
    775 F. Supp. 3d 283 (D.D.C. 2025)...........................................................................3, 7, 10, 11

*Thorpe v. District of Columbia*,
    303 F.R.D. 120 (D.D.C. 2014) ...............................................................................................8–9

*Twelve John Does v. District of Columbia*,
    117 F.3d 571 (D.C. Cir. 1997).................................................................................................13

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ....................................................................................................6, 9, 14, 15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23...............................................................................................................*passim*

Executive Order 14183 ................................................................................................................1

**INTRODUCTION**

Plaintiffs, transgender individuals who are or were in active duty service ("Active Duty Plaintiffs"), or are or were actively pursuing accession in the United States military ("Accession Plaintiffs"), request that this Court certify this case as a class action for declaratory and injunctive relief under Rule 23(b)(2) of the Federal Rules of Civil Procedure. This lawsuit challenges the bar to military service for transgender individuals imposed by President Trump's Executive Order 14183 and its Implementation Guidance (the "Hegseth Policy") (collectively, the "Military Ban") on constitutional and other grounds. Plaintiffs share a common aim: obtaining a declaratory judgment that the Military Ban is unlawful and a permanent injunction that bars the government from enforcing the Military Ban to exclude them, and all other transgender individuals who serve or wish to serve in the military, from service to their country.

Plaintiffs request that the Court certify a proposed Class of "all transgender individuals who, on or after the date this lawsuit was filed, are or were in active duty service in the United States military, or were actively pursuing accession in the United States military or wished to do so" (the "Class"), and two Subclasses: (1) "all transgender individuals who, on the date this lawsuit was filed, were in active duty service in the United States military" (the "Active Duty Plaintiff Subclass"), and (2) "all transgender individuals who, on or after the date this lawsuit was filed, were actively pursuing accession in the United States military or wished to do so" (the "Accession Plaintiff Subclass"). For purposes of these definitions, a transgender person is a person who lives or wishes to live in a sex other than their birth sex.

The named Plaintiffs are all members of the proposed Class, and each named Plaintiff is a member of one of the two proposed Subclasses. They readily meet the four threshold requirements for class certification under Rule 23(a): numerosity, commonality, typicality, and adequacy of

representation. As this Court has found, and Defendants themselves estimate, there are thousands of members of the proposed Class. All Plaintiffs' claims arise from common questions of law and fact, and their claims are typical of members of the proposed Class and Subclasses because they all challenge the same policy, the Military Ban, based on the same legal theories. Plaintiffs are adequate representatives of the proposed Class and Subclasses: since this action commenced in January 2025, Plaintiffs have diligently participated in litigation of their claims and share the goal of striking down the Military Ban for all transgender people who serve or would serve in the military but for the ban. As this Court has observed, Plaintiffs have served honorably and demonstrated the "selflessness, honor, integrity, and discipline to ensure military excellence," Mem. Op., ECF No. 89 at 4, traits that make them ideal class representatives. Moreover, Plaintiffs' counsel—civil rights lawyers and civil litigators who collectively bring decades of experience successfully litigating transgender rights cases and complex civil litigation matters—will adequately represent the Class's interests.

Plaintiffs also satisfy Rule 23(b)(2)'s requirements for a class action seeking declaratory and injunctive relief. Defendants, through the adoption and implementation of the Military Ban, have categorically excluded Plaintiffs and all others like them from military service.[1] The remedies Plaintiffs seek—a declaratory judgment of the Military Ban's unlawfulness and a permanent injunction against its enforcement—apply to all members of the proposed Class.

---

[1] *See* Press Release, The White House, "President Trump Ended Democrats' 'Transgender for Everybody' Insanity" (Mar. 31, 2026), https://www.whitehouse.gov/releases/2026/03/president-trump-ended-democrats-transgender-for-everybody-insanity/    [https://perma.cc/KAF4-YQ8T] (declaring that "[u]nder President Trump . . . [t]he Department of War reinstated standards requiring service members to serve according to their biological sex, banned transgender individuals from military service where it conflicts with readiness and cohesion . . . .").

For these reasons, Plaintiffs' claims are most effectively resolved on a class-wide basis, and this Court should certify the proposed Class and Subclasses under Rule 23(b)(2).

## RELEVANT FACTUAL BACKGROUND

The thirty named Plaintiffs in this case are transgender individuals who, when this lawsuit commenced in January 2025, were in active duty service or were actively pursuing accession in the United States military.

The Active Duty Plaintiffs—Plaintiffs Talbott, Vandal, Cole, Herrero, Danridge, Hash, Bettis, Graham, Pickett, Sale, Tyson, Bloomrose, Ahearn, Bruce, Converse, Davis, Dulaney, Gross, Kersch-Hamar, Maiwald, Marquez, McCallister, Orth, Richter, Simpson, and Winchell— were collectively serving in active duty in every branch of the armed forces when the Military Ban was imposed. *See, e.g.*, Decl. of Nicolas Talbott ("Talbott Decl.") ¶ 1, ECF No. 72-18; Decl. of Erica Vandal ("Vandal Decl.") ¶¶ 1, 8–9, 14, 17, ECF No. 72-20; Decl. of Kate Cole ("Cole Decl.") ¶¶ 1, 6–11, ECF No. 72-23; Decl. of Gordon Herrero ("Herrero Decl.") ¶¶ 1, 5–8, ECF No. 72-25; Decl. of Dany Danridge ("Danridge Decl.") ¶¶ 1, 9–11, 13–14, ECF No. 72-28. The Active Duty Plaintiffs have collectively served the United States for over 130 years, earned more than 80 commendations, and have been deployed all over the world. *See Talbott v. United States*, 775 F. Supp. 3d 283, 291 (D.D.C. 2025). Each Active Duty Plaintiff has "served honorably," "satisfied the rigorous standards" of military service, is currently physically and mentally fit to serve, and have "made America safer." *Id.* at 292 (citing Tr. (Feb. 18, 2025) at 9–14). The Active Duty Plaintiffs only seek the opportunity to continue dedicating their lives to defending the United States, yet the Military Ban mandates that they, and all others like them, be separated from the military simply for being transgender.

The named Accession Plaintiffs—Plaintiffs Neary and Nature—were actively pursuing accession in the military when the Military Ban took effect. *See, e.g.*, Decl. of Koda Nature ("Nature Decl.") ¶¶ 1, 5–8, ECF No. 72-33; Decl. of Cael Neary ("Neary Decl.") ¶¶ 7–9, ECF No. 72-35. Under the Military Ban, both Plaintiffs Neary and Nature, and others like them, have been barred from acceding in the military because they are transgender. *See* Nature Decl. ¶ 8; Neary Decl. ¶¶ 7–9, 17; Decl. of Kara Corcoran ("Corcoran Decl.") ¶¶ 3-6.

All of the Plaintiffs have, or are prepared, to serve as the men and women that they are. *See, e.g.*, Supp. Decl. of Nicolas Talbott ("Talbott Supp. Decl.") ¶¶ 3–5, ECF No. 72-19; Second Supp. Decl. of Erica Vandal ("Vandal Second Supp. Decl.") ¶¶ 3–5, ECF No. 72-22; Supp. Decl. of Kate Cole ("Cole Supp. Decl.") ¶¶ 3–5, ECF No. 72-24; Second Supp. Decl. of Gordon Herrero ("Herrero Second Supp. Decl.") ¶¶ 3–5, ECF No. 72-27; Supp. Decl. of Dany Danridge ("Danridge Supp. Decl.") ¶¶ 3–5, ECF No. 72-29; Supp. Decl. of Koda Nature ("Nature Supp. Decl.") ¶¶ 3–6, ECF No. 72-34. None of the Plaintiffs can serve in the military as their birth sex, which they are not. *See, e.g.*, Talbott Supp. Decl. ¶¶ 5–9; Vandal Second Supp. Decl. ¶¶ 6–9; Cole Supp. Decl. ¶¶ 6–9; Herrero Second Supp. Decl. ¶¶ 6–9; Danridge Supp. Decl. ¶¶ 6–9; Nature Supp. Decl. ¶¶ 6–9.

## RELEVANT PROCEDURAL HISTORY

Plaintiffs commenced this lawsuit for declaratory and injunctive relief on January 28, 2025. Compl., ECF No. 1. Plaintiffs subsequently filed several amended complaints on February 4, 2025, February 24, 2025, March 4, 2025, and March 24, 2025. ECF Nos. 15, 60, 69, 94. Plaintiffs filed a Motion for Preliminary Injunction on February 3, 2025, ECF No. 13, and a Renewed Motion for Preliminary Injunction on March 7, 2025, ECF No. 72 ("Renewed Motion"). The Renewed Motion asked the Court to "issue an injunction prohibiting the exclusion of transgender people,

including Plaintiffs, from military accessions and retention, or subjecting them to disparate terms of accessions or retention," with related relief. ECF No. 72-1 at 69–70. On March 18, 2025, the Court granted the Renewed Motion, issuing a broad injunction barring Defendants from implementing the Military Ban and "to maintain the *status quo* of military policy regarding transgender service that existed immediately before President Donald J. Trump issued Executive Order 14183." Order, ECF No. 88, at 1–2. The injunction, which has been stayed, is the subject of a pending appeal before the U.S. Court of Appeals for the D.C. Circuit.

During a status conference on March 16, 2026, Plaintiffs advised the Court that they intended to seek class certification. At the conference, the Court directed Plaintiffs to file a motion for class certification within thirty days. The Court then ordered the Parties to propose a joint briefing schedule, Minute Entry, Mar. 16, 2026. The Parties proposed, and the Court ordered, Plaintiffs to file a fifth amended complaint adding class action allegations, and a motion for class certification, by April 15, 2026. Minute Order, ECF No. 116 (Mar. 20, 2026). Plaintiffs are now concurrently filing their Fifth Amended Complaint with Class Action Allegations and their Motion for Class Certification.

## LEGAL STANDARD

To certify a class under Rule 23, the Court must undertake a two-step analysis. *DL v. District of Columbia*, 860 F.3d 713, 723 (D.C. Cir. 2017). First, the Court must determine that the proposed Class and Subclasses satisfy the four threshold requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *Harris v. Med. Transp. Mgmt, Inc.*, 77 F.4th 746, 752 (D.C. Cir. 2023). Second, the Court must find that the movants satisfy one of the conditions outlined in Rule 23(b). *DL*, 860 F.3d at 723. Where, as here, Plaintiffs seek certification under Rule 23(b)(2), the Court must find that Defendants have "acted or refused to

act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Id.* (quoting Fed. R. Civ. P. 23(b)(2)). Class certification under this provision is appropriate where, as here, Defendants' actions are "'generally applicable' to all members of the putative class, and a determination of whether those actions are unlawful would therefore resolve all members' claims 'in one stroke.'" *Rosario v. Austin*, No. 21-1928, 2024 U.S. Dist. LEXIS 90352, at \*26 (D.D.C. Mar. 25, 2024) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

Courts in the D.C. Circuit analyze requests for class certification by a preponderance of the evidence standard. *Rosario*, 2024 U.S. Dist. LEXIS 90352, at \*15 (citing *Parker v. Bank of Am., N.A.*, 99 F. Supp. 3d 69, 80 (D.D.C. 2015)). This analysis entails "some overlap with the merits of the plaintiff's underlying claim." *Dukes*, 564 U.S. at 351. However, while a preliminary inquiry into the merits of plaintiffs' claims is permissible, this may not extend beyond that which is "necessary to ensure that the Rule 23 requirements are met." *Nat'l ATM Council, Inc. v. Visa Inc.*, Nos. 21-7109, 21-7110, 21-7111, 2023 U.S. App. LEXIS 19028, at \*17 (D.C. Cir. 2023) (citing *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013)).

## ARGUMENT

### I. THE PROPOSED CLASS AND SUBCLASSES SATISFY THE REQUIREMENTS OF RULE 23(A).

### A. The Class and Subclasses Are So Numerous that Joinder of All Parties is Impracticable.

The numerosity requirement is met when the class is so "numerous that joinder of all parties is impracticable." Fed. R. Civ. P. 23(a)(1). While there is no fixed numerical threshold, a putative class exceeding forty class members "creates a presumption of the impracticability of joinder" that generally satisfies numerosity. *Borum v. Brentwood Vill., LLC*, 324 F.R.D. 1, 14–15 (D.D.C. 2018) (citing *Lightfoot v. District of Columbia*, 246 F.R.D. 326, 335 (D.D.C. 2007)). This

6

presumption is especially appropriate where, as here, "the lack of geographic proximity of the proposed members" makes joinder further impracticable. *Rosario*, 2024 U.S. Dist. LEXIS 90352, at *19. Nevertheless, "[t]here is no specific threshold that must be surpassed in order to satisfy the numerosity requirement," *Borum*, 324 F.R.D. at 10–11, and classes containing under twenty members have been certified when determined that joinder is impracticable. *See J.D. v. Azar*, 925 F.3d 1291, 1323 (D.C. Cir. 2019) (collecting cases) (smaller classes are sufficiently numerous when the class presents non-numerical considerations that make joinder impracticable, such as the geographic dispersion of class members, and their limited resources). When subclasses are proposed, "each subclass must independently satisfy" the requirements of Rule 23. *Pappas v. District of Columbia*, No. 19-2800, 2024 U.S. Dist. LEXIS 44770, at *11 (D.D.C. 2024) (certifying a subclass of 29 members)**.**

Plaintiffs satisfy Rule 23(a)(1) because the proposed Class is sufficiently numerous that joinder of all members is impracticable. As this Court found, "thousands" of transgender people were in active duty service when the Military Ban took effect. *See Talbott*, 775 F. Supp. 3d at 292, 293 n.5, 306, 307; *see also* U.S. Dep't of Defense, *Transcript of a Senior Defense Official Background Briefing on Prioritizing Military Excellence and Readiness: Implementation Guidance* (May 15, 2025), https://www.war.gov/News/Transcripts/Transcript/Article/4188052/transcript-of-a-senior-defense-official-background-briefing-on-prioritizing-mil/ [https://perma.cc/MV5G-HUQ7] (discussing estimate of 4,200 service members with gender dysphoria). The Accession Plaintiffs wish to join the military and would do so but for the Military Ban. *See* Nature Decl. ¶¶ 1, 4–7, 15, 21; Neary Decl. ¶¶ 1, 8–9, 17. Based on estimates from SPARTA Pride, a nonpartisan nonprofit membership organization comprised of current and

prospective transgender service members, veterans, and their allies, hundreds of individuals would pursue accession in the military without the ban. *See* Corcoran Decl. ¶¶ 3-6.

In addition, as demonstrated by the Plaintiffs' declarations previously filed in this case, active duty transgender members of the U.S. military have been deployed around the globe to Europe, Asia, and the Middle East, and are stationed at bases throughout the United States. *See, e.g.*, Talbott Decl. ¶ 1; Vandal Decl. ¶¶ 1, 6, 8–9, 14, 17; Cole Decl. ¶¶ 1, 6–11; Herrero Decl. ¶¶ 1, 5–8; Danridge Decl. ¶¶ 1, 9–11, 13–14. Likewise, members of the proposed Accession Plaintiff Subclass come from every part of the United States. Furthermore, since Defendants have affirmatively moved to separate the Plaintiffs from the military under the Military Ban, numerous Class members are currently unemployed or facing imminent unemployment. As such, they have "limited resources" to pursue individualized relief against Defendants, which further underscores the inappropriateness of joinder. *See J.D.*, 925 F.3d at 1323. Because of the large sizes of the proposed Class and Subclasses, and the geographic dispersion of class members, joinder in this case would be impracticable, if not impossible.

Because the proposed Class contains thousands of individuals, and the size of each Subclass far exceeds forty individuals, and joinder is impracticable, numerosity is satisfied for the proposed Class and both Subclasses.

**B. Plaintiffs Satisfy Rule 23(a)(2)'s Commonality Requirement.**

Commonality requires a finding that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is satisfied in cases where, as here, Plaintiffs "allege widespread wrongdoing by a defendant[]" through the enforcement of a "uniform policy or practice that affects all class members." *Robertson v. District of Columbia*, No. 24-0656, 2026 U.S. Dist. LEXIS 9406, at \*32 (D.D.C. Jan. 16, 2026) (quoting *Thorpe v. District of Columbia*,

8

303 F.R.D. 120, 145 (D.D.C. 2014)). There must be "common proof leading to a common answer to the common question at the heart of each plaintiff's claim." *Brown v. District of Columbia*, 928 F.3d 1070, 1080 (D.C. Cir. 2019) (emphasis omitted). Although a "single common question" of law or fact would suffice to establish commonality, *In re District of Columbia*, 792 F.3d 96, 100 (D.C. Cir. 2015) (citing *Dukes*, 564 U.S. at 357), Plaintiffs present multiple questions of law and fact common to all class members, the resolution of which "will advance the determination of the class members' claims," *Dukes*, 564 U.S. at 369.

Courts routinely find commonality in class actions challenging the lawfulness of systemic policies or practices. *See, e.g.*, *In re District of Columbia*, 792 F.3d at 101–02 (denying defendant District of Columbia's petition to permit appeal of lower court's order finding commonality and granting certification for a class of disabled District residents alleging violations of federal anti-discrimination statutes); *J.D.*, 925 F.3d at 1300 (affirming certification of class of unaccompanied pregnant minors in case alleging unconstitutional reproductive rights violations); *Robertson*, 2026 U.S. Dist. LEXIS 9406, at *55 (finding commonality and granting class certification for class of parents of students with disabilities alleging violations of state and federal anti-discrimination laws); *Borum*, 324 F.R.D. at 15–16 (certifying a subclass of individuals alleging disparate impact and disparate treatment discrimination claims against a housing developer).

As in these other civil rights cases, this case presents a common challenge to the lawfulness of a uniformly enforced policy mandating the separation of active duty transgender service members from the United States military and preventing accession of prospective transgender service members. Plaintiffs and all members of the proposed Class suffer the same injury resulting from the Military Ban: the inability to serve in the armed forces because they are transgender.

At its core, this action is a facial challenge alleging that the Military Ban is unlawful for reasons that apply equally to Plaintiffs and all members of the proposed Class. As such, it presents numerous factual and legal issues that are common to the class. Among others, those common questions include the following: (1) whether the Military Ban categorically bars transgender individuals from military service, a question this Court has already answered in the affirmative at the preliminary injunction stage, *see Talbott*, 775 F. Supp. 3d at 301–02; (2) whether the Military Ban classifies on the basis of sex, requiring application of intermediate scrutiny under the Equal Protection Clause; again, the Court previously concluded that the Plaintiffs are likely to prevail on this issue, *see id.* at 316–19; (3) whether the Military Ban is subject to heightened scrutiny under the Equal Protection Clause because it facially discriminates against transgender persons, a quasi-suspect class, as the Court has previously concluded in granting a preliminary injunction, *see id.* at 319–22; (4) whether the justifications and evidence on which Defendants rely are sufficient to warrant upholding the Military Ban under the Equal Protection Clause, which the Court previously concluded they likely are not, *see id.* at 322–26; and (5) whether the Military Ban reflects unconstitutional animus, requiring its invalidation even under a rational basis standard of equal protection review, as the Court again concluded it likely does, *see id.* at 326–32. None of these questions requires an individualized inquiry or separate findings of fact for each class member. In this case, each class member has suffered the same injuries flowing from the same "uniform policy or practice," *Robertson*, 2026 U.S. Dist. LEXIS 9406, at \*32, and each question presented can be answered in the same way for all class members based on the same evidentiary record.

The other claims alleged in the Fifth Amended Complaint likewise present legal and factual issues common to the proposed Class. Count IV alleges that the Military Ban violates the procedural due process rights of the Active Duty Plaintiffs and the corresponding subclass of active

duty transgender service members. Each of the Active Duty Plaintiffs lives in a sex other than their birth sex. *See, e.g.*, Talbott Supp. Decl. ¶¶ 2–9; Vandal Second Supp. Decl. ¶¶ 2–9; Cole Supp. Decl. ¶¶ 2–9. The government has conceded that the Hegseth Policy bars all Plaintiffs from military service, and that all Plaintiffs are ineligible for the Hegseth Policy' waiver provision. *Talbott*, 775 F. Supp. 3d at 298 (citing Tr. (Mar. 12, 2025) at 167), 311 (citing Tr. (March 12, 2025) at 160–63). Among others, this claim presents the common issue of whether the procedures adopted to implement the Military Ban, which call for separation of currently serving transgender personnel using a punitive administrative separation process ordinarily reserved for cases of misconduct rather than procedures generally followed in cases of separation for medical reasons, deprive transgender service members of a protectible property interest without due process of law. Notably, the separation procedures deny transgender service members, including the Active Duty Plaintiffs and members of the Active Duty Plaintiff Subclass, the right to be present at their own separation hearings unless they comply with uniform and grooming standards of their birth sex, even if they have been serving for years in their post-transition sex. Decl. of Michael Haley, Ex. A, at 1 (Department of Air Force Memorandum (Aug. 18, 2025)). These legal and factual issues are common to all members of the subclass.

Similarly, Count V alleges that the Defendants should be equitably estopped from applying the Military Ban to the Active Duty Plaintiffs and the Active Duty Plaintiff Subclass on the ground that all these individuals reasonably relied on prior military policy by serving in their birth sex and had settled expectations that doing so would not jeopardize their continued service, and that their separation under the Military Ban would work a serious injustice by punishing them for doing what Defendants previously induced them to do by encouraging their service under the earlier policy. These issues are also common to all members of the subclass of current service members.

11

**C. Plaintiffs' Claims Are Typical of the Claims of the Proposed Class and Subclasses.**

The question of typicality "shifts the focus from the characteristics of the class to the preferred characteristics of the class representatives." *DL v. District of Columbia*, 302 F.R.D. 1, 14 (D.D.C. 2013). To show typicality, the named plaintiffs must prove that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is ordinarily met "if the claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory." *J.D.*, 925 F.3d at 1322. It is not required that the facts and claims of each class member be identical; rather, plaintiffs can demonstrate typicality where "at least one named plaintiff has a claim relating to each challenged practice for which relief is [sought]." *DL*, 302 F.R.D. at 14 (quoting *Stewart v. Rubin*, 948 F. Supp. 1077, 1088 (D.D.C. 1996), *aff'd*, 124 F.3d 1309 (D.C. Cir. 1997)). Typicality refers to the nature of the claims of the representatives, not the individual characteristics of the plaintiffs. *Rosario*, 2024 U.S. Dist. LEXIS 90352, at *22. Where "claims arise out of the same legal or remedial theory," varying fact patterns will not undermine typicality. *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 27 (D.D.C. 2001) (quoting *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1036 (N.D. Miss. 1993)).

The named Plaintiffs' claims are typical of those of the proposed Class and the two Subclasses. Each Plaintiff either was an active duty service member at the time this action was filed or was actively pursuing accession into the military at that time. Each challenges the Military Ban based on legal claims that are typical of—if not identical to—the claims of the members of the proposed Class and one of the two subclasses. Each named Plaintiff, like each member of the proposed Class, challenges the same course of conduct by Defendants based on the same factual record: the adoption and implementation of the Military Ban, which facially excludes all

transgender persons from military service based on policies and asserted justifications that apply equally to both the named Plaintiffs and the members of the proposed Class.

### D. Plaintiffs and Their Attorneys Will Adequately Represent the Interests of the Class and Subclasses.

The final Rule 23(a) requirement imposes two criteria on the named representatives seeking to represent a class. First, the representatives must not have "antagonistic or conflicting interests with the unnamed members of the class," and second, they must "appear able to vigorously prosecute the interests of the class through qualified counsel." *Rosario*, 2024 U.S. Dist. LEXIS 90352, at \*23 (quoting *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997)). This final requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

In this case, adequacy is satisfied because the named Plaintiffs and their undersigned counsel will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *DL*, 860 F.3d at 726 (quoting *Amchem Prods.*, 521 U.S. at 625). The named Plaintiffs, as class representatives, are able to effectively protect the interests of the class. In addition, Plaintiffs' undersigned counsel at GLBTQ Legal Advocates & Defenders ("GLAD Law") the National Center for LGBTQ Rights ("NCLR"), Wardenski P.C., and Zalkind Duncan & Bernstein LLP are capable of representing the proposed Class and Subclasses as class counsel. *See* Fed. R. Civ. P. 23(a)(4) & (g)(1).

### 1. Plaintiffs are adequate class representatives.

The named Plaintiffs are adequate class representatives because (1) no conflicts of interest exist between them and the proposed Class, and (2) they each have sufficient interest in the outcome of the case. *See Amchem Prods.*, 521 U.S. at 625–26. The interests of the named Plaintiffs align with the interests of the members of the proposed Class—they all seek a declaration

from the Court finding Defendants' actions unconstitutional, and injunctive relief prohibiting enforcement of the Military Ban. The Plaintiffs, members of both Subclasses, and all members of the proposed Class suffer the same injury resulting from the Military Ban: the inability to serve in the armed forces. Plaintiffs will adequately and fairly represent the proposed Class and Subclasses.

### 2. Plaintiffs' counsel will capably represent the interests of the class.

Plaintiffs' undersigned counsel at GLAD Law, NCLR, Wardenski P.C., and Zalkind Duncan & Bernstein LLP, all have substantial experience handling complex civil rights litigation matters, including class action cases and cases against the federal government, and bring subject matter expertise on transgender rights to Plaintiffs' claims. *See* Decl. of Jennifer L. Levi ¶¶ 4–6, 10–12 ("Levi Decl."); Decl. of Shannon Minter ¶¶ 4–8 ("Minter Decl."); Decl. of Joseph Wardenski ¶¶ 4–6 ("Wardenski Decl."). Plaintiffs' attorneys have the resources, expertise, and experience to prosecute this action effectively on behalf of the proposed Class. Plaintiffs' attorneys respectfully request that this Court appoint them as class counsel.

**II.  AS THE NAMED PLAINTIFFS AND THEIR COUNSEL ARE ABLE AND WILLING TO EFFECTIVELY REPRESENT THE PROPOSED CLASS AND SUBCLASSES, THE TWO PRONGS OF RULE 23(A)'S ADEQUACY REQUIREMENT ARE SATISFIED. THE PROPOSED CLASS AND SUBCLASSES SATISFY THE REQUIREMENTS OF RULE 23(B)(2).**

Certification of the proposed Class is warranted under Rule 23(b)(2) because the Military Ban is generally applicable to the class, making a final injunction and corresponding declaratory judgment appropriate to the full class. *See* Fed. R. Civ. P. 23(b)(2); *Dukes*, 564 U.S. at 360; *DL*, 860 F.3d at 726 (affirming lower court's certification of a Rule 23(b)(2) class where an injunction provided relief to each class member). "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class," but not "when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Dukes*, 564 U.S. at 360.

14

Where, as here, Plaintiffs charge Defendants with "unlawful, class-based discrimination," and seek injunctive and declaratory relief that would resolve all class claims, certification under Rule 23(b)(2) is appropriate. *Dukes*, 564 U.S. at 361 (quoting *Amchem Prods.*, 521 U.S. at 613); *see also In re District of Columbia*, 792 F.3d at 102 ("Rule 23(b)(2) was intended for civil rights cases"); *DL*, 860 F.3d at 726 ("Rule 23(b)(2) exists so that parties and courts, especially in civil rights cases like this, can avoid piecemeal litigation when common claims arise from systemic harms that demand injunctive relief."). Courts in this Circuit have interpreted Rule 23(b)(2) as imposing two requirements: (1) that the Defendants' actions are generally applicable to the class, and (2) that Plaintiffs seek final injunctive relief or corresponding declaratory relief on behalf of the class. *Robertson*, 2026 U.S. Dist. LEXIS 9406, at *64–65 (citing *O.A. v. Trump*, 404 F. Supp. 3d 109, 157 (D.D.C. 2019)).

Plaintiffs readily satisfy these requirements. As explained above, the Military Ban applies to each class member, all of whom are transgender active duty or prospective service members, by prohibiting their military service on the basis of their sex and/or transgender status. Furthermore, the declaratory and injunctive relief sought in this case is identical for each of the named Plaintiffs and all members of the proposed Class. Plaintiffs seek a declaratory judgment that the Military Ban is unconstitutional and a permanent injunction enjoining enforcement of the Military Ban based on that illegality. Plaintiffs' civil rights action against Defendants is the "prime example[] of what [Rule 23(b)(2)] is meant to capture." *Dukes*, 564 U.S. at 361 (quoting *Amchem Prods.*, 521 U.S. at 614). As such, certification under the Rule 23(b)(2) is appropriate.

## CONCLUSION

Plaintiffs have met Rule 23's requirements for certification of a Class encompassing current and prospective transgender military members barred from serving in the military through

the implementation of the Military Ban, and comprised of two Subclasses of Active Duty Plaintiffs and Accession Plaintiffs, respectively. Plaintiffs respectfully request that the Court certify the proposed Class and Subclasses for declaratory and injunctive relief under Rule 23(b)(2); designate Plaintiffs as representatives of the proposed Class, the Active Duty Plaintiffs as representatives of the Active Duty Plaintiff Subclass, and the Accession Plaintiffs as representatives of the Accession Plaintiff Subclass; and appoint their attorneys at GLAD Law, NCLR, Wardenski P.C., and Zalkind Duncan & Bernstein LLP, as counsel for the proposed Class and Subclasses.

DATED: April 15, 2026

Respectfully submitted,

/s/ Joseph J. Wardenski

Jennifer Levi (*pro hac vice*)
Mary L. Bonauto (*pro hac vice*)
Sarah Austin (*pro hac vice*)
Michael Haley (*pro hac vice*)
GLBTQ LEGAL ADVOCATES & DEFENDERS
18 Tremont Street, Suite 950
Boston, MA 02108
Telephone: (617) 426-1350
jlevi@glad.org
mbonauto@glad.org
saustin@glad.org
mhaley@glad.org

Shannon P. Minter (*pro hac vice*)
Christopher F. Stoll (*pro hac vice*)
Amy Whelan (*pro hac vice*)
NATIONAL CENTER FOR LGBTQ RIGHTS
1401 21st Street #11548
Sacramento, CA 95811
Telephone: (415) 392-6257
sminter@nclrights.org

Joseph J. Wardenski (D.C. Bar No. 995549)
WARDENSKI P.C.
134 West 29th Street, Suite 709
New York, NY 10001
Telephone: (347) 913-3311
joe@wardenskilaw.com

Inga S. Bernstein (*pro hac vice*)
ZALKIND DUNCAN & BERNSTEIN LLP
65A Atlantic Avenue
Boston, MA 02110
Telephone: 617-742-6020
ibernstein@zalkindlaw.com

Sara E. Kropf (DC Bar No. 481501)
KROPF MOSELY SCHMITT PLLC
1100 H Street NW
Suite 1220
Washington, DC 20005
Telephone: 202-627-6900
sara@kmlawfirm.com

*Attorneys for Plaintiffs*

16