**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

NICOLAS TALBOTT; et al., *individually and on behalf of all similarly situated individuals*,

*Plaintiffs*,

v.

THE UNITED STATES OF AMERICA; et al.,

*Defendants*.

Case No. 1:25-cv-00240-ACR

**NOTICE OF REQUEST THAT PROPOSED CLASS DEFINITION BE AMENDED
TO EXCLUDE PLAINTIFFS IN *SHILLING v. UNITED STATES***

Non-parties Commander Emily Shilling, Commander Blake Dremann, Lieutenant Commander Geirid Morgan, Sergeant First Class Cathrine Schmid, Staff Sergeant Videl Leins, Matthew Medina, and Gender Justice League (collectively, the "*Shilling* Plaintiffs") specially appear before this Court for the sole purpose of requesting that Plaintiffs' Proposed Class Definitions be amended to exclude them or, in the alternative, that they be provided with an opportunity to opt out of the class. The *Shilling* Plaintiffs are the plaintiffs in the parallel case to this case, *Shilling v. United States*, No. 2:25-cv-00241-BHS, which is currently pending before the Hon. Benjamin H. Settle in the District Court for the Western District of Washington. The *Shilling* action was filed on February 6, 2025, over a year before (specifically, 433 days) the plaintiffs in this case (the "*Talbott* Plaintiffs") sought to convert this case into a class action. Because the class definition proposed by the *Talbott* Plaintiffs fails to account for or exclude the *Shilling* Plaintiffs, the *Shilling* Plaintiffs respectfully request that in the event the Court determines that a class should

1

be certified in this case, the class definitions be modified to exclude the *Shilling* Plaintiffs, or, in the alternative, that the *Shilling* Plaintiffs be provided with an opportunity to opt out of the class.

**FACTUAL BACKGROUND**

**A. *Shilling v. United States***

On February 6, 2025, the *Shilling* Plaintiffs filed suit in the Western District of Washington seeking declaratory and injunctive relief against Executive Order No. 14183, *Prioritizing Military Excellence and Readiness* ("EO 14183"), 90 Fed. Reg. 8757, which President Donald J. Trump issued on January 27, 2025, and related federal policy and directives, including the so-called "Hegseth Policy," which together ban a group of transgender Americans from serving their country in the military simply because they are transgender (collectively, "the Military Ban"). In the complaint, both original and amended versions, the *Shilling* Plaintiffs assert that the Military Ban violates their rights to equal protection and procedural due process under the Fifth Amendment; their right to free speech under the First Amendment; and principles of equitable estoppel. *See Shilling* Dkt. 1 (Complaint); *Shilling* Dkt. 59 (Amended Complaint).[1]

At the time of the filing of the complaint, *Shilling* Plaintiffs Commander Emily Shilling, Commander Blake Dremann, Lieutenant Commander Geirid Morgan, Sergeant First Class Cathrine Schmid, and Staff Sergeant Videl Leins were active-duty servicemembers who had served honorably and openly as transgender in the military for years, while Matthew Medina sought to enlist in the United States Marine Corps in order to serve his country. *Shilling* Dkt. 59 at ¶¶ 6–9. Meanwhile, Gender Justice League asserted claims on behalf of its members. *Id.* at ¶ 20; *id.* at ¶ 135 ("Gender Justice League sues on behalf of its members, including multiple Individual

---

[1]    For purposes of this notice, "*Shilling* Dkt" refers to filings in the district court in *Shilling v. United States* and "*Talbott* Dkt" refers to filings in the district court in *Talbott v. United States*.

2

Plaintiffs, and other prospective and current transgender service members who are currently adversely affected by the 2025 Military Ban.").

On March 27, 2025, the district court granted the *Shilling* Plaintiffs' motion for a preliminary injunction enjoining the defendants "from implementing the Military Ban," noting that the order "applies to all plaintiffs and any similarly situated individuals nationwide, including those serving out of country." *Shilling* Dkt. 103 (Order); *see also Shilling* Dkt. 104 (Memorandum and Opinion). On April 18, 2025, the United States Court of Appeals for the Ninth Circuit denied the defendants' request for a stay of the injunction. *See Shilling* Dkt. 114 (Order). However, on May 6, 2025, the United States Supreme Court granted a stay in a four-sentence order that contained no reasoning. *See Shilling* Dkt. 115 (Order).

Thereafter, the *Shilling* Plaintiffs have continued to actively pursue their case. The *Shilling* Plaintiffs argued the appeal of the preliminary injunction in their case on September 17, 2025, have opposed attempts by the defendants to stay the district court proceedings, and have argued for their ability to seek discovery. *See Shilling* Dkt. 133 (Minute Order denying motion to stay proceedings and directing parties to file a joint proposal setting out a scope of discovery and the associated deadlines); *Shilling* Dkt. 135 (Joint Status Report).

On December 10, 2025, the *Shilling* Plaintiffs propounded on the defendants various requests for production, interrogatories, and requests for admission, and on April 17, 2026, following multiple conferrals and negotiations, the *Shilling* Plaintiffs moved to compel production of the propounded discovery requests. *See Shilling* Dkt. 145 (Plaintiffs' Motion to Compel Discovery). On April 21, 2026, the district court granted the *Shilling* Plaintiffs' motion to compel discovery in large part, "direct[ing] the government to disclose any materials used to develop, prepare, implement, and modify the 2025 Hegseth Policy and February 26, 2025 Department of

Defense Guidance," and noting that "[t]he scope of discovery shall include guidance and policies implementing Executive Orders No. 14168 … and No. 14183 … as well as the implementation of the President's Executive Order developed or published since February 2025." *Shilling* Dkt. 149 (Order).

### B. *Talbott v. United States*

This Court is intimately familiar with the factual and procedural background of this case. As such, the *Shilling* Plaintiffs recount here only some salient facts as they relate to this notice.

Prior to April 15, 2026, the *Talbott* Plaintiffs had filed their original complaint and four amended complaints in this case. *See Talbott* Dkts. 1 (Complaint), 15 (Amended Complaint), 60 (Second Amended Complaint), 69 (Third Amended Complaint), 94 (Fourth Amended Complaint), 99-1 (Fourth Amended Complaint (Corrected)). None of these complaints was filed as a class action. Unlike *Shilling*, this case does not involve First Amendment claims. *Id.*; *see also Talbott* Dkt. 117 (Fifth Amended Complaint). Nor did the *Talbott* Plaintiffs assert procedural due process and estoppel claims until their second amended complaint, filed on February 24, 2025. *Compare Talbott* Dkt. 60 (Second Amended Complaint), *with Talbott* Dkts. 1 (Complaint), 15 (Amended Complaint).

The *Talbott* Plaintiffs now seek certification of a class of "all transgender individuals who, on or after the date this lawsuit was filed, are or were in active duty service in the United States military or were actively pursuing accession in the United States military or wished to do so." *Talbott* Dkt. 118 (Motion to Certify Class) at 1. The proposed class includes "two Subclasses: (1) 'all transgender individuals who, on the date this lawsuit was filed, were in active duty service in the United States military' (the 'Active Duty Plaintiff Subclass'), and (2) "all transgender

individuals who, on or after the date this lawsuit was filed, were actively pursuing accession in the United States military or wished to do so" (the 'Accession Plaintiff Subclass')." *Id.*

While the proposed class and subclasses include the *Shilling* Plaintiffs, neither the motion for class certification nor the memorandum filed in support thereof mention the *Shilling* litigation or the *Shilling* Plaintiffs. *See generally Talbott* Dkts. 118 (Motion to Certify Class), 118-1 (Memorandum in Support of Motion to Certify Class).

In the event the Court determines that the motion for class certification should be granted, the *Shilling* Plaintiffs respectfully request that the definition for the proposed class and subclasses be amended to exclude the *Shilling* Plaintiffs.

**ARGUMENT**

I.      **The Court Should Amend the Class Definition to Exclude the *Shilling* Plaintiffs.**

      **A. Exclusion of plaintiffs in parallel litigation from a class definition is routine and proper.**

It is well-established that "[i]f multiple class actions or individual actions are pending at the same time in one or more federal and state courts, the certification decision requires the judge to consider the relationship among the cases." Fed. Jud. Ctr., Ann. Manual Complex Lit. § 21.25 (4th ed. 2025). Thus, given the pendency of the *Shilling* case in another district court for over a year before class certification was sought in this case, if this Court finds that a certifiable class exists, the Court can and should define the class and subclasses to exclude the *Shilling* Plaintiffs. *Id.*; *see also* Fed. Jud. Ctr., Managing Class Action Litigation: A Pocket Guide for Judges (3d ed. 2010) ("**Your certification order should specify those who are excluded from the class, such as** residents of particular states, **persons who have filed their own actions** or are members of another class, and officers and directors of the defendants.") (emphasis added).

The Supreme Court has indicated its approval of such an outcome. As it noted in *Califano v. Yamasaki*,

> It often will be preferable to allow several courts to pass on a given class claim in order to gain the benefit of adjudication by different courts in different factual contexts. For this reason, a federal court when asked to certify a nationwide class should take care to ensure that nationwide relief is indeed appropriate in the case before it, and that certification of such a class would not improperly interfere with the litigation of similar issues in other judicial districts.

442 U.S. 682, 702 (1979).

Accordingly, several district courts have defined proposed classes and subclasses to exclude plaintiffs in parallel pending or adjudicated litigation. For example, in *Califano*, "[a]s a precautionary measure," the district court "excluded all persons who had participated as plaintiffs or members of a plaintiff class in litigation against the Secretary on similar issues" where a decision on the merits had been issued. 442 U.S. at 689.

More recently, in litigation involving another executive order by President Trump targeting transgender Americans for discrimination, the district court expressly held that it was proper to exclude the plaintiffs in a parallel case challenging the same policy from the proposed class definition and noted that the exclusion of the plaintiffs in the parallel litigation presented "no barrier to certification under Rule 23(b)(2)." *Orr v. Trump*, 786 F.Supp.3d 397, 413 (D. Mass. 2025); *id.* at 412 ("Excluding the *Schlacter* plaintiffs from the proposed classes in this case is, accordingly, consistent with the purposes of Rule 23(b)(2) class certification."). Ultimately, the Court defined the class to exclude the *Schlacter* Plaintiffs as follows: "Excluded from these classes are any judge presiding over this action and the plaintiffs in *Schlacter v. U.S. Department of State*, No. 25-cv-01344 (D. Md. filed Apr. 25, 2025)." *Orr*, 786 F.Supp.3d at 422.

Similarly, then district court judge (now Associate Justice) Ketanji Brown Jackson did the same in 2018 in *Healthy Futures of Texas v. Dep't of Health & Hum. Servs.*, 326 F.R.D. 1 (D.D.C.

2018). There, the court "rejected the argument that Rule 23(b)(2) is violated if a proposed class definition expressly excludes potential members who have existing or resolved claims." *Id.* at 10. It noted that in *Califano*, "the Supreme Court strongly suggested that a district court should take care to define the class so as to ensure that a 23(b)(2) class action does not interfere with litigation elsewhere." *Id.*

Likewise, in *Harris v. Rainey*, where plaintiffs moved to certify a class and two subclasses in a class action "challenging Virginia's refusal to allow same-sex marriages and its refusal to recognize same-sex marriages performed by sister states," *Harris v. Rainey*, 299 F.R.D. 486, 488 (W.D. Va. 2014), the court excluded from the class definition plaintiffs in a parallel case, *Bostic v. McDonnell*, No. 2:13-cv-00395 (E.D. Va. filed Sept. 18, 2013). *See Harris*, 299 F.R.D. at 491. The *Bostic* Plaintiffs, like the *Shilling* Plaintiffs here, filed a notice of request that the proposed class definition be amended to exclude them. *Id.* The district court amended the class definition as follows: "No person who is a plaintiff in *Bostic v. McDonnell*, 2:13cv00395 (E.D. Va. filed Sept. 18, 2013), currently pending before the United States District Court for the Eastern District of Virginia, is included in the class, or either subclass." *Id.* at 498.

Multiple other courts similarly have excluded plaintiffs in existing parallel litigation from the definition of a class. *See*, *e.g.*, *Yates v. NewRez LLC*, 686 F. Supp. 3d 397, 413 (D. Md. 2023) (noting that plaintiffs' "proposed class definition excludes any overlap with other cases"); *Pelletier v. Endo Int'l PLC*, 338 F.R.D. 446, 477–78 (E.D. Pa. 2021) (allowing plaintiffs to carve out related claims released by a settlement in their class definition); *Batalla Vidal v. Wolf*, 501 F. Supp. 3d 117, 138 (E.D.N.Y. 2020) (excluding from DACA Class "individuals who are prima facie eligible for deferred action through DACA and who bring a federal lawsuit challenging the Wolf Memorandum"); *Espinoza v. Galardi S. Enters., Inc.*, No. 14-cv-21244, 2016 WL 127586, at *5

(S.D. Fla. Jan. 11, 2016) (allowing a class definition that excluded plaintiffs in a different case even though they "would all very likely be encompassed by the class definitions proposed by Plaintiffs without the explicit carve-out").

In sum, excluding plaintiffs in parallel litigation from the definition of a class is both routine and proper.

### B. Exclusion of plaintiffs in parallel litigation at the definitional stage is distinct from creating an opt out procedure.

Excluding the *Shilling* Plaintiffs from the class definition is not the same as providing for an opt-out to the proposed Rule 23(b)(2) class. "[I]t is clear beyond cavil that the 'class definition' and 'opt-out' mechanisms involve different decision makers, serve different functions, and take place at markedly different times." *Healthy Futures*, 326 F.R.D. at 9. "The class definition sets the parameters for determining class membership before a class is certified." *Orr*, 786 F.Supp.3d at 412 (citing, *inter alia*, 3 Newberg and Rubenstein on Class Actions § 7:27 (6th ed. 2025)); *see also Healthy Futures*, 326 F.R.D. at 9; Ann. Manual Complex Lit. § 21.222. "By contrast, the opt-out mechanism is the initiative of individual putative class members: each decides whether or not he or she wishes to participate in the class action *after* the district court has certified the case for class adjudication." *Healthy Futures*, 326 F.R.D. at 9 (citing Scott Dodson, *An Opt–In Option for Class Actions*, 115 Mich. L. Rev. 171, 173 (2016)); *see also* 6 Newberg and Rubenstein on Class Actions § 18:45 (6th ed. 2025). As the courts in *Orr* and *Healthy Futures* have explained, exclusion at the definitional stage is not only distinct from providing an opt-out, but also the proper course when the proposed class definition would encompass plaintiffs in parallel litigation.

**C. Exclusion of the *Shilling* Plaintiffs from the class definition here is justified.**

The *Shilling* Plaintiffs seek exclusion from the proposed class definition in this case to protect their rights and choice to pursue their case in a different forum long before class certification was considered in this case.

For one, the *Shilling* Plaintiffs seek to ensure they can litigate their pre-existing action to final judgment on the schedule set forth by the court in that case, where discovery is ongoing. *See, e.g.*, *Shilling* Dkt. 137 (Scheduling Order). Certifying the class as proposed by the *Talbott* Plaintiffs without excluding the *Shilling* Plaintiffs not only could lead to disparate rulings on some of the *Shilling* Plaintiffs' claims but could also delay the resolution of the *Shilling* Plaintiffs' claims. For example, the defendants in *Shilling* have already pointed to the request for class certification in this case to justify not responding to the *Shilling* Plaintiffs' discovery requests and suggesting that the *Shilling* case should "come to an end." *Shilling* Dkt. 145 (Expedited Joint Motion re Plaintiffs' Motion to Compel Discovery) at 5–6 ("[T]he *Talbott* court also ordered class certification briefing, which will be completed by June 12, 2026. … If that court grants class certification, this case [i.e., *Shilling*] … should come to an end.").

Excluding the *Shilling* Plaintiffs, however, will not impact the *Talbott* Plaintiffs in any way. Any decision in *Shilling* would not have a preclusive effect on the *Talbott* Plaintiffs. On the other hand, if the *Shilling* Plaintiffs are not excluded from the class, a judgment against the *Talbott* Plaintiffs could bind them with the result.

By excluding the *Shilling* Plaintiffs as proposed herein, the Court would ensure that the class definitions promote "administrability and judicial economy," *Batalla Vidal*, 501 F. Supp. 3d at 137, and that the rights and choices of the *Shilling* Plaintiffs are protected.

Accordingly, the *Shilling* Plaintiffs respectfully request that the Court amend the definition of the proposed class in this case as follows:

Excluded from the class or either subclass is any person who is an individual plaintiff in *Shilling v. United States*, No. 2:25-cv-00241-BHS (W.D. Wash. filed Feb. 6, 2025), currently pending before the United States District Court for the Western District of Washington, or a member of Gender Justice League, the associational plaintiff in *Shilling*, whose interests the organization represents and who is not an individual plaintiff in *Talbott v. United States*, No. 1:25-cv-00240-ACR (D.D.C.).[2]

II.     **Alternatively, Should the Court Decide Not to Exclude the *Shilling* Plaintiffs at the Definitional Stage, the Court Should Provide for an Opt-Out Procedure for Class Members, Including the *Shilling* Plaintiffs.**

While "as a general matter, due process does not require that (b)(1) or (b)(2) class members be given an opportunity to opt out," *Eubanks v. Billington*, 110 F.3d 87, 92 (D.C. Cir. 1997); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011), the D.C. Circuit has held that "[t]he language of Rule 23 is sufficiently flexible to afford district courts discretion to grant op-out rights in (b)(1) and (b)(2) class actions." *Eubanks*, 110 F.2d at 94; *see also* 3 Newberg and Rubenstein on Class Actions § 9:51 (noting that "courts have on certain occasions permitted class members to opt out of Rule 23(b)(1) or (b)(2) class actions"); 6 Newberg and Rubenstein on Class Actions § 18:45 (noting "the Supreme Court has yet to rule on whether [an opt-out] right exists in (b)(1) and (b)(2) class actions").

What is more, Rule 23(d)(1) provides that "the court may issue orders that: … require—to protect class members and fairly conduct the action—giving appropriate notice to some or all class members" and "deal with similar procedural matters." This language is "broad enough to permit the court to allow individual class members to opt out of a (b)(1) or (b)(2) class when necessary to

---

[2]     Whether a putative class member is an individual plaintiff in *Shilling* or a member of Gender Justice League whose preference is that their interests be represented through Gender Justice League rather than the putative class can be easily ascertained. For example, a checkbox at the time that the individual seeks to benefit from any relief granted as a result of the class action may suffice. Such was the case in *Orr* while the preliminary class-wide injunctive relief was in effect. *See*, *e.g.*, U.S. Dep't of State, Attestation of *Orr v. Trump* Class Membership, archived at https://tinyurl.com/p4sw59r8 [https://perma.cc/95TD-9E6B] (accessed May 27, 2026).

facilitate the fair and efficient conduct of the litigation." *Eubanks*, 110 F.3d at 96; *see also Cnty. of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1304–05 (2d Cir. 1990); 3 Newberg and Rubenstein on Class Actions § 9:51 (noting that "courts have found the discretionary authority to lie in Rule 23(d)(1)(E)"). Such should be the case here where the *Shilling* Plaintiffs have actively litigated their claims in a different forum since long before the *Talbott* Plaintiffs sought to transform their case into a class action.

Accordingly, should the Court decide not to exclude the *Shilling* Plaintiffs at the definitional stage, it should allow putative class members, including the *Shilling* Plaintiffs, to opt out from the proposed class.

## CONCLUSION

For the foregoing reasons, the *Shilling* Plaintiffs respectfully request that the proposed class definition be amended to exclude them as follows:

> Excluded from the class or either subclass is any person who is an individual plaintiff in *Shilling v. United States*, No. 2:25-cv-00241-BHS (W.D. Wash. filed Feb. 6, 2025), currently pending before the United States District Court for the Western District of Washington, or a member of Gender Justice League, the associational plaintiff in *Shilling*, whose interests the organization represents and who is not an individual plaintiff in *Talbott v. United States*, No. 1:25-cv-00240-ACR (D.D.C.).

In the alternative, should the Court decide not to exclude the *Shilling* Plaintiffs at the definitional stage, the *Shilling* Plaintiffs respectfully request that the Court provide an opt-out process for any putative class members, including the *Shilling* Plaintiffs, who desire to be excluded from the proposed class.

**Local Civil Rule 7(m) Certification**

Pursuant to Local Civil Rule 7(m), counsel for the *Shilling* Plaintiffs conferred with counsel for the parties in this case. Counsel for the *Talbott* Plaintiffs indicated that the "*Talbott* Plaintiffs take no position on the proposed notice." Counsel for Defendants indicated that Defendants oppose the requested modification to the class definition because, according to them, "Rule 23(b)(2) does not allow people to opt out of the class."

Dated: May 27, 2026

Respectfully submitted,

/s/ Omar Gonzalez-Pagan

Omar Gonzalez-Pagan (Bar No. NY0718)

Sasha Buchert*                                              **Lambda Legal Defense**

**Lambda Legal Defense**                          **and Education Fund, Inc.**

**and Education Fund, Inc.**                       120 Wall Street, 19th Floor

815 16th St. NW, Suite 4140                       New York, New York 10005

Washington, DC 20006                              Telephone: 212-809-8585

Telephone: 202-804-6245                           Facsimile: 855-535-2236

Facsimile: 855-535-2236                            ogonzalez-pagan@lambdalegal.org

SBuchert@lambdalegal.org

* Motion for admission *pro hac vice*
forthcoming.

***Attorneys for the* Shilling *Plaintiffs***

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system on May 27, 2026. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Omar Gonzalez-Pagan*
Omar Gonzalez-Pagan (Bar No. NY0718)

13