**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

NICOLAS TALBOTT, et.al.

  *Plaintiffs*,

v.

UNITED STATES, et al.,

  *Defendants*.

Civ. A. No. 25-240 (ACR)

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'
<u>MOTION FOR CLASS CERTIFICATION</u>**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 1

LEGAL STANDARD .......................................................................................................... 2

ARGUMENT ...................................................................................................................... 3

    I.     Class Certification Would Improperly Interfere with Litigation in Other Courts............... 3

    II.    The Class Lacks Commonality and Typicality. .............................................................. 6

    III.   All Class Definitions are not Ascertainable. ................................................................. 9

CONCLUSION.................................................................................................................... 10

## TABLE OF AUTHORITIES

**CASES**

*Amara v. Cigna Corp.*,
    775 F.3d 510 (2d Cir. 2014) ............................................................................... 5

*Berry v. Schulman*,
    807 F.3d 600 (4th Cir. 2015)*, cert. denied sub nom. Schulman v. LexisNexis Risk & Info.*
    *Analytics Grp., Inc.*, 580 U.S. 820 (2016) ................................................................. 5

*Braidwood Mgmt.*, Inc. *v. Equal Emp. Opportunity Comm'n*,
    70 F.4th 914 (5th Cir. 2023) ............................................................................ 10

*C.G.B. v. Wolf*,
    464 F. Supp. 3d 174 (D.D.C. 2020) ...................................................................... 3

*Califano v. Yamaski*,
    442 U.S. 682 (1979) ................................................................................. 2, 3, 4, 6

*Campbell v. Nat'l R.R. Passenger Corp.*,
    311 F. Supp. 3d 281 (D.D.C. 2018) ..................................................................... 6, 9

*Crawford v. Bell*,
    599 F.2d 890 (9th Cir. 1979) ............................................................................. 4

*DL v. Districtg of Columbia*,
    713 F.3d 120 (D.C. Cir. 2013) ......................................................................... 2, 7

*Ebert v. Gen. Mills, Inc.*,
    823 F.3d 472 (8th Cir. 2016) ............................................................................. 5

*Gates v. Rohm & Haas Co.*,
    655 F.3d 255 (3d Cir. 2011) ............................................................................. 4

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) ..................................................................................... 2-3

*Glover v. EQT Corp.*,
    151 F.4th 613 (4th Cir. 2025) ........................................................................... 9

*Gooch v. Life Invs.' Ins. Co. of Am.*,
    672 F.3d 402 (6th Cir. 2012) ............................................................................. 5

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.* ("*MTBE*"),
    209 F.R.D. 323 (S.D.N.Y. 2002) ......................................................................... 9

*J.D. v. Azar*,
    925 F.3d 1291 (D.C. Cir. 2019) ........................................................................ 8, 9

*Shelton v. Bledsoe*,
    775 F.3d 554 (3d Cir. 2015) ............................................................................. 5

*Taylor v. Sturgell*,
    553 U.S. 880 (2008) ...................................................................................... 4

*Trump v. CASA, Inc.*,
    606 U.S. 831 (2025) ................................................................................................... 6

*United States v. Mendoza*,
    464 U.S. 154 (1984) ................................................................................................ 3-4

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2001) ................................................................................... *passim*

**OTHER AUTHORITIES**

Restatement (Second) of Judgments § 41(1), (2)............................................................. 4

1 Newberg and Rubenstein on Class Actions § 3 (6th ed. 2024).................................... 9

3 Newberg and Rubenstein on Class Actions, § 9 (6th ed. 2024)............................... 5, 6

6 Newberg and Rubenstein on Class Actions § 18 (6th ed. 2024)............................... 4, 5

**FEDERAL RULES**

Fed. R. Civ. P. 23 ..................................................................................................... 3, 6

**INTRODUCTION**

This suit challenges the Department of War's ("DOW") policy regarding military service of individuals with gender dysphoria. At present, the policy is in effect. Plaintiffs now seek class certification pursuant to Rule 23(b)(2). This request should be denied. As a prudential matter, creating a nationwide class would interfere with other litigation challenging the same policy. Further, Plaintiffs have not satisfied the requirements of Rule 23. Because the named Plaintiffs and others falling within Plaintiffs' Active Duty Subclass definition have voluntarily separated, the commonality and typicality requirements are not satisfied with respect to that subclass. And all three of Plaintiffs' class definitions are not sufficiently definite to ascertain class membership because they rely on the subjective mental states of individuals. For these reasons, the Court should deny Plaintiffs' motion.

**BACKGROUND**

This Court is familiar with the factual and procedural background of this case. The Court entered a preliminary injunction on March 18, 2025, ECF Nos. 88, 89, and denied Defendants' motion to dissolve the injunction, ECF No. 100. On appeal, the D.C. Circuit first administratively stayed and later stayed the injunction. This Court thereafter denied Defendants' request to stay the district court proceedings, ECF No. 114, and ordered briefing on class certification. *See* March 20, 2026 Minute Order (setting briefing schedule).

Since this case was filed, eleven of the Plaintiffs have voluntarily separated or retired from the military. *See* Defs.' Answer to Fifth Am. Compl. ¶ 39 (Vandal); ¶ 89 (Bettis); ¶ 97 (Graham); ¶ 128 (Tyson); ¶ 161 (McCallister); ¶ 137 (Bloomrose); ¶ 150 (Morgan); ¶ 185 (Bruce); ¶ 215 (Dulaney); ¶ 253 (Orth); ¶ 263 (Richter).

On April 15, 2026, Plaintiffs moved to certify a class in this case using the following definition: "a … [c]lass of all transgender individuals who, on or after the date this lawsuit was

filed, are or were in active-duty service in the United States military or were actively pursuing accession in the United States military or wished to do so (the 'Class')." Pls.' Mem. in Supp. of Mot. for Class Cert. 1, ECF No. 118-1 ("Pls.' Mot. for Class Cert"). Within the putative Class, Plaintiffs further seek to certify two subclasses: (1) an Active-Duty Subclass consisting of "all transgender individuals who, on the date this lawsuit was filed, were in active-duty service in the United States military[,]" and (2) an Accession Subclass consisting of "all transgender individuals who, on or after the date this lawsuit was filed, were actively pursuing accession in the United States military or wished to do so[.]" *See id.* Lastly, for purposes of Class certification, Plaintiffs define "transgender person" as "a person who lives or wishes to live in a sex other than their birth sex." *Id.*

## **LEGAL STANDARD**

Courts should take great care in determining whether to certify a class, especially a nationwide class against the federal government. As the Supreme Court has cautioned, "a federal court when asked to certify a nationwide class should take care to ensure that nationwide relief is indeed appropriate in the case before it, and that certification of such a class would not improperly interfere with the litigation of similar issues in other judicial districts." *Califano v. Yamaski*, 442 U.S. 682, 702 (1979). The Supreme Court also has recognized "the force of the [government's] contentions that nationwide class actions may have a detrimental effect by foreclosing adjudication by a number of different courts and judges, and of increasing, in certain cases, the pressures on this Court's docket." *Id.*

Apart from accounting for the above weighty concerns implicated by a request to certify a nationwide class against the federal government, the "district court must conduct a 'rigorous' class-certification analysis." *DL v. District of Columbia*, 713 F.3d 120, 125 (D.C. Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S 338,. 351 (2011)); *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S.

2

147, 161 (1982) (A class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."). Specifically, a party seeking certification must meet the requirements of numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a).

Because Plaintiffs request certification under Rule 23(b)(2), they must also show that Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Wal-Mart*, 564 U.S. at 345–46 (citation omitted). In other words, the "key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Id.* at 360 (citation omitted).

## **ARGUMENT**

### **I.      Class Certification Would Improperly Interfere with Litigation in Other Courts.**

Plaintiffs seek to certify a nationwide class, notwithstanding the existence of at least one other lawsuit challenging the same policy. *See, e.g.*, *Shilling v. United States*, 2:25-cv-00241-BHS (W.D. Wash.) ; *see* Notice of Request, ECF No. 124. The requested certification contravenes the Supreme Court's admonition that "a federal court when asked to certify a nationwide class should take care to ensure that . . . certification of such a class would not improperly interfere with the litigation of similar issues in other judicial districts." *Califano*, 442 U.S. at 702. Allowing multiple cases to proceed seeking relief as to only those Plaintiffs, allows multiple courts to consider the issue and permits percolation of the issues. *See C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 208 (D.D.C. 2020) ("[I]t often will be preferable to allow several courts to pass on a given class claim[.]" (quoting *Califano*, 442 U.S. at 702)); *cf. United States v. Mendoza*, 464 U.S. 154, 160 (1984) (disallowing nonmutual collateral estoppel against the government on grounds that it "would

3

substantially thwart the development of important questions of law by freezing the first final decision rendered").

As the Court is aware, there is ongoing litigation in *Shilling v. Trump* in the District of Washington, and the *Shilling* plaintiffs, who are non-parties in this case, have filed a Notice in this Court requesting that any class certification in this case excludes the *Shilling* plaintiffs because certification of Plaintiffs' proposed class could potentially interfere with the proceedings in *Shilling*. *See* Notice, ECF No. 124 at 9.[1] Certification of a nationwide class may create a perverse incentive for those plaintiffs, or plaintiffs in any newly filed case, to race to final judgment because "the judgment in a class action binds all members of the class" and "will bind those absent class members even though they never themselves actively litigated their claims. *See* 6 Newberg and Rubenstein on Class Actions § 18:1 (6th ed. 2024); Restatement (Second) of Judgments § 41(1), (2) (recognizing binding effect of class judgment on members); *see also Wal-Mart*, 564 U.S. at 364 (expressing concern that, were Rule 23(b)(2) class improperly certified, absent class members "would be *precluded* by litigation they had no power to hold themselves apart from"); *Taylor v. Sturgell*, 553 U.S. 880, 893 (2008); *Gates v. Rohm & Haas Co.*, 655 F.3d 255, 264 (3d Cir. 2011) (applying *Wal-Mart* and noting that in a Rule 23(b)(2) class "all class members will be bound by a single judgment"). A final judgment in this case (following proper class certification) would be preclusive on members of the class—including those whose rights are directly at issue in *Shilling*. This is precisely the reason the Supreme Court cautioned against certifying a class. *See Califano*, 442 U.S. at 702.

---

[1] As Defendants have made clear in *Shilling* if a class is certified in this case, the *Shilling* litigation should not proceed. *See Crawford v. Bell*, 599 F.2d 890, 892 (9th Cir. 1979) (holding that "dismissal of an individual complaint is proper because the complainant is a member in a class action seeking the same relief[.]"). If no class is certified, then there will be no impact on the *Shilling* proceedings.

Amending the class definition to exclude specific litigants in other cases would not, however, an appropriate workaround. Such a carve-out is akin to an opt-out mechanism, the purpose of which is to protect putative class members from a final judgment that would prevent them "from continuing to pursue, or from later initiating, individual or class litigation regarding the subject of the class suit." 6 Newberg and Rubenstein on Class Actions § 18:45 (6th ed. 2024). As the Supreme Court explained in *Wal-Mart*, however, "[t]he Rule *provides no opportunity* for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action." 564 U.S. at 364 (emphasis added). A Rule 23(b)(2) class is a "mandatory" class for which "the relief sought must perforce affect the entire class at once." *Id.* at 361–62.

Appellate courts interpreting *Wal-Mart* overwhelmingly have held that the mandatory nature of a Rule 23(b)(2) class precludes individual opt-outs. *See Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 480 (8th Cir. 2016) ("Because a (b)(2) class is mandatory, the rule provides no opportunity for (b)(2) class members to opt out[.]"); *Berry v. Schulman*, 807 F.3d 600, 609, 612 (4th Cir. 2015) (citation omitted) (rejecting objectors' request to opt out of (b)(2) class on ground that opt-out is not provided by the Rule and is "unnecessary" because "the relief sought is uniform"), *cert. denied sub nom. Schulman v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 580 U.S. 820 (2016); *Gooch v. Life Invs.' Ins. Co. of Am.*, 672 F.3d 402, 433 (6th Cir. 2012) (holding that "class members may not opt out" of Rule 23(b)(2) certifications); *Shelton v. Bledsoe*, 775 F.3d 554, 561 (3d Cir. 2015) ("[T]here is no right to opt out from [a (b)(2)] class"); *see also Amara v. Cigna Corp.*, 775 F.3d 510, 519 (2d Cir. 2014) (Rule 23(b)(2) class members "need not be given notice and opt-out rights"); 3 Newberg and Rubenstein on Class Actions § 9:51 (6th ed. 2024) ("[C]ases in which courts have enabled class members to opt out of (b)(1) or (b)(2) classes tend to

5

be those that involve individualized monetary damages. The . . . *Wal-Mart* case undermines the very viability of these particular types of class actions.").  In sum, because certification here would "improperly interfere with the litigation of similar issues in" another judicial district and prevent the "benefit of adjudication by different courts" of similar claims, *Califano*, 442 U.S. at 702, this Court should deny certification and limit its ruling to the parties before it consistently with the extent of this Court's equitable power.  *See Trump v. CASA, Inc.*, 606 U.S. 831 (2025).

While the *Shilling* plaintiffs disclaim that they are seeking an opt-out, the proposal to carve out individuals who would otherwise fall within the class definition is in fact an opt-out and inconsistent with *Wal-Mart*.  Rule 23(b)(2) does not provide a carveout as "exclusion rights are generally contradictory to the very nature of . . .  (b)(2) class actions."  3 Newberg and Rubenstein on Class Actions § 9:51 (6th ed. 2024).  Due to the nature of 23(b)(2) classes, the ruling sought by Plaintiffs would bind with equal force all those whose rights are being determined in the other case, including those who have retained separate counsel.

## II.      The Putative Class Lacks Commonality and Typicality.

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury."  *Wal-Mart*, 564 U.S. at 349–50 (citation omitted).  This requirement is met if Plaintiffs' claims present "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The "commonality requirement 'is easy to misread, since any competently crafted class complaint literally raises common 'questions.'"  *Campbell v. Nat'l R.R. Passenger Corp.*, 311 F. Supp. 3d 281, 315 (D.D.C. 2018) (quoting *Wal-Mart*, 564 U.S. at 349).  Rather, Rule 23 establishes that common questions are those "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart*, 564 U.S. at 350.  Applying that definition, "[w]hat matters to class

certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (alteration in original) (quotation omitted). Accordingly, to satisfy commonality, Plaintiffs must "identif[y] . . . a policy or practice that affects all members of the class in the manner." *DL*, 713 F.3d at 126.

Plaintiffs have failed to establish commonality among class members. While Plaintiffs enumerate a list of issues that they assert are common, Pls.' Mot. for Class Cert. at 10, none of those issues are capable of "generat[ing]" common answers" for purposes of Rule 23(a). *See Wal-Mart*, 564 U.S. at 350. It is not enough that Plaintiffs argue that all class members allegedly "have all suffered . . . violation[s] of the same provision[s] of law" as the same legal provision "can be violated in many ways." *Id.*

Most critically, Plaintiffs' proposed class definition of "transgender" includes all those who wish to live in a sex other than their birth sex. As the Government has previously explained, "wishing to live in a sex other than their birth sex" extends beyond those with a clinical diagnosis of gender dysphoria. *See* March 21, 2025 Policy Memorandum at 1 n.2, ECF No. 91-2. Because the policy regarding separation only applies to those who have (or have previously had) gender dysphoria, the class members do not all "suffer[ ] the same injury." *Wal-Mart*, 564 U.S. at 348.

Beyond that fundamental division, some named Plaintiffs have decided to voluntarily separate or retire pursuant to the challenged policy. *See, e.g.*, ECF No. 119 ¶¶ 89, 128, 161 (Plaintiffs Bettis, Tyson, and McCallister). Their claims will present a unique set of facts and issues from other Plaintiffs given that they are no longer serving in the military. For example, with respect to the due process claim, Plaintiffs argue that "this claim presents the common issue of whether the procedures adopted to implement the Military Ban," including the administrative

7

separation procedures, "deprive transgender service members of a protectible property interest without due process of law." Pls.' Mot. for Class Cert. 11. Plaintiffs further argue that these administrative proceedings run afoul of the rights of service members as they must appear at administrative separation proceedings in compliance with uniform and grooming standards of their birth sex. *Id.* These factual and legal questions are not common to class members who have voluntarily separated, including the named Plaintiffs, as they have not undergone and will not undergo the challenged administrative process for involuntary separation proceedings. Thus, the resolution of that question—whether the administrative proceedings violate due process—would not resolve any issues on a class-wide basis.

The Plaintiffs similarly cannot rely on a common alleged injury from the policy regarding the inability to serve in a sex other than their birth sex. Some Active-Duty Plaintiffs are presently serving in their birth sex.[2] Yet, Plaintiffs' claim is that serving in their birth sex is "impossible." Pls.' Fifth Am. Compl. ¶ 1, ECF No. 117. The fact that service members are allegedly prevented from serving altogether is critical to their case. *See, e.g.*, *id.* ¶ 3 ("[N]o service members who are transgender may enlist or continue their military service."); ¶ 406 (arguing that "[a] policy preventing or restricting transgender people from serving in the military discriminates against Plaintiffs based on their sex[.]"). Accordingly, although all class members may argue that the policy prevents them from serving, the policy does not impact putative class members who have separated from the military in the same manner as putative class members who have continued to serve, or who have never served, in their birth sex under the policy.By the same token, Plaintiffs cannot establish that their claims are typical of their respective putative classes. *See Wal-Mart*,

---

[2] Some Active-Duty Plaintiffs are on administrative absence pending involuntary separation proceedings.

564 U.S. at 349 n.5. ("The commonality and typicality requirements of Rule 23(a) tend to merge.") (quotation omitted). "Typicality differs from commonality in that typicality concerns the relationship between the representative's individual claims and the class's claims rather than the relatedness of the entire class's claims." *J.D. v. Azar*, 925 F.3d 1291, 1322 (D.C. Cir. 2019). "[T]ypicality is ordinarily met "if the claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory." *Id.* (quotation omitted). Plaintiffs' claims would not be typical of those of the entire class, as the class includes individuals who did not elect to voluntarily separate pursuant to the policy. Those class members could not, therefore, advance their claims "based on the same legal theory" as the named Plaintiffs. *See id*.

## III.    All Class Definitions are not Ascertainable.

Plaintiffs' proposed class definitions cannot meet the requirements of Rule 23 because the classes are impossible for the Court to ascertain. Class certification is not appropriate where the Court cannot "readily identify the class members in reference to objective criteria" and "class members are impossible to identify without extensive and individualized fact-finding[.]" *Glover v. EQT Corp.*, 151 F.4th 613, 621 (4th Cir. 2025) (quotation omitted). Although not mentioned expressly in Rule 23, "there is an 'implied requirement' that the class be 'adequately defined' and 'clearly ascertainable' before it can be certified." *Campbell*, 311 F. Supp. 3d at 313 (quoting *Thorpe v. District of Columbia*, 303 F.R.D. 120, 139 (D.D.C. 2014)). At a minimum, class definitions that "raise vagueness and manageability concerns because of the difficulty of identifying which individual[s]" are members would run afoul Rule 23. *J.D.*, 925 F.3d at 1320.

Here, all three of Plaintiffs' class definitions are impermissibly vague. All three definitions depend on the putative class members' subjective state of mind—namely, whether they "wish[] to

9

live in a sex other than their birth sex." Pls.' Mot. for Class Cert. at 1. But class membership that depends on subjective and potentially changeable desires of the putative class members are not ascertainable. *See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002) ("Where any criterion is subjective, e.g., state of mind, the class is not ascertainable."); 1 Newberg and Rubenstein on Class Actions § 3:5 (6th ed. 2024) ("Courts generally deny certification when the putative class is defined by class members' state of mind."). Indeed, the Department does not track servicemembers according to whether they self-identify as being "transgender" or as defined by Plaintiffs, who "live in or wish to live in a sex other than their birth sex," nor does it track all the servicemembers who may or may not self-identify as being transgender. Rather, the policy turns on a medical condition—gender dysphoria. Not all trans-identifying individuals suffer from gender dysphoria, and conversely, not all persons with gender dysphoria are transgender. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 451 (5th ed. 2013) (*DSM-5*). Accordingly, the proposed class definitions are too indefinite to satisfy Rule 23. *Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*, 70 F.4th 914, 934 (5th Cir. 2023) (decertifying two 23(b)(2) classes of employers that "oppose[d] homosexual or transgender behavior" because courts would have to investigate the state of mind of the employers to assess their opposition to such behavior).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion for Class Certification.

Dated: May 29, 2026                    Respectfully submitted,

                                       BRETT A. SHUMATE
                                       Assistant Attorney General
                                       Civil Division

ALEX HAAS
Director

JEAN LIN
Special litigation Counsel

/s/ *Elizabeth B. Layendecker*
M. JARED LITTMAN
ROBERT C. BOMBARD
ELIZABETH B. LAYENDECKER
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street, NW
Washington D.C. 20005
(202) 616-5046
Elizabeth.B.Layendecker@usdoj.gov

*Counsel for Defendants*

11