**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NICOLAS TALBOTT *et al.*, *individually and on behalf of all similarly situated individuals,*

*Plaintiffs*,

v.

UNITED STATES *et al.*,

*Defendants*.

Civil Action No. 25-cv-240-ACR

**[PROPOSED]**
**STIPULATED ORDER FOR DISCOVERY AND PRODUCTION OF ELECTRONICALLY STORED INFORMATION**

To expedite the flow of discovery material and facilitate consistency in the format of the documents to be produced in this case, Plaintiffs and Defendants (collectively, the "Parties"), by and through their respective counsel and pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, hereby stipulate and agree to the terms of this Stipulated Order for Discovery and Production of Electronically Stored Information ("ESI Protocol").

## I. <u>DEFINITIONS</u>

1. "Action" shall refer to the above-captioned civil action.

2. "Discovery Material" shall mean all items or information, regardless of medium or manner in which they are generated, stored, or maintained (including, among other things, disclosures, deposition testimony, transcripts and exhibits thereto, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

3. "Document" is synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure. The term "Document" shall include Hard-Copy Documents, Electronic Documents or Data, and ESI as defined herein.

4. "Electronic Document or Data" means Documents that are in electronic form at the time of collection.

5. "Electronically stored information" or "ESI," as used herein, has the same meaning as in Federal Rules of Civil Procedure 26 and 34.

6. "Hard-Copy Document" means Documents existing in paper form at the time of collection.

7. "Hash Value" is a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the data set.

8. "Load File" is an electronic file that can assist in loading an electronic production set into a Receiving Party's document review platform.

9. "Media" means an object or device, real or virtual, including but not limited to a disc, tape, computer, or other device on which data is or was stored.

10. "Metadata" means: (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file that describes the characteristics, origins, usage, and/or validity of the electronic file; (ii) information relating to the file path of, organization of, or access to the native file within a database, virtual folder, or other directory; (iii) the file name; (iv) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system; (v) structured data associated with a file that another information system uses or can use to access or identify the file; (vi) the version number of the file within a document-management or other information system; (vii) information, such as Bates numbers, created

during the course of processing Documents or ESI for production; and (viii) information collected during the course of collecting Documents or ESI, such as the name of the Media device on which it was stored or the custodian or non-custodial data source from which it was collected.

11. "Native Format" means and refers to the format of ESI in which it was generated and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities. For example, the native format of an Excel workbook is an .xls or .xlsx file.

12. "Non-Party" means any natural person, partnership, corporation, association, or other legal entity not named as a Party to this Action.

13. "Optical Character Recognition" or "OCR" means the process of recognizing and creating a file containing visible text within an image.

14. "Outside Counsel" means (i) outside counsel who appear on the pleadings as counsel for a Party; and (ii) partners, associates, and staff of such counsel to whom it is reasonably necessary to disclose information for this litigation.

15. "Party" means any party to this Action, including all of that party's officers, directors, employees, consultants, experts, and Outside Counsel (and their support staffs).

16. "Private Personal Information" or "PPI" means sensitive, non-public data or information tied to an individual, including, for example, names of non-Senior Department of War officials (GS-15 and below)[1], government identifiers (such as Social Security Numbers

---

[1] Plaintiffs reserve their rights to seek from Defendants the names of individuals they believe are likely to have discoverable information and to seek Court intervention should Defendants fail to disclose those names to Plaintiffs.

("SSNs"), driver's license numbers, and passport details), financial information (such as bank account numbers, routing numbers, and credit card data), medical information (such as medical history and clinical records), and contact information (such as direct contact numbers, emails, and home addresses).

17. "Producing Party" means a Party or Non-Party that produces Discovery Material in this Action.

18. "Requesting Party" means a Party that receives Discovery Material from a Producing Party.

19. "Searchable Text" means the native text extracted from an Electronic Document and any OCR text generated from a Hard-Copy Document or electronic image.

## II. GENERAL PROVISIONS

1. The Federal Rules of Civil Procedure will govern discovery, and no provision herein alters any provision of the Federal Rules of Civil Procedure, local rules, or applicable law. The terms of this Order shall be construed to ensure the cost-efficient and cost-effective exchange of information consistent with the Federal Rules of Civil Procedure, local rules, and applicable law.

2. Nothing in this Order alters a Party's rights, obligations, and responsibilities under the Federal Rules of Civil Procedure, local rules, or applicable law, nor does anything in this Order impose additional burdens beyond those imposed by such rules or applicable law.

3. A Producing Party shall not produce ESI in a format not requested or agreed to by the Requesting Party. If an issue arises, the issue will only be submitted to the Court after reasonable efforts by the Parties to reach agreement by the meet-and-confer process.

## III. PRESERVATION AND IDENTIFICATION OF ESI

1. The Parties agree that preservation of potentially relevant ESI will be reasonable and proportionate.

2. The Parties shall have a continuing obligation to take reasonable and proportionate steps to identify and preserve custodial and non-custodial data sources that may contain information that is relevant to the claims and defenses in this litigation.

## IV. PRODUCTION FORMATS AND PROCESSING SPECIFICATIONS

### A. Format

1. The Parties will produce ESI in a litigation database-ready format, including single-page images, searchable text files, native files, a Concordance-compatible data Load File (.dat), and image Load Files in Concordance/Relativity/Opticon-compatible format (.opt). Each production volume's data Load File will contain a header row listing all metadata fields included in the volume.

2. All ESI shall be produced with applicable Metadata as specified in Appendix I, and Searchable Text extracted from the ESI. Redacted ESI, other than spreadsheet files that will be produced as redacted native files, will be produced as a tagged image file format ("TIFF") with applicable Metadata and OCRed Searchable Text. Hard-Copy Documents will be scanned and produced as TIFFs, with applicable Metadata as set out in Appendix I, and OCRed Searchable Text.

3. Images should be single-page, black-and-white, Group IV, 300x300 DPI TIFF format and consecutively Bates-stamped, except for spreadsheet-type files, source code, audio and video files, and other file types that cannot be rendered into a usable printed form, which shall be produced in native format. If an original Document contains color and the color is necessary to review the Document, it should also be produced, upon request, in Native Format

or as single-page, 300 DPI JPG images with JPG compression and a high-quality setting as to not degrade the original image. TIFFs/JPGs will show any and all text and images that would be visible to the reader using the native software that created the Document.

4. For word processing files (e.g., Microsoft Word), TIFFs/JPGs will include, where present, comments, "tracked changes," similar in-line editing, and all hidden content. For presentation files (e.g., Microsoft PowerPoint), TIFFs/JPGs will include, where present, speaker notes, comments, and all other hidden content.

5. Document text will be produced as separate, document-level text files, named according to the beginning Bates value of the Document and containing original extracted text or OCR text when original text is not available or when the Document contains redactions. Document text will not be embedded in the Metadata Load File. The Parties will not degrade the searchability of Documents as part of the Document production process.

6. Unless otherwise agreed, each Document will be produced in its entirety, with attachments and enclosures. Documents not otherwise responsive will be produced if attached to a responsive Document. Where paper Documents are converted into electronic format, distinct Documents may not be merged into a single record, and single Documents may not be split into multiple records.

7. Hard-Copy Documents that are segregated or separated from other Documents, whether by inclusion of binders, files, dividers, tabs, clips or any other method, will be produced in a manner that reflects these divisions.

8. If a Document is produced in Native Format, a single-page, Bates-stamped image slipsheet stating the Document has been produced in Native Format and bearing the Bates number and confidentiality designation will also be provided. Each native file should be named

according to the Bates number it has been assigned and should be linked directly to its corresponding record in the Load File using the NATIVELINK field. To the extent that either Party believes that specific Documents or classes of Documents not already identified within this protocol should be produced in Native Format, the Parties agree to meet and confer in good faith.

**B. De-Duplication**

Each Party shall remove exact duplicate Documents based on MD5 or SHA-1 hash values, at the family level. Stand-alone electronic Documents will not be compared to email attachments for de-duplication purposes. Hard-Copy Documents containing handwritten notes will not be considered as duplicative of any other Document. Attachments should not be eliminated as duplicates for purposes of production unless the parent email and all attachments are also duplicates. Parties agree that an email that includes content in the BCC or other blind-copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical. De-duplication will be done across the entire collection (global de-duplication), and the All Custodian field will list each Custodian, separated by a semicolon, who was a source of that Document whenever possible. Plaintiffs reserve the right to seek further information from Defendants if a Document's custodian is not populated in the Document's metadata.

**C. Email Threading**

The Parties may avoid producing lower email threads by producing the most inclusive email thread. If email threading is used, the Producing Party shall employ commercially acceptable methods to deduplicate lower parts of an email thread from the most inclusive thread. The Receiving Party will receive the most inclusive email thread, including all attachments. When a thread includes a privileged email, the Producing Party need only include one entry on

the privilege log for the entire email thread and need not separately log each e-mail contained in the thread.

**D. Metadata**

All ESI will be produced with a Concordance-delimited, database Load File that contains the Metadata fields listed in Appendix I, attached hereto. The Metadata produced should have the correct encoding to enable preservation of the Documents' original language.

**E. Compressed File Types**

Compressed file types (i.e., .ZIP, .RAR, .CAB, .7Z) should be decompressed so that the lowest-level Document or file is extracted.

**F. Structured Data**

To the extent a response to discovery requires production of electronic information stored in a database, the Parties will meet and confer to discuss methods of production best suited to providing all relevant information. Parties will consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file. A Document reference sheet shall be provided to describe the purpose of the database and meaning of all tables and column headers produced.

**G. Encryption**

To maximize the security of information in transit, any Media on which Documents are produced may be encrypted. In such cases, the Producing Party shall transmit the encryption key or password to the Receiving Party, under separate cover, contemporaneously with sending the encrypted Media.

## V. <u>DOCUMENTS PROTECTED FROM DISCOVERY</u>

The production of Documents (including both paper Documents and ESI) subject to protection by the attorney-client privilege and/or protected by the work-product, deliberative

process, or joint-defense privilege, or by any other similar doctrine, or legal privilege protecting information from discovery, shall not constitute a waiver of any privilege or other protection.[2] PPI may also be protected from production.

Upon receiving written notice of the inadvertent production of privileged material, attorney work product, or PPI, the Receiving Party shall, within ten business days: (a) return, sequester, or destroy all copies of the identified material; (b) not use or disclose the material; and (c) take reasonable steps to retrieve any copies that may have been disclosed or transmitted to any third parties, including any vendors or agents affiliated with the Receiving Party. Nothing herein shall preclude the Receiving Party from challenging the privilege or PPI designation of the noticed material through appropriate motion practice after compliance with these return and sequester obligations.

## VI. MODIFICATION

This Order may be modified by a stipulation of the Parties or by the Court for good cause shown.

## VII. MISCELLANEOUS PROVISIONS

### A. Objections Preserved

Nothing in this Order shall be interpreted to require disclosure of either irrelevant information or relevant information protected by the deliberative process privilege, attorney-client privilege, attorney work-product doctrine, or any other applicable privilege or immunity.[3]

[2] This provision does not exempt the Producing Party from producing a privilege log reflecting all documents withheld from disclosure, or produced only in part, on the grounds of privilege. Nor do the Parties concede the valid invocation of any privilege by agreeing to these provisions.

[3] This provision does not exempt the Producing Party from producing a privilege log reflecting all Documents withheld from disclosure in whole or in part, on the grounds of privilege. Nor do the Parties concede the valid invocation of any privilege by agreeing to these provisions.

Except as provided expressly herein, the Parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of Documents and ESI.

**B. Technical Variances**

Recognizing that each Producing Party may experience production issues due to data systems or files that may not be fully compatible with the technical specifications set forth herein, any practice or procedure set forth herein may be varied by agreement of the Parties, confirmed in writing, to accommodate such issues and/or, where such variance is deemed appropriate, to facilitate the timely and economical production of Documents or ESI. No Party shall unreasonably object to any such variance.

**C. Reproduction as Natives**

The Parties agree that to the extent any Party seeks production in Native Format of specifically identified ESI produced originally in TIFF form, the Producing Party will assess such request in good faith on a case-by-case basis.

It is SO ORDERED this ____ day of ______, 2026.

______________________________

ANA C. REYES
UNITED STATES DISTRICT JUDGE

# APPENDIX I: ESI METADATA AND CODING FIELDS

The chart below describes the Metadata fields to be produced, where reasonably available, in generic, commonly used terms that the Producing Party is to adapt to the specific types of ESI it is producing, to the extent such Metadata fields exist associated with the original electronic Documents and are automatically generated as part of the electronic data discovery process. Any ambiguity about a metadata field should be discussed with the Requesting Party prior to processing the subject ESI for production.

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number assigned to the document |
| ENDBATES | Ending Bates number assigned to the document |
| PROD_VOLUME | Production volume |
| BEGATTACH | Beginning attachment Bates number |
| ENDATTACH | Ending attachment Bates number for all attachments |
| FILEEXT | File extension of original document |
| PAGECOUNT | Number of pages per document if known |
| ATTACHCOUNT | Number of attachments to document if known |
| FILESIZE | Document file size in bytes |
| DATESENT | Date the email was sent (MM/DD/YYYY) |
| TIMESENT | Time the email was sent (HH:MM:SS) |
| DATERECEIVED | Date the email was received (MM/DD/YYYY) |
| TIMERECEIVED | Time the email was received (HH:MM:SS) |
| LASTMODIFIEDDATE | Date the file was last modified (MM/DD/YYYY) |
| LASTMODIFIEDTIME | Time the file was last modified (HH:MM:SS) |
| AUTHOR | Document author information |
| FILENAME | Name of the file as maintained in the ordinary course of business with extension. |
| CREATEDATE | Date document was created |
| CREATETIME | Time document was created |
| LASTEDITEDBY | Name of the person to last edit the document |
| EMAIL SUBJECT | Subject line of the email |
| TO | Recipients of the email in the to: field |

| Field Name | Field Description |
|---|---|
| FROM | Sender of the email |
| CC | Recipients of the email in the cc: field |
| BCC | Recipients of the email in the bcc: field |
| CONFIDENTIALITY | The confidentiality designation under which the document is being produced |
| REDACTION | An indication as to whether the document contains any text redacted by the producing party |
| MD5HASH | The MD5 Hash value generated at processing for each document |
| MESSAGEID | Internet message identifier |
| MESSAGE THREAD ID | Identifier given to a root message and any replies or forwards to that root message |
| CUSTODIAN | Names of a custodial source (including names of all deduplicated custodial sources) from which the file was collected. This field should be populated as last name, first name for individuals, or as the name of the institutional group or source from which it was collected if it was not collected from an individual's custodial files. |
| LOGICAL PATH | The directory structure of the original file(s). Any container name is included in the path. |
| NATIVEFILE | Native file link for files produced in native format |
| TEXTPATH | Relative path to the document level text file |