**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NICOLAS TALBOTT *et al.*<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES *et al.*,<br><br>*Defendants*. | No. 1:25-cv-240 (ACR) |

# PROTECTIVE ORDER

Pursuant to the Parties' Joint Motion (ECF No. 142), and to Rule 26(c) of the Federal Rules of Civil Procedure and 45 C.F.R. § 164.512(e)(1), the Court finds good cause for the issuance of a qualified protective order, and **ORDERS** as follows:

1. <u>PURPOSES AND LIMITATIONS</u>

Discovery in this action is likely to involve production of confidential, proprietary, or private information subject to the Privacy Act of 1974, 5 U.S.C. § 552a ("Privacy Act"), for which special protection from public disclosure and from use for any purpose other than this litigation may be warranted. Accordingly, the parties hereby stipulate to and petition the Court to enter the following Stipulated Protective Order. The parties acknowledge that this agreement is consistent with Fed. R. Civ. P. 26(c). It does not confer blanket protection on all disclosures or responses to discovery; the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles; and it does not presumptively entitle parties to file confidential information under seal.

This Order shall govern the handling of "Confidential Material" as defined below that is produced, used or otherwise disclosed by any party or non-party in response to any discovery request in the above-captioned case, including, but not limited to, confidential material contained in the administrative record, medical documents, other documents, interrogatory answers,

responses to requests for admissions, and deposition transcripts and exhibits. Any use of protected health information or any other documents or discovery at trial shall be governed by a separate agreement or order to be determined at the time of trial.

2. PROTECTED HEALTH INFORMATION

The parties and their attorneys, and any future parties and their attorneys, in the above-captioned litigation are hereby authorized to receive, subpoena, and transmit "protected health information" (or "PHI") pertaining to Plaintiffs and members of any certified class ("Plaintiff class members").[1] In order for the PHI of any current or former servicemember to be disclosed by any Department of War entity to the parties and their attorneys pursuant to this Order, that individual must execute DD Form 2870, attached as Exhibit B, and return it to counsel for Defendants. For the purposes of this Order, "protected health information" or "PHI" shall have the same meaning as defined in the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936; *see also* 45 C.F.R. §§ 160.103, 164.501. Protected Health Information includes, but is not limited to, health information, including demographic information, relating to: (a) the past, present, or future physical or mental condition of an individual, (b) the provision of care to an individual, or (c) the payment for care provided to an individual, that identifies the individual or reasonably could be expected to identify the individual, and any other information protected from unauthorized disclosure by a covered entity pursuant to HIPAA, Pub. L. No. 104-191, and 45 C.F.R. § 164.512.

All "covered entities" (as defined by 45 C.F.R. § 160.103) are hereby authorized to disclose protected health information pertaining to Plaintiff class members, to attorneys representing Plaintiff class members, and to Defendant(s) in the above-captioned litigation, except to the extent such disclosure is otherwise prohibited. The Parties and their attorneys shall

[1] The Court indicated during the June 30, 2026 hearing that it was "going to grant the class certification motion." Hr'g Tr. 47:19–20 (June 30, 2026). The Court subsequently ordered the parties to submit a jointly proposed class definition, and for Defendants to enumerate any remaining objections to the proposed class definition, which the parties filed on July 7, 2026. *See* ECF No. 130.

be permitted to use or disclose the protected health information of Plaintiff class members only for the purposes of prosecuting or defending this action, including any appeals of this case, and for any action related to the enforcement or monitoring of any injunction or other relief obtained in this litigation. This includes, but is not necessarily limited to, disclosure to their attorneys, non-attorney staff employed by counsel of record, experts or consultants retained by the Parties, the Court and Court personnel, court reporters or stenographers, copy services, and other entities or persons involved in the litigation process. Before any of the foregoing individuals is given access to protected health information received from an opposing party or a third party, each person (other than counsel for the Parties, the Court, and Court personnel) shall be advised of the terms of this Order and shall agree in writing to be bound by this Order by signing the "Acknowledgment and Agreement to Be Bound" appended to this Order as Exhibit A. Counsel for the Parties shall maintain a list of all persons to whom they or their client(s) have provided any protected health information, and that list shall be available for inspection by the Court and opposing counsel, by order of the Court. Protected health information respecting one class member shall not be disclosed to or discussed with any other class member, except after order of the Court, consent of opposing counsel, or failure of opposing counsel to object in writing after ten (10) calendar days' notice of intent to make the specific disclosure.

For the purposes of this Order, "Personally Identifiable Information" or "PII" means any information that identifies, relates to, describes, or is reasonably capable of being associated with or linked, directly or indirectly, to a specific individual, whether alone or in combination with other information. PII includes, without limitation, names, Social Security numbers, dates of birth, home addresses, telephone numbers, email addresses, financial account information, biometric data, government-issued identification numbers, and any other information that, alone or in combination with other information, can identify a specific individual. This definition is intended to be broad and is consistent with relevant standards and guidance, including OMB Memorandum M-07-16, Safeguarding Against and Responding to the Breach of Personally

Identifiable Information, and NIST Special Publication 800-122, Guide to Protecting the Confidentiality of Personally Identifiable Information (PII).

3. <u>"CONFIDENTIAL" MATERIAL</u>

"Confidential" material may include the following documents and tangible things produced or otherwise exchanged if so designated:

- Protected Health Information ("PHI");
- Information protected by the provisions of the Privacy Act;
- Documents containing personal, financial, medical, proprietary, or other private information relating to an individual, including Personally Identifiable Information ("PII") as defined in Section 2 and information that would properly be redacted from any public court filing pursuant to Fed. R. Civ. P. 5.2;
- Any information that the producing party is obligated by contract or by state or federal law to keep confidential;
- All information that is derived from Confidential Material, even if incorporated into another document or compilation or referred to in testimony;
- Information and internal policies and procedures for which disclosure could reasonably give rise to a risk of harm to information technology security, personnel security, or national security interests; and
- Any other documents or information that should otherwise be subject to confidential treatment pursuant to the Federal Rules of Civil Procedure.

4. <u>SCOPE</u>

The protections conferred by this agreement cover not only confidential material (as defined above), but also (1) any information copied or extracted from confidential material; (2) all copies, excerpts, summaries, or compilations of confidential material; and (3) any testimony, conversations, or presentations by parties or their counsel that might reveal confidential material.

However, the protections conferred by this agreement do not cover information that is in the public domain or becomes part of the public domain through trial or otherwise, except when the disclosure of the information was unauthorized.

5. ACCESS TO AND USE OF CONFIDENTIAL MATERIAL

5.1 Basic Principles. A receiving party may use Confidential Material that is disclosed or produced by another party or by a non-party in connection with this case only for prosecuting, defending, or attempting to settle this litigation. No Confidential Material obtained in the course of this litigation shall be used in any contemporaneous or subsequent administrative proceedings or separation proceedings as evidence against any of the named Plaintiffs or Class Members.[2] Confidential Material shall be, and will remain, Confidential, and shall not be disclosed in any fashion, nor be used for any purpose, except as provided for in this Order. Confidential Material may be disclosed only to the categories of persons and under the conditions described in this Order. Confidential Material must be stored and maintained by a receiving party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

5.2 Disclosure of "CONFIDENTIAL" Information or Items. Unless otherwise ordered by the court or permitted in writing by the designating party, a receiving party may disclose any Confidential Material only to:

a. the receiving party's counsel of record in this action, as well as employees of counsel to whom it is reasonably necessary to disclose the information only for purposes of defending or prosecuting this litigation;

b. the officers, directors, and employees (including in-house counsel) of the receiving party to whom disclosure is reasonably necessary only for purposes of defending or prosecuting this litigation;

[2] Nothing in this Order prevents the parties from authorized use of documents and tangible things designated in this matter as Confidential Material, should the parties obtain such material outside of this litigation.

c. experts and consultants consulted or retained by counsel for assistance in the preparation or prosecution of claims or defenses in this litigation and to whom disclosure is reasonably necessary only for purposes of defending or prosecuting this litigation;

d. the Court, Court personnel, and court reporters and their staff;

e. outside vendors who perform scanning, photocopying, computer classification, translation, or similar clerical functions retained by the Parties or their counsel to assist in the duplication of Confidential Material, provided that counsel for the party retaining the copy or imaging service instructs the service not to disclose any Confidential Material to third parties and to immediately return all originals and copies of any Confidential Material;

f. a witness who has been noticed or subpoenaed for deposition or a court appearance in the case to the extent reasonably necessary for the preparation or giving of his or her deposition testimony about Confidential Material. Pages of transcribed deposition testimony or deposition exhibits that reveal Confidential Material may be designated CONFIDENTIAL and, if so designated, may not be disclosed to anyone except as permitted under this agreement;

g. the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information and only for purposes of defending or prosecuting this litigation; and

h. any other person who is so designated by order of this Court or by written agreement of the producing party but only for purposes of defending or prosecuting this litigation.

No Confidential Material may be disclosed to persons identified in subparagraphs (c), (e), (f), or (h) until they have reviewed this Order and have executed the written “Acknowledgment and Agreement to Be Bound” in the form attached hereto as Exhibit A, which executed

agreements shall be maintained by counsel of record for the party making the disclosure to such persons. Counsel who makes such disclosure shall retain the written agreements and shall provide the agreements to the opposing counsel only upon request.

5.3 Filing Confidential Material. Unless the Designating Party gives written permission, all Confidential Material that is filed with the Court must be filed under seal or in camera in accordance with the Court's Local Rules and procedures. Any party that seeks to file under seal any Confidential Material must comply with the Local Civil Rules. The Court's Standing Order in Civil Cases Rule 7(k) and (l) sets forth the procedures that must be followed when a party seeks permission from the Court to file a document under seal. Any Confidential Material referenced in any pleading or contained in any document filed with the Court in this action by the producing party shall at the time of filing cease to be Confidential Material unless the producing party files the unredacted pleading or document under seal.

6. DESIGNATING PROTECTED MATERIAL

6.1 Effect of Designation. The designation of Confidential Material pursuant to the Order shall not be construed as a waiver of any objection or a concession by any party that such Confidential Material is relevant or material to any issue. Nor shall a failure to object to the designation of any such Confidential Material be construed as a concession by the receiving parties that such material is, in fact, confidential or otherwise entitled to protection under the terms of this Order.

6.2 Exercise of Restraint and Care in Designating Material for Protection. Each party or non-party that designates information or items for protection under this agreement must take care to limit any such designation to specific material that qualifies under the appropriate standards. The designating party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify, so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this agreement.

Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (*e.g.*, to unnecessarily encumber or delay the case development process or to impose unnecessary expenses and burdens on other parties) may expose the designating party to sanctions.

If it comes to a designating party's attention that information or items that it designated for protection do not qualify for protection, the designating party must promptly notify all other parties that it is withdrawing the mistaken designation.

6.3 Manner and Timing of Designations. Except as otherwise provided in this agreement, or as otherwise stipulated or ordered, disclosure or discovery material that qualifies for protection under this agreement must be clearly designated before or when the material is disclosed or produced.

a. Information in documentary form (*e.g.*, paper or electronic documents and deposition exhibits, but excluding transcripts of depositions or other pretrial or trial proceedings): the designating party must affix the word "CONFIDENTIAL" to each page that contains confidential material. If only a portion or portions of the material on a page qualifies for protection, and to the extent practicable, the producing party will identify the protected portion(s) (*e.g.*, by making appropriate markings in the margins).

b. Testimony given in deposition or in other pretrial proceedings: the Parties and any participating non-parties must identify on the record, during the deposition or other pretrial proceeding, all protected testimony, without prejudice to their right to so designate other testimony after reviewing the transcript. Any party or non-party may, within fifteen (15) days after receiving the transcript of the deposition or other pretrial proceeding, designate portions of the transcript, or exhibits thereto, as confidential. If a party or non-party desires to protect confidential information at trial, the issue should be addressed during the pre-trial conference.

c. Other tangible items: the producing party must affix in a prominent place on the exterior of the container or containers in which the information or item is stored the word "CONFIDENTIAL." If only a portion or portions of the information or item warrant protection, the producing party, to the extent practicable, shall identify the protected portion(s).

6.4 Inadvertent Failures to Designate. If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the designating party's right to secure protection under this agreement for such material. Upon timely correction of a designation, the receiving party must make reasonable efforts to ensure that the material is treated in accordance with the provisions of this agreement.

7. CHALLENGING CONFIDENTIALITY DESIGNATIONS

Any party may, in good faith, object to the designation of any Discovery Material as Confidential Material within fourteen (14) days of receipt of a document that has been designated. The objecting party must state its objection in writing, specifying (by Bates numbers if possible) the discovery material challenged and explaining the basis for each objection. The objecting party shall make a good faith effort to resolve the dispute with the designating party and shall provide the designating party the opportunity to revise its designation before raising the issue with the Court. If the Parties cannot reach an agreement as to the designation, the objecting party may move the Court for an order determining whether the document is Confidential Material. The designating party shall bear the burden of establishing the propriety of any designation. Pending a final ruling by the Court on the motion, the initial designation and the terms of this Order remain in effect.

The parties agree that any dispute arising under this Protective Order with respect to discovery shall be resolved in accordance with the discovery dispute resolution procedures set forth in the Court's Standing Order for civil cases.

8. PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION

If a party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL," that party must:

a. promptly notify the designating party in writing and include a copy of the subpoena or court order;

b. promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all material covered by the subpoena or order is subject to this agreement. Such notification shall include a copy of this agreement; and

c. cooperate with respect to all reasonable procedures sought to be pursued by the designating party whose confidential material may be affected.

9. UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a receiving party learns that, by inadvertence or otherwise, it has disclosed Confidential Material to any person or in any circumstance not authorized under this agreement, the receiving party must immediately: (a) notify in writing the designating party of the unauthorized disclosure; (b) use its best efforts to retrieve all unauthorized copies of the Confidential Material; (c) inform the person or persons to whom the unauthorized disclosure was made of all the terms of this agreement; (d) request that such person or persons execute the "Acknowledgment and Agreement to Be Bound" attached hereto as Exhibit A; and (e) if PII was included in the unauthorized disclosure, notify each affected individual in writing within a reasonable time and in no event later than thirty (30) days after discovering the unauthorized disclosure.

10. INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL

When a producing party gives notice to receiving parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the receiving parties are those set forth in Fed. R. Civ. P. 26(b)(5)(B). This provision is not intended to modify whatever procedure may be established in an e-discovery order or agreement that

provides for production without prior privilege review. The parties agree to cooperate to develop a non-waiver order under Fed. R. Evid. 502(d) as set forth herein.

11. NON-TERMINATION AND RETURN OF DOCUMENTS

Within 60 days after the termination of this action, including all appeals, each receiving party must return all Confidential Material to the producing party, including all copies, extracts, and summaries thereof. Alternatively, the parties may agree upon appropriate methods of destruction. In addition to the foregoing return or destruction obligations, upon termination of this action, including all appeals, each receiving party must permanently delete any PII from its electronic systems and storage media, except to the extent such deletion is prohibited by the Federal Records Act or any other federal document obligations applicable to Defendants. Counsel for each receiving party must certify in writing to the producing party that such deletion has occurred.

Notwithstanding this provision, counsel are entitled to retain one archival copy of all documents filed with the court, trial, deposition, and hearing transcripts, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Confidential Material.

The confidentiality obligations imposed by this Order shall remain in effect until a designating party agrees otherwise in writing or a court orders otherwise.

**SO ORDERED.**

Date: September 14, 2026

ANA C. REYES
UNITED STATES DISTRICT JUDGE

**EXHIBIT A TO STIPULATED PROTECTIVE ORDER**
**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NICOLAS TALBOTT *et al.*<br><br>*Plaintiffs,*<br><br>v.<br><br>UNITED STATES *et al.,*<br><br>*Defendants.* | Civil Action No. 25-cv-240-ACR |

**DECLARATION**

I, ____________________, under penalty of perjury, depose and state that the following is true and correct:

1. I am over 18 years of age.

2. I have read the Stipulated Protective Order entered in the above-referenced action before reviewing or receiving access to the content of any documents or information subject to the provisions of the Stipulated Protective Order.

3. I hereby consent to be bound by the terms of the Stipulated Protective Order.

4. I further consent to the jurisdiction of the U.S. District Court for the District of Columbia for the purpose of any proceeding to enforce the terms of the Stipulated Protective Order.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on the ____ day of ___________, 20__, in ____________, ____________.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NICOLAS TALBOTT *et al., individually and on behalf of all similarly situated individuals,*

*Plaintiffs*,

v.

UNITED STATES *et al.*,

*Defendants*.

Civil Action No. 25-cv-240-ACR

**STIPULATED ORDER FOR DISCOVERY AND PRODUCTION OF ELECTRONICALLY STORED INFORMATION**

To expedite the flow of discovery material and facilitate consistency in the format of the documents to be produced in this case, Plaintiffs and Defendants (collectively, the "Parties"), by and through their respective counsel and pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, hereby stipulate and agree to the terms of this Stipulated Order for Discovery and Production of Electronically Stored Information ("ESI Protocol").

## I. DEFINITIONS

1. "Action" shall refer to the above-captioned civil action.

2. "Discovery Material" shall mean all items or information, regardless of medium or manner in which they are generated, stored, or maintained (including, among other things, disclosures, deposition testimony, transcripts and exhibits thereto, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

3. "Document" is synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure. The term "Document" shall include Hard-Copy Documents, Electronic Documents or Data, and ESI as defined herein.

4. "Electronic Document or Data" means Documents that are in electronic form at the time of collection.

5. “Electronically stored information” or “ESI,” as used herein, has the same meaning as in Federal Rules of Civil Procedure 26 and 34.

6. “Hard-Copy Document” means Documents existing in paper form at the time of collection.

7. “Hash Value” is a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the data set.

8. “Load File” is an electronic file that can assist in loading an electronic production set into a Receiving Party’s document review platform.

9. “Media” means an object or device, real or virtual, including but not limited to a disc, tape, computer, or other device on which data is or was stored.

10. “Metadata” means: (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file that describes the characteristics, origins, usage, and/or validity of the electronic file; (ii) information relating to the file path of, organization of, or access to the native file within a database, virtual folder, or other directory; (iii) the file name; (iv) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system; (v) structured data associated with a file that another information system uses or can use to access or identify the file; (vi) the version number of the file within a document-management or other information system; (vii) information, such as Bates numbers, created during the course of processing Documents or ESI for production; and (viii) information collected during the course of collecting Documents or ESI, such as the name of the Media

device on which it was stored or the custodian or non-custodial data source from which it was collected.

11. "Native Format" means and refers to the format of ESI in which it was generated and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities. For example, the native format of an Excel workbook is an .xls or .xlsx file.

12. "Non-Party" means any natural person, partnership, corporation, association, or other legal entity not named as a Party to this Action.

13. "Optical Character Recognition" or "OCR" means the process of recognizing and creating a file containing visible text within an image.

14. "Outside Counsel" means (i) outside counsel who appear on the pleadings as counsel for a Party; and (ii) partners, associates, and staff of such counsel to whom it is reasonably necessary to disclose information for this litigation.

15. "Party" means any party to this Action, including all of that party's officers, directors, employees, consultants, experts, and Outside Counsel (and their support staffs).

16. "Private Personal Information" or "PPI" means sensitive, non-public data or information tied to an individual, including, for example, names of non-Senior Department of War officials (GS-15 and below)[1], government identifiers (such as Social Security Numbers ("SSNs"), driver's license numbers, and passport details), financial information (such as bank account numbers, routing numbers, and credit card data), medical information (such as medical

[1] Plaintiffs reserve their rights to seek from Defendants the names of individuals they believe are likely to have discoverable information and to seek Court intervention should Defendants fail to disclose those names to Plaintiffs.

history and clinical records), and contact information (such as direct contact numbers, emails, and home addresses).

17. "Producing Party" means a Party or Non-Party that produces Discovery Material in this Action.

18. "Requesting Party" means a Party that receives Discovery Material from a Producing Party.

19. "Searchable Text" means the native text extracted from an Electronic Document and any OCR text generated from a Hard-Copy Document or electronic image.

## II. GENERAL PROVISIONS

1. The Federal Rules of Civil Procedure will govern discovery, and no provision herein alters any provision of the Federal Rules of Civil Procedure, local rules, or applicable law. The terms of this Order shall be construed to ensure the cost-efficient and cost-effective exchange of information consistent with the Federal Rules of Civil Procedure, local rules, and applicable law.

2. Nothing in this Order alters a Party's rights, obligations, and responsibilities under the Federal Rules of Civil Procedure, local rules, or applicable law, nor does anything in this Order impose additional burdens beyond those imposed by such rules or applicable law.

3. A Producing Party shall not produce ESI in a format not requested or agreed to by the Requesting Party. If an issue arises, the issue will only be submitted to the Court after reasonable efforts by the Parties to reach agreement by the meet-and-confer process.

## III. PRESERVATION AND IDENTIFICATION OF ESI

1. The Parties agree that preservation of potentially relevant ESI will be reasonable and proportionate.

2. The Parties shall have a continuing obligation to take reasonable and proportionate steps to identify and preserve custodial and non-custodial data sources that may contain information that is relevant to the claims and defenses in this litigation.

## IV. PRODUCTION FORMATS AND PROCESSING SPECIFICATIONS

### A. Format

1. The Parties will produce ESI in a litigation database-ready format, including single-page images, searchable text files, native files, a Concordance-compatible data Load File (.dat), and image Load Files in Concordance/Relativity/Opticon-compatible format (.opt). Each production volume's data Load File will contain a header row listing all metadata fields included in the volume.

2. All ESI shall be produced with applicable Metadata as specified in Appendix I, and Searchable Text extracted from the ESI. Redacted ESI, other than spreadsheet files that will be produced as redacted native files, will be produced as a tagged image file format ("TIFF") with applicable Metadata and OCRed Searchable Text. Hard-Copy Documents will be scanned and produced as TIFFs, with applicable Metadata as set out in Appendix I, and OCRed Searchable Text.

3. Images should be single-page, black-and-white, Group IV, 300x300 DPI TIFF format and consecutively Bates-stamped, except for spreadsheet-type files, source code, audio and video files, and other file types that cannot be rendered into a usable printed form, which shall be produced in native format. If an original Document contains color and the color is necessary to review the Document, it should also be produced, upon request, in Native Format or as single-page, 300 DPI JPG images with JPG compression and a high-quality setting as to not degrade the original image. TIFFs/JPGs will show any and all text and images that would be visible to the reader using the native software that created the Document.

4. For word processing files (e.g., Microsoft Word), TIFFs/JPGs will include, where present, comments, "tracked changes," similar in-line editing, and all hidden content. For presentation files (e.g., Microsoft PowerPoint), TIFFs/JPGs will include, where present, speaker notes, comments, and all other hidden content.

5. Document text will be produced as separate, document-level text files, named according to the beginning Bates value of the Document and containing original extracted text or OCR text when original text is not available or when the Document contains redactions. Document text will not be embedded in the Metadata Load File. The Parties will not degrade the searchability of Documents as part of the Document production process.

6. Unless otherwise agreed, each Document will be produced in its entirety, with attachments and enclosures. Documents not otherwise responsive will be produced if attached to a responsive Document. Where paper Documents are converted into electronic format, distinct Documents may not be merged into a single record, and single Documents may not be split into multiple records.

7. Hard-Copy Documents that are segregated or separated from other Documents, whether by inclusion of binders, files, dividers, tabs, clips or any other method, will be produced in a manner that reflects these divisions.

8. If a Document is produced in Native Format, a single-page, Bates-stamped image slipsheet stating the Document has been produced in Native Format and bearing the Bates number and confidentiality designation will also be provided. Each native file should be named according to the Bates number it has been assigned and should be linked directly to its corresponding record in the Load File using the NATIVELINK field. To the extent that either

Party believes that specific Documents or classes of Documents not already identified within this protocol should be produced in Native Format, the Parties agree to meet and confer in good faith.

**B. De-Duplication**

Each Party shall remove exact duplicate Documents based on MD5 or SHA-1 hash values, at the family level. Stand-alone electronic Documents will not be compared to email attachments for de-duplication purposes. Hard-Copy Documents containing handwritten notes will not be considered as duplicative of any other Document. Attachments should not be eliminated as duplicates for purposes of production unless the parent email and all attachments are also duplicates. Parties agree that an email that includes content in the BCC or other blind-copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical. De-duplication will be done across the entire collection (global de-duplication), and the All Custodian field will list each Custodian, separated by a semicolon, who was a source of that Document whenever possible. Plaintiffs reserve the right to seek further information from Defendants if a Document's custodian is not populated in the Document's metadata.

**C. Email Threading**

The Parties may avoid producing lower email threads by producing the most inclusive email thread. If email threading is used, the Producing Party shall employ commercially acceptable methods to deduplicate lower parts of an email thread from the most inclusive thread. The Receiving Party will receive the most inclusive email thread, including all attachments. When a thread includes a privileged email, the Producing Party need only include one entry on the privilege log for the entire email thread and need not separately log each e-mail contained in the thread.

### D. Metadata

All ESI will be produced with a Concordance-delimited, database Load File that contains the Metadata fields listed in Appendix I, attached hereto. The Metadata produced should have the correct encoding to enable preservation of the Documents' original language.

### E. Compressed File Types

Compressed file types (i.e., .ZIP, .RAR, .CAB, .7Z) should be decompressed so that the lowest-level Document or file is extracted.

### F. Structured Data

To the extent a response to discovery requires production of electronic information stored in a database, the Parties will meet and confer to discuss methods of production best suited to providing all relevant information. Parties will consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file. A Document reference sheet shall be provided to describe the purpose of the database and meaning of all tables and column headers produced.

### G. Encryption

To maximize the security of information in transit, any Media on which Documents are produced may be encrypted. In such cases, the Producing Party shall transmit the encryption key or password to the Receiving Party, under separate cover, contemporaneously with sending the encrypted Media.

## V. DOCUMENTS PROTECTED FROM DISCOVERY

The production of Documents (including both paper Documents and ESI) subject to protection by the attorney-client privilege and/or protected by the work-product, deliberative process, or joint-defense privilege, or by any other similar doctrine, or legal privilege protecting

information from discovery, shall not constitute a waiver of any privilege or other protection.[2] PPI may also be protected from production.

Upon receiving written notice of the inadvertent production of privileged material, attorney work product, or PPI, the Receiving Party shall, within ten business days: (a) return, sequester, or destroy all copies of the identified material; (b) not use or disclose the material; and (c) take reasonable steps to retrieve any copies that may have been disclosed or transmitted to any third parties, including any vendors or agents affiliated with the Receiving Party. Nothing herein shall preclude the Receiving Party from challenging the privilege or PPI designation of the noticed material through appropriate motion practice after compliance with these return and sequester obligations.

## VI. MODIFICATION

This Order may be modified by a stipulation of the Parties or by the Court for good cause shown.

## VII. MISCELLANEOUS PROVISIONS

### A. Objections Preserved

Nothing in this Order shall be interpreted to require disclosure of either irrelevant information or relevant information protected by the deliberative process privilege, attorney-client privilege, attorney work-product doctrine, or any other applicable privilege or immunity.[3]

---

[2] This provision does not exempt the Producing Party from producing a privilege log reflecting all documents withheld from disclosure, or produced only in part, on the grounds of privilege. Nor do the Parties concede the valid invocation of any privilege by agreeing to these provisions.

[3] This provision does not exempt the Producing Party from producing a privilege log reflecting all Documents withheld from disclosure in whole or in part, on the grounds of privilege. Nor do the Parties concede the valid invocation of any privilege by agreeing to these provisions.

Except as provided expressly herein, the Parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of Documents and ESI.

**B. Technical Variances**

Recognizing that each Producing Party may experience production issues due to data systems or files that may not be fully compatible with the technical specifications set forth herein, any practice or procedure set forth herein may be varied by agreement of the Parties, confirmed in writing, to accommodate such issues and/or, where such variance is deemed appropriate, to facilitate the timely and economical production of Documents or ESI. No Party shall unreasonably object to any such variance.

**C. Reproduction as Natives**

The Parties agree that to the extent any Party seeks production in Native Format of specifically identified ESI produced originally in TIFF form, the Producing Party will assess such request in good faith on a case-by-case basis.

It is SO ORDERED this 14th day of September, 2026.

ANA C. REYES
UNITED STATES DISTRICT JUDGE

## APPENDIX I: ESI METADATA AND CODING FIELDS

The chart below describes the Metadata fields to be produced, where reasonably available, in generic, commonly used terms that the Producing Party is to adapt to the specific types of ESI it is producing, to the extent such Metadata fields exist associated with the original electronic Documents and are automatically generated as part of the electronic data discovery process. Any ambiguity about a metadata field should be discussed with the Requesting Party prior to processing the subject ESI for production.

| **Field Name** | **Field Description** |
|---|---|
| BEGBATES | Beginning Bates number assigned to the document |
| ENDBATES | Ending Bates number assigned to the document |
| PROD_VOLUME | Production volume |
| BEGATTACH | Beginning attachment Bates number |
| ENDATTACH | Ending attachment Bates number for all attachments |
| FILEEXT | File extension of original document |
| PAGECOUNT | Number of pages per document if known |
| ATTACHCOUNT | Number of attachments to document if known |
| FILESIZE | Document file size in bytes |
| DATESENT | Date the email was sent (MM/DD/YYYY) |
| TIMESENT | Time the email was sent (HH:MM:SS) |
| DATERECEIVED | Date the email was received (MM/DD/YYYY) |
| TIMERECEIVED | Time the email was received (HH:MM:SS) |
| LASTMODIFIEDDATE | Date the file was last modified (MM/DD/YYYY) |
| LASTMODIFIEDTIME | Time the file was last modified (HH:MM:SS) |
| AUTHOR | Document author information |
| FILENAME | Name of the file as maintained in the ordinary course of business with extension. |
| CREATEDATE | Date document was created |
| CREATETIME | Time document was created |
| LASTEDITEDBY | Name of the person to last edit the document |
| EMAIL SUBJECT | Subject line of the email |
| TO | Recipients of the email in the to: field |

| Field Name | Field Description |
|---|---|
| FROM | Sender of the email |
| CC | Recipients of the email in the cc: field |
| BCC | Recipients of the email in the bcc: field |
| CONFIDENTIALITY | The confidentiality designation under which the document is being produced |
| REDACTION | An indication as to whether the document contains any text redacted by the producing party |
| MD5HASH | The MD5 Hash value generated at processing for each document |
| MESSAGEID | Internet message identifier |
| MESSAGE THREAD ID | Identifier given to a root message and any replies or forwards to that root message |
| CUSTODIAN | Names of a custodial source (including names of all deduplicated custodial sources) from which the file was collected. This field should be populated as last name, first name for individuals, or as the name of the institutional group or source from which it was collected if it was not collected from an individual's custodial files. |
| LOGICAL PATH | The directory structure of the original file(s). Any container name is included in the path. |
| NATIVEFILE | Native file link for files produced in native format |
| TEXTPATH | Relative path to the document level text file |