**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NICOLAS TALBOTT, et.al.<br><br>*Plaintiffs*,<br>v.<br><br>UNITED STATES, et al.,<br><br>*Defendants*. | Civ. A. No. 25-240 (ACR) |

**DEFENDANTS' NOTICE OF INTENT**
**<u>TO MOVE FOR SUMMARY JUDGMENT</u>**

Pursuant to the Court's Standing Order in Civil Cases § 7(f), Defendants hereby notify the Court that they will be moving for summary judgment as to all claims. There is no genuine issue of material fact that needs to be decided by the factfinder. As discussed below and as will be further developed in Defendants' forthcoming summary judgment motion, the Court should grant summary judgment in Defendants' favor as a matter of law. As the Supreme Court has instructed, "Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)

This case is about whether a Department of War (the Department) policy that generally disqualifies from military service individuals who have gender dysphoria, a history of the condition, or a history of related interventions—issued by the Secretary of War in implementing Executive Order No. 14,183—violates the law. This policy is similar to the one the Department adopted eight years ago under then-Secretary James Mattis—a policy that went into effect following significant litigation concerning the proper deference owed to the U.S. military to determine who may serve in the Nation's

Armed Forces. *See Trump* v. *Karnoski*, 586 U.S. 1124 (2019); *Trump* v. *Stockman*, 586 U.S. 1124 (2019); *Doe* v. *Shanahan*, 755 Fed. Appx. 19 (2019) (per curiam); *Doe* v. *Shanahan*, 917 F.3d 694 (2019).

In 2021, however, President Biden—with no review of the impact or efficacy of the Mattis Policy and largely in reliance on the RAND Report from five years prior—immediately revoked the Mattis Policy and thereafter implemented the new Austin Policy, which largely disqualified individuals with gender dysphoria from accession, but service members with gender dysphoria already in the military were permitted to transition and serve in the opposite sex. *See* DODI 1300.28.

When President Trump returned to office in January 2025, the Department reverted back to the Mattis Policy albeit with narrower exceptions given the significant military readiness, deployability, and unit cohesion concerns the medical condition presents and the increased numbers of such individuals with gender dysphoria that accessed or were retained under the Austin Policy. The Supreme Court granted a stay of a preliminary injunction entered in the United States District Court for the Western District of Washington against the Policy, *see United States* v. *Shilling*, 145 S. Ct. 2695 (2025), and the D.C. Circuit vacated the accessions component of this Court's preliminary injunction, *Talbott v. United States*, 176 F.4th 720, 749–50 (D.C. Cir. 2026).

Bottom line is that the Department's policy regarding individuals who have gender dysphoria, a history of the condition, or a history of related interventions has vacillated over the past four administrations, depending on who is Commander in Chief and Secretary of War. The administrations, however, have formulated a policy along the same continuum: Presidents Obama and Biden and their Secretaries were willing to accept more risk with respect to military readiness, and thus operational and mission success, with respect to individuals with gender dysphoria; President Trump and his Secretaries have assessed the risk differently and implemented policies in accordance with that assessment based upon professional military judgment. But no matter who is in office, it is the authority of the Commander-in-Chief and his Secretary to determine who may serve in the Nation's

Armed Forces. *See, e.g.*, *Goldman* v. *Weinberger*, 475 U.S. 503, 507-508 (1986). Courts should not interfere with those decisions.

With this background in mind, Plaintiffs' claims fail as a matter of law. First, the Policy does not violate equal protection (Counts I, II, and III) because the Policy easily satisfies rational basis review, which unquestionably applies here. *See United States v. Skrmetti*, 145 S. Ct. 1816, (2025). The Hegseth Policy draws classifications based on a medical condition (gender dysphoria) and related interventions. The Supreme Court has held that courts should not look outside the operative terms of a policy—as this Court did with respect to certain social media posts—in assessing the basis on which a policy classifies. *See W. Va. v. B.P.J.*, 609 U.S. ----, 146 S. Ct. 2356, 2378 (June 30, 2026). The government has undisputedly legitimate interests in maintaining military readiness, including the worldwide deployability of its service members, unit cohesion, and good order and discipline, as well as in managing the military's costs, and the Hegseth Policy is rationally related to those interests. These legitimate interests also defeat the animus claim as a matter of law because a court may infer animus only if the challenged policy "lack[s] any purpose other than a bare . . . desire to harm." *Trump v. Hawaii*, 585 U.S. 667, 705 (2018) (internal quotation omitted).

Further, to the extent Plaintiffs argue that some service members with gender dysphoria do not pose a risk to military readiness, deployability, cohesion, and good order and discipline the Supreme Court has rejected that argument too: even under intermediate scrutiny, the "validity" of a policy depends on "the relation it bears to the general problem," not on "the extent to which it furthers the Government's interest in an individual case." *B.P.J.*, 146 S. Ct. at 2376.

Counts II (service in birth sex) and III (definition of sex) fail as a matter of law for the additional reason that the Constitution does not require classifications based on gender identity and not biological sex, nor does the Constitution require exceptions to sex classifications for trans-

identifying people. *B.P.J.*, 146 S. Ct. at 2375–76 & n.4. Fact-finding is not needed to resolve the equal protection claims.

Second, Plaintiffs' procedural due process claim fails as a matter of law (Count IV). Plaintiffs were provided with the same Administrative Separation Board proceedings that any service member with a non-service-related condition not constituting a disability would receive. *See* DoDI 1332.14 (Enlisted Administrative Separations); 1332.30 (Commissioned Officer Administrative Separations). No fact-finding is needed to make this determination.

Finally, Plaintiffs' promissory estoppel claim (Count V) also fails as a matter of law because Defendants did not "promise" Plaintiffs that they could continue to serve in anything besides their biological sex. Accordingly, there are no reliance interests upon which this claim can be based.

Defendants request a pre-motion conference if the Court deems one necessary.

DATED: October 13, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ALEXANDER K. HAAS
Director

KRISTINA A. WOLFE
Assistant Branch Director

*/s/M. Jared Littman*
M. JARED LITTMAN
ELIZABETH B. LAYENDECKER
ROBERT C. BOMBARD
United States Department of Justice
Civil Division
1101 L Street NW
Washington, DC 20006
Phone: (202) 451-7478
Email: jared.littman2@usdoj.gov

*Counsel for Defendants*