**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NICOLAS TALBOTT, et.al.<br><br>*Plaintiffs*,<br>v.<br><br>UNITED STATES, et al.,<br><br>*Defendants*. | Case No.: 1:25-cv-240-ACR |

# DEFENDANTS' MOTION FOR PROTECTIVE ORDER REGARDING DOCUMENTS AND INFORMATION WITHHELD UNDER THE DELIBERATIVE PROCESS PRIVILEGE

Per the Court's October 14, 2026, Order, and pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, Defendants respectfully submit this Motion for Protective Order containing their position on the Deliberative Process Privilege in "discovery with respect to animus." Oct. 14, 2026 Hearing Tr. 35:19-21. Plaintiffs seek a sweeping ruling that the deliberative process privilege does not apply to hundreds of deliberative communications and draft documents during the time of the formulation of the policy because intent is generally at issue and, particularly, the intent of Secretary Hegseth.

But Secretary Hegseth delegated his authority to formulate the policy to the Under Secretary of War for Personnel and Readiness. The deliberative process behind policy formulation—especially military policy—is entitled to protection and great deference. The wholesale disregard of the Deliberative Process Privilege, rather than a granular, ad-hoc analysis, would be reversible error.

Because Plaintiffs have failed to make any ad hoc showing to overcome the privilege, Defendants move for a Protective Order prohibiting Plaintiffs from obtaining documents and information protected by the Deliberative Process Privilege.

**A. The Deliberative Process Privilege**

The deliberative process privilege protects the Government's decision-making process by shielding from disclosure documents "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150 (1975). The privilege "reflects the commonsense notion that agencies craft better rules when their employees can spell out in writing the pitfalls as well as strengths of policy options, coupled with the understanding that employees would be chilled from such rigorous deliberation if they feared it might become public." *Judicial Watch, Inc. v. United States Dep't of Def.*, 847 F.3d 735, 739 (D.C. Cir. 2017) (citing *Sears*, 421 U.S. at 150). "In other words, agency officials 'should be judged by what they decided, not for matters they considered before making up their minds.'" *Id.* at 462–63 (quoting *Russell v. Dep't of Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982)).

"The deliberative process privilege is a qualified privilege and can be overcome by a sufficient showing of need[,]" to be determined "on a case-by-case, ad hoc basis." *In re Sealed Case*, 121 F.3d at 737. "[A]djudicating such an assertion of need requires a 'balancing of the competing interests, taking into account factors such as the relevance of the evidence, the availability of other evidence, the seriousness of the litigation, the role of the government, and the possibility of future timidity by government employees.'" *Hinckley v. United States*, 140 F.3d 277, 286 (D.C. Cir. 1998) (quoting *In re Sealed Case,* 121 F.3d at 737–38). The burden is on the "party opposing the privilege to establish that its need for the information outweighs the interest of the government in preventing disclosure of the information." *Cobell v. Norton*, 213 F.R.D. 1, 5 (D.D.C. 2003).

**B. The Deliberative Process Privilege Applies Despite Plaintiffs' Allegations Regarding Intent.**

The deliberative process privilege must shield disclosure of the frank discussions and draft

documents from the decision-making process to prevent a chill of deliberations, and that privilege applies with special force given the great deference due to military policy judgments that the Department undertook in the formulation of the Policy. *See, e.g.,* G*illigan v. Morgan,* 413 U.S. 1, 10 (1973) (judicial deference should be applied whenever the challenged decision involves "the composition, training, equipping, and control of a military force"). To require disclosure of internal military deliberations, including candid assessments and opinions by military officials and their civilian leadership within the Department of War, who jointly establish Departmental policies and decisions for the uniformed services, would frustrate the very notion of deference, in disregard of its constitutional underpinnings.

Plaintiffs have argued that the deliberative process privilege does not apply in its entirety as a matter of law because "intent" is at issue. But the Supreme Court's recent decision in *West Virginia v. B.P.J.*, 609 U.S. ----, 146 S. Ct. 2356, 2378-79 (2026), holds that courts should not look outside the operative terms of a policy in assessing whether a policy discriminates on the basis of sex. That is, the Department's policy should be reviewed on its own terms, without regard to any alleged subjective intent behind it. Just as legislative findings did not change the operative terms of the laws at issue in *B.P.J.*, the deliberative materials that Plaintiffs seek do not change the operative terms of the policy at issue here.

Likewise, *Trump v. Hawaii*, 585 U.S. 667 (2018), strongly supports Defendants' position that neither the President's nor the Secretary of War's purported intent in issuing a policy is at issue, and that the Court should instead analyze whether the Policy "can reasonably be understood to result from a justification independent of unconstitutional grounds." *Id.* at 705. In *Hawaii*, the Supreme Court assessed the challenged policy on its own terms and rejected the theory that extra-record statements forever "contaminated" the proclamation with "impermissible discriminatory animus." *Compare id.* at 704-07, *with id.* at 739-40 (Sotomayor, J., dissenting). While recognizing that it "may consider plaintiffs'

extrinsic evidence," in analyzing whether such a "justification independent of unconstitutional grounds" existed, the Court focused on the proclamation itself and the "multi-agency review" that supported it. *See id.* at 699, 705, 707. That targeted inquiry was not influenced by the revoked executive orders preceding the challenged policy or statements by the President about Muslims and terrorism. *See id.* at 699–710.

Here, Plaintiffs' theory is more like the one adopted by Justice Sotomayor's dissent in *Hawaii* rather than to the controlling majority opinion. Plaintiffs argue—without support—that the Executive Order and the Department's subsequent implementation were fueled by animus. To bolster their theory, they seek a fishing expedition of the Department's protected deliberative materials. But *Hawaii* instructs that the Court must assess the Policy on its own terms, not on the purported intent behind the policy as evidenced by extrinsic statements. Such statements are not pertinent to judicial review of the Department of War's policy and thus cannot serve as a basis to negate the deliberative process privilege wholesale in this litigation. Moreover, as the D.C. Circuit recently held, "[s]uch rhetoric," including "pungent statements" made on social media, "seldom provides a sound basis for judging the lawfulness of federal executive action." *Anthropic PBC v. Dep't of War*, --- F.4th ----, 2026 WL 2881404, at *17 (D.C. Cir. Sept. 25, 2026) (citing *Mullin v. Doe*, 609 U.S. 324, 349-50 (2026); *Hawaii*, 585 U.S. at 700–02). So long as a statement has a "neutral justification" that is not "overtly" discriminatory against a class—even "heated language" about a group's "social ills" or those that are "malign[ing]" or "antipath[ic]" towards a certain group—are not adequate to show that a policy was discriminatorily motivated. *Mullin*, 609 U.S. at 347–50.

To argue that the privilege is inapplicable because the government's "intent" is at issue, Plaintiffs rely on *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 145 F.3d 1422, 1424 (D.C. Cir. 1998). But that case did not involve a military policy concerning the composition of the fighting force, and thus the court did not apply the deferential standard required to review

challenges to military policies. *See Hawaii*, 585 U.S. at 705 n.5; *see also Rostker v. Goldberg*, 453 U.S. 57, 72–74 (1981). "The *Hawaii* Court offered two justifications for this standard of review—both of which readily apply here." *Doe v. Shanahan* ("*Doe 2*"), 917 F.3d 694, 732 (D.C. Cir. 2019) (Williams, J., concurring). "For one, judicial inquiry into the national-security realm raises concerns for the separation of powers by intruding on the President's constitutional responsibilities." *Id.* (cleaned up) (citations omitted). "For another, when it comes to collecting evidence and drawing inferences on questions of national security, the lack of competence on the part of the courts is marked." *Id.* "For both reasons, [a court's] review into matters of national security is highly constrained." *Id.* (citing *Hawaii*, 585 U.S. at 704, 705 & n.5)).

In any event, *In re Subpoena*, which involved a bankruptcy proceeding, held that the deliberative process privilege did not apply in a fraudulent transfer action, which requires as an element of proof that the transfers were made "with actual intent to hinder, delay, or defraud." 145 F.3d at 1423 (citation omitted). In other words, *In re Subpoena* instructs that the privilege is inapplicable where "Congress creates a cause of action that deliberatively exposes government decisionmaking to the light." *Id.* at 1424. This is not such a statutory cause of action. Plaintiffs conflate their mere allegation of improper governmental intent with a "cause of action [*that*] *turns on* the government's intent." *See id.* (emphasis added). Although the *In re Subpoena* Court speculated that the deliberative process privilege would not apply in a constitutional discrimination claim, it readily admitted that the cases it cited contained no discussion of the privilege. *Id.* (citing *Crawford-El v. Britton*, 523 U.S. 574 (1998); *Webster v. Doe*, 486 U.S. 592 (1988)). Plaintiffs' Equal Protection and Due Process claims do not turn on intent; they turn on whether the policy at issue is justified by legitimate governmental purposes.

In limiting its applicability to a narrow class of claims, *In re Subpoena* did not state a categorical rule that a plaintiff automatically overcomes the deliberative process privilege every time she questions an agency's motives. Indeed, "[t]he privilege would be meaningless if all a litigant had to do was raise

a question of intent to warrant disclosure." *In re United States*, 678 F. App'x 981, 990 (Fed. Cir. 2017); *see also Utah Med. Prods. v. McClellan*, No. 2:03-cv-525, 2004 WL 988877, *8 (D. Utah Mar. 31, 2004). Plaintiffs' animus allegations seem to be driven by comments made by Secretary Hegseth, but he delegated his authority to formulate the policy to the Under Secretary of War for Personnel and Readiness and was not intimately involved in deliberative communications and document drafting during the formulation process. Accordingly, the authority on which Plaintiffs rely to foreclose application of the privilege as a matter of law in this case is inapposite and distinguishable from the circumstances here, where deliberations on a military Personnel and Readiness policy are at issue.

### C. The Balancing Test Weighs in Favor of Upholding Defendants' Privilege Claims.

Plaintiffs have failed to demonstrate that the deliberative process privilege cannot apply as a matter of law in this case. Beyond that, Plaintiffs bear a heavy burden to show a compelling and particularized need for the documents and information they seek. *See Cobell*, 213 F.R.D. at 5; *Marriott Int'l Resorts, L.P. v. United States*, 437 F.3d 1302, 1307 (Fed. Cir. 2006); *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993). And that burden must be met on a "document-by-document" basis. *See In re United States*, 678 F. App'x 981, 987 (Fed. Cir. 2017). Just as application of "the deliberative process privilege is . . . dependent upon the individual document and the role it plays in the administrative process[,]" *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 867 (D.C. Cir. 1980), so too is the analysis undertaken in determining whether the privilege is overcome. Plaintiffs have not attempted to make such a showing, focusing instead on negating the privilege wholesale.

In any event, any balancing of the applicable factors (relevance, availability of other evidence, and the chilling effect of disclosure), *see Hinckley*, 140 F.3d at 286, would not justify the disclosure of each and every document subject to a claim of the deliberative process privilege in this case.

**Relevance of the evidence.** The *Hinckley* factors reflect the need for granular consideration of documents, as the precise balancing of those factors varies from document to document depending

on their degree of relevance to plaintiffs' claims, the availability of other sources of evidence, and the chilling effect of disclosure on government deliberations. Plaintiffs have not identified any particular document or category of documents over which they have a substantial need, let alone provided any specific information regarding why their need for such a document outweighs Defendants' interest in non-disclosure. Their failure to do so should preclude disclosure of any of Defendants' deliberative documents.

**The availability of other evidence.** Aside from failing to demonstrate a particularized need for any document or information, Plaintiffs have available to them ample documentation, including over 4,000 pages of the administrative record, responses to Plaintiffs' discovery requests, and hundreds of non-privileged documents produced. Plaintiffs have also had ample opportunity to take depositions of those responsible for formulating the Policy and are in the process of doing so now. *See Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 328 (D.D.C. 1966) ("Necessity for production is sharply reduced where an available alternative for obtaining the desired evidence has not been explored." (footnote citation omitted)).

**The extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions.** This factor strongly weighs against eschewing the deliberative process privilege or the disclosure of any information entirely, especially without any effort to compel, or any showing of need for, particular documents. The privilege would be largely vitiated if the mere allegation of unconstitutional action motivated by animus were sufficient to effect its wholesale negation.

Disclosure of hundreds of deliberative documents from the Department of War plainly risks chilling future policy discussions on sensitive personnel and security matters that require free and frank communication within the highest ranks of the Department and the military.

* * *

In sum, because (1) Plaintiffs have failed to show that any document or category of documents is relevant to their claims, (2) Plaintiffs have ample, non-privileged discovery available to them, and (3) wholesale disclosure of deliberative documents plainly risks chilling future policy discussions within the Department of War, Plaintiffs have failed to meet their burden to overcome the deliberative process privilege over all deliberative information and documents in this case.

Defendants thus move the Court for a Protective Order prohibiting Plaintiffs from obtaining documents and information protected by the Deliberative Process Privilege.

DATED: October 21, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ALEXANDER K. HAAS
Director

KRISTINA A. WOLFE
Assistant Branch Director

*/s/ Michael T. Crabb*
M. JARED LITTMAN
ELIZABETH B. LAYENDECKER
ROBERT C. BOMBARD
MICHAEL T. CRABB
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 451-7478
Email: jared.littman2@usdoj.gov

*Counsel for Defendants*