**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NICOLAS TALBOTT, et.al.<br>*Plaintiffs*,<br>v.<br>UNITED STATES, et al.,<br>*Defendants*. | Civ. A. No. 25- 240 (ACR) |

**DEFENDANTS' MOTION IN LIMINE #2**
**TO EXCLUDE CERTAIN STATEMENTS TO PROVE ANIMUS**

Pursuant to Federal Rules of Evidence (FRE) 401 and 403 and the Court's July 27, 2026 Order (ECF. No. 133), as modified by the Court's October 21, 2026 Order (ECF No. 162) and November 6, 2026 Minute Order, Defendants respectfully move to exclude from evidence certain statements made in Executive Order 14,183 and by Secretary Hegseth to try to prove animus. In particular, it is anticipated that Plaintiffs will ask the Court to infer animus from references to "honesty," "humility," "integrity," and "false gender identity" that appear in the Executive Order. It is also anticipated that Plaintiffs will try to prove animus by references to such phrases as "trans lunacy," "dudes in dresses," "trannies," and the like in Secretary Hegseth's book, *The War on Warriors*, and in public speeches and social media posts. This evidence is both irrelevant under FRE 401 and, even if relevant, the evidence should be excluded because its probative value is "substantially outweighed" by the danger of unfair prejudice and confusing the issues under FRE 403.

The Supreme Court has established that a court may infer animus only if the challenged policy "lack[s] any purpose other than a 'bare . . . desire to harm.'" *Trump* v. *Hawaii*, 585 U.S. 667, 705 (2018) (quoting *Dep't of Agriculture* v. *Moreno*, 413 U.S. 528, 534 (1973)). So long as

it is not "impossible to 'discern a relationship to legitimate state interests'" and the policy is thus not "'inexplicable by anything but animus,'" the Court "must accept [the government's] independent justification." *Id.* at 706 (quoting *Romer* v. *Evans*, 517 U.S. 620, 632, 635 (1996)).

Consistent with this standard of review, in *Mullin v. Doe*, the Supreme Court held that certain statements made by President Trump and then-Secretary Noem were inadequate to show that Haiti's Temporary Protected Status (TPS) designation was motivated by race because none of the statements were "overtly racial, and in substance all expressed policy views . . . could rest on race-neutral justifications." 609 U.S. 324, 348 (2026). In particular, the Supreme Court held that, even assuming "heightened scrutiny" applied, certain "heated" statements "broadly denigrat[ing]" Haiti and "malign[ing]" its people were "insufficient to show" that race was a "motivating factor'" in terminating Haiti's TPS designation because the statements had a "strong, race-neutral explanation" concerning tighter restrictions on immigration for reasons outside of race and "a person without racial bias can provide a harshly unfavorable description of living conditions in some of the countries with TPS designations." *Id.* at 348–49. For better or worse, as the Supreme Court recognized, "[p]olitical discourse by prominent public figures is increasingly couched in terms that would have scandalized the public just a short time ago," and the "heated" statements by President Trump and then-Secretary Noem "exemplify this development," but so long as the statements have a "race-neutral explanation," they do not evidence improper motivation. *Id.*

Relying on *Hawaii* and *Mullin*, the D.C. Circuit recently held that Secretary Hegseth's "pungent" and "denounc[ing]" statements related to Anthropic, a tech company that had been engaged in contract negotiations with the Department of War, did not "provide[] a sound basis for judging the lawfulness of federal executive action" because, "for all its flourishes," the Secretary's social media post "squarely addresses" a legitimate justification for the Department's actions,

namely the national security risk that that contract with Anthropic posed. *Anthropic PBC v. Dep't of War*, --- F.4th ---- , 2026 WL 2881404, at *17 (D.C. Cir. Sept. 25, 2026).

The statements that Plaintiffs take issue with here do not reflect animus any more than statements by Justice Thomas—that "[m]en and boys with gender dysphoria are not women or girls, even if they believe that they are"; that "[s]ex is an immutable 'biological' characteristic," which is "binary"; that "'man' and 'woman,' 'boy' and 'girl,' are the terms that correspond to adults and children of each sex"; and that "[t]o use language to obscure reality—to show 'indifference regarding the truth'—is to lie to the public and cease to treat our fellow citizens 'as equals.'" *West Virgina v. B.P.J.*, 609 U.S. 958, 994 (2026) (Thomas, J., concurring) (brackets and citations omitted).

As Secretary Hegseth explained in his interrogatory responses (Ex. 1), his statements are all tied to the medical condition of gender dysphoria—a condition that "impacts combat readiness and efficacy" because addressing the condition is dependent on medication and ongoing medical care and because of deployability and other mission readiness and fitness for duty concerns. *E.g.*, Interr. Nos. 5, 9. Secretary Hegseth made abundantly clear that when he talks about transgender people, he is speaking about the Department's gender dysphoria policy, *id.* No. 10; after all, Secretary Hegseth, "like many others, occasionally use[s] the term 'trans' as shorthand for individuals with gender dysphoria," *id.* No. 8. In particular, his references to ridding the military of "trans-lunancy" addresses his desire to remove from the military any servicemember with a condition that impacts combat readiness and efficacy, including gender dysphoria. *Id.* No. 5. His references to removing "trannies" from the military is similarly tied to the gender dysphoria policy, and the removal of "dudes in dresses" references the uniform and grooming standards associated with a servicemember's sex in accordance with service uniform regulations. *Id.* No. 6. Similarly,

Executive Order 14,183 ties all of its language to the "medical, surgical, and mental health constraints on individuals with gender dysphoria," and how that medical condition, like other "conditions that require substantial medication or medical treatment" such as "bipolar and related disorders, eating disorders, suicidality, and prior psychiatric hospitalization," is "incompatible with active duty." EO 14,183 §§ 1, 2.

"[F]or all its flourishes," the Executive Order and the Secretary's statements "squarely address[]" a legitimate justification for the Department's policy—the incompatibility of gender dysphoria with military service. *Anthropic PBC*, 2026 WL 2881404, at *17. Like the statements made by President Trump and then-Secretary Noem regarding Hattians, the statements at issue here are not "overtly" discriminatory and "could rest" on "neutral justifications," *Mullin*, 609 U.S. at 348, namely the removal of individuals with gender dysphoria from the miliary because of the significant medical care challenges and non-deployability and other readiness concerns they pose, as well as conformance with military service uniform regulations.

The Court therefore should not permit Plaintiffs to introduce certain statements from Executive Order 14,183 and Secretary Hegseth's extra-record statements to try to prove animus. [1]

DATED: November 13, 2026

Respectfully submitted,

JONATHAN D. GUYNN
Acting Assistant Attorney General

ALEXANDER K. HAAS
Director

KRISTINA A. WOLFE
Assistant Branch Director

[1] Pursuant to Local Rule 7(m), counsel for the parties discussed this motion. Plaintiffs oppose.

*/s/ M. Jared Littman*

M. JARED LITTMAN
ELIZABETH B. LAYENDECKER
ROBERT C. BOMBARD
MICHAEL T. CRABB
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 451-7478
Email: jared.littman2@usdoj.gov

*Counsel for Defendants*