**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NICOLAS TALBOTT, *et al.*,

Plaintiffs,

v.

UNITED STATES OF AMERICA, *et al.*,

Defendants.

Civ. A. No. 25- 240 (ACR)

**DEFENDANTS' MOTION IN LIMINE NO. 4**
**TO EXCLUDE SHAWN SKELLY'S TESTIMONY**

Pursuant to Rules 104, 702, and 703 of the Federal Rules of Evidence, Defendants respectfully move to exclude the expert opinions and testimony of Ms. Shawn Skelly. Ms. Skelly served as Special Assistant to the Under Secretary of Defense for Acquisition Technology and Logistics from December 2013 until June 2016. In this role, she supported combatant commanders' requests for equipment in the field. From July 2021 until September 2023, she served as Assistant Secretary of Defense for Readiness. Then, from September 2023 until January 2025, she performed the duties of Deputy Undersecretary of Defense for Personnel and Readiness.

According to her report and recent deposition, Ms. Skelly intends to offer her opinions that: (1) the Austin Policy showed that open service by transgender service members did not negatively impact military readiness or unit cohesion; (2) the "Hegseth Policy" bypassed the Department's evidence-based policy development process; and (3) the "Hegseth Policy" has no readiness benefit and is likely to impose readiness costs. *See* Skelly Rep. ¶ 6-8.

Ms. Skelly's testimony should be excluded based on the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Incl.*, 509 U.S. 579 (1993). As an initial matter, these opinions are not relevant and stray from the limited role of the judiciary in reviewing military judgments, and contravene the Supreme Court's instruction that lower courts disregard similar outside "expert" testimony. *Goldman v. Weinberger*, 475 U.S. 503, 509 (1986) (dismissing the views of outside experts on matters of good order and discipline as "quite beside the point."). Ms. Skelly's first opinion should also be excluded as irrelevant, because the prior policies implemented by the Department are not at issue. In addition, Ms. Skelly's second and third opinions should be excluded on the grounds that they are not reliable.

Finally, by agreement, Ms. Skelly should be precluded from offering testimony about her own personal experience as a transgender person.

For these reasons, Defendants respectfully request that the Court exclude Ms. Skelly's expert testimony.

## STANDARD OF REVIEW

In determining the reliability and admissibility of expert testimony, "a district court exercises a special gatekeeping obligation." *EEOC v. Freeman*, 778 F.3d 463, 466 (4th Cir. 2015) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (citing *Kumho Tire*, 526 U.S. at 147)). "The scope of the court's gatekeeping inquiry will depend upon the particular expert testimony and facts of the case." *Id.* (citing *Kumho Tire*, 526 U.S. at 150). The rigorous gatekeeping function assigned to trial judges includes review not only of testimony based on "scientific" knowledge, but also of testimony based on "technical" and "other specialized" knowledge. *Kumho Tire*, 526 U.S. at 141, 148.

Rule 702 provides that a qualified expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. In *Daubert*, the Supreme Court set forth a framework to assess the admissibility of expert testimony. 509 U.S. at 589–595. Pursuant to that framework, trial courts apply a "two-prong analysis that centers on evidentiary reliability and relevancy: the district court must determine first whether the expert's testimony is based on 'scientific knowledge;' and second, whether the testimony 'will assist the trier of fact to understand or determine a fact in issue.'" *Ambrosini v. Labarraque*, 101 F.3d 129, 133 (D.C. Circ. 1996) (quoting *Daubert*, 509 U.S. at 592). Under the first prong, courts assess the reliability of the testimony offered by evaluating the "methodology or reasoning employed" by the expert. *Id.* (quoting *Daubert*, 509 U.S. at 590). Under the second prong, courts "must determine whether the proffered expert testimony 'is sufficiently tied to the facts of the case that it will aid the [trier of fact] in resolving a factual dispute.'" *Id.* (quoting *Daubert*, 509 U.S. at 591).

The party proposing to introduce an expert's testimony bears the burden of establishing the pertinent admissibility requirements by a preponderance of the evidence. Fed. R. Evid. 702, advisory committee note (citing *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987)); *Daubert*, 509 U.S. at 593 n.10; *Zenith Elec. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005). The decision to admit or exclude an expert rests within the trial court's discretion. *Kumho Tire*, 526 U.S. at 152; *MicroStrategy, Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1355 (Fed. Cir. 2006).

## ARGUMENT

### I. Ms. Skelly's opinions on matters of national security are not relevant and legally irrelevant and unhelpful to the court.

Judicial review of military decisions is highly deferential, *Goldman*, 475 U.S. at 507–08, and "the tests and limitations to be applied may differ because of the military context," *Rostker v. Goldberg*, 453 U.S. 57, 67 (1981). The Supreme Court has cautioned that courts "must give great deference to the professional judgment of military authorities concerning the relative importance of a particular military interest[,]" *Goldman*, 475 U.S. at 507, and "must be particularly careful not to substitute … [their] own evaluation of evidence for a reasonable evaluation by" the military, *Rostker*, 453 U.S. at 68. When applying this deferential standard of review, the Supreme Court has been particularly dismissive of "expert testimony" seeking to undermine military judgments. For example, in *Goldman*, it dismissed plaintiff's "expert testimony" as "quite beside the point," 475 U.S. at 509, and *Rostker* rebuked the district court for "palpably exceed[ing] its authority" in "relying on [such] testimony," 453 U.S. at 81. More recently, in *Trump v. Hawaii*, 585 U.S. 667 (2018), the Supreme Court once again cautioned that courts "cannot substitute [their] own assessment for the Executive's predictive judgments on such matters" and that "the Executive's evaluation of the underlying facts is entitled to appropriate weight, particularly in the context of litigation involving 'sensitive and weighty interests of national security[,]'" *id.* at 708.

Although Ms. Skelly is a former military official, Supreme Court precedent makes no exception for such experts. Expert testimony of former military officials is "quite beside the point." 475 U.S. at 509 (dismissing "expert testimony" proffered by the plaintiff from a former military official "that religious exceptions" to uniform standards "will increase morale"). In *Goldman*, an Air Force colonel challenged on First Amendment grounds an Air Force regulation banning the wearing of a yarmulke while in uniform. *Id*. at 509. The plaintiff provided expert

testimony from former military officials which contradicted the Air Force's rationale for the prohibition and claimed that the Air Force's interest in good order and discipline and uniformity were exaggerated. *Id.* at 504. The Supreme Court rejected this evidence, finding expert testimony to have no relevance in the context of a constitutional challenge to military policy. *Id.*

Similarly, in litigation challenging the Mattis Policy, *Doe 2 v. Shanahan*, 917 F.3d 694 (D.C. Circ. 2019), Judge Williams and Judge Wilkins agreed that the Supreme Court's precedents foreclosed the use or consideration of expert testimony that those plaintiffs had sought to introduce. Judge Wilkins recognized that "the [Supreme] Court noted that it was improper for lower courts to consider plaintiff expert testimony that contradicted the military experts about whether the policies at issue were justified under the circumstances." *Id.* at 706 (Wilkins, J., concurring) (citing *Rostker*, 453 U.S. at 80–81; *Goldman*, 475 U.S. at 509–10). And Judge Williams noted that "it does not appear that the Supreme Court considered *any* evidence uncovered by those trial courts' explorations [in *Rostker* and *Goldman*] to be necessary—or even pertinent—to its disposition of the cases." *Id.* at 736-37 (Williams, J., concurring in result).

Admitting Ms. Skelly's testimony contravenes these precedents. Ms. Skelly's testimony in support of prior military policies and against the 2025 Policy is "quite beside the point." *Goldman*, 475 U.S. at 509. Such testimony is not relevant to review of military judgments not because military judgments cannot reasonably differ, but because control of the military is constitutionally committed to the political branches. The judgments of current military officials, rather than those of former officials, are authoritative because "the military authorities have been charged by the" coordinate branches "with carrying out our Nation's military policy." *Goldman*, 475 U.S. at 507–08.

## II. Opinion 1 regarding the 2021 Policy is not relevant.

Ms. Skelly intends to offer testimony regarding whether the 2021 "Austin Policy showed that open service by transgender service members did not negatively impact military readiness or unit cohesion." Rep. ¶ 6. The question of whether that policy was "the product of a systematic, evidence-based development process" Rep. ¶ 7, will not assist the trier of fact in resolving any issue in the case. That policy is not challenged in this case, and the question of the quality of evidence on which it was based, and the professional judgments of the decisionmakers, are not at issue.

Similarly, Ms. Skelly's opinion that the 2021 Policy fostered unit cohesion, trust, and military readiness based on her experience implementing the policy is not relevant. An expert witness's "specialized knowledge" must be relevant to the particular opinions they give, not just the general topics at issue. *See Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994) ("The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question.").

What's more, Ms. Skelly admitted that, in her Biden-era roles as Assistant Secretary of Defense for Readiness and performing the duties of Deputy Undersecretary of Defense for Personnel and Readiness, she would have been made aware of cohort-wide problems with transgender service members but not necessarily individualized or unit-level readiness issues. Skelly Dep. Tr. 90:18–91:13. She thus lacks foundation to testify that "open service by transgender service members did not negatively impact military readiness or unit cohesion."

## III. Opinion 2 is not reliable because Ms. Skelly has no knowledge of or experience with the development process underlying either the 2021 Austin Policy or the current 2025 Policy.

Ms. Skelly intends to offer testimony that the development of the 2025 Policy bypassed the "systematic, evidence-based development process" used by the Department in the past. Ms. Skelly

claims that her expertise is based upon her "direct, firsthand experience during the implementation of the Biden-era transgender service policy …." Skelly Rep. ¶ 16.

But Ms. Skelly readily admitted in deposition that she had no role in the formulation of the Austin Policy (Skelly Dep. Tr. 78:14-17) or the work of the 2015-16 Transgender Service Review Working Group (*Id.* 65:1-18), upon which that policy relied. Likewise, she admitted that she has no knowledge of the policy-making process within the Department of War after her departure on January 20, 2025. *Id.* 82:25–83:19

Ms. Skelly thus has no valid basis upon which to offer opinions comparing the policy-making processes underlying the Austin Policy and the current 2025 Policy. Her testimony should be excluded.

**IV. Opinion 3 is not reliable because it is too speculative.**

Ms. Skelly intends to offer testimony that the 2025 Policy "will cause significant disruption and thereby undermine military readiness." Skelly Rep. ¶ 50. Ms. Skelly further characterized her opinion as that "some harm related to the current policy under Secretary Hegseth has already occurred" and that "if the policy is permitted to continue in force that additional harm will occur in the future." Skelly Dep. Tr. 109:14-21.

But Ms. Skelly belied this opinion when she testified that she has no personal knowledge regarding military readiness or deployability statistics from after the 2025 Policy was implemented. Skelly Dep. Tr. 83:10-14. And as for future harm, she conceded that, "of course," "all predictions about the future are inherently speculative in nature at least to some degree." *Id.* 110:9-14.

A Court does "not abuse its discretion by excluding testimony that, based on the expert's own admissions, 'would be nothing other than speculation.'" *Young v. Burton*, 354 F. App'x 432,

432–33 (D.C. Cir. 2009) (citation omitted). Ms. Skelly admits that she has no basis to opine on whether any impact to military readiness or deployability has occurred since the 2025 Policy was implemented and that any speculation about future impact is just that: speculation. Her testimony should be excluded.

## V. By agreement, Ms. Skelly should be precluded from offering testimony about her personal experience as a transgender person.

During her deposition, Ms. Skelly was asked about her personal experience as a transgender person, which is, in her words, "a public fact." Skelly Dep. Tr. 116:20 – 117:2. After she expressed reticence to testify about that fact (*Id.* 117:4-9), counsel offered to forgo questioning about her personal experience as a transgender person if she had no intention to offer such testimony at trial:

> And to restate it is: Do you intend to testify about your own personal experience as a transgender person at the trial of this matter?
>
> ** [off-the-record discussion was had] **
>
> Q So, Ms. Skelly, the pending question is: Do you intend to testify at all about your personal experience as a transgender person at the trial of this matter?
>
> A I do not.

*Id.* 118:10–119:7; 119:8-10; 119:24–120:3.

Because Defendants relied upon this testimony to forgo further discovery, Ms. Skelly should be precluded from offering any testimony at trial about her personal experience as a transgender person.

## CONCLUSION

Defendants respectfully move for an Order in Limine excluding the expert testimony of Ms. Shawn Skelly because it is not relevant, not helpful to the trier of fact, lacks basis in personal knowledge or experience, and is too speculative.[1] Defendants further move for an Order in Limine precluding Ms. Skelly from offering any testimony at trial about her personal experience as a transgender person.

DATED: November 13, 2026

Respectfully submitted:

JONATHAN D. GUYNN
Acting Assistant Attorney General

ALEXANDER K. HAAS
Director

KRISTINA A. WOLFE
Assistant Branch Director

*/s/ Michael T. Crabb*
M. JARED LITTMAN
ELIZABETH B. LAYENDECKER
ROBERT C. BOMBARD
MICHAEL T. CRABB
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 451-7478
Email: jared.littman2@usdoj.gov

*Counsel for Defendants*

[1] Pursuant to Local Rule 7(m), counsel for the parties discussed this motion. Plaintiffs oppose.