**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NICOLAS TALBOTT, *et al.*,<br>Plaintiffs,<br>v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br>Defendants. | Civ. A. No. 25- 240 (ACR) |

**DEFENDANTS' MOTION IN LIMINE NO. 5**
**TO EXCLUDE YVETTE BOURCICOT'S TESTIMONY**

Pursuant to Rules 104, 702, and 703 of the Federal Rules of Evidence, Defendants respectfully move to exclude the expert opinions and testimony of Ms. Yvette Bourcicot. Ms. Bourcicot served as Acting Assistant Secretary of the Army for Manpower and Reserve Affairs and as Principal Deputy Assistant Secretary of the Army for Manpower and Reserve Affairs from January 2022 through January 2025. According to her report and recent deposition, Ms. Bourcicot intends to offer her opinions on: (1) the Carter Policy allowing transgender members to serve; (2) whether the Austin Policy fostered trust, unit cohesion, and military readiness; (3) whether the 2025 Policy represents an "abrupt" reversal in policy unsupported by evidence; (4) whether the 2025 Policy generally preventing servicemembers with gender dysphoria from serving is consistent with the Army's implementation of medical standards and the "department's own experience"; and (5) the effect of the waiver provision in the 2025 Policy. *See* Bourcicot Rep. ¶ 2.

Ms. Bourcicot's testimony should be excluded based on the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Incl.*, 509 U.S. 579 (1993). As an initial matter, these opinions are not relevant and stray from the limited role of the judiciary in reviewing military judgments,

and contravenes the Supreme Court's instruction that lower courts disregard similar outside "expert" testimony. *Goldman v. Weinberger*, 475 U.S. 503, 509 (1986) (dismissing the views of outside experts on matters of good order and discipline as "quite beside the point."). Ms. Bourcicot's first and second opinions should also be excluded as irrelevant, because the prior policies implemented by the Department are not at issue. In addition, Ms. Bourcicot's third, fourth, and fifth opinions should be excluded on the grounds that they are not reliable.

For these reasons, Defendants respectfully request that the Court exclude Ms. Bourcicot's expert testimony.

**BACKGROUND**

Plaintiffs disclosed that Ms. Bourcicot was asked to provide expert opinions on topics related to Executive Order 14183, Prioritizing Military Excellence and Readiness, and the February 26, 2026 Memorandum, including,

> [1] whether the military's decision to allow transgender individuals to serve was based on well-researched evidence and considered professional judgment, drawing on [her] direct participation in the 2015 Working Group that developed that policy; [2] whether allowing transgender individuals to serve fostered trust, unit cohesion, and military readiness based on [her] direct experience implementing the policy in the Department of the Army; [3] whether Executive Order 14183 and the February 26, 2025, implementing memorandum ("Hegseth Policy") represent an abrupt and highly irregular reversal of established military policy that was not supported by evidence or informed by standard military policymaking processes; [4] whether the categorical bar imposed by Executive Order 14183 and the February 26, 2025, memorandum is consistent with the individualized, standards-based assessment Army policy requires to evaluate medical fitness for its soldiers, and whether the stated rationales for that bar are consistent with the Department's own experience; and [5] whether the February 26, 2025, memorandum's waiver provisions for both accession and retention make service by transgender people impossible and virtually eliminate currently serving transgender personnel from the armed forces.

Bourcicot Report at ¶ 2. Ms. Bourcicot did not disclose opinions beyond those enumerated in her expert report, and referred to the report when asked to expand on what opinions she anticipated offering at trial. *See* Bourcicot Dep. Tr. 108:20–110:14; 132:12–133:13.

## STANDARD OF REVIEW

In determining the reliability and admissibility of expert testimony, "a district court exercises a special gatekeeping obligation." *EEOC v. Freeman*, 778 F.3d 463, 466 (4th Cir. 2015) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (citing *Kumho Tire*, 526 U.S. at 147)). "The scope of the court's gatekeeping inquiry will depend upon the particular expert testimony and facts of the case." *Id.* (citing *Kumho Tire*, 526 U.S. at 150). The rigorous gatekeeping function assigned to trial judges includes review not only of testimony based on "scientific" knowledge, but also of testimony based on "technical" and "other specialized" knowledge. *Kumho Tire*, 526 U.S. at 141, 148.

Rule 702 provides that a qualified expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to under the evidence or determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. In *Daubert*, the Supreme Court set forth a framework to assess the admissibility of expert testimony. 509 U.S. at 589–595. Pursuant to that framework, trial courts apply a "two-prong analysis that centers on evidentiary reliability and relevancy: the district court must determine first whether the expert's testimony is based on 'scientific knowledge;' and second, whether the testimony 'will assist the trier of fact to understand or determine a fact in issue.'" *Ambrosini v. Labarraque*, 101 F.3d 129, 133 (D.C. Cir. 1996) (quoting *Daubert*, 509 U.S. at 592). Under the first prong, courts assess the reliability of the testimony offered by evaluating the "methodology or reasoning employed" by the expert. *Id.* (quoting *Daubert*, 509 U.S. at 590). Under the second prong, courts "must determine whether the proffered expert testimony 'is sufficiently tied to the facts of the case that it will aid the [trier of fact] in resolving a factual dispute.'" *Id.* (quoting *Daubert*, 509 U.S. at 591).

The party proposing to introduce an expert's testimony bears the burden of establishing the pertinent admissibility requirements by a preponderance of the evidence. Fed. R. Evid. 702, advisory committee note (citing *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987)); *Daubert*,

509 U.S. at 593 n.10; *Zenith Elec. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005). The decision to admit or exclude an expert rests within the trial court's discretion. *Kumho Tire*, 526 U.S. at 152; *MicroStrategy, Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1355 (Fed. Cir. 2006).

## ARGUMENT

### I. Ms. Bourcicot's Opinions on Matters of National Security are Not Relevant, Legally Irrelevant, and Unhelpful to the Court.

Judicial review of military decisions is highly deferential, *Goldman*, 475 U.S. at 507–08, and "the tests and limitations to be applied may differ because of the military context," *Rostker v. Goldberg*, 453 U.S. 57, 67 (1981). The Supreme Court has cautioned that courts "must give great deference to the professional judgment of military authorities concerning the relative importance of a particular military interest[,]" *Goldman*, 475 U.S. at 507, and "must be particularly careful not to substitute … [their] own evaluation of evidence for a reasonable evaluation by" the military, *Rostker*, 453 U.S. at 68. When applying this deferential standard of review, the Supreme Court has been particularly dismissive of "expert testimony" seeking to undermine military judgments. For example, in *Goldman*, it dismissed plaintiff's "expert testimony" as "quite beside the point," 475 U.S. at 509, and *Rostker* rebuked the district court for "palpably exceed[ing] its authority" in "relying on [such] testimony," 453 U.S. at 81. More recently, in *Trump v. Hawaii*, 585 U.S. 667 (2018), the Supreme Court once again cautioned that courts "cannot substitute [their] own assessment for the Executive's predictive judgments on such matters" and that "the Executive's evaluation of the underlying facts is entitled to appropriate weight, particularly in the context of litigation involving 'sensitive and weighty interests of national security[,]'" *id.* at 708.

Although Ms. Bourcicot is a former military official, Supreme Court precedent makes no exception for such experts. Expert testimony of former military officials is "quite beside the point." 475 U.S. at 509 (dismissing "expert testimony" proffered by the plaintiff from a former military official "that religious exceptions" to uniform standards "will increase morale"). In *Goldman*, an Air Force colonel challenged on First Amendment grounds an Air Force regulation

banning the wearing of a yarmulke while in uniform. *Id.* at 509. The plaintiff provided expert testimony from former military officials which contradicted the Air Force's rationale for the prohibition and claimed that the Air Force's interest in good order and discipline and uniformity were exaggerated. *Id.* at 504. The Supreme Court rejected this evidence, finding expert testimony to have no relevance in the context of a constitutional challenge to military policy. *Id.*

Similarly, in litigation challenging the Mattis Policy, *Doe 2 v. Shanahan*, 917 F.3d 694 (D.C. Cir. 2019), Judge Williams and Judge Wilkins agreed that the Supreme Court's precedents foreclosed the use or consideration of expert testimony that those plaintiffs had sought to introduce. Judge Wilkins recognized that "the [Supreme] Court noted that it was improper for lower courts to consider plaintiff expert testimony that contradicted the military experts about whether the policies at issue were justified under the circumstances." *Id.* at 706 (Wilkins, J., concurring) (citing *Rostker*, 453 U.S. at 80–81; *Goldman*, 475 U.S. at 509–10). And Judge Williams noted that "it does not appear that the Supreme Court considered *any* evidence uncovered by those trial courts' explorations [in *Rostker* and *Goldman*] to be necessary—or even pertinent—to its disposition of the cases." *Id.* at 736-37 (Williams, J., concurring in result).

Admitting Ms. Bourcicot's testimony contravenes these precedents. Ms. Bourcicot's testimony in support of prior military policies and against the 2025 Policy is "quite beside the point." *Goldman*, 475 U.S. at 509. Such testimony is not relevant to review of military judgments not because military judgments cannot reasonably differ, but because control of the military is constitutionally committed to the political branches. The judgments of current military officials, rather than those of former officials, are authoritative because "the military authorities have been charged by the" coordinate branches "with carrying out our Nation's military policy." *Goldman*, 475 U.S. at 507–08.

## II. Opinions 1, 2, and 4 Regarding the 2016 Carter Policy and the 2021 Austin Policy Are Not Relevant.

Ms. Bourcicot intends to offer testimony regarding (1) whether the 2016 Carter Policy "allow[ing] transgender individuals to serve was based on well-researched evidence and

considered professional judgment," and (2) "whether allowing transgender individuals to serve fostered trust, unit cohesion, and military readiness based on [her] direct experience implementing the policy in the Department of the Army." Bourcicot Rep. ¶ 2. As to Opinion 4, she intends to testify that the 2025 Policy is "inconsistent" with individualized accession and retention standards under the Austin Policy. Bourcicot Rep. ¶¶ 77-79.

The question of whether the Austin Policy "was based on well-researched evidence and considered professional judgment," Rep. ¶ 2, will not assist the trier of fact in resolving any issue in the case. Nor will a comparison of the current 2025 Policy with the Austin Policy. The Austin policy is not challenged in this case, and the question of the quality of evidence on which it was based, and the professional judgments of the decisionmakers, are not at issue.

Similarly, Ms. Bourcicot's second opinion that the Austin Policy fostered unit cohesion, trust, and military readiness based on her experience implementing the policy is not relevant. An expert witness' "specialized knowledge" must be relevant to the particular opinions they give, not just the general topics at issue. *See Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994) ("The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question."

And although Ms. Bourcicot stated in her disclosure that Opinion 2 was based on her experience implementing the Austin policy in the Army, her sworn deposition testimony indicates otherwise. During her deposition, Ms. Bourcicot was asked for the basis for her opinion that "permitting transgender servicemembers to serve only fostered trust among team members and advanced unit cohesion and readiness." Bourcicot Dep. Tr. 127:20–24. Ms. Bourcicot responded that the basis came "from [her] experience with having supported the repeal of Don't Ask Don't Tell[;]" from her "review of the literature at the time" and "in support of preparing for [her] expert report" in this matter; and her "experience overseeing the Deputy Assistant Secretary of the Army for Equity and Inclusion, which conducted studies generally on the contributions that inclusion training made to unit cohesion." *Id.* 128:2-16.

Notably, none of those bases for her opinion relate at all to her "direct experience implementing the policy in the Department of the Army." ¶ 2. Abstract support for the repeal of Don't Ask Don't Tell is wholly irrelevant to any kind of methodology to assess unit cohesion and readiness regarding service of individuals with gender dysphoria. Similarly, the efficacy of diversity and inclusion trainings on unit cohesion, as a general matter, has no bearing on the efficacy of the Austin Policy in promoting unit cohesion and readiness.

## III. Opinions 3 and 5 Are Not Reliable Because Ms. Bourcicot has no Knowledge of or Experience with the Development Process Underlying Either the 2021 Austin Policy or the Current 2025 Policy.

Ms. Bourcicot intends to offer testimony that "Executive Order 14183 and the February 26, 2025 implementing memorandum represent an abrupt and rushed reversal of established military policy, issued without the deliberative processes that accompanied the policies preceding it." Bourcicot Rep. ¶ 48.

But Ms. Bourcicot readily admits that she was "not involved in the formulation of what [she] called 'the Hegseth Policy.'" Bourcicot Dep. Tr. 161:2-5. Similarly, Ms. Bourcicot acknowledged that the preceding "Austin Policy" was fully formed and "in place by the time I started" and that she "did not have direct involvement in the deliberations." *Id.* 52:5-15. Ms. Bourcicot thus has no valid basis upon which to offer opinions comparing the policy-making processes underlying the Austin Policy to the current 2025 Policy. Her testimony on this matter should be excluded.

Similarly, Ms. Bourcicot intends to opine that the waiver provisions of the 2025 Policy "make service by transgender people impossible and virtually eliminate currently serving transgender personnel from the armed forces." Bourcicot Rep. ¶ 2. But when asked whether she has any information about how many waivers have been sought, approved, or denied under the current policy, she admitted that she does "not have any current information" and that she is "not

aware of a – of a exact number of waivers that have been sought or granted." Bourcicot Dep. Tr. 140:11-24. Ms. Bourcicot thus lacks any foundation for her purported expert opinion.

**CONCLUSION**

Defendants respectfully move for an Order in Limine excluding the expert testimony of Ms. Yvette Bourcicot because it is not relevant, not helpful to the trier of fact, and lacks basis in personal knowledge or experience.[1]

DATED: November 13, 2026

Respectfully submitted:

JONATHAN D. GUYNN
Acting Assistant Attorney General

ALEXANDER K. HAAS
Director

KRISTINA A. WOLFE
Assistant Branch Director

*/s/ Michael T. Crabb*
M. JARED LITTMAN
ELIZABETH B. LAYENDECKER
ROBERT C. BOMBARD
MICHAEL T. CRABB
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 451-7478
Email: jared.littman2@usdoj.gov

*Counsel for Defendants*

[1] Pursuant to Local Rule 7(m), counsel for the parties discussed this motion. Plaintiffs oppose.