**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NICOLAS TALBOTT, *et al.*,

Plaintiffs,

v.

UNITED STATES OF AMERICA, *et al.*,

Defendants.

Civ. A. No. 25- 240 (ACR)

**DEFENDANT'S MOTION IN LIMINE NO. 6**

**TO EXCLUDE ASHISH VAZIRANI'S TESTIMONY**

Pursuant to Rules 104, 702, and 703 of the Federal Rules of Evidence, Defendants respectfully move to exclude the expert opinions and testimony of Mr. Ashish Vazirani. According to his report and recent deposition, Mr. Vazirani intends to offer the following opinions at trial: (1) under the Austin Policy, open service by transgender service members did not negatively impact military readiness or unit cohesion; (2) merit-based standards that include transgender service members strengthen the military; (3) the military invests significant resources in training service members, and removing qualified personnel, solely because they are transgender, wastes that investment and reduces readiness; (4) healthcare costs for transgender service members have been negligible, and healthcare requirements for transgender service members have not required any significant changes to the Military Health System; (5) the reversal of the Austin Policy was abrupt, arbitrary, and contrary to the Department of Defense's deliberative policymaking process; (6) the reversal risks reducing readiness, negatively impacting recruiting, and eroding trust in military

leadership; and (7) there is no evidence that the Austin Policy caused any actual harm to readiness, unit cohesion, or mission accomplishment.

At bottom, his opinions are those of a former political appointee who disagrees with a policy that his successors, appointed by a different administration, have implemented. Whether a prior Administration's officials would have weighed the same risks differently does not make any fact of consequence more or less probable. FRE 401. Mr. Vazirani's testimony should be excluded based on the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Incl.*, 509 U.S. 579 (1993). As an initial matter, these opinions are not relevant and stray from the limited role of the judiciary in reviewing military judgments and contravene the Supreme Court's instruction that lower courts disregard similar outside "expert" testimony. *Goldman v. Weinberger*, 475 U.S. 503, 509 (1986) (dismissing the views of outside experts on matters of good order and discipline as "quite beside the point."). Mr. Vazirani's opinions should also be excluded as irrelevant, because prior policies implemented by the Department are not at issue. In addition, Mr. Vazirani's opinions should be excluded on the grounds that they are not reliable.

For these reasons, Defendants respectfully request that the Court exclude Mr. Vazirani's expert testimony.

## STANDARD OF REVIEW

In determining the reliability and admissibility of expert testimony, "a district court exercises a special gatekeeping obligation." *EEOC v. Freeman*, 778 F.3d 463, 466 (4th Cir. 2015) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)). "The scope of the court's gatekeeping inquiry will depend upon the particular expert testimony and facts of the case." *Id.* (citing *Kumho Tire*, 526 U.S. at 150). The rigorous gatekeeping function assigned to trial judges includes review not only of testimony based on "scientific" knowledge, but also of testimony based on "technical" and "other specialized" knowledge. *Kumho Tire*, 526 U.S. at 147.

Rule 702 provides that a qualified expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c)

the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. In *Daubert*, the Supreme Court set forth a framework to assess the admissibility of expert testimony. 509 U.S. at 589–595. Pursuant to that framework, trial courts apply a "two-prong analysis that centers on evidentiary reliability and relevancy: the district court must determine first whether the expert's testimony is based on 'scientific knowledge;' and second, whether the testimony 'will assist the trier of fact to understand or determine a fact in issue.'" *Ambrosini v. Labarraque*, 101 F.3d 129, 133 (D.C. Cir. 1996) (quoting *Daubert*, 509 U.S. at 592). Under the first prong, courts assess the reliability of the testimony offered by evaluating the "methodology or reasoning employed" by the expert. *Id.* (quoting *Daubert*, 509 U.S. at 590). Under the second prong, courts "must determine whether the proffered expert testimony 'is sufficiently tied to the facts of the case that it will aid the [trier of fact] in resolving a factual dispute.'" *Id.* (quoting *Daubert*, 509 U.S. at 591).

The party proposing to introduce an expert's testimony bears the burden of establishing the pertinent admissibility requirements by a preponderance of the evidence. Fed. R. Evid. 702, advisory committee note (citing *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987)); *Daubert*, 509 U.S. at 593 n.10; *Zenith Elec. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005). The decision to admit or exclude an expert rests within the trial court's discretion. *Kumho Tire*, 526 U.S. at 152; *MicroStrategy, Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1355 (Fed. Cir. 2006).

**BACKGROUND**

In July 2022 Ashish Vazirani was confirmed by the Senate to serve as the Deputy Under Secretary of Defense for Personnel and Readiness. He later served as the Official Performing the Duties of Under Secretary of Defense for Personnel and Readiness. Mr. Vazirani "directly oversaw the Austin Policy's implementation across the Department of Defense" between July 2022 to January 2025. Rep. at 2, ¶ 13-14. Decades earlier, Mr. Vazirani served in the United States Navy as a submarine officer. He served on active duty for approximately six years before departing the service as a Lieutenant to pursue a career in the civilian world.

Mr. Vazirani was not in government when the Austin Policy was adopted in April 2021 or when the challenged policy was adopted in February 2025. Despite that lack of firsthand knowledge in the development of either policy, Plaintiffs offer him as a retained expert witness to inform the Court that the policy he oversaw during his tenure worked, that the policy that replaced it is "abrupt, arbitrary," and "not based in fact" and that the change in policy after the change in administration will harm readiness, recruiting, and trust in leadership. Rep. at ¶ 25-31.

## ARGUMENT

### I. Mr. Vazirani's Opinions on Matters of Department Policy are not Relevant and are Unhelpful to the Court.

#### A. A former official's disagreement with his successors' policy judgment is not a fact of consequence.

This case asks whether the challenged 2025 Policy is Constitutional. The question concerns the current administration's justifications and the relationship between the current policy and those justifications. Judicial review of military decisions is highly deferential, *Goldman*, 475 U.S. at 507–08, and "the tests and limitations to be applied may differ because of the military context," *Rostker v. Goldberg*, 453 U.S. 57 at 67 (1981). Courts give military judgments about personnel standards substantial deference, *Id.* at 64-67; *Weinberger*, 475 U.S. 503, 507–08 (1986). The Supreme Court has cautioned that courts "must give great deference to the professional judgment of military authorities concerning the relative importance of a particular military interest[,]" *Goldman*, 475 U.S. at 507, and "must be particularly careful not to substitute … [their] own evaluation of evidence for a reasonable evaluation by" the military, *Rostker*, 453 U.S. at 68. When applying this deferential standard of review, the Supreme Court has been particularly dismissive of "expert testimony" seeking to undermine military judgments. For example, in *Goldman*, it dismissed plaintiff's "expert testimony" as "quite beside the point," 475 U.S. at 509, and *Rostker* rebuked the district court for "palpably exceed[ing] its authority" in "relying on [such] testimony," 453 U.S. at 81. More recently, in *Trump v. Hawaii*, 585 U.S. 667 (2018), the Supreme Court once again cautioned that courts "cannot substitute [their] own assessment for the Executive's predictive judgments on such matters" and that "the Executive's evaluation of the

underlying facts is entitled to appropriate weight, particularly in the context of litigation involving 'sensitive and weighty interests of national security[,]'" *id.* at 708.

Although Mr. Vazirani served in the Department under the previous administration, Supreme Court precedent makes no exception for such experts. Expert testimony of former military officials is "quite beside the point." 475 U.S. at 509 (dismissing "expert testimony" proffered by the plaintiff from a former military official "that religious exceptions" to uniform standards "will increase morale"). In *Goldman*, an Air Force colonel challenged on First Amendment grounds an Air Force regulation banning the wearing of a yarmulke while in uniform. *Id*. at 509. The plaintiff provided expert testimony from former military officials which contradicted the Air Force's rationale for the prohibition and claimed that the Air Force's interest in good order and discipline and uniformity were exaggerated. *Id.* at 504. The Supreme Court rejected this evidence, finding expert testimony to have no relevance in the context of a constitutional challenge to military policy. *Id.*

Similarly, in litigation challenging the Mattis Policy, *Doe 2 v. Shanahan*, 917 F.3d 694 (D.C. Cir. 2019), Judge Williams and Judge Wilkins agreed that the Supreme Court's precedents foreclosed the use or consideration of expert testimony that those plaintiffs had sought to introduce. Judge Wilkins recognized that "the [Supreme] Court noted that it was improper for lower courts to consider plaintiff expert testimony that contradicted the military experts about whether the policies at issue were justified under the circumstances." *Id.* at 706 (Wilkins, J., concurring) (citing *Rostker*, 453 U.S. at 80–81; *Goldman*, 475 U.S. at 509–10). And Judge Williams noted that "it does not appear that the Supreme Court considered *any* evidence uncovered by those trial courts' explorations [in *Rostker* and *Goldman*] to be necessary—or even pertinent—to its disposition of the cases." *Id.* at 736-37 (Williams, J., concurring in result).

Admitting Mr. Vazirani's testimony contravenes these precedents. Mr. Vazirani's testimony in support of prior military policies and against the 2025 Policy is "quite beside the point." *Goldman*, 475 U.S. at 509. Such testimony is not relevant to review of military judgments not because military judgments cannot reasonably differ, but because control of the military is

constitutionally committed to the political branches. *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973). The judgments of current military officials, rather than those of former officials, are authoritative because "the military authorities have been charged by the" coordinate branches "with carrying out our Nation's military policy." *Goldman*, 475 U.S. at 507–08.

Whether a former political appointee of the opposite party believes his successor's policy decision was a mistake is irrelevant and does not make any fact of consequence more or less probable. FRE 401. Mr. Vazirani's views on what the Department "should" do confirm the point: he agreed the Department "can" change its standards but believes it should not do so. Tr. at165:12-19, and he conceded that he disagrees with the current Administration's recission of other policies he established or oversaw, Tr. at 96:8-97-7. Policy preference is not expertise.

### B. Mr. Vazirani's characterization of the 2025 Policy as "arbitrary," "not based in fact," and a "categorical exclusion" constitute legal conclusions.

Mr. Vazirani's opinions that the 2025 Policy is "arbitrary" (Rep. ¶¶ 29, 81, 83), "not based in fact" (Rep. ¶¶ 29, 83), "lacks an evidentiary foundation" (Rep. ¶ 88), and "single[s] out one diagnosis for categorical exclusion" without "an evidence-based justification" (Rep. ¶¶ 31, 62, 83) are all legal questions the Court must decide. Mr. Vazirani's opinions should be excluded on that basis as well.

## II. Opinion 1 Regarding the Austin Policy is Not Relevant.

Mr. Vazirani intends to offer testimony that the Austin Policy "did not negatively impact military readiness or unit cohesion." Rep. ¶ 25. The question of whether that policy was "the product of a systematic, evidence-based development process" Rep. ¶ 7, will not assist the trier of fact in resolving any issue in the case. The Austin Policy is not challenged in this case, and the question of the quality of evidence on which it was based, and the professional judgments of the decisionmakers are not at issue.

Similarly, Mr. Vazirani's opinion that the Austin Policy fostered unit cohesion, trust, and military readiness based on his experience implementing the policy is without any evidentiary support (*see* part V *infra*) and is not relevant in any case. An expert witness's "specialized

knowledge" must be relevant to the particular opinions he or she gives, not just the general topics at issue. *See Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994) ("The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question.")

As a senior political appointee, information about unit level cohesion and readiness was unlikely to filter up to his level. Mr. Vazirani had a broad and complex portfolio which included, among other things "responsibility for the MHS (military health system) and the provision of health services to the Joint Force, which includes 2.1 million active duty, reserve, and National Guard service members as well as their dependents, and retired military members and their dependents—a total of approximately 9.6 million Americans." Rep at 50. Additionally, the Military Departments, the Assistant Secretary of Defense for Manpower and Reserve Affairs, the Assistant Secretary of Defense for Readiness, the Assistant Secretary of Defense for Health Affairs, and the Director of the Defense Health Agency all reported to Mr. Vazirani on personnel and medical readiness matters. Id. at 46. But at his deposition, Mr. Vazirani when asked to draw up his active-duty military experience and senior Pentagon experience to identify the number of links in the chain of command between a junior officer in the fleet and the Deputy Under Secretary of Defense for Personnel and Readiness he responded "I'll categorize it as many. I'm going to take a few minutes to think about all of the different layers in that chain of command" and "[s][o how many different layers. And bear with me because I'm going to have to do this out loud so that I can keep track." 46:22-47:20; s*ee also*, Tr. at at 48:1-51:12 (identifying the significant amount of layers and nuance within the chain of command separating the DUSD (P&R) from a Navy lieutenant.) It strains credulity to think that Mr. Vazirani would be apprised of unit or command-level readiness issues from his high perch within the Pentagon, without specifically inquiring about whether any exist, where adverse reports about a policy he was responsible for could be addressed or resolved at any one of well over a dozen different subordinate levels.

**III. Mr. Vazirani's Opinions are Not Based on Sufficient Facts or a Reliable Method.**

Mr. Vazirani's first, sixth, and seventh opinions and much of Parts A and B of his report, rest on one premise: he never heard about any problems with the Austin Policy. Rep. at 25 ("I am not aware of any cases of reduced cohesion or readiness"); ¶ 43 ("I am aware of no evidence"); ¶ 46 ("at no point did commanders, policymakers, or health affairs leaders identify" deployability problems); ¶ 49 ("I received no report"); ¶ 54 (no theater "reported to my office"); ¶ 56 (health affairs did not "raise" costs); ¶ 59 ("I was not made aware"). At his deposition he agreed that his statement that he was "not aware of any cases of reduced cohesion or readiness" is "a statement of fact of my awareness." Tr. at 77:21-78:14. When asked about the factual basis for his opinion that there is "no evidence the Austin Policy caused any actual harm," he gave the same answer: "there were no reports". Tr. at 186:18-187:13.

His lack of knowledge of any negative reports is consistent with his lack of knowledge regarding the number of transgender servicemembers in the military, how many service members had a gender dysphoria diagnosis, or how many transitioned under the Austin Policy. Tr. at 78:16–24; 79:9–11; 97:9–21. He testified: "I did not track gender dysphoric" service members. Tr. at 82:13. He did not know what share of service members with gender dysphoria were non-deployable, and "did not" look it up. Tr. at 193:20–194:4. He did not know how many applicants accessed with a history of gender dysphoria, Tr. at 195:23–196:3,and did not track how many requests for transition-related care commanders approved or denied, Tr. at 194:21–195:4. He never met with any Service Central Coordination Cell (the entities DoDI 1300.28 charged with handling these cases) because he "didn't find it necessary," and he does not know who ran them. Tr. at 105:17–106:3; 145:6–146:2. He never sought data from the Defense Health Agency on service members with gender dysphoria, although he acknowledged the agency could have produced it. Tr. at 82:14–85:2. Mr. Vazirani thus lacks foundation to testify regarding his opinions that under the Austin Policy, open service by transgender service members did not negatively impact military readiness or unit cohesion, the risks reversing the Austin Policy impose on readiness, recruiting, and maintaining trust in military leadership; and the lack of evidence that the Austin Policy caused

any actual harm to readiness, unit cohesion, or mission accomplishment. For these same reasons, Mr. Vazirani's opinions on these issues are unreliable.

**IV. Opinion 5 is Not Reliable Because Mr. Vazirani has no Knowledge of or Experience with the Development Process Underlying Either the 2021 Austin Policy or the Current 2025 Policy.**

Mr. Vazirani intends to offer testimony that the "reversal of the Austin Policy was abrupt, arbitrary, and contrary to the Department of Defense's deliberative policymaking process." Rep. at ¶ 29. Mr. Vazirani claims "[t]his departure from established norms is particularly striking given that the Austin Policy was itself adopted after a rigorous, evidence-driven process that included the RAND Report and the deliberative policymaking process normally used by the Department of Defense." Rep at ¶ 77. But Mr. Vazirani acknowledges that he "was not in office when the Austin Policy was adopted" and that his "understanding of that process is based on the public record and on the policy documents, implementing guidance, and Service regulations that I later oversaw, which reflect the staffing and coordination characteristic of the Department's ordinary process." *Id*.

Mr. Vazirani readily admitted in deposition that he had no role in the formulation or development of the Austin Policy (Tr. at 119:7-11). Likewise, he admitted that he has no firsthand knowledge of the policy-making process within the Department of War after his departure on January 20, 2025. *Id.* 133:7–134:20. Mr. Vazirani thus has no valid basis upon which to offer opinions comparing the policy-making processes underlying the Austin Policy to the current 2025 Policy. His testimony on this matter should be excluded.

**V. Opinions 2, 3, 4, 6, and 7 are Not Reliable Because They are Speculative.**

Mr. Vazirani intends to offer testimony that the 2025 Policy reversing the Austin Policy will degrade military readiness, harm recruiting, and erode trust in leadership. Rep. ¶ 78-84. Mr. Vazirani further explained that in his opinion, the reversal in policy would cause issues based on a lack of reporting that he received. Tr. at 186:18-187:13 ("During my time as the Deputy Under Secretary and acting Under Secretary, there were no reports that allowing transgender service

members to serve resulted in reductions in readiness through the defense readiness reporting system; unit cohesion, as measured by our climate surveys; or our ability to meet mission based on the ability of the combatant commanders to meet the objectives of the National Defense Strategy and the National Security Strategy.").

Mr. Vazirani's report goes even further asserting that the Austin Policy "strengthened unit cohesion" and that permitting military service by individuals with gender dysphoria "strengthen[s] the military." Rep. at Part B heading; ¶¶ 26, 58, 60, 86. Yet at his deposition Mr. Vazirani conceded he had no measure of any such benefit: "I don't have a measure that says that there was an increase in readiness"; he "was not aware of an indicator that the Austin Policy in and of itself increased unit cohesion"; and he could not say the policy increased mission accomplishment because "that was [not] a measure that was looked at in isolation." Tr. at 187:14–188:18. When Plaintiffs' counsel then elicited that the Austin Policy "positively contributed" to readiness, cohesion, and mission accomplishment, Mr. Vazirani explained that "[m]y opinion is based on what I believe, that when we have units . . . that reflect the nation that we serve, we have more cohesive and ready units." Tr. at 202:16–203:24.

An opinion "based on what I believe" is speculation and *ipse dixit*. A Court does "not abuse its discretion by excluding testimony that, based on the expert's own admissions, 'would be nothing other than speculation.'" *Young v. Burton*, 354 F. App'x 432, 432–33 (D.C. Cir. 2009) (citation omitted). Mr. Vazirani has no basis to opine on whether the Austin Policy had any impact to military readiness or deployability and that any speculation about the future impact of the 2025 Policy is just that: speculation. He identified no study, survey, or data linking the service of individuals with gender dysphoria to any readiness or cohesion benefit, and his deposition testimony contradicts itself on the point. These opinions should be excluded.

## VI. Mr. Vazirani's Affirmative Opinions Exceed the Scope of Proper Rebuttal.

Plaintiffs disclosed Mr. Vazirani only as a rebuttal expert. Rep. at ¶ 1. Rebuttal testimony is limited to evidence "intended solely to contradict or rebut evidence on the same subject matter identified by another party." FRCP 26(a)(2)(D)(ii). Much of Mr. Vazirani's report does not rebut

any Government witness; instead, his report offers affirmative opinions about the alleged success of the Austin Policy (Rep. ¶¶ 25, 41-43, 57-58, 71), the value of merit-based standards and training investment (Rep. ¶¶ 26-27, 60-66, 68), the 2025 policy making process (Rep. ¶¶ 29, 73-77), and predictive harms to recruiting and trust (Rep. ¶ 30, 78-84).

Mr. Vazirani confirmed that much of the report was built from a declaration he prepared for a different case before any Government expert disclosure existed. Tr. at 16:4-11; 18:1-11. Opinions that would have been the same regardless of what the Government's witnesses said are not proper rebuttal. As such, Mr. Vazirani's affirmative opinions identified above should be excluded from trial.

## CONCLUSION

Defendants respectfully move for an Order in Limine excluding the expert testimony of Ashish Vazirani because it is not relevant, not helpful to the trier of fact, lacks basis in personal knowledge or experience, and is too speculative.[1]

DATED: November 13, 2026

Respectfully submitted:

JONATHAN D. GUYNN
Acting Assistant Attorney General

ALEXANDER K. HAAS
Director

KRISTINA A. WOLFE
Assistant Branch Director

*/s/ Robert C. Bombard*
M. JARED LITTMAN
ELIZABETH B. LAYENDECKER
ROBERT C. BOMBARD
MICHAEL T. CRABB
Trial Attorneys

[1] Pursuant to Local Rule 7(m), counsel for the parties discussed this motion. Plaintiffs oppose.

United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 598-9509
Email: Robert.Bombard2@usdoj.gov

*Counsel for Defendants*