**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NICOLAS TALBOTT, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>Defendants. | Civ. A. No. 25- 240 (ACR) |

**DEFENDANTS' MOTION IN LIMINE NO.8**

**TO EXCLUDE MG (RET.) JAMES YOUNG'S TESTIMONY**

Pursuant to Rules 104, 702, and 703 of the Federal Rules of Evidence, Defendants respectfully move to exclude the expert opinions and testimony of Major General (MG) Retired (Ret.) James Young. According to his report and recent deposition, MG (Ret.) Young intends to offer his opinions on: (1) the effect of the Department of War's February 26, 2025 gender dysphoria policy, entitled, "Additional Guidance on Prioritizing Military Excellence and Readiness" on service members' career progression; (2) the likelihood that separated Service members will receive a Veterans Affairs (VA) disability rating; and (3) Mr. Young opines that the amount of voluntary separation pay available to Service members who separate under the Policy and the statutory recoupment of that pay against later VA disability compensation and military retired pay makes the separation pay benefit "effectively zero". *See* Young Rep. ¶ 4-8.

MG (Ret.) Young's testimony should be excluded based on the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Incl.*, 509 U.S. 579 (1993). As an initial matter, these opinions are not relevant and stray from the limited role of the judiciary in reviewing military

judgments. *Goldman v. Weinberger*, 475 U.S. 503, 509 (1986) (dismissing the views of outside experts on matters of good order and discipline as "quite beside the point."). Furthermore, the opinions contravene the Supreme Court's instruction that lower courts disregard similar outside "expert" testimony. *Id*.

MG (Ret.) Young's first opinion regarding "career progression" is irrelevant and a purely subjective matter that is not a proper subject of MG (Ret.) Young, or anyone else's, "expertise". An individual service members' performance or career trajectory before separation does not change generally applicable Departmental policy and separation processes. No service member is guaranteed continued service, promotion, or advancement, all of which involve highly attenuated laws and processes subject to myriad internal and external factors and circumstances unique to each service member, as well as the needs of the particular service and other considerations that apply regardless of this litigation. MG (Ret.) Young's second opinion that "it's more likely than not" each plaintiff in the military will receive a VA disability rating" is unreliable and non-expert because it's based on one household phone survey of veterans conducted by the Bureau of Labor and Statistics. The decision that a service member receives a VA disability rating rests with the laws governing the VA and its process which includes review of an individual's medical records. MG (Ret.) Young has no medical background and is not involved with any aspect of that process. Regardless of whether his blanket prediction is sound, it has no relevance to any issue in this case.

MG (Ret.) Young's third opinion halfheartedly attempts to connect the 2025 Policy to the VA disability framework and its interrelation with statutory separation pay recoupment. This opinion is misleading at best and irrelevant in any event. The Department applies the same statutory framework to service members separated under the 2025 Policy that it applies to any other recipients of voluntary separation pay. *See* 10 U.S.C. § 1174.

For these reasons, Defendants respectfully request that the Court exclude MG (Ret.) Young's expert testimony.

## BACKGROUND

MG (Ret.) Young was retained to prepare an expert report to describe "among other issues, military separation pay, Department of Veterans Affairs (VA) Disability pay, the VA disability adjudication process, and how these programs interact and impact each other." Young Report at ¶ 1. MG (Ret.) Young is a retired Army officer who reached the rank of Major General. As a Major General, Young was selected as the Chief of Staff of the Army Reserve where he was responsible for human capital policy and programs among other responsibilities. Young Report at ¶ 12. His military career spanned over three decades and he served both as active-duty and as a reservist, which appears to form the basis for his purported expertise in military career progression, separation and retirement, and VA disability pay and retirement pay. *Id*. at ¶ 12.

Beyond these general experiences that would apply to any officer of similar rank and experience, MG (Ret.) Young served on one Army Reserve promotion board in 2017 and one Army Reserve command selection board in 2007. Dep. Tr. at 37:18-38:20. MG (Ret.) Young retired from the Army Reserves in 2019 and currently works as the Managing Partner of Military Expert Witness Group where he provides expert testimony on cases involving military career progression, military separation and retirement, VA Disability pay and retirement pay. Young Report at ¶ 14. At his deposition, MG (Ret.) Young admitted that he has never worked at the Department of Veterans Affairs; has never adjudicated or approved a VA disability rating; never served as a VA pension or compensation examiner; and has never served on a medical evaluation board or physical evaluation board. Dep. Tr. at 51:7-52:9. MG (Ret.) Young did not disclose opinions beyond those enumerated in his expert report and intends to offer only the three opinions listed in his report in this case. *See* Tr. 65:23-25.

## STANDARD OF REVIEW

In determining the reliability and admissibility of expert testimony, "a district court exercises a special gatekeeping obligation." *EEOC v. Freeman*, 778 F.3d 463, 466 (4th Cir. 2015) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). "The scope of the court's gatekeeping inquiry will depend upon the particular expert testimony and facts of the case." *Id.*

(citing *Kumho Tire*, 526 U.S. at 150). The rigorous gatekeeping function assigned to trial judges includes review not only of testimony based on "scientific" knowledge, but also of testimony based on "technical" and "other specialized" knowledge. *Kumho Tire*, 526 U.S. at 147.

Rule 702 provides that a qualified expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. In *Daubert*, the Supreme Court set forth a framework to assess the admissibility of expert testimony. 509 U.S. at 589–595. Pursuant to that framework, trial courts apply a "two-prong analysis that centers on evidentiary reliability and relevancy: the district court must determine first whether the expert's testimony is based on 'scientific knowledge;' and second, whether the testimony 'will assist the trier of fact to understand or determine a fact in issue.'" *Ambrosini v. Labarraque*, 101 F.3d 129, 133 (D.C. Circ. 1996) (quoting *Daubert*, 509 U.S. at 592). Under the first prong, courts assess the reliability of the testimony offered by evaluating the "methodology or reasoning employed" by the expert. *Id.* (quoting *Daubert*, 509 U.S. at 590). Under the second prong, courts "must determine whether the proffered expert testimony 'is sufficiently tied to the facts of the case that it will aid the [trier of fact] in resolving a factual dispute.'" *Id.* (quoting *Daubert*, 509 U.S. at 591).

The party proposing to introduce an expert's testimony bears the burden of establishing the pertinent admissibility requirements by a preponderance of the evidence. Fed. R. Evid. 702, advisory committee note (citing *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987)); *Daubert*, 509 U.S. at 593 n.10; *Zenith Elec. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005). The decision to admit or exclude an expert rests within the trial court's discretion. *Kumho Tire*, 526 U.S. at 152; *MicroStrategy, Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1355 (Fed. Cir. 2006).

## ARGUMENT

### I. Opinion 1 on Plaintiffs' Career Progression are Not Relevant, Legally Irrelevant, and Unhelpful to the Court.

Judicial review of military decisions is highly deferential, *Goldman*, 475 U.S. at 507–08, and "the tests and limitations to be applied may differ because of the military context," *Rostker v. Goldberg*, 453 U.S. 57 at 67 (1981). The Supreme Court has cautioned that courts "must give great deference to the professional judgment of military authorities concerning the relative importance of a particular military interest[,]" *Goldman*, 475 U.S. at 507, and "must be particularly careful not to substitute … [their] own evaluation of evidence for a reasonable evaluation by" the military, *Rostker*, 453 U.S. at 68. When applying this deferential standard of review, the Supreme Court has been particularly dismissive of "expert testimony" seeking to undermine military judgments. For example, in *Goldman*, it dismissed plaintiff's "expert testimony" as "quite beside the point," 475 U.S. at 509, and *Rostker* rebuked the district court for "palpably exceed[ing] its authority" in "relying on [such] testimony," 453 U.S. at 81. More recently, in *Trump v. Hawaii*, 585 U.S. 667 (2018), the Supreme Court once again cautioned that courts "cannot substitute [their] own assessment for the Executive's predictive judgments on such matters" and that "the Executive's evaluation of the underlying facts is entitled to appropriate weight, particularly in the context of litigation involving 'sensitive and weighty interests of national security[,]'" *id.* at 708.

MG (Ret.) Young intends to offer testimony that the 2025 Policy "curtailed successful military careers that were otherwise progressing." Although MG (Ret.) Young is a retired Army officer, Supreme Court precedent makes no exception for such experts. Expert testimony of former military officials is "quite beside the point." 475 U.S. at 509 (dismissing "expert testimony" proffered by the plaintiff from a former military official "that religious exceptions" to uniform standards "will increase morale"). In *Goldman*, an Air Force colonel challenged on First Amendment grounds an Air Force regulation banning the wearing of a yarmulke while in uniform. *Id*. at 509. The plaintiff provided expert testimony from former military officials which contradicted the Air Force's rationale for the prohibition and claimed that the Air Force's interest

in good order and discipline and uniformity were exaggerated. *Id.* at 504. The Supreme Court rejected this evidence, finding expert testimony to have no relevance in the context of a constitutional challenge to military policy. *Id.*

Similarly, in litigation challenging the Mattis Policy, *Doe 2 v. Shanahan*, 917 F.3d 694 (D.C. Circ. 2019), Judge Williams and Judge Wilkins agreed that the Supreme Court's precedents foreclosed the use or consideration of expert testimony that those plaintiffs had sought to introduce. Judge Wilkins recognized that "the [Supreme] Court noted that it was improper for lower courts to consider plaintiff expert testimony that contradicted the military experts about whether the policies at issue were justified under the circumstances." *Id.* at 706 (Wilkins, J., concurring) (citing *Rostker*, 453 U.S. at 80–81; *Goldman*, 475 U.S. at 509–10). And Judge Williams noted that "it does not appear that the Supreme Court considered *any* evidence uncovered by those trial courts' explorations [in *Rostker* and *Goldman*] to be necessary—or even pertinent—to its disposition of the cases." *Id.* at 736-37 (Williams, J., concurring in result).

Speculative testimony concerning Plaintiffs' career progression contravenes these precedents and is irrelevant and unhelpful to the Court. MG (Ret.) Young's personal opinion that the Plaintiffs' careers were 'progressing' is "quite beside the point." *Goldman*, 475 U.S. at 509. Such testimony is not relevant to the review of military judgments behind the challenged 2025 Policy. Whether their careers were progressing or not is besides the point. The judgments of current military officials, rather than those of retired service members, are authoritative because "the military authorities have been charged by the" coordinate branches "with carrying out our Nation's military policy." *Goldman*, 475 U.S. at 507–08.

MG (Ret.) Young's opinion is not helpful to the trier of fact. Like other disqualifying medical conditions, it is true that service members with a diagnosis, history of, or symptoms consistent with gender dysphoria are subject to separation from the military. Whether a retired officer considered a particular plaintiff's military career successful or not is not relevant to the case. As such, this testimony should be excluded. In any event, Defendants acknowledge as a factual matter that absent a waiver, some service members who fall within the policy do in fact

have their careers curtailed. No expert testimony is necessary for the Court to note that as a factual matter. Even if an opinion on plaintiffs' career progression was relevant, MG (Ret.) Young has no basis to provide expert testimony on the matter: he admitted that he did not review *any* plaintiffs' evaluation reports, fitness reports, official military personnel files, enlistment contracts, service obligation documents, or VA claim files. Dep. Tr. at 77:24-79:15. He also acknowledged he did not review any promotion board results and data for 2026 and admits that his methodology and framework does not "lend itself to a mathematical testing". Dep. Tr. at 80:23-81:4.

## II. Opinion 2 Regarding VA Disability Benefits Is Not Relevant or Helpful to the Trier of Fact.

MG (Ret.) Young intends to testify that "it is more likely than not that each plaintiff with military service will receive a VA disability rating at the conclusion of their service." Young Report at 46. This "expert" opinion is based on one household phone survey conducted by the U.S. Bureau of Labor Statistics looking at post-9/11 era veterans. This opinion is not based upon MG (Ret.) Young's review of VA records regarding disability rates and he is applying the survey results without having analyzed the service and medical records of the named plaintiffs, some of whom have served only for a short period of time, never deployed, or are serving in the Reserves or Guard; all factors Mr. Young acknowledged could bear on likelihood of a service-connected disability rating. S*ee generally*, Tr. at 113-118. ("Well, I didn't, again, look at any medical records for anyone"; Dep. Tr. at 116:9-10; "Q: With the Bureau of Labor Statistics, though, you're, you're essentially just applying a, a just general population survey set to an individual basis without having reviewed the medical records, correct? Ms. PANCHOK-BERRY: Objection. A: I think you're asking sort of a compound question. I did not look in the medical records, which I've said before.") Dep. Tr. at 113:25-114:7.

Without having reviewed any of Plaintiffs' medical records, MG (Ret.) Young blanketly applies this 60,000-person phone survey to opine that most Plaintiffs will be entitled to VA disability pay upon separation for a condition other than gender dysphoria which he admits is not a ratable condition under the Veterans Affairs Schedule for Rating Disabilities (VASRD). Dep. Tr.

at 90:3-92:14. Regardless of whether this prediction is sound, it has no relevance to any issue in this case. And as MG (Ret.) Young admitted even though gender dysphoria is not in the VASRD, if a service member with gender dysphoria has other conditions that are listed in the VASRD, that service member may be referred to the Disability Evaluation System (DES) for those conditions. Tr. at 92:14.

## III. Opinion 3 Regarding Separation Pay Is Not Relevant or Helpful to the Trier of Fact and Mr. Young Admits That the Hegseth Policy Has No Bearing On This Statutory Matter.

MG (Ret.) Young's third opinion concerns the amount of voluntary separation pay available to service members who separate under the 2025 Policy and the statutory recoupment of that pay. This opinion should be excluded on relevance grounds as the recoupment requirement is a matter of law and is not unique to service members separated under the 2025 Policy. It is a generally applicable statutory rule governing members who receive voluntary separation pay and later qualify via separate processes for the specified benefits. 10 U.S.C. § 1175a(h). Put simply, the statutory recoupment obligation does not depend on a service member's diagnosis of gender dysphoria, history of gender dysphoria, or symptoms consistent with gender dysphoria, or on the 2025 Policy under with the service member is separated. Any reduction in later VA disability compensation or retired pay attributable to the recoupment is the result of the statutory coordination of benefits, not a disability-specific penalty or special rule created for service members separated under the 2025 Policy. *Id.* Because the Department of War applies the same statutory framework to Plaintiffs that it applies to any other recipient of voluntary separation pay, this opinion has no relevance.

A service member's eligibility for VA disability compensation or military retired pay have nothing to do with the challenged policy and are separate matters governed by statute. *See* 38 C.F.R. pt. 4, subpt. B (2024). Whether separation pay is later recouped, also has nothing to do with the challenged 2025 Policy, because that process is governed by a generally applicable statute that again has zero nexus to gender dysphoria or the 2025 Policy and would apply to any service

member. *Id*. In other words, any reduction in later VA disability compensation or retired pay attributable to recoupment is the result of the statutory coordination of benefits, not a disability-specific penalty or a special rule created for service members separated under the 2025 Policy.

MG (Ret.) Young admits that this subject matter is unrelated to Plaintiffs challenge to the 2025 Policy. Dep. Tr. at 97:10-14. He admits that Congress, not the Department enacted the recoupment requirement referenced in this opinion. Dep. Tr. at 119:8-12. He admits that he could not identify any respect in which recoupment applied differently to the Plaintiffs than to any other service member who received voluntary separation pay and later drew VA compensation benefits. Dep Tr. at 121:17-121:22. MG (Ret.) Young also admits that the 2025 Policy made no change to either the VA disability benefit process or the separation pay recoupment statute. Dep Tr. 138:16-22. These are entirely distinct matters wholly unrelated to this litigation.

**CONCLUSION**

Defendants respectfully move for an Order in Limine excluding the expert testimony of MG (Ret.) James Young because it is not relevant and not helpful to the trier of fact.

DATED: November 13, 2026

Respectfully submitted:

JONATHAN D. GUYNN
Acting Assistant Attorney General

ALEXANDER K. HAAS
Director

KRISTINA A. WOLFE
Assistant Branch Director

*/s/ Robert C. Bombard*
M. JARED LITTMAN
ELIZABETH B. LAYENDECKER
ROBERT C. BOMBARD
MICHAEL T. CRABB
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch

1100 L Street NW
Washington, DC 20005
Phone: (202) 598-9509
Email: Robert.bombard2@usdoj.gov

*Counsel for Defendants*