# EXHIBIT K

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

NICOLAS TALBOTT, et al., )
individually, and on behalf of )
all similarly situated individuals,)
Plaintiffs, )
vs. ) No. 25-cv-240-ACR
UNITED STATES, et al., )
Defendants. )
____________________________________)

VIDEO DEPOSITION OF CAPTAIN PETER ROBERTS, M.D.

OCTOBER 29, 2026

Reported by: Rosalie A. Kramm, CSR No. 5469, RPR, CRR

recall having?
A. Again, these were not -- these are not meetings. These were just, you know, discussions that were occurring in the medical community. It -- it might be about patients with gender transition. It might be conversation about people with other medical conditions. I -- I can't estimate how many conversations I had over a two-year period.
Q. And just to confirm, only some of these surgeries result in complications, such as urinary incontinence, right?
MR. BOMBARD: Objection. Calls for speculation; outside the scope.
THE WITNESS: Not every surgery results in a complication, but, as I understand it, the complication rate amongst surgeries is high relative to others that others -- more commonly performed surgeries might have a complication rate of less than 1 percent, 1 percent; the likelihood of a complication of any type requiring intervention or treatment with bottom surgery, I would estimate, at higher than that, double digits and as high potentially as 50 percent.
BY MS. NIU:
Q. What is the basis for that understanding?
A. Again, my background as a physician and review

of cases, discussion with colleagues. As I say, it is not my area of expertise.

Q. So, beyond informally discussing with colleagues, have you reviewed any medical data on that higher complication rate?

A. Not to the level I could review it.

Q. When you said not to the level that I could review it, what do you mean by that?

A. Again, back when various policies come out, and with patients in my command with this diagnosis, self-educating, reading journals, talking to medical experts, but I can't quote you a -- you know, a manuscript title that would outline an analysis of complications in that surgery.

Q. Okay. So just to confirm, you can't name a specific study or a paper.

A. I cannot.

MR. BOMBARD: Objection. Form.

BY MS. NIU:

Q. Is there a specific medical expert that you spoke to that you can name?

A. I don't -- I don't recall his name. We've had physicians designated at both Camp Pendleton when I was there as well as a physician at Naval Medical Center San Diego at that time.

Q. Did you review any data or studies, reports in order to form these opinions?

MR. BOMBARD: Objection. Form.

THE WITNESS: Not in preparation for today. I've reviewed many studies, data, reports, policies over my career.

BY MS. NIU:

Q. Did you ask anyone on your staff to run any numbers, such as on deployability or evacuations or waiver data which we discussed in order to form your opinions?

MR. BOMBARD: Objection to form.

THE WITNESS: For the testimony today, I did not.

BY MS. NIU:

Q. Okay. Let's go through your disclosure in a little bit more detail. We had discussed paragraph 1 through 3 earlier. Do those paragraphs accurately reflect your previous assignments and your current responsibilities?

A. Yes.

Q. Do those paragraphs contain any opinions that you expect to give in this case?

A. Let me review. You say 1 through 3 to see if they sound more factual or opinion-based.

REPORTER'S CERTIFICATE

I, Rosalie A. Kramm, Certified Shorthand Reporter for the State of California, do hereby certify:

That the witness named in the foregoing deposition was by me duly sworn; that the deposition was then taken before me at the time and place herein set forth; that the testimony and proceedings were reported stenographically by me and were transcribed through computerized transcription by me; that the foregoing is a true record of the testimony and proceedings taken at that time; and that I am not interested in the event of the action.

Witness my hand dated November 1, 2026.



ROSALIE A. KRAMM
CSR 5469, RPR, CRR