# EXHIBIT N

O'Melveny

O'Melveny & Myers LLP
1301 Avenue of the Americas
Suite 1700
New York, NY 10019-6022

T: +1 212 326 2000
F: +1 212 326 2061
omm.com

File Number:

September 17, 2026

**Janine Panchok-Berry**
D: +1 212 326 2246
jpanchok-berry@omm.com

**VIA EMAIL**

M. Jared Littman
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
(202) 451-7478
Jared.littman2@usdoj.gov

**Re: *Talbott et al. v. United States et al.*, Civil Action No. 25-cv-240-ACR (D.D.C.)**

Jared:

We write regarding the expert disclosures Defendants served on Friday, September 4. After careful review, we have significant concerns about the sufficiency of several of the declarations and disclosures, which are explained in greater detail below. Note that this list is not exhaustive, and Plaintiffs reserve the right to raise other objections, including under the Federal Rules of Civil Procedure; Federal Rules of Evidence 702, 703, or 705; and/or *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and related authority. We would like to meet and confer on these issues before raising them with the Court. Please let us know your availability to discuss next week.

Separately, as you know, we provided dates when Plaintiffs' expert witnesses can be available for deposition in the September 4 email transmittal with their reports. Please advise promptly what date you would prefer for the depositions, if you intend to depose Plaintiffs' experts. In the same communication, we asked for dates when Defendants' expert witnesses would be available for deposition. We have not yet received a response. Given the number of disclosures and the short time in which to take depositions, please send some dates no later than this Friday, September 18 (two weeks from the date we first requested dates). We would like to work cooperatively on setting deposition dates to the extent possible.

## 1. The Expert Disclosures Lack the Specificity FRCP 26(a)(2)(C) Requires

Federal Rule of Civil Procedure 26(a)(2)(C) requires expert disclosures to disclose the specific opinions and facts to which the expert may testify. *See Owens-Hart v. Howard Univ.*, 317 F.R.D. 1 (D.D.C. 2016) (analyzing sufficiency of disclosures). Many of Defendants' disclosures are missing that required material as explained in greater detail below. As a result, Plaintiffs are left

guessing what opinions Defendants' proposed expert witnesses might offer and what the bases for those opinions might be.

Further, many of the disclosures use near-identical, template language rather than disclose individual opinions. For example, the disclosures for VADM Miguez, MG(R) Hussey, and LtGen Bowers each address "the operational and readiness implications of service members with gender dysphoria" and the effects on "deployability, force readiness, and mission accomplishment," and each includes the identical qualifier that the expert is "not being offered as a specialist in the diagnosis or treatment of gender dysphoria." *Compare* Expert Disclosure of Vice Admiral Marc Miguez ¶¶ 5–9, with Expert Disclosure of Major General (Ret.) John F. Hussey ¶¶ 3–7, and Expert Disclosure of Lieutenant General William J. Bowers ¶¶ 5–9. The cookie-cutter nature of this language raises the question of whether these disclosures reflect any individualized opinions based on each expert's distinct experience or are instead pro forma summaries. If these witnesses intend to offer materially the same testimony, the overlap itself is a problem of cumulative and duplicative evidence; if they intend to offer different opinions, the disclosures fail to distinguish them. Either way, the disclosures are insufficient and do not comply with the Federal Rules.

Illustrative examples of the deficiencies that pervade Defendants' disclosures are below. These are examples only. Plaintiffs reserve the right to identify further examples of failure to disclose specific opinions and facts to which the expert may testify.

- **CAPT Peter Roberts'** disclosure similarly fails to identify any specific opinions, facts, or data about which he will testify. Expert Disclosure of Captain Peter Roberts ¶¶ 4–8. His disclosure states CAPT Roberts is expected to offer opinions concerning the medical-readiness and operational aspects of the "Department of War's current policy, including the manner in which the policy addresses medical conditions that may require continuing treatment, specialty care, monitoring, duty limitations, or other accommodations that cannot reliably be provided in all operational environments," and to "testify that, from an operational-medicine and force-readiness perspective, consideration of such factors is consistent with the military's broader approach to determining whether medical and behavioral health conditions are compatible with unrestricted worldwide deployment and the performance of military duties under austere conditions." The declaration further states that "his opinions will concern the operational and readiness implications of medical or behavioral health conditions, including gender dysphoria when applicable, that require continuing care or otherwise create limitations relevant to deployment, force health protection, patient safety, unit readiness, or mission accomplishment." The disclosure does not identify what the witness' opinions are within those broad categories of disclosure. Nor does it explain what CAPT Roberts has personally observed, concluded, or would testify to beyond the generic subject areas covered by the disclosure.
- **LTC Salter's** disclosure identifies precisely zero opinions she intends to offer. Instead, the disclosure states that she is "expected to testify about convalescence requirements for certain aspects of transgender medical care; comorbidities associated with gender dysphoria, and the complication rate for Urologic surgeries associated with gender dysphoric medical care" and about "complications in her own surgeries," any details of which are undisclosed. The disclosure goes on to say LTC Salter "will explain that the practice of sexual medicine is broader than a general understanding of sexual organs and

crosses into sexual behavior and mental health" and that "[s]he will testify that surgeries for service members with gender dysphoria can have high post operation complication rates. She will also testify about the highly specialized nature of physicians qualified to provide the surgical and corrective care required for members of the gender dysphoric community. She will explain why this patient population is complicated and requires specific and varied care from a variety of specialists." Those are topics, not opinions.

The disclosure also states that "[s]pecifically, she will testify regarding the data that the psychiatric comorbidities of gender dysphoria can be profound (see attached)." Setting aside the fact that that sentence appears to be missing a word, the "data" to which it refers are unspecified, aside from a single article attached to her declaration. We understand that article is the only "data" about which she will testify if Defendants decide, or are permitted, to offer her as a witness. Plaintiffs will move to preclude her from testifying about any other "data" at trial if she testifies at all.

- **General Carden's** disclosure spans nearly every dimension of the case: medical standards, readiness, deployability, disqualifying conditions, resource demands, accommodations, evolving combat operations, and "whether the condition of gender dysphoria is compatible with military service." But it does not identify any actual opinions he will testify about. The disclosure states "General Carden is expected to testify generally about implementing the military's medical standards for accessions and retention, and the challenges military units face with soldiers and airmen who do not meet federal standards or need significant medical or administrative support to continue serving. General Carden can testify to the decisions military commanders make when they devote medical and administrative resources to troops who are unable to meet military readiness standards and the effect on military units when certain personnel are unable to meet readiness standards. He can also discuss the importance of military readiness standards generally when maintaining a deployable military unit or a pool of deployable military personnel. General Carden will testify about a range of disqualifying conditions for accessions and retention. General Carden will also testify about his experience with military personnel with gender dysphoria who need special treatment and accommodation to continue serving and the effect this has on military readiness and deployability. Further, General Carden is expected to testify about the shifting character of combat operations and the evolution of the adversary." None of those are opinions; just broad topics. The disclosure further states that General Carden "is expected to offer opinions rebutting the testimony of Plaintiffs' witnesses and experts, particularly whether the condition of gender dysphoria is compatible with military service." But the disclosure does not state what his opinion is with regard to whether gender dysphoria is compatible with military service or what the basis might be for that opinion.

- **LTG DeGoes'** disclosure claims in the preface to contain a "summary of the facts and opinions about which he is expected to testify," but the word "opinion" appears nowhere else in the disclosure. Instead of identifying opinions as required by FRCP 26(a)(2)(C), the disclosure identifies broad subjects about which the witness might testify, including "generally about the medical readiness and deployability of Air and Space Force personnel, and why readiness is essential to the military mission," the "current deployability rate of Airmen," the "physical and mental fitness standards required for military service," and "the importance of a fit and capable force in the scope of Air Force deployments." Expert

Disclosure of Lieutenant General John J. DeGoes ¶¶ 3–5. Not only does the report fail to identify specific opinions, but it also does not disclose the facts, data, or analysis on which he will rely as required.

**2. Retained Experts**

It appears from the expert declarations served by Dr. Hopewell, Major General Hussey, and Dr. Hernando Ortega that these three declarants are experts who have been retained for this litigation. Accordingly, Defendants were required to serve, no later than September 4, the disclosures required under Rule 26(a)(2)(B). *See Heller v. D.C.*, 801 F.3d 264 (D.C. Cir. 2015). Plaintiffs reserve their rights to move to strike the Rule 26(a)(2)(C) identifications served on behalf of those three individuals and preclude them from testifying, unless Defendants voluntarily withdraw those identifications.

**3. Witnesses with Only Post-Order Knowledge**

Several of the disclosed witnesses appear to have personal knowledge only of events occurring after the relevant order was issued—that is, knowledge pertaining to the implementation of the Hegseth Policy, which Defendants have previously claimed is irrelevant. *See* August 31, 2026 Correspondence from M. Jared Littman to Plaintiffs' counsel. For instance, based on the disclosure, VADM Miguez appears to have begun working on the matters at issue only in approximately July 2026, which means his personal knowledge is limited to implementation of the orders at issue rather than their development. Several other witnesses fall into the same category in that their relevant experience covers periods after the orders at issue here. Given Defendant's previously articulated position, please explain the relevance of these witnesses' anticipated testimony:

- VADM Miguez, who assumed command of the U.S. 3rd Fleet on July 21, 2026;
- LTG Lombardo, who assumed the position of Deputy Chief of Staff, G-1, in July 2026 after serving as Commanding General of the 2nd Infantry Division through June 2026;
- LtGen Bowers, who assumed the position of Deputy Commandant for Manpower and Reserve Affairs in August 2025; and
- COL Black, who is identified as currently serving as the Military Deputy of the Office of the Assistant Secretary of War for Manpower and Reserve Affairs, an administrative role for which the disclosure provides no assumption date.

If Defendants intend to maintain VADM Miguez, LTG Lombardo, LtGen Bowers, and COL Black as expert witnesses, Plaintiffs request discovery on implementation of the Hegseth Policy and seek documents related to these witnesses' personal knowledge of the issues here, including implementation of the orders and policies. As you know, Defendants previously refused to produce such material on the basis that it was not relevant. If Defendants' witnesses are going to testify to the implementation of the policy, Plaintiffs are entitled to discovery on the subject.

O'Melveny

### 4. Rebuttal Experts

Defendants' disclosures of General Thomas Carden Jr. and Colonel Kevin Cron state that Defendants intend to use these experts to rebut testimony offered by Plaintiffs' witnesses. Please identify which witnesses Defendants are referring to, with specificity, for each proposed expert witness. It is not clear who Defendants' witnesses will be rebutting.

We look forward to hearing from you promptly regarding your availability to discuss these matters.

Best regards,

Janine Panchok-Berry
O'Melveny & Myers LLP