**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NICOLAS TALBOTT, *et al.*,<br>Plaintiffs,<br>v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br>Defendants. | Civ. A. No. 25- 240 (ACR) |

**DEFENDANTS' MOTION IN LIMINE NO. 9**

**MOTION TO EXCLUDE PAISLEY CURRAH'S TESTIMONY**

Pursuant to Rules 104, 702, and 703 of the Federal Rules of Evidence, Defendants respectfully move to exclude the expert opinions and testimony of Professor Paisley Currah. At Defendants' request, the Court has excluded most of the opinions in Professor Currah's Report. Defendants now move to exclude the remaining opinions: Opinion 2 and Opinion 5.

Professor Currah's testimony should be excluded based on the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Incl.*, 509 U.S. 579 (1993). As an initial matter, these opinions are not relevant and stray from the limited role of the judiciary in reviewing military judgments, and also contravene the Supreme Court's instruction that lower courts disregard similar outside "expert" testimony. *Goldman v. Weinberger*, 475 U.S. 503, 509 (1986) (dismissing the views of outside experts on matters of good order and discipline as "quite beside the point"). Opinions 2 and 5 should also be excluded because they are not relevant, unhelpful to the Court's resolution of issues in this matter, and not based on Professor Currah's professional expertise.

For these reasons, Defendants respectfully request that the Court exclude Professor Currah's testimony.

**BACKGROUND**

On September 25, 2026, Plaintiffs served the Rebuttal Expert Report of Professor Paisley Currah, Ph.D. ("Report" or "Rep."). Professor Currah has been a Political Science professor for approximately 32 years. As relevant here, Professor Currah has spent "more than 25 years" researching and writing about sex classifications in government policies at federal, state, and local levels. ¶ 5. In particular, Professor Currah's research and publications have concerned "how agencies decide what a person's legal sex is, and how and why those rules have differed across agencies and over time[.]" *Id.*

Defendants seek to exclude Opinion 2, which states "no uniform Definition of 'sex' has governed across American institutions[,]" Rep. at 7; and Opinion 5, which states 'the Executive Orders' definition of sex has no antecedent in federal administrative practice[,]" Rep. at 11. Defendants previously requested to exclude these opinions on the grounds that they were not responsive to Defendants' hybrid witness disclosures. On November 4, 2026, the Court partially granted Defendants' request, excluding all but Opinions 2 and 5. *See* Minute Order, Nov. 4, 2026.

**STANDARD OF REVIEW**

In determining the reliability and admissibility of expert testimony, "a district court exercises a special gatekeeping obligation." *EEOC v. Freeman*, 778 F.3d 463, 466 (4th Cir. 2015) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999))). "The scope of the court's gatekeeping inquiry will depend upon the particular expert testimony and facts of the case." *Id.* (citing *Kumho Tire*, 526 U.S. at 150). The rigorous gatekeeping function assigned to trial judges includes review not only of testimony based on "scientific" knowledge, but also of testimony based on "technical" and "other specialized" knowledge. *Kumho Tire*, 526 U.S. at 147.

Federal Rule of Evidence 702 provides that a qualified expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier

of fact to understand the evidence or determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. In *Daubert*, the Supreme Court set forth a framework to assess the admissibility of expert testimony. 509 U.S. at 589–595. Pursuant to that framework, trial courts apply a "two-prong analysis that centers on evidentiary reliability and relevancy: the district court must determine first whether the expert's testimony is based on 'scientific knowledge;' and second, whether the testimony 'will assist the trier of fact to understand or determine a fact in issue.'" *Ambrosini v. Labarraque*, 101 F.3d 129, 133 (D.C. Cir. 1996) (quoting *Daubert*, 509 U.S. at 592). Under the first prong, courts assess the reliability of the testimony offered by evaluating the "methodology or reasoning employed" by the expert. *Id.* (quoting *Daubert*, 509 U.S. at 590). Under the second prong, courts "must determine whether the proffered expert testimony 'is sufficiently tied to the facts of the case that it will aid the [trier of fact] in resolving a factual dispute.'" *Id.* (quoting *Daubert*, 509 U.S. at 591).

The party proposing to introduce an expert's testimony bears the burden of establishing the pertinent admissibility requirements by a preponderance of the evidence. Fed. R. Evid. 702, advisory committee note (citing *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987)); *Daubert*, 509 U.S. at 593 n.10; *Zenith Elec. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005). The decision to admit or exclude an expert rests within the trial court's discretion. *Kumho Tire*, 526 U.S. at 152; *MicroStrategy, Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1355 (Fed. Cir. 2006).

## ARGUMENT

### I. Professor Currah's Opinions on Matters of Department Policy are not Relevant and are Unhelpful to the Court.

This case asks whether the challenged 2025 Policy satisfies the Constitution. The question concerns the current administration's justifications and the relationship between the current policy and those justifications. Judicial review of military decisions is highly deferential, *Goldman*, 475

U.S. at 507–08, and "the tests and limitations to be applied may differ because of the military context," *Rostker v. Goldberg*, 453 U.S. 57, 67 (1981). The Supreme Court has cautioned that courts "must give great deference to the professional judgment of military authorities concerning the relative importance of a particular military interest[,]" *Goldman*, 475 U.S. at 507, and "must be particularly careful not to substitute … [their] own evaluation of evidence for a reasonable evaluation by" the military, *Rostker*, 453 U.S. at 68. When applying this deferential standard of review, the Supreme Court has been particularly dismissive of "expert testimony" seeking to undermine military judgments. For example, in *Goldman*, it dismissed plaintiff's "expert testimony" as "quite beside the point," 475 U.S. at 509, and *Rostker* rebuked the district court for "palpably exceed[ing] its authority" in "relying on [such] testimony," 453 U.S. at 81. More recently, in *Trump v. Hawaii*, 585 U.S. 667 (2018), the Supreme Court once again cautioned that courts "cannot substitute [their] own assessment for the Executive's predictive judgments on such matters" and that "the Executive's evaluation of the underlying facts is entitled to appropriate weight, particularly in the context of litigation involving 'sensitive and weighty interests of national security[,]'" *id.* at 708.

In litigation challenging the Mattis Policy, *Doe 2 v. Shanahan*, 917 F.3d 694 (D.C. Cir. 2019), Judge Williams and Judge Wilkins agreed that the Supreme Court's precedents foreclosed the use or consideration of expert testimony that those plaintiffs had sought to introduce. Judge Wilkins recognized that "the [Supreme] Court noted that it was improper for lower courts to consider plaintiff expert testimony that contradicted the military experts about whether the policies at issue were justified under the circumstances." *Id.* at 706 (Wilkins, J., concurring) (citing *Rostker*, 453 U.S. at 80–81; *Goldman*, 475 U.S. at 509–10). And Judge Williams noted that "it does not appear that the Supreme Court considered *any* evidence uncovered by those trial courts' explorations [in *Rostker* and *Goldman*] to be necessary—or even pertinent—to its disposition of the cases." *Id.* at 736-37 (Williams, J., concurring in result).

Admitting Professor Currah's expert testimony contravenes these precedents. Accordingly, it should be excluded.

## II. Opinion 2 Should be Excluded Because it is Irrelevant and not Based on Professor Currah's Expertise.

Opinion 2 provides that "no uniform definition of 'sex' has governed across American institutions." Rep. at 7. This opinion putatively responds to Dr. Hopewell's definition of sex in his September 4, 2026 disclosure, and Lieutenant Colonel Salter's "clinical taxonomy of 'male sexual and reproductive medicine' and transgender medical care'"). *Id.* Within that opinion, Professor Currah observes that different government entities at federal, state, and local levels have adopted different sex classification policies at different times, ¶¶ 21–22, points out that Defendants' expert disclosures appear to refer to different definitions of sex, ¶ 23, and discusses the fact that diagnostic categories for conditions like gender dysphoria have changed because "the classifying institutions concluded that the earlier categories no longer served their diagnostic and clinical objectives. *Id.* ¶ 24. Both this opinion, and the opinions given in support, should be excluded for multiple reasons.

*First*, Professor Currah's opinion that there has been heterogeneity in government sex classifications is not relevant to the issues in this case. The fact that "a single transgender individual may hold different, even contradictory, legal sex classifications across documents and institutions" will not aid the Court in resolving any of the issues before it. Rep. ¶ 21. The military has historically used the Defense Enrollment and Eligibility Reporting System (DEERS) marker, which provides a single, uniform sex designation across all servicemembers and the Department of War. Whether other government institutions, including state and local governments, adopt different sex classifications is not relevant.

*Second*, Professor Currah's opinion that "the rationality of each agency's approach to sex classification depended on its remit, not on what 'sex' is in itself[,]" is a legal conclusion. Rep. ¶ 21. This opinion is based on the legal advice provided with respect to a federal policy and a legal ruling that assessed the rationality of an agency's sex classification policies for various types of government documents. Offering legal conclusions is not a proper purpose of expert testimony,

and it is well established that expert testimony expressing a legal conclusion must be excluded. *Stobie Creek Invs. v. United States*, 608 F.3d 1366, 1383-84 (Fed. Cir. 2010).

*Third*, Professor Currah offers no expert opinion regarding Dr. Ortega's and Lieutenant Colonel Salter's descriptions of sex. *See* Rep. ¶ 23. Professor Currah disclaims, both in the Report and in deposition testimony, that he is not a medical expert. Thus, Professor Currah has no basis from his expertise to conclude that Dr. Ortega and Dr. Salter were using different definitions of sex, or that those definitions are inconsistent with that of the Executive Orders. To the extent that Professor Currah observes that Dr. Ortega's disclosure and Executive Order 14168 use different language to describe sex, such observations do not require any expertise. *DiBella v. Hopkins*, 403 F.3d 102, 121 (2d Cir. 2005) ("Expert testimony must be helpful to the [trier of fact] in comprehending and deciding issues beyond the understanding of a layperson.").

Similarly, Professor Currah disclaimed any expertise in psychology. Thus, his observations regarding the evolution of the diagnosis of conditions like gender dysphoria should be excluded. *See* ¶ 24. His conclusion, that "[t]hose revisions [to diagnostic categories] were made because the classifying institutions concluded that the earlier categories no longer served their diagnostic cand clinical objectives" is not based on his expertise. *See id.* Further, the point that those diagnostic categories have changed over time is generally irrelevant, and therefore unhelpful to the resolution of any issues in this case.

## III. Opinion 5 Should be Excluded as it is Irrelevant and Not Based on Professor Currah's Expertise.

Opinion 5 states that "the executive orders' definition of sex has no antecedent in federal administrative practice." This opinion putatively responds to Dr. Hopewell's testimony on the nature of sex, Lt. General DeGoes' testimony on the importance of military discretion to set and implement fitness standards, and Dr. Ortega's testimony regarding consistent and standardized adjudication under current department policy. This opinion should be excluded for many of the same reasons as discussed above regarding Opinion 2.

*First*, the overall question of whether there is an antecedent federal policy defining sex biologically or whether other institutions have used similar definitions are not at issue in this case. ¶ 31, 33. *Second*, as explained above, Professor Currah disclaimed medical expertise, and therefore is not qualified to opinion on the biological nature of sex, including whether it is "binary immutable." *See* ¶ 32.

*Third*, Professor Currah is not qualified to opine on whether the Executive Orders' definition of sex supports the military's needs and programs. See ¶ 31. Professor Currah testified that he did not have expertise reviewing agency considerations in formulating sex classification policies. *See* 11/12 Currah Deposition Tr. 52:17–53:11 ("I can't talk about the agency processes."). Rather, the focus of his research is on the policies themselves and the impact of sex classifications. When asked how the Carter and Austin Policies' sex classification rules were tailored to serve the Department of War's operational needs, he stated that those policies permitted transgender individuals to serve in the military. Tr. 60:8–17. However, Professor Currah also testified that he was not an expert in military affairs, and therefore is not qualified to opine on whether permitting transgender individuals to serve in the military supports its missions and programs. Tr. 60:2, 60:12–13.

*Fourth*, Professor Currah's opinions on the "displacement" of military fitness standards and waiver processes are outside of his areas of expertise and do not reflect a reliable application of an expert methodology. *See* ¶ 34. Professor Currah responded to Lieutenant General DeGoes' testimony regarding the importance of the military setting its own fitness standards. *See* ¶ 34. However, Professor Currah has no expertise in military affairs, including military fitness standards. Professor Currah also opined that the Executive Orders "displaced" Department of War standards, as evidenced by Dr. Ortega's "waiver adjudication apply[ing] medical criteria whose content is fixed by the Executive Order's definition of sex[,]" But in doing so, Professor Currah referred to Dr. Ortega's discussion of a waiver process that is not impacted by the policy whatsoever. *See* Tr. 78:4–23. Accordingly, there is no basis to conclude that the waiver process discussed by Dr. Ortega was "displaced" at all by the policy. And even setting that aside, Professor Currah disclaimed that

waiver adjudication was not within his area of expertise, Tr. 74:18–21, and that he did not remember "how the waiver worked under the Hegseth policy." Tr. 77:10–15.

## CONCLUSION

Defendants respectfully move for an Order in Limine excluding the expert testimony of Professor Paisley Currah because it is not relevant and not based on Professor Currah's expertise.[1]

DATED: November 13, 2026

Respectfully submitted:

JONATHAN D. GUYNN
Acting Assistant Attorney General

ALEXANDER K. HAAS
Director

KRISTINA A. WOLFE
Assistant Branch Director

*<u>/s/ Elizabeth B. Layendecker</u>*
ELIZABETH B. LAYENDECKER
M. JARED LITTMAN
ROBERT C. BOMBARD
MICHAEL T. CRABB
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: 202 616-8046
Email: Elizabeth.b.layendecker@usdoj.gov

*Counsel for Defendants*

[1] Pursuant to Local Rule 7(m), counsel for the parties discussed this motion. Plaintiffs oppose.