# EXHIBIT E

**From:** Littman, Jared (CIV)
**To:** Panchok-Berry, Janine
**Cc:** Bombard, Robert (CIV); Layendecker, Elizabeth B (CIV); Wolfe, Kristina (CIV); Weinstein, Lauren M.; Bradshaw, Ben; Campbell, Eamonn W.; Kannan, Shruti; Williamson, Brett J.; cstoll@nclrights.org; ibernstein@zalkindlaw.com; jlevi@gladlaw.org; joe@wardenskilaw.com; mhaley@gladlaw.org; rberg@nclrights.org; sminter@nclrights.org; #Talbott
**Subject:** RE: Talbott v. United States - Expert Disclosures
**Date:** Tuesday, September 22, 2026 11:53:27 AM

---

Hi Janine – Thank you for the letter of September 17 regarding your "significant concerns about the sufficiency of several of the declarations and disclosures" that Defendants served on September 4. This response is intended to alleviate those concerns.

1. **The Expert Disclosures Satisfy Rule 26(a)(2)(C).**

At the outset, I think part of the confusion is that Defendants have provided disclosures as required under Rule 26(a)(2)(C); these are not "declarations" from the witnesses, let alone an written report prepared and signed by a retained or specially-employed expert under Rule 26(a)(2)(B). This is an important distinction. Contrary to your representation that Rule 26(a)(2)(C) "requires expert disclosures to disclose the *specific* opinions and facts to which the expert may testify" (at p.1), the Rule is very clear that the disclosure must only state "the subject matter on which the witness is expected to present evidence" and "a *summary* of the facts and opinions to which the witness is expected to testify" (emphasis added). Indeed, the very case that you cite for the proposition the Rule 26(a)(2)(C) requires disclosure of "specific" opinions and facts rejected that argument. *Owens-Hart v. Howard Univ.*, 317 F.R.D. 1, 3-4 (D.D.C. 2016) (holding that Rule 26(a)(2)(C) requires only summaries and rejecting challenge to the sufficiency of disclosures).

In contrast, only retained and specially-employed experts must provide an expert report, which must contain, *inter alia*, "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them." Rule 26(a)(2)(B). Per the Committee Notes on Rules—2010 Amendment, "Rule 26(a)(2)(C) is added to mandate *summary disclosures* of the opinions to be offered by expert witnesses who are not required to provide reports under Rule 26(a)(2)(B) and of the facts supporting those opinions. This disclosure is *considerably less extensive* than the report required by Rule 26(a)(2)(B). Courts must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have." Plaintiffs are improperly conflating the requirements of Rule 26(a)(2)(B) with those of Rule 26(a)(2)(C).

Similarly, Plaintiffs wrongly state that Rule 26(a)(2)(C) disclosures must provide "the bases" for the witness's opinions (at p.2) and further criticize the disclosures for CAPT

Roberts and LTG DeGoes for not containing "data" and "analysis" on which they will rely (pp.2, 4). That is a requirement of a Rule 26(a)(2)(B) expert report (requiring the report to contain "the facts or data considered by the witness in forming [the opinions]), not a Rule 26(a)(2)(C) disclosure. *See also* Rule 26, Committee Notes on Rules—1993 and 2010 Amendments (explaining that an expert report must contain the "facts and data" considered by the expert in forming the opinion and this obligation does not extend to Rule 26(a)(2)(C) disclosures). For this reason, your argument that LTC Salter is limited to the "data" referenced in the disclosure is entirely off-base (at p. 3). Unlike expert reports, Rule 26(a)(2)(C) disclosures are not required to contain any "data" at all. You are again conflating the Rule 26(a)(2)(B) and Rule 26(a)(2)(C) requirements.

Having set the requirements of Rule 26 straight, your alleged "significant concerns" with Defendants' Rule 26(a)(2)(C) disclosures should largely remediate. You first criticize the disclosures for VADM Miguez, MG(R) Hussey, and LtGen Bowers because they provide "overlap[ping]" opinions that fail to "reflect any individualized opinions based on each expert's distinct experience" (at p. 2). First off, you have cherry-picked a few repeated phrases from disclosures but, overall, their disclosures reflect how the witness's in-depth and particularized knowledge and experience in the fields of military operations, readiness, and manpower will enable them to interpret the facts they observed, give opinion testimony, and form conclusions about those facts. Second, Plaintiffs fail to appreciate that the three identified witnesses are from different service branches (VADM Miguez, Navy; MG(R) Hussey, Army Reserves; and LtGen Bowers, Marines), and thus, although there may be some overlap in terms of the broad, general principles, their factual and expert testimony will be based on their different experiences and perspectives of their respective service branch.

Your "examples" of "deficiencies" are also off-base (at pp. 2-3). The disclosures speak for the themselves, but some examples of the "summary of the facts and opinions," Rule 26(a)(2)(C), to which CAPT Roberts, LTC Salter, General Carden, and LTG DeGoes are as follows:

- CAPT Roberts
    - the operational and medical-readiness implications of gender dysphoria and any associated treatment requirements are evaluated in the same manner as other medical or behavioral health conditions that may affect deployability, patient safety, force readiness, or mission accomplishment, particularly within the U.S. Pacific Command area of responsibility;
    - servicemembers throughout the U.S. Pacific Command area of responsibility encounter austere and operationally challenging conditions, including the

geographic dispersion of forces, prolonged transportation times, limited access to specialty medical and behavioral health care, restricted medical infrastructure, and the logistical challenges associated with providing medications, laboratory testing, follow-up care, and medical evacuation across vast distances;
    - the consequences of a servicemember who requires ongoing specialty evaluation, treatment, monitoring, or ready access to specific medications or medical services include the need to modify duties, restrict deployment, divert medical or transportation resources, arrange evacuation or movement to a higher level of care, or require other members of the unit to assume responsibilities that the affected service member is unable to perform; and
    - the Policy addresses medical-readiness and operational concerns, and from an operational-medicine and force-readiness perspective, is consistent with the military's broader approach to determining whether medical and behavioral health conditions are compatible with unrestricted worldwide deployment and the performance of military duties under austere conditions.

- LTC Salter
    - the complication rates for Urologic surgeries (and post-operations) associated with gender dysphoric medical care is high;
    - the psychiatric comorbidities of gender dysphoria are profound;
    - physicians qualified to provide the surgical and corrective care required for members of the gender dysphoric community are highly specialized; and
    - this patient population is complicated and requires specific and varied care from a variety of specialists.

- General Carden
    - military units face with soldiers and airmen who do not meet federal standards or need significant medical or administrative support to continue serving face challenges;
    - maintaining a deployable military unit or a pool of deployable military personnel is important; and
    - character of combat operation is shifting and adversary is evolving.

- LTG DeGoes
    - military readiness is essential to a military mission;
    - in deployed environments there are often limited medical resources and that available resources are prioritized for acute medical needs of the deployed force; that service members face unique stresses in deployed environments;

that mental health, behavioral health, endocrine, and surgical issues present unique challenges in deployed environments; that issues arising from mental or behavioral health conditions may cause service members to be removed from theaters of deployment; and that such evacuations can have significant negative impacts on deployed units;

- it is important that the military be permitted to make fitness determinations for servicemembers; and
- it is critically important to maintain a battle-ready force of Airmen and Guardians where every individual matters, drawing on recent Middle East operations to illustrate how combat readiness directly impacts mission success and operational safety in hostile environments.

These are just a few examples of the "summary of the facts and opinions" that these witnesses are expected to testify about. Rule 26(a)(2)(C). The disclosures easily satisfy Rule 26(a)(2)(C). You are welcome to follow up with the witnesses about these facts and opinions at their depositions.

2. **None of the Witnesses Are Retained Experts.**

Dr. Hopewell, Dr. Ortega, and MG(R) Hussey were not retained to provide expert testimony in this case (at p. 4). Dr. Hopewell is a consulting special government employee with the Department, advising on improving mental health outcomes for service members and suicide prevention. He is currently very active in advising on suicide prevention. In any event, it is anticipated that Dr. Hopewell will be providing a rebuttal expert report pursuant to Rule 26(a)(2)(D)(ii). Dr. Ortega is a GP (General Pay Scale for Physicians)-15 Senior Physician for the Accession Medical Waiver Directorate, Air Force Accessions Center at Joint Base San Antonio-Randolph, Texas. He is a civilian employee of the Air Force. He has not been specially retained to provide expert testimony. Lastly, although Defendants do not concede that MG(R) Hussey was specially retained, Defendants agree to withdraw his disclosure in the spirit of compromise.

3. **All of the Witnesses for Which Disclosures Were Served Have Relevant Knowledge.**

As explained in their disclosures, VADM Miguez, LTG Lombardo, LtGen Bowers, and COL Black are not expected to testify about "implementation" of the Policy (p.4). Given their extensive experience in military leadership, they are expected to testify about the military's operations and readiness mandates and the potentially devastating ramifications of an unfit and unready service member. The fact that they have changed positions since

the Policy was issued is irrelevant. Defendants thus reject your request for implementation discovery (p.4).

4. **Rebuttal Experts.**

Pursuant to the scheduling order, Defendants will serve rebuttal expert reports on or before 9/25/26.

I hope that this adequately addresses all of your concerns. Happy to meet and confer if still necessary.

Best,
Jared

**M. Jared Littman**
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
(202) 451-7478 (cell)
Jared.Littman2@usdoj.gov

---

**From:** Panchok-Berry, Janine <jpanchok-berry@omm.com>
**Sent:** Thursday, September 17, 2026 11:16 PM
**To:** Littman, Jared (CIV) <Jared.Littman2@usdoj.gov>
**Cc:** Bombard, Robert (CIV) <Robert.Bombard2@usdoj.gov>; Layendecker, Elizabeth B (CIV) <Elizabeth.B.Layendecker@usdoj.gov>; Wolfe, Kristina (CIV) <Kristina.Wolfe@usdoj.gov>; Weinstein, Lauren M. <lweinstein@omm.com>; Bradshaw, Ben <bbradshaw@omm.com>; Campbell, Eamonn W. <ecampbell@omm.com>; Kannan, Shruti <skannan@omm.com>; Williamson, Brett J. <bwilliamson@omm.com>; cstoll@nclrights.org; ibernstein@zalkindlaw.com; jlevi@gladlaw.org; joe@wardenskilaw.com; mhaley@gladlaw.org; rberg@nclrights.org; sminter@nclrights.org; #Talbott <Talbott@omm.com>
**Subject:** [EXTERNAL] Talbott v. United States - Expert Disclosures

Hi, Jared.

Please see the attached letter.

Kind regards,
Janine

**O'Melveny**

**Janine Panchok-Berry**
jpanchok-berry@omm.com
O: +1-212-326-2246

O'Melveny & Myers LLP
1301 Avenue of the Americas
New York, NY 10019

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*