**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NICOLAS TALBOTT, et.al.<br><br>*Plaintiffs*,<br>v.<br><br>UNITED STATES, et al.,<br><br>*Defendants*. | Civ. A. No. 25-240 (ACR) |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 3**
**TO EXCLUDE THE DISCLAIMED OPINIONS OF EIGHT EXPERT WITNESSES**

The Court should deny Plaintiffs' Motion *In Limine* No. 3 (ECF No. 181, Pls' Mot.). There appears to be a misunderstanding. Plaintiffs accurately report that the eight identified military officers are not experts in the medical condition or treatment of gender dysphoria. They are not psychiatrists, psychologists, or other mental health professionals who have treated or studied gender dysphoria. But they are experts in medical and military readiness, how the military handles medically unready servicemembers, accessions and retentions standards, and the risks to mission, risks to force, and risks to the individual and teammates when an individual who does not satisfy the rigorous military standards is permitted to serve. Plaintiffs improperly conflate the medical condition and treatment of gender dysphoria—which these officers are not experts in—with the military and medical readiness risks posed by servicemembers with clinically significant distress, reduced deployability, increased absenteeism and limited duty time, elevated suicidality, symptomatology, and comorbidities, and specialized and consistent medical treatment that is not guaranteed in austere deployment environments—which these officers are experts in. These military officials are tasked with making these types of medically-related risk determinations all the time—sometimes with recommendations of military medical personnel and sometimes not. Indeed, many of these experts have first-hand experiences overseeing servicemembers with gender

dysphoria and evaluating accession, retention, and deployability of gender-dysphoric individuals. Plaintiffs' motion disregards the government's witnesses' expertise in assessing medical readiness gained in their long military careers.

To be sure, Plaintiffs' own psychiatric expert, Dr. Brown, has confirmed that gender-dysphoric individuals pose medical risks and their treatment is extensive, variable, and comes with complications. For example, Dr. Brown has published literature and other materials confirming that the connection between suicidality and gender dysphoria is high. *See* Ex. 1, George R. Brown, M.D., *Medical and Mental Health Issues in Gender-Affirming Hormonal Treatments for Transgender and Gender-Diverse Patients*, at 12 ("Lifetime suicide rate is ~9x higher than general US population"); Ex. 2, *Prevalence of Gender Identity Disorder and Suicide Risk Among Transgender Veterans Utilizing Veterans Health Administration Care*, at e27 (rate of suicide-related events among veterans with a gender-identity disorder is more than 20 times higher than for the general Veterans Health Administration population). Dr. Brown also concluded that there are significant mental health disparities of gender-dysphoric individuals. *See* Ex. 3, *Mental Health and Medical Health Disparities in 5135 Transgender Veterans Receiving Healthcare in the Veterans Health Administration: A Case–Control Study*, at 122 (statistically significant disparities in transgender cohort for depression, suicidality, serious mental illnesses, and PTSD). Dr. Brown further confirmed at his deposition that people with gender dysphoria are on a "patient-generated," individualized transition journey, consisting of evolving treatment plans of "highly variable" lengths—sometimes lifelong. Ex. 4, Brown Dep. Tr. at 26–29, 131, 223–25. Moreover, there are documented risks associated with estrogen and testosterone therapy, including venous thromboembolism, gallstone disease, liver dysfunction, and migraines Ex. 1, at 27, 35, and such treatment requires persistent monitoring and maintenance screening, *id.* at 29, 30, 36, 38.

Defendants' eight experts are well-equipped to offer their opinion as to whether gender dysphoria is compatible with military service. They make similar decisions in their expert military judgment on an almost daily basis.

The Court should not limit the eight expert witness' testimony. Their testimony will assist the Court in understanding the risks posed by gender-dysphoric individuals in the military. Defendants have full confidence in the Court to be able to distinguish when military officials are exceeding the scope of their testimony by testifying about the medical condition and treatment of gender dysphoria and when they are testifying about topics in their wheelhouse—medical readiness and military risks implicated by gender-dysphoric individuals.

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' Motion.

DATED: November 20, 2026

Respectfully submitted,

JONATHAN D. GUYNN
Acting Assistant Attorney General

ALEXANDER K. HAAS
Director

KRISTINA A. WOLFE
Assistant Branch Director

*/s/M. Jared Littman*
M. JARED LITTMAN
ELIZABETH B. LAYENDECKER
ROBERT C. BOMBARD
MICHAEL T. CRABB
United States Department of Justice
Civil Division
1101 L Street NW
Washington, DC 20006
Phone: (202) 451-7478
Email: jared.littman2@usdoj.gov

*Counsel for Defendants*