**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NICOLAS TALBOTT *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES *et al.*,<br><br>Defendants. | Civil Action No. 1:25-cv-240-ACR |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* #3 TO PROHIBIT QUESTIONING CIVIL SERVANTS AND MILITARY OFFICIALS ABOUT THEIR PERSONAL VIEWS REGARDING THE POLICY**

Defendants disclosed seventeen Fed. R. Civ. P. 26(a)(2)(C) witnesses to offer their opinions on the Hegseth Policy but now balk at Plaintiffs' decision to rely on those opinions about the Hegseth Policy at trial.[1] There is no basis to exclude their testimony. Defendants do not cite a single case, and their Motion betrays a fundamental misunderstanding of the Federal Rules of Evidence.

Defendants have offered these witnesses to testify about certain aspects of the Hegseth Policy and its purported justifications. Plaintiffs are entitled to question them on their full opinions on the Policy and Executive Order, not simply the parts that Defendants would prefer the witnesses focus on. The testimony Plaintiffs seek to elicit, or play from depositions, at trial is squarely relevant and should be admitted. Defendants' Motion also fails for an independent reason: it gives the Court no basis on which to rule because it lacks any specificity about what testimony should be excluded. Defendants' Motion *in Limine* ("the Motion") should be denied.

[1] Defendants subsequently withdrew three of those disclosures.

## I. The Witnesses' Opinions About the Stated Rationale for the Hegseth Policy and Executive Order 14,183 Are Relevant

Defendants' witnesses are civil servants and military officials who have served under, and implemented, various policies regarding service by transgender individuals. That experience is precisely what Defendants claim qualifies them to offer opinions on the Policy and its stated rationale under Fed. R. Civ. P. 26(a)(2)(C). By designating these witnesses as experts, Defendants represented that each has specialized knowledge that will help the Court. Fed. R. Evid. 702. Plaintiffs may examine each witness on the basis for their opinions and on where those opinions stop. Fed. R. Evid. 705; *see* Fed. R. Evid. 611(b). The Executive Order's and Hegseth Policy's statements about honesty, integrity, and cohesion are the Policy's stated readiness rationale. Whether a witness disclosed as an expert on readiness thinks their experience bears out the President's and Secretary's statements is a question about that witness's expert opinion.

Defendants cannot bar that inquiry by labeling the answers "personal views." An expert who relies primarily on experience "must explain how that experience leads to the conclusion reached." Fed. R. Evid. 702 advisory committee's note to 2000 amendment. And a designated expert "may not withhold, upon inquiry, opinions which he may hold" within his expertise simply because opposing counsel asks the question. *Selvidge v. United States*, 160 F.R.D. 153, 156 (D. Kan. 1995). Defendants chose to put these experts' opinions at issue—they cannot now pick which ones the Court hears.

The Policy rests on the premise that transgender service members lack "honesty, humility, uniformity, and integrity" and harm readiness and cohesion. Exec. Order No. 14,183, 90 Fed. Reg. 8,757 (Jan. 27, 2025) (to be codified at 3 C.F.R. pt. 8757); Sec'y of Def. Mem. "Prioritizing Military Excellence and Readiness" (Feb. 7, 2025). The trial will test whether that

premise is a genuine military judgment or a pretext for animus. Evidence is relevant if it has "any tendency" to make a fact of consequence more or less probable. Fed. R. Evid. 401. Deference to military judgment presupposes a considered professional judgment to defer to, and Defendants have conceded that they have no evidence that service members with gender dysphoria lack honesty, humility, or integrity. *See Talbott v. United States*, 176 F.4th 720, 726, 741 (D.C. Cir. 2026). If the military's own officers and officials do not believe the Policy's stated rationale, or disagree with it, that is evidence that the rationale is not a genuine military judgment.

The officers and civil servants who have observed how this Policy and its predecessors work day-to-day are well-positioned to tell the Court whether it is true that transgender service members—those with gender dysphoria, a history of the condition, or who exhibit the condition's symptoms—must be prohibited from serving for the reasons the President and the Secretary have claimed. They can testify about whether, in their experience, those service members lack honesty, integrity, and humility as the President and Secretary claim. Their testimony bears on whether the stated rationale is a military judgment to which the Court could defer at all. And to the extent any witness voiced those views while the Policy was being developed, that testimony also bears on the Policy's "reasoning" and "development," Mot. at 2, because it shows what the decisionmakers knew.

Defendants simply don't like these opinions. With reason:

- When asked whether transgender soldiers fail to meet the standards for troop readiness, lethality, cohesion, honesty, humility, uniformity and integrity, as listed in the Executive Order, Lieutenant General Lombardo stated: "I think any soldier can meet, you know, at times those" standards. Lombardo Dep. Tr. (Ex. A) 197:17-198:9.

- Lieutenant General DeGoes stated: “[T]here are some statements in [Executive Order 14,183] that aren’t – you know, are not medical facts that – or readiness facts that pertain to a medical military risk-based decision.” DeGoes Dep. Tr. 70:25-71:4. When asked to specify the statements, he continued: “[T]here are several: Honorable, truthful, discipline, lifestyle, even in one’s personal life, is irrespective of one’s gender identity, in my opinion. We have honorable people that are cisgender and – honorable people that are transgender, or gender dysphoric, and dishonorable people in both of those same categories.” DeGoes Dep. Tr. (Ex. B) 71:9-17.

- Captain Roberts testified that “paragraph one, two, three -- four [of Executive Order 14,183] where it talks [about], essentially, people with gender identity issues are not truthful or honorable; the experience I’ve had with patients is that they can be honorable.” Roberts Dep. Tr. (Ex. C) 56:12-15.

That Defendants’ own witnesses do not endorse the Policy’s stated rationale is relevant to showing that the Policy’s statements about transgender service members are what they appear to be on their face: animus, not military judgment. That “is the function of probative evidence, and it surely is not the measure of ‘unfair prejudice’ under Rule 403.” *Henderson v. George Wash. Univ.*, 449 F.3d 127, 134 (D.C. Cir. 2006). The Federal Rules do not contain an exception for evidence a party thinks is harmful to its case.

Defendants urge that “[m]ilitary officers, by their very training and ethos, are disinclined to provide personal opinions generally” and that “career civil servants” had to “implement Department policy pursuant to the directives of the Executive Order and Secretary Hegseth, regardless of whether they personally agreed or disagreed with the policy.” Mot. at 2. That is beside the point. These witnesses are not limited to testifying about their duty to carry out the Policy—Plaintiffs may ask whether their experience supports its justifications. *See Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 731 (1982) (crediting school dean’s testimony that male presence “would not affect the performance of the female nursing students” in rejecting the State’s rationale for gender-segregated schools); *cf. Talbott v. United States*, 775 F. Supp. 3d 283, 310 (D.D.C. 2025) (crediting “former high-ranking officials at DoD” who concluded that

open-service policies "have had either no detrimental effect or have had a positive one" on military preparedness). Relevant here is that the witnesses ***did*** offer their opinions, testifying under oath that their experience does not bear out the justifications for the Policy that Defendants are now invoking in litigation. *See supra* at 3-4. These witnesses set aside their "training and ethos" and testified under oath about their disagreements with the Policy. That is a reason to admit the testimony, not exclude it.

Defendants also ask this Court to defer to the Hegseth Policy as an exercise of professional military judgment. Yet they now tell the Court that the military's own officers and career officials carried out the Policy whether or not they agreed with it, and that "[p]olitical appointees, not their career civil servant staff members, are the final decision makers." Mot. at 2. Defendants cannot have it both ways. If the Policy does not reflect the judgment of military leaders like Defendants' experts, the Court is entitled to know that.

The Motion also covers two different kinds of testimony: witnesses' views "as to the lawfulness of the 2025 Policy" and their views "regarding specific statements in the Executive Order." Mot. at 1. Plaintiffs do not intend to ask any witness whether the Policy is lawful; that question is for the Court. But the statements in the Executive Order and the Hegseth Policy are framed as factual claims about service members—that transgender troops lack "honesty, humility, uniformity, and integrity." Whether a commander's or a military physician's experience bears out those claims is the kind of "professional judgment[ ]" and "professional observation[ ]" that Defendants concede is relevant. *Id.* at 1, 2.

## II. Defendants Identify No Evidence to Exclude and Therefore Failed to Give the Court Any Basis on Which to Rule

A party seeking a ruling *in limine* should "target their arguments to demonstrating why certain items or categories of evidence should (or should not) be introduced at trial, and direct

the trial judge to specific evidence in the record that would favor or disfavor the introduction of those particular items or categories of evidence." *Barnes v. District of Columbia*, 924 F. Supp. 2d 74, 78 (D.D.C. 2013) (quoting *Graves v. District of Columbia*, 850 F. Supp. 2d 6, 11 (D.D.C. 2011)). Defendants target no particular question and direct the Court to no particular answer. The Court cannot exclude what Defendants never identify. Nor do Defendants cite a single case or a single page of deposition testimony. And although the Motion invokes Rule 403, Defendants never argue the point. *See* Mot. at 1.

Defendants concede that "military officials' expert opinions and professional judgments as to military readiness and medical operational readiness are relevant to the case and are fair game at trial." Mot. at 1. They likewise concede that the "professional observations of career civil servants may be relevant." *Id.* at 2. But Defendants never identify what opinions they want excluded. The failure to identify a basis on which to rule is alone a reason to deny the Motion. *See, e.g.*, *Burns v. Levy*, 2019 WL 6465142, at *22 (D.D.C. Dec. 2, 2019) (denying motion *in limine* for failure to provide "sufficient information to determine whether [certain] testimony should be excluded"); *see also Stoe v. Garland*, 2021 WL 4169313, at *10 (D.D.C. Sept. 14, 2021) (similar); *Herbert v. Architect of Capitol*, 920 F. Supp. 2d 33, 47 (D.D.C. 2013) (similar). Without specifics, the Court has nothing to exclude. The Court should deny Defendants' Motion.

Respectfully submitted,

Dated: November 20, 2026

/s/ *Lauren M. Weinstein*
Lauren M. Weinstein (1035184)
Benjamin G. Bradshaw (460539)
Shruti Kannan (90006641)
Timur Akman-Duffy (1779260)
Jack Derewicz (1779953)
Max J. Rosenthal (90028849)
O'MELVENY & MYERS LLP
1625 Eye St., N.W.
Washington, D.C. 20006
Phone: (202) 383-5300
lweinstein@omm.com
bbradshaw@omm.com
skannan@omm.com
takman-duffy@omm.com
jderewicz@omm.com
mrosenthal@omm.com

Brett Williamson (1024759)
O'MELVENY & MYERS LLP
610 Newport Center Drive
Newport Beach, CA 92660
Phone: (949) 823-6900
bwilliamson@omm.com

Janine F. Panchok-Berry (*pro hac vice*)
Eamonn W. Campbell (*pro hac vice*)
Qiran "Anna" Xie (*pro hac vice*)
Maggie M. Niu (*pro hac vice*)
O'MELVENY & MYERS LLP
1301 Avenue of the Americas, Suite 1700
New York, NY 10019
Phone: (212) 326-2000
jpanchok-berry@omm.com
ecampbell@omm.com
axie@omm.com
mniu@omm.com

Jennifer Levi (MA0056)
Mary Bonauto (*pro hac vice*)
Michael R. Haley (*pro hac vice*)
Sarah K. Austin (*pro hac vice*)
GLBTQ LEGAL ADVOCATES & DEFENDERS
18 Tremont Street
Suite 950
Boston, MA 02108
Phone: (617) 426-1350
jlevi@gladlaw.org
mbonauto@gladlaw.org
mhaley@gladlaw.org
saustin@gladlaw.org

Christopher F. Stoll (*pro hac vice*)
Shannon P. Minter (*pro hac vice*)
Amy Whelan (*pro hac vice*)
NATIONAL CENTER FOR LGBTQ RIGHTS
1401 21st St. #11548
Sacramento, CA 95811
Phone: (415) 365-1320
cstoll@nclrights.org
sminter@nclrights.org
awhelan@nclrights.org

Joseph J. Wardenski (995549)
WARDENSKI P.C.
134 West 29th Street
Suite 709
New York, NY 10001
Phone: (347) 913-3311
joe@wardenskilaw.com

Inga S. Bernstein (*pro hac vice*)
ZALKIND DUNCAN & BERNSTEIN LLP
2 Oliver Street
Suite 200
Boston, MA 02109
Phone: (617) 742-6020
ibernstein@zalkindlaw.com

*Counsel for Plaintiffs*