# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NICOLAS TALBOTT et al., individually and on behalf of all similarly situated individuals, | : | |
| Plaintiffs, | : | Civil Action No. 25-cv-240-ACR |
| v. | : | |
| UNITED STATES et al., | : | |
| Defendants. | : | |

Friday, October 16, 2026

Video deposition of LIEUTENANT GENERAL CHARLES LOMBARDO, taken at the Law Offices of O'Melveny & Myers LLP, 1625 Eye Street NW, Washington, DC, beginning at 9:33 a.m., Eastern Standard Time, before Ryan K. Black, Registered Professional Reporter, Certified Livenote Reporter and Notary Public in and for the District of Columbia

answered. Outside the scope of the disclosure.

THE WITNESS: I mean, I agree with that if that means his -- his -- his needs are above the mission's success. But it's -- you know, if anybody asks for anything, you know, a soldier to, you know, compromise or compete their -- their -- their -- the unit cohesion's needs and our Army values beyond a personal -- a personal requirement. So it's not just gender dys -- you know, anybody -- or transgender. It's anybody that requires their needs are more important than the team, I think they need to probably reevaluate why they're on that team.

BY MR. ROSENTHAL:

Q. I notice that you highlighted a couple of passages of the Executive Order. What -- what did you highlight?

A. Well, it was the ones that you were reading through a couple times. I was just trying to und -- you know, that I could go back to it. Just the policy of it. And then just to reread -- I was just using it to reread your statements. I'll give it back to you if you want.

Q. No. That's fine. Can you just read

the first snippet that you highlighted there in green?

A. "As a result, many mental and physical health conditions are incompatible with active duty from conditions that require substantial medication or medical treatment, to bipolar and related disorders, eating disorders, suicidality, prior psychiatric hospitalization."

Q. And so why -- why did you highlight that?

A. Well, be -- be --

Q. What -- what caught your attention?

A. Because I -- I've lost soldiers to suicide. And in moving a suicide in combat, I lost two more soldiers to a roadside IED bomb, so ...

Q. And the second passage there further down in the EO, could you read that for me?

A. Yeah. The -- "It's the policy of the United States government to establish high standards for troop readiness, lethality, cohesion, honesty, humility, uniformity and integrity."

Q. And what caught your attention about that passage?

A. Well, that -- that's what I'm focused on. You know, it's not the other stuff, yeah.

Q. And do you believe transgender soldiers can meet those high standards that you just read off?

MR. BOMBARD: Objection. Outside the scope of the disclosure.

THE WITNESS: I think any soldier can meet, you know, at times those. But it just depends. I hate to be flippant, but I think that's a very complex question.

BY MR. ROSENTHAL:

Q. Okay. To your knowledge, what steps has the military taken to ensure that individuals who have a diagnosis of gender dysphoria are treated with respect while they are being separated from the military?

MR. BOMBARD: Objection. Outside the scope of the disclosure.

THE WITNESS: Yeah. I'm not an expert on that. I would refer -- I think our medical community does a good job of, you know, the HIPAA and really enforcing that, insomuch, I don't -- like, as a commander, I didn't know -- I didn't, and still do not know the names of the

soldiers that were -- had a gender dysphoria determination.

BY MR. ROSENTHAL:

Q. Okay. So we're gonna look now at a very particular period of time. I'd like to focus specifically on the period between January 20th, 2025. That's when the current administration took office. And then February 7th, 2025, and that's when Secretary Hegseth issued the memo instating the current policy relating to service by individuals with diagnoses of gender dysphoria.

During that time, did you express any opinions at all about transgender individuals serving in the military to anybody in your chain of command?

MR. BOMBARD: Objection. Outside the scope of the disclosure.

THE WITNESS: No.

BY MR. ROSENTHAL:

Q. Did you offer any -- do you know if -- well, strike that.

(Whereupon Lieutenant General Lombardo was handed a bottle of water.)

THE WITNESS: Thanks, man.

C E R T I F I C A T E

I do hereby certify that I am a Notary Public in good standing, that the aforesaid testimony was taken before me, pursuant to notice, at the time and place indicated; that said deponent was by me duly sworn to tell the truth, the whole truth, and nothing but the truth; that the testimony of said deponent was correctly recorded in machine shorthand by me and thereafter transcribed under my supervision with computer-aided transcription; that the deposition is a true and correct record of the testimony given by the witness; and that I am neither of counsel nor kin to any party in said action, nor interested in the outcome thereof.

WITNESS my hand and official seal this 28th day of October, 2026.



______________________________

Notary Public