**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NICOLAS TALBOTT, *et al.*,

Plaintiffs,

v.

UNITED STATES OF AMERICA, *et al.*,

Defendants.

Civ. A. No. 25- 240 (ACR)

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 2 TO EXCLUDE EVIDENCE OF IRRELEVANT MEDICAL RECORDS, MEDICAL HISTORY, OR MILITARY AND FITNESS DEFICIENCIES (Doc. 180)**

When counsel for the parties conferred in good faith about this potential motion, Defendants' counsel advised that they were receptive to an Order in Limine excluding truly unrelated medical conditions, but that Defendants would oppose any proposal that would limit the Government's ability to introduce or solicit evidence of any condition that is comorbid with gender dysphoria. Later that week, Plaintiffs sent a list of purported "unrelated" medical conditions found in the eight testifying Plaintiffs' medical records. Because the document Plaintiffs shared with Defendants listed many conditions comorbid with gender dysphoria, Defendants indicated that they would oppose the motion.

Plaintiffs' list bears little resemblance to Plaintiffs' motion. In the motion, Plaintiffs highlight conditions like hay fever, back pain, and kidney stones. But Plaintiffs' list of their so-called unrelated medical conditions—which they did not share with the Court—also includes

depressive disorder, suicidal ideation, psychiatric hospitalizations, severe anxiety, behavioral health concerns, and adjustment disorder.

Plaintiffs made no attempt to define for the Court what they believe is "unrelated" to gender dysphoria. Instead, they cherry-picked innocuous examples and omitted the clinically significant comorbid conditions experienced by these eight Plaintiffs.

The evidence at trial will be that the serious mental health conditions identified in Plaintiffs' records are known to be comorbidities of gender dysphoria, that these conditions are more prevalent among gender dysphoric patients than the general population, and that these comorbidities contribute to the high rate of non-deployable and limited-duty status among gender dysphoric service members.

Persons with gender dysphoria have "high rates of psychiatric comorbidities, like depression, suicidality, anxiety, PTSD," and those comorbidities make it difficult to perform military duties, "certainly in a deployment setting." Ex. 1, Salter Dep. Tr. 152:6-21. The literature "shows sustained dysphoria and mental health comorbidities after treatment." *Id.* 132:18-25.

Indeed, a person experiencing gender dysphoria has a "relative increase in baseline risk for pretty much every mental health condition as a comorbidity; suicidal thoughts, self-harm behaviors, suicidal behavior." Ex. 2, Bayer Dep. Tr. 96:7-12.

Even Plaintiffs' own witness, Yvette Bourcicot, wrote in a scholarly article that "gender dysphoria is often comorbid with depression, anxiety, compulsivity, behavior disorders, and tendencies towards self-harm and suicide, among other issues, which need to be addressed in conjunction with specific treatment for gender dysphoria." Ex. 3, Bourcicot Dep. Tr. 173:11-21. Plaintiffs' psychiatric expert, Dr. Brown, confirmed the same. *See* Ex. 4, George R. Brown, MD, *Medical and Mental Health Issues in Gender-Affirming Hormonal Treatments for Transgender*

*and Gender-Diverse Patients*, at 12 ("Lifetime suicide rate is ~9x higher than general US population"); Ex. 5, *Prevalence of Gender Identity Disorder and Suicide Risk Among Transgender Veterans Utilizing Veterans Health Administration Care*, at e27 (rate of suicide-related events among veterans with a gender-identity disorder is more than 20 times higher than for the general Veterans Health Administration population). Dr. Brown also concluded that there are significant mental health disparities of gender-dysphoric individuals. *See* Ex. 6, *Mental Health and Medical Health Disparities in 5135 Transgender Veterans Receiving Healthcare in the Veterans Health Administration: A Case–Control Study*, at 122 (statistically significant disparities in transgender cohort for depression, suicidality, serious mental illnesses, and PTSD).

And from a military accessions standpoint, the waiver threshold for gender dysphoria must be measured "by attendant comorbidities because they're very high in the gender dysphoric population." Ex. 7, Ortega Dep. Tr. 63:17–64:2.

Evidence of these mental and behavioral health comorbidities in Plaintiffs is relevant because it is probative of whether a diagnosis or history of gender dysphoria is a substantial impediment to individual military fitness and deployability. And that is a fact of consequence in determining the action because the Defendants claim a legitimate governmental interest in military readiness, among other things. *See* Fed. R. Evid. 401.

## CONCLUSION

Defendants are not interested in litigating Plaintiffs' hay fever. But Plaintiffs' mental and behavioral health conditions are highly relevant and probative of the issues for trial. The Court should either deny Plaintiffs Motion in Limine No. 2 (Doc. 180) or take it under advisement and rule on contemporaneous objections as they arise during trial.

DATED: November 20, 2026

Respectfully submitted:

JONATHAN D. GUYNN
Acting Assistant Attorney General

ALEXANDER K. HAAS
Director

KRISTINA A. WOLFE
Assistant Branch Director

*/s/ Michael T. Crabb*
M. JARED LITTMAN
ELIZABETH B. LAYENDECKER
ROBERT C. BOMBARD
MICHAEL T. CRABB
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 451-7478
Email: jared.littman2@usdoj.gov

*Counsel for Defendants*