# EXHIBIT E

**From:** Kannan, Shruti
**Sent:** Monday, October 12, 2026 8:44 PM
**To:** 'Reyes_Chambers@dcd.uscourts.gov' <Reyes_Chambers@dcd.uscourts.gov>
**Cc:** 'Littman, Jared (CIV' <Jared.Littman2@usdoj.gov>; 'Wolfe, Kristina (CIV' <Kristina.Wolfe@usdoj.gov>; 'Layendecker, Elizabeth B (CIV' <Elizabeth.B.Layendecker@usdoj.gov>; 'Bombard, Robert (CIV' <Robert.Bombard2@usdoj.gov>; 'Crabb, Michael T (CIV' <Michael.T.Crabb@usdoj.gov>; Weinstein, Lauren M. <LWeinstein@omm.com>; Bradshaw, Ben <bbradshaw@omm.com>; Williamson, Brett J. <bwilliamson@omm.com>; cstoll@nclrights.org; ibernstein@zalkindlaw.com; jlevi@gladlaw.org; joe@wardenskilaw.com; mhaley@gladlaw.org; sminter@nclrights.org
**Subject:** Talbott v. United States (No. 25-cv-240-ACR) – Discovery Disputes

Dear Judge Reyes:

Pursuant to the Court's Standing Order in Civil Cases ¶ 10 and this Court's September 15, 2026 Order (Dkt. 147) setting an October 12, 2026 deadline for raising discovery disputes, the parties bring the following discovery disputes to the Court's attention. The parties conferred in good faith in an attempt to resolve their disputes informally but were unable to resolve them. The parties therefore request a teleconference with the Court to address these issues.

Plaintiffs and Defendants continue to discuss several issues that Plaintiffs are hopeful will be resolved without the Court's intervention, including, for example, deficiencies in Defendants' attorney-client and work-product assertions in their privilege log. Plaintiffs are glad to provide more information about any percolating disputes if the Court would like. Moreover, the parties may raise disputes that arise later in the discovery period given that document production and depositions are still underway.

## I. Discovery Disputes Raised by Defendants

### A. Plaintiffs' September 22, 2026 Deposition Notices to Named Defendants Secretary Hegseth, Acting Secretary Telle, Acting Secretary Cao, Secretary Meink, and DHA Director Via

**Defendants' Position:** On September 22, 2026, Plaintiffs served notices of deposition on Secretary of War Hegseth, Acting Secretary of the Army Telle, Acting Secretary of the Navy Cao, Secretary of the Air Force Meink, and Director of the Defense Health Agency (DHA) Via.

The Court should not permit these depositions. These officials are at the apex of the Nation's military establishment. Settled precedent and separation-of-powers principles do not permit depositions of apex officials absent extraordinary circumstances, which do not exist here. *See, e.g.*, *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586-87 (D.C. Cir. 1985); *In re Musk*, 169 F.4th 445, 448 (4th Cir. 2026).

First, Plaintiffs have not identified any essential information uniquely known to these apex officials. To the extent Plaintiffs want to inquire from Secretary Hegseth about the subjective intent behind the Policy, it is settled law that the Department's policy should be reviewed on its own terms, without regard to any alleged subjective intent behind it. *See W. Va. v. B.P.J.*, 609 U.S. ----, 146 S. Ct. 2356, 2378 (June 30, 2026) (holding that courts should not look outside the operative terms of a policy in assessing the basis on which a policy classifies); *Trump v. Hawaii*, 138 S. Ct. 2392, 2420 (2018) (upholding presidential proclamation based solely on its text, without regard to previous executive orders or past statements by the President; policy must be upheld "so long as it can reasonably be understood to result from a justification independent of unconstitutional grounds" ). Moreover, Secretary Hegseth delegated his authority to formulate the policy to the Under Secretary of Defense for Personnel and Readiness.

The noticed Service Secretaries were not even in their positions at the time of policy formation and issuance. The Services are even further downstream than the Office of Secretary of War; their implementation of the policy nothing about its legality as Plaintiffs state in the operative complaint. *Id.* ¶ 1 (challenge is to Executive Orders and Department's implementing memoranda, which "reverse[d] the current policy," "establish[ed] an official policy," and "compel[led] military officials" to act accordingly).

DHA Director Via was also not in his position at the time of policy formation and issuance. Plaintiffs' complaint contains no substantive allegations directed at DHA; all Plaintiffs say is that DHA "exercises management responsibility for the TRICARE health plan," *id.* ¶ 301, which is not challenged in this case.

Second, Plaintiffs have not exhausted less intrusive sources as they are required to do to establish extraordinary circumstances. Defendants have offered alternative witnesses for the noticed apex officials: Chief of Staff Ricky Buria, who worked with Secretary Hegseth as a Military Assistant at the time of Policy promulgation; Sean O'Keefe, Deputy Under Secretary of War for Personnel and Readiness, who Defendants would designate as a Rule 30(b)(6) witness for the Services; and DHA Deputy Director Dr. David Smith. To date, Plaintiffs have not stated whether they accept or reject these alternative witnesses.

The issue is ripe for resolution. Plaintiffs felt sufficiently certain that the witnesses had information such that they noticed their depositions about three weeks ago. Defendants are entitled to move for a protective order under Rule 26(c).

**Plaintiffs' Position:** Defendants did not challenge these deposition notices or provide alternative witnesses until the afternoon of October 8, 2026, at which time they offered no legal authority supporting their invocation of the apex doctrine. As Plaintiffs explained to Defendants prior to their submission of this dispute, Plaintiffs do not believe the dispute is ripe for judicial resolution. Plaintiffs have requested reasonable time to evaluate whether less intrusive alternatives to these depositions exist, as Defendants urge. Specifically, Plaintiffs are evaluating the alternative witnesses—including by reviewing Defendants' document production, which will not be complete until October 16—to verify Defendants' representations about the currently noticed witnesses' lack of knowledge and about the suitability of the alternative witnesses, and considering whether to provide a counterproposal, including stipulations from Defendants regarding the admissibility at trial of public statements made by Secretary Hegseth. Defendants claim this dispute is ripe because Plaintiffs noticed these depositions previously. But that does not establish that the parties have exhausted their ability to work out this dispute without Court intervention. In any event, Plaintiffs noticed the deposition of Secretary Hegseth in part because his public comments about transgender people bear directly on whether the Policy's stated justifications are genuine and whether the Policy is tailored to them—issues the Court has already identified as central. Op., Dkt. 89, at 72; *see* Fed. R. Civ. P. 26(b)(1).

Plaintiffs suspect the parties will be able to resolve this dispute without Court intervention and respectfully request until October 21 (three business days after Defendants complete production) to either resolve this issue with Defendants or seek judicial intervention.

### B. Baker and Currah Rebuttal Reports

**Defendants' Position:** On September 25, 2026, among other reports, Plaintiffs served upon Defendants the following titled reports: (1) Rebuttal Expert Report of Carrie N. Baker, J.D. Ph.D., and (2) Rebuttal Expert Report of Paisley Currah, Ph.D. Defendants seek to exclude both reports as improper rebuttal.

On September 4, 2026, Defendants served on Plaintiffs expert disclosures pursuant to Rule 26(a)(2)(C). The disclosures set forth opinions of military officials and medical personnel relating to military readiness and medical operations. The disclosures did not set forth opinions about the history of sex classifications under American law and governance, which are the crux of the Baker and Currah reports. These reports fall outside of Rule 26(a)(2)(D)(ii) (rebuttals must be "intended solely to contradict or rebut evidence on the same subject matter identified by another party"). The Court should strike them because "[w]here a party attempts to designate as a 'rebuttal' expert someone whose proposed testimony is beyond the scope of appropriate rebuttal, that witness may be viewed as an initial expert who was not timely designated and whose testimony may be struck by the Court for violating Rule 26(a)[.]" *See Blake v. Securitas Sec. Servs., Inc.*, 292 F.R.D. 15, 17–19 (D.D.C. 2013).

Plaintiffs' snippets and mischaracterizations of Defendants' disclosures below have nothing to do with the history of sex classifications under American law and governance, which are the crux of the Baker and Currah reports.

**Plaintiffs' Position:** On September 4, 2026 Defendants served 17 purported expert disclosures pursuant to Federal Rule of Civil Procedure 26(a)(2)(C). Many of those disclosures place the nature of sex and gender squarely at issue:

- Dr. Hopewell is expected to testify on "the nature of sex, gender identity, and gender dysphoria" (Hopewell Discl. ¶ 4);
- Defendants' witnesses, including Bayer (¶ 8), Blair (¶ 7), Hopewell (¶ 6), and Miguez (¶ 8), will testify that the Policy is consistent with the military's general approach to medical and behavioral health conditions; and
- Dr. Ortega is expected to testify that sex is a "categorization as biologically male or female generally based on the genitals and reproductive tract," Ortega Discl., Attach. at 14.

Defendants call these quotations "snippets and mischaracterizations" but identify no inaccuracy or omitted context that changes their meaning. Their disclosures expressly put the nature of sex and the Policy's asserted medical neutrality at issue. Drs. Baker and Currah address those opinions.

As explained in their reports, by reference to specific opinions and paragraph numbers in Defendants' expert disclosures, Drs. Baker and Currah will rebut the fixed, purportedly objective definitions of sex and gender dysphoria to which Defendants' witnesses will testify. *See, e.g.*, Baker Rpt. ¶ 12 (responding "to the anticipated testimony of Dr. Hopewell regarding 'the nature of sex, gender identity, and gender dysphoria' and [to] the characterization by [eight defense witnesses] of the Hegseth Policy as a neutral standard"); Currah Rpt. ¶ 13 (responding to, *inter alia*, Dr. Ortega's reliance on materials defining sex as "a person's categorization as biologically male or female generally based on the genitals and reproductive tract" and testimony that the Military Ban's "treatment of gender dysphoria is 'consistent with the military's general approach to mental and behavioral health conditions'"). They will offer expert testimony on how sex classifications have historically been used in response to Defendants' witnesses' opinions that the Military Ban is a generally applicable medical regulation and is consistent with how the military handles other medical and behavioral health conditions. The testimony disclosed in Dr. Baker's and Dr. Currah's reports, analyzing the Military Ban in the context of how sex-based standards have been administered over time, is directly responsive to Defendants' characterization of the Military Ban as a medical standard, rather than a regulation targeting transgender service members. That is proper rebuttal. *See United States v. Philip Morris USA Inc.*, 2022 WL 1101730, at *5-6 (D.D.C. Apr. 13, 2022) (denying motion to exclude rebuttal report after "easily conclud[ing] that . . . it 'went directly to refuting' a claim introduced by the opposing expert" (quoting *United States v. Gatling*, 96 F.3d 1511, 1523 (D.C. Cir. 1996))).

The reports should not be excluded. Plaintiffs are glad to supply the Court with a copy of Dr. Baker's and Dr. Currah's reports and the disclosures to which they respond if that would be helpful.

## II. Discovery Disputes Raised by Plaintiffs

### A. Defendants' Invocation of Deliberative Process Privilege

**Plaintiffs' Position:** Defendants served a privilege log on October 1, 2026 in connection with their September 11, 2026 production of 1,348 pages (because Defendants compiled all the documents into a single PDF, the number of unique documents in the production is unclear). Defendants' privilege log contains 351 entries, 278 of which (approximately 80% of all logged entries) invoke the "deliberative process privilege." Defendants have withheld 141 documents in their entirety on the basis of deliberative process privilege. And Defendants' counsel has instructed at least one witness not to answer deposition questions based on that privilege. *See* Ortega Rough Tr. at 115:17-117:1; 117:14-119:6.

The deliberative process privilege does not apply here. The D.C. Circuit and courts in this District have held in numerous cases that the deliberative process privilege does not apply in cases like this one, where the government's intent is squarely at issue. *See, e.g.*, *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 145 F.3d 1422, 1424 (D.C. Cir. 1998); *Elkins v. District of Columbia*, 250 F.R.D. 20, 27 (D.D.C. 2008); *Tri-State Hosp. Supply Corp. v. United States*, 2005 WL 3447890, at *8 (D.D.C. Dec. 16, 2005). Defendants "cannot ask for deference, then proceed to invoke the deliberative process privilege to prevent discovery into the evidence which would show whether or not such deference is appropriate." *Doe 2 v. Esper*, 2019 WL 4394842, at *6 (D.D.C. Sept. 13, 2019) (rejecting application of deliberative process privilege in challenge to Mattis Policy concerning service of transgender persons in the military).

Defendants identify no authority permitting invocation of the deliberative process privilege in these circumstances. They claimed in the parties' meet and confer on this issue that the Department of Defense's intent is not at issue in this case. That is demonstrably false. This case is about whether the challenged ban—both the Executive Order *and* the Department of Defense's subsequent implementation—"is fueled by animus," which would result in it "fail[ing] any level of scrutiny." Op., Dkt. 89, at 65; *see also* Fifth Am. Compl., Dkt. 117 ¶¶ 13, 399(b), 409, 416, 424 (allegations concerning animus in, and motivating, the Hegseth Policy); Op., Dkt. 89, at 72 ("The Court could stop here in its analysis and comfortably conclude that Plaintiffs are likely to succeed on their claim that the Military Ban [defined to include both the Executive Order and Hegseth Policy] is motivated by animus and is not tailored to meet its stated goals."). The majority of the D.C. Circuit panel agreed that the Hegseth Policy is likely "based upon animus." *Talbott v. United States*, 176 F.4th 720, 726 (D.C. Cir. 2026) (opinion of Wilkins, J.); *id.* at 754 (Rogers, J., concurring in part and dissenting in part) ("features of the Hegseth Policy are inexplicable by anything other than animus").

In arguing that "the Department's policy should be reviewed on its own terms, without regard to any alleged subjective intent behind it," Defendants take the remarkable position that "alleged animus is thus not pertinent to judicial review of the Department's policy." For support, they first cite *W. Va. v. B.P.J.*, 609 U.S. ----, 146 S. Ct. 2356 (2026), a case that had nothing to do with animus. Defendants then cite *Trump v. Hawaii*, 585 U.S. 667 (2018), in which the Supreme Court analyzed—and did not dismiss altogether—Hawaii's arguments that animus fueled the Proclamation at issue. Whether the challenged ban was fueled by animus is central in this case, and the Court already found Plaintiffs were likely to succeed on that ground. The D.C. Circuit affirmed. Animus is plainly relevant here, putting the government's intent squarely at issue. Defendants cannot invoke the deliberative process privilege. If the Court disagrees, Plaintiffs reserve the right to argue that Defendants have not properly invoked the deliberative process privilege under *Landry v. FDIC*, 204 F.3d 1125 (D.C. Cir. 2000).

Plaintiffs respectfully request that the Court compel production of all materials withheld under the deliberative process privilege and to enter an order prohibiting Defendants from instructing witnesses not to answer questions on the basis of this privilege.

**Defendants' Position:** This case is a challenge to agency action—the Department of War's Policy of February 26, 2025. Accordingly, on April 30, 2026, Defendants produced the administrative record, comprised of all materials directly and indirectly considered by the decisionmakers in issuing the Policy. The administrative record was almost entirely unredacted and it properly excluded deliberate process privileged materials. *See Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019). The Court nevertheless granted Plaintiffs discovery, and Plaintiffs served two sets of requests for production of documents. Defendants produced documents, which contained a substantial amount of redactions pursuant to the deliberative process privilege and other privileges (mostly the same documents that Defendants properly withheld from the administrative record). Plaintiffs seem surprised by the quantity of redactions, but they fail to appreciate that Defendants already produced 4,000 pages of unredacted material as part of the administrative record.

The assertions of deliberative process privilege are appropriate and must be upheld because the chilling effect of disclosure outweigh Plaintiffs' asserted need, which is de minimis. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (deliberative process privilege shields from disclosure documents "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."); *Judicial Watch, Inc. v. United States Dep't of Def.*, 847 F.3d 735, 739 (D.C. Cir. 2017) (the privilege "reflects the commonsense notion that agencies craft better rules when their employees can spell out in writing the pitfalls as well as strengths of policy options, coupled with the understanding that employees would be chilled from such rigorous deliberation if they feared it might become public").

Plaintiffs' assertions of animus or their interest in discovering the alleged subjective intent underlying the policy are insufficient to sustain their burden of overcoming the privilege. It is settled law that the Department's policy should be reviewed on its own terms, without regard to any alleged subjective intent behind it. *See W. Va. v. B.P.J.*, 609 U.S. ----, 146 S. Ct. 2356, 2378 (June 30, 2026) (holding that courts should not look outside the operative terms of a policy in assessing the basis on which a policy classifies); *Trump v. Hawaii*, 138 S. Ct. 2392, 2420 (2018) (upholding presidential proclamation based solely on its text, without regard to previous executive orders or past statements by the President; policy must be upheld "so long as it can reasonably be understood to result from a justification independent of unconstitutional grounds" ). Such alleged animus is thus not pertinent to judicial review of the Department's policy and cannot serve as a basis to negate the deliberative process privilege in this litigation.

### B. Compliance with the ESI Protocol

**Plaintiffs' Position:** Defendants do not dispute that they have violated the Stipulated Order for Discovery and Production of Electronically Stored Information ("ESI Protocol") that the Court ordered on September 14, 2026 (Dkt. 143). None of their productions complies with the Protocol. The productions suffer from a variety of defects, including that the documents do not include complete metadata (some documents have none), were not grouped by family, and were not produced as single-page images. *See* ESI Protocol, § IV. Two of the three productions do not contain searchable text files. None includes native files.

Defendants stated they would "follow up" on the issues Plaintiffs identified with their two initial noncompliant productions on October 2. Since then, they produced another noncompliant production, and have not cured any of the identified issues. Nor have they agreed to reproduce the material in compliance with the ESI Protocol despite Plaintiffs' requests.

Defendants' assertion that they produced documents in the form maintained by the Department does not excuse these defects. The Protocol expressly requires production "in a litigation database-ready format," including single-page images, searchable text files, and specified load files. *Id.* § IV.A.1. It further provides that a "Producing Party shall not produce ESI in a format not requested or agreed to by the Requesting Party." *Id.* § II.3. Any technical variance requires "agreement of the Parties, confirmed in writing." *Id.* § VII.B. Defendants identify no such agreement. Even if Talbott AR 04094 was maintained as a single PDF, that does not excuse producing it without the required images, searchable text, load files, and applicable metadata.

Nor does privilege excuse withholding ordinary metadata merely because the underlying document contains privileged material. Privilege logs themselves routinely disclose such information: they must identify a document's "author, date created, and the identity of all persons to whom the original or any copies of the document were shown or provided." *Loftin v. Bande*, 258 F.R.D. 31, 33 (D.D.C. 2009). Defendants' assertion that they documented nonprivileged metadata in their privilege log does not answer the separate requirement to produce that information in the prescribed database load file. ESI Protocol § IV.D & app. I.

Defendants' noncompliance with the ESI Protocol is complicating Plaintiffs' use of the documents and prejudicing their ability to prepare for depositions and to analyze the Defendants' productions. For example, Talbott AR 04094, a single PDF of over one thousand pages, is not grouped by family, is out of chronological order, and does not distinguish emails from attachments, making it difficult to understand the documents, much less to use them effectively in depositions.

Plaintiffs respectfully request that the Court order Defendants to reproduce their productions consistent with the ESI Protocol immediately and to make any subsequent productions consistent with the requirements of the ESI Protocol.

**Defendants' Position:** Defendants have produced the documents in the form in which they were maintained as records of the Department, which is why Talbott AR 04094 is a single PDF. Plaintiffs concern regarding deposition preparation appear to be baseless as the documents are in a readable format and Plaintiffs have not identified any specific impediment or issue in their current form. In any event, there is no requirement in the ESI protocol for documents to be organized chronologically. While it is true that some documents do not include natives that is only because those files are privileged and cannot be redacted in native format to protect the privileged material. Regarding metadata, whatever non-privileged metadata exists, Defendants have documented this in the privilege log. Regarding grouping by family, Defendants reproduced the first production in order to satisfy the Plaintiffs' request for complete families of documents. Defendants note that the production burdens are significant given the expedited deadlines but do not believe Court intervention is required as the parties will be able to resolve any production issues.

### C. Outstanding Deposition Dates

**Plaintiffs' Position:** On September 4, Plaintiffs first requested dates for Defendants' 17 disclosed witnesses, and have followed up diligently for over a month. Defendants did not provide any dates for any of their witnesses until September 29 and still have not proposed dates for Captain White and Dr. Hopewell. Discovery is set to close soon. Defendants should be compelled to propose dates for these depositions without further delay. As Defendants point out, these are United States military personnel; they are necessarily subject to the control of the United States, a named Defendant in this action.

**Defendants' Position:** Unlike Plaintiffs' specially-retained experts, Defendants' experts were disclosed pursuant to Rule 26(a)(2)(c). They are military officials responsible for military operations and military medical providers responsible for seeing injured and ill patients. Defendants will promptly propose dates for Captain White and Dr. Hopewell.

Best,
Shruti

O'Melveny

**Shruti Kannan** (she/her)
Associate
skannan@omm.com
O: +1-202-383-5357

O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006
Website | LinkedIn | Twitter

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*